No. 12-1643

# UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

**GARY LEE SAMPSON,**
**Petitioner-Appellee**

**v.**

**UNITED STATES OF AMERICA,**
**Respondent-Appellant**

_____

### GOVERNMENT'S MOTION TO DEFER
### JURISDICTIONAL ISSUES TO THE MERITS PANEL

On May 25, 2012, the petitioner-appellee, Gary Lee Sampson, who was sentenced to death in January 2004 for capital offenses, moved this Court to dismiss this appeal, the government's appeal from May 10, 2012 Memorandum and Order (hereafter the "May 10 Order") of the district court (Wolf, C.J.) allowing Sampson's 28 U.S.C. §2255 petition in part, vacating his death sentence, and granting him a new penalty phase trial. The question raised by that motion – whether an order granting a capital defendant a new penalty phase trial constitutes a final, appealable order – is one of exceptional importance and first impression in this circuit, and is deserving of full briefing, oral argument, and consideration by a merits panel. In addition, the government has separately moved for permission to take an interlocutory appeal under 28 U.S.C. §1292(b) in Appeal No. 12-8019 (a related government appeal), and intends

to petition for a writ of mandamus when it files its opening brief in this case. The government therefore opposes the motion to dismiss and requests that this Court defer to the merits panel the issues of jurisdiction raised by this appeal, those raised in Appeal No. 12-8019, and the petition for a writ of mandamus. In the event the Court denies the government's request that these jurisdictional issues be resolved by the merits panel, the government requests additional time to file its response to Sampson's motion to dismiss and has separately filed a motion seeking that extension.

## STATEMENT OF FACTS

### A.    Sampson's Conviction and Sentence

Gary Lee Sampson brutally killed three innocent people – Philip A. McCloskey, Jonathan Rizzo, and Robert "Eli" Whitney – in a seven-day period between July 24 and July 30, 2001. *United States v. Sampson*, 486 F.3d 13, 18 (1st Cir. 2007). Following his arrest, a federal grand jury in the District of Massachusetts returned a second superseding indictment charging Sampson with two counts of carjacking with the intent to cause serious bodily injury or death, and further alleging that the carjackings resulted in the deaths of McCloskey and Rizzo, in violation of 18 U.S.C. §2119(3). *Id.* at 19. In addition, on November 19, 2002, the Attorney General of the United States filed a Notice of Intent to seek the death penalty, as required by 18

U.S.C. §3593(a).  *Id.*  On September 9, 2003, Sampson pled guilty to both counts of the second superseding indictment.  *Id.*

On December 23, 2003, after a six-week penalty phase trial conducted in accordance with the Federal Death Penalty Act ("FDPA"), the jury unanimously recommended that Sampson be sentenced to death on both counts of the second superseding indictment.  *Id.*  On January 29, 2004, the district court sentenced Sampson to death on both counts.  *Id.*  Sampson's death sentence thereafter was affirmed by this Court,  *id.* at 19-52, and the Supreme Court thereafter denied his petition for a writ of certiorari on May 12, 2008, *see Sampson v. United States*, 553 U.S. 1035 (2008).

### B.    Section 2255 Petition

On May 11, 2009, Sampson filed a 154-page petition under 28 U.S.C. §2255 in which he raised eight distinct claims for relief – several of which had multiple subclaims – including the claim that he was denied the right to a fair trial because three jurors provided dishonest answers during voir dire. [D.967].[1] On April 6, 2010, Sampson filed a 250-page amended §2255 petition which provided additional

---

[1] The district court opened a new civil case (09-10762 MLW) when Sampson filed his petition, but directed the parties to file all pleadings in the criminal case (01-10384 MLW).

information regarding several of the claims pled in the initial §2255 petition, but which did not raise any new claims.  [D.1040].

The district court held evidentiary hearings on the juror bias claim on November 18, 2010, March 18, 2011, and August 8, 2011.  May 10 Order at 6. During the first evidentiary hearing, all three jurors who were the subject of Claim IV (identified as Jurors "C," "D," and "G") testified, while only Juror C testified at the following two evidentiary hearings.  *Id.*

### C.    <u>**The District Court's Memorandum and Order on Jury Claim**</u>

On October 20, 2011, the district court held that Sampson had proven his entitlement to relief on Claim IV of his amended §255 petition as to Juror C, concluding that he had satisfied all the elements of the test established by the Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), which governs claims of juror dishonesty during the voir dire process brought on direct appeal.  *United States v. Sampson*, 820 F. Supp. 2d 151, 156-202 (D. Mass. 2011).  The court therefore held that Sampson was entitled to a new penalty phase trial to determine whether the death penalty was justified.  *Id.* at 197.

The court did not formally enter its order, however, so that the parties would have the opportunity to inform the court how the case should proceed, including whether an immediate appeal was available.  *Id.* at 202; *see United States v. Sampson*,

-4-

820 F. Supp. 2d 249, 250-51 (D. Mass. 2011).  Thereafter, the parties notified the court of their differing opinions concerning the appealability of the court's grant of a new penalty phase trial.  [D.1233].

The government stated that the court's decision was a final, appealable order, and that it had obtained permission from the Solicitor General to appeal that decision when the court issued its formal order.  The government also stated that, to ensure appellate review, it had also obtained permission from the Solicitor General to move the district court to certify its decision granting a new penalty phase trial for interlocutory appeal under 28 U.S.C. §1292(b), and to petition for a writ of mandamus in this Court if an appeal were not obtainable under §§1291 or 1292(b).  Sampson argued, relying on *Andrews v. United States*, 373 U.S. 334 (1963), *United States v. Hammer*, 564 F.3d 628 3d Cir. 2009), and *United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006), that the court's order was not appealable until after a new penalty phase trial. Finally, the parties agreed that the court's decision to summarily dismiss other of Sampson's claims is not now appealable, and that Sampson's remaining undecided claims challenging the validity of his death sentence would be moot if a new penalty phase trial were conducted.

**D.    The District Court's Memorandum and Order Allowing the Government's Motion to Certify an Interlocutory Appeal Under 28 U.S.C. §1292(b).**

On May 10, 2012, the district court formally allowed Claim IV of Sampson's amended §2255 petition and vacated his death sentence, and also allowed the government's motion to certify an interlocutory appeal under §1292(b). May 10 Order at 33-34.

The court first noted the parties' disagreement concerning the appealability of its order granting a new penalty phase trial. *Id.* at 17. The court noted that Sampson relied on *Andrews*, in which the Supreme Court found that in a §2255 proceeding, a district court's order mandating a new sentencing was "interlocutory not final," and that the government did not have the right to appeal the order requiring resentencing until the resentencing had occurred. *Id.* at 16 (quoting *Andrews*, 373 U.S. at 337, 339-40). Moreover, the court noted, "[a]lthough *Andrews* was not a capital case and, therefore, did not involve a resentencing before a jury," both the Third and Fourth Circuits had concluded that an appellate court does not have jurisdiction over the government's appeal of a district court's order vacating a death sentence until after the defendant has been resentenced. *Id.* (citing *Hammer*, 564 F.3d at 634; *Stitt*, 459 F.3d at 485-86). The government, the court noted, took the position that the decision granting Sampson a new penalty phase trial was final and appealable as of right under

§1291 and that it intended to appeal the court's decision immediately to this Court, and therefore stayed proceedings until that appeal was resolved. *Id.* at 16-17.

The court then turned to the government's motion to certify an interlocutory appeal under §1292(b), noting that "*Andrews*, *Hammer*, and *Stitt* did not * * * address the possibility of interlocutory appeal pursuant to §1292(b)." *Id.* at 16. The court first stated that whether a §2255 proceeding is a "civil action" for purposes of §1292(b) "is a challenging question" and that "reasonable judges might differ on whether §1292(b) applies to the decision on the jury claim in this case." *Id.* at 21, 24. The court concluded, however, that it did not need to resolve that question:

> [T]he requirements of §1292(b) are satisfied and it is in the interest of justice to give the First Circuit the opportunity to decide the full range of issues raised by the government. Therefore, the court is not deciding whether or not §1292(b) applies to its decision on the jury claim, but is making the findings necessary to provide the First Circuit the opportunity to decide that issue, and others if it determines that it has jurisdiction.

*Id.* at 24-25.

The court noted, however, that, if Sampson was correct that §2255 proceedings are criminal rather than civil in nature, "a question could be raised regarding whether 18 U.S.C. §3731, concerning appeals by the government in criminal cases, applies to the instant case." *Id.* at 21 n.3. That was so, the court reasoned, because although the

Supreme Court had stated in *Andrews* that the Criminal Appeals Act did not apply in

a §2255 proceeding, "*Andrews* relied at least in part on the Court's understanding that

'[a]n action under 28 U.S.C. §2255 is a separate proceeding, independent of the

original, criminal case.'" *Id.* at 22 n.3 (quoting *Andrews*, 373 U.S. at 338).  That

understanding may have been eroded by the revision to the §2255 Rules, the court

observed, and although the *Andrews* Court also relied on the long-standing rule

against piecemeal appeals, "§3731 was amended after *Andrews* to increase the

government's opportunity to obtain review of certain non-final orders, and it expressly

states that its provisions 'shall be liberally construed to effectuate its purposes.'" *Id.*

(quoting 18 U.S.C. §3731).  The court stated that this Court may wish to consider the

issue, *id.*, along with the other jurisdictional issues presented by the government's

desire to obtain appellate review of the Court's grant of a new trial order.

The court next concluded that "the §1292(b) factors, viewed together, indicate

that it is permissible and appropriate that this court authorize an interlocutory appeal

of its decision on Sampson's jury claim." *Id.* at 25.  The decision on the jury claim

involves a "controlling question of law," the court explained, because "[i]f this court

is found to be incorrect in its holding that *McDonough* provides a third basis for

obtaining relief – distinct from actual or implied bias – or incorrect in some material

respect concerning its statement of the *McDonough* test, then its decision that a new

hearing to determine Sampson's sentence is required will be reversed or remanded." *Id.* at 27. There also was a "substantial ground for difference of opinion" as to that question, in view of the "lack of binding First Circuit authority concerning the meaning of *McDonough* and the confusion that is manifest in some decisions in other circuits * * *." *Id.* at 29. And an "immediate appeal from the [jury claim] order may materially advance the ultimate termination of the litigation" because, if the court's decision on the jury claim is reversed, a new penalty phase trial will not be necessary unless the court later finds that Sampson's unresolved issues are meritorious and require a new trial, and if the court's decision is affirmed, the issues concerning Sampson's unresolved claims will be moot. *Id.* at 29-30.

Finally, the court concluded that it would exercise its discretion to allow this Court to consider whether an interlocutory appeal of the jury claim decision is legally permissible and, if so, justified. *Id.* at 30-33. The court therefore allowed the motion to certify an interlocutory appeal as to the questions of: (1) whether *McDonough* requires proof of actual bias or implied bias – which the court did not find – to obtain relief; and, if not, (2) whether the court correctly stated the *McDonough* test in its Memorandum and Order on Jury Claim. *Id.* at 33-34. The court also stayed the case pending a resolution by this Court of the government's appeal under §1291, its request for certification under §1292(b), and its petition for a writ of mandamus. *Id.* at 34.

**E.    The Government's Notice of Appeal and Petition for Permission to Take an Interlocutory Appeal.**

On May 18, 2012, the government filed a notice of appeal from the district court's order granting Sampson a new penalty phase trial, which the government views as a final appealable order, and also petitioned this Court for permission to take an interlocutory appeal under §1292(b) (Appeal No. 12-8019). On May 25, 2012, the same day he moved to dismiss this appeal, Sampson filed an opposition to the government's request for certification in Appeal No. 12-8019, arguing that §1292(b) is inapplicable to proceedings under §2255. As noted, when it files its opening brief in this appeal (and hopefully, its brief in Appeal No. 12-8019), the government also intends to file a petition for a writ of mandamus, asking this Court to direct the district court to reinstate Sampson's death sentence.

## ARGUMENT

This Court should defer consideration of Sampson's motion to dismiss to a merits panel, which would allow the Court the benefit of full briefing and oral argument on questions that are of first impression and exceptional importance, and which would allow the Court to consider all the jurisdictional issues raised in the two appeals and the government's mandamus petition simultaneously. The question raised in Sampson's motion – whether the government's appeal from the district court's

order vacating Sampson's death sentence and granting him a new penalty phase trial is immediately appealable under 28 U.S.C. §1291 (or possibly under 18 U.S.C. §3731[2]) – and the related questions whether permission to take an interlocutory appeal under §1292(b) should be granted or whether mandamus relief is available in the circumstances of this case, are not only ones of first impression in this Court, but they are ones of exceptional importance. As the district court stated in granting the government's motion to certify an interlocutory appeal under §1292(b):

> The instant case is truly an "exceptional" case. It is the only case in the First Circuit in which a person has been sentenced to be executed under the Federal Death Penalty Act. A resentencing hearing in this case will be far more complicated and consume far more resources than a resentencing in a non-capital case such as *Andrews*. It will also be agonizing for the families of the victims. If meritorious, an immediate appeal of the jury claim decision may keep these costs from being incurred.

May 10 Order at 30-31. These questions should not be decided without the benefit of full briefing and oral argument, nor should they be decided in a piecemeal fashion. The government therefore requests that this Court defer consideration of the arguments raised in Sampson's motion to dismiss to a merits panel.

---

[2] The government is currently reviewing whether, in addition to arguing that the district court's jury claim order is immediately appealable under §1291, it will argue in the alternative that it is immediately appealable under §3731.

Indeed, the jurisdictional question raised in Sampson's motion is the antithesis of the kind of question that should be decided without the benefit of full briefing and oral argument. *Andrews* was not a capital case, and although the Third and Fourth Circuits concluded in *Hammer* and *Stitt* have concluded that such an order is a non-final interlocutory order under *Andrews*, a careful examination of the distinct features of a federal death penalty case demonstrate that a new penalty phase trial qualifies as a granting of a new trial under §1291, rather than a simple resentencing proceeding.[3] Unlike a non-capital sentencing proceeding, a penalty phase proceeding in a capital case has "the hallmarks of the trial on guilt or innocence." *Sattazahn v. Pennsylvania*, 537 U.S. 101, 106 (2003) (citation and internal quotation marks omitted). Among other things, a defendant:

---

[3] Section 2255(d) provides that "[a]n appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment or application for a writ of habeas corpus." Several courts of appeals have held that an order granting a new trial under §2255 is final and appealable, and that *Andrews* does not bar a government appeal in such a situation. *See, e.g., United States v. Gordon*, 156 F.3d 376, 378 (2d Cir. 1998) (per curiam); *United States v. Blackwell*, 127 F.3d 947, 950-51 (10th Cir.1997); *United States v. Allen*, 613 F.2d 1248, 1250-51 (3d Cir.1980); *United States v. Dunham Concrete Prods. Inc.*, 501 F.2d 80, 81-82 (5th Cir.1974). These courts have reasoned that an order granting a new trial under §2255 is one of the four specific orders specified in §2255, while an order granting a new sentencing hearing is not, inasmuch as the latter order does not "resentence" the petitioner. *See Gordon*, 156 F.3d at 378 (adopting reasoning of *Allen*, 613 F.2d at 1250-51). Thus, these courts have held, a §2255 court loses jurisdiction over the case once it grants a new trial, making the decision immediately appealable. *Id.* at 1251.

- has a right to have a penalty phase trial conducted before a jury, *see* 18 U.S.C. §3593(b)(3); *Ring v. Arizona*, 536 U.S. 584, 609 (2002);

- the government must prove to the jury beyond a reasonable doubt the existence of statutorily-defined facts that establish the defendant's eligibility for capital punishment, *see* 18 U.S.C. §§3591(a)(2), 3592(c), 3593(b)(2)(D) & (c); *Ring,* 536 U.S. at 609; and

- a jury finding that the government failed to prove a fact necessary to render a defendant statutorily eligible for a death sentence is a double jeopardy "acquittal" that bars a second capital sentencing hearing, *see Sattazahn*, 537 U.S. at 106-08.

In addition, while a district court has considerable discretion in imposing a sentence in non-capital cases within a statutory range, *see, e.g., Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *United States v. Booker*, 543 U.S. 220, 245 (2005), the court must impose a sentence of death if the jury unanimously concludes that imposition of a death sentence is justified, *see* 18 U.S.C. §§3593(e), 3594.  A new capital penalty phase, like a new trial as to guilt or innocence, also is outside the scope of a §2255 court's authority, and can only be carried out in the underlying criminal case.  Thus, a district court that orders resentencing in a capital case has exhausted its jurisdiction as a §2255 court, just as a §2255 court loses jurisdiction once it orders a new trial as to guilt or innocence.

-13-

In the government's view, these are only some of the characteristics of a new penalty phase trial in a capital case that distinguish it from a resentencing proceeding in a non-capital case, and demonstrate that an order granting a new penalty phase proceeding in a capital case is appealable under §2255 as an order granting a new trial. The Court should have the benefit of full briefing and oral argument on this question before reaching a judgment as to whether an immediate appeal under §1291, or possibly §3731 as suggested by the district court, is available.

The Court also should have the benefit of full briefing and oral argument on the related questions whether, if an immediate appeal is not available, permission to take an interlocutory appeal under §1292(b) should be granted or whether relief pursuant to this Court's mandamus authority is appropriate, so that these issues are not decided in a piecemeal fashion. If the Court were to determine that an immediate appeal were available under §1291 (or possibly §3731), it would not need to reach the other jurisdictional questions raised in these appeals and the government's mandamus petition. If the Court were to determine that an immediate appeal is not available, however, it would need to decide whether an interlocutory appeal under §1292(b) is available, or whether relief under this Court's mandamus authority is appropriate. As with the question whether an immediate appeal is available, those questions are also

ones of exceptional importance and first impression in this circuit, and likewise are deserving of full briefing, oral argument, and consideration by a merits panel.

If this Court agrees, and also grants the government's motion to consolidate this appeal and Appeal No. 12-8019, the government proposes that it would file one brief addressing the merits as well as all of the jurisdictional questions presented in this case, including whether district court's order granting Sampson a new penalty phase trial is sufficiently final to constitute a final judgment allowing appeal as a matter of right and, if not, the related questions whether there and, if not, whether relief under §1292(b) or pursuant to the Court's mandamus authority is appropriate.

## CONCLUSION

For the foregoing reasons, the Court should defer consideration of Sampson's motion to dismiss to a merits panel.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

 /s/ Mark T. Quinlivan
MARK T. QUINLIVAN
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Mark T. Quinlivan, AUSA, certify that on June 7, 2012, I electronically served a copy of the foregoing document on the following registered participants of the CM/ECF system:

William E. McDaniels
Jennifer G. Wicht
Thomas Windom
Williams & Connolly, LLP
725 Twelfth Street, N.W
Washington, D.C 20005

Susan Katherine Marcus
3 Fort Mason
San Francisco, CA 94123

J. Martin Richey
Elizabeth L. Prevett
Office of the Federal Defender
51 Sleeper Street, Fifth Floor
Boston, MA 02210

 */s/ Mark T. Quinlivan*
MARK T. QUINLIVAN

No.  12-1643

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

## GARY LEE SAMPSON,
**Petitioner-Appellee**

**v.**

## UNITED STATES OF AMERICA,
**Respondent-Appellant**

_____

## Attachments

_____

1.    May 10, 2012 Memorandum and Order . . . . . . . . . . . . . . . . . . . . . . G.Add.1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA          )
                                  )
       v.                         )          Cr. No. 01-10384-MLW
                                  )
GARY LEE SAMPSON                  )


MEMORANDUM AND ORDER


WOLF, D.J.                                        May 10, 2012

I.   SUMMARY

       In December, 2003, a jury unanimously found that defendant

Gary Sampson should be sentenced to death for the two carjackings

resulting in death to which he had pled guilty.  Under the Federal

Death Penalty Act, if even one juror had found that the death

penalty was not justified, Sampson could not be executed.  After

denying Sampson's motion for a new sentencing hearing, in January,

2004, the court sentenced Sampson to be executed.  The First

Circuit denied Sampson's appeal and the Supreme Court declined to

review his case.

       Sampson subsequently timely exercised his right to seek a new

sentencing hearing in this 28 U.S.C. §2255 proceeding.  He alleged,

among other things, that his constitutional right to an impartial

jury had been violated.  After substantial briefing and three

evidentiary hearings, this court found that Sampson's contention

was correct.  See United States v. Sampson, 820 F. Supp. 2d 151 (D.

Mass. 2011) (Memorandum and Order on Jury Claim).  In essence, the

court concluded that during the jury selection process a juror had

**G.Add.1**

persistently committed perjury concerning important questions relating to her ability to be impartial in deciding whether Sampson should be executed, and if she had answered those questions honestly and accurately, she would have been excused for cause. Therefore, the court found that pursuant to the Supreme Court's decision in <u>McDonough Power Equipment, Inc. v. Greenwood</u>, 464 U.S. 548, 554 (1984), Sampson's death sentence must be vacated and a second hearing to determine his sentence must be conducted.

Sampson asserts that, as the Third and Fourth Circuits have found, an order in a §2255 proceeding requiring a new hearing to determine whether the death penalty is justified is not a final order and, therefore, is not appealable until after that hearing is concluded. See <u>United States v. Hammer</u>, 564 F.3d 628, 632-36 (3rd Cir. 2006); <u>United States v. Stitt</u>, 459 F.3d 483, 484-86 (4th Cir. 2006). The government disagrees and intends to seek immediate review by the First Circuit of the jury claim decision as a final order pursuant to 28 U.S.C. §1291.

The government also asks that this court certify questions concerning its decision for possible immediate review under 28 U.S.C. §1292(b), which authorizes interlocutory appeals of orders in civil cases in limited circumstances. Sampson contends that the instant §2255 proceeding is not a civil case eligible for interlocutory appeal under §1292(b) and, in any event, that the standards for certification under §1292(b) have not been met.

2

**G.Add.2**

As explained in this Memorandum, this court is not required to decide whether this §2255 proceeding is a civil case within the meaning of §1292(b) and has not done so.  However, in the unique circumstances of this case, the court finds that if §1292(b) applies, its requirements are satisfied and that the court should exercise its discretion to allow the First Circuit to consider the full range of issues that the government wishes to present.

Among other things, a second hearing to determine whether Sampson should live or die will be lengthy, expensive, and anguishing for the families of Sampson's victims.  It is, therefore, appropriate to give the First Circuit the opportunity to decide whether the decision that a second sentencing hearing is legally required is now appealable; if it is, whether the First Circuit wishes to exercise its discretion to decide the merits of the government's claims now; and, if it does, whether this court correctly stated the <u>McDonough</u> test in finding that Sampson's death sentence must be vacated and a second sentencing hearing must be conducted.

Accordingly, the two questions defined in §IV of this Memorandum and Order are being certified for possible interlocutory appeal pursuant to 28 U.S.C. §1292(b) and proceedings before this court are being stayed until the First Circuit resolves the government's appeal.

**G.Add.3**

II.  HISTORY OF THE CASE

In October, 2001, Sampson was charged with two counts of carjacking resulting in the deaths of Philip McCloskey and Jonathan Rizzo.  The government exercised its discretion to seek the death penalty.  Sampson pled guilty to the charges against him. Nevertheless, he was entitled to have a jury decide whether he should be sentenced to death.

In 2003, hundreds of potential jurors answered, in writing and under oath, seventy-seven questions designed to elicit information about whether they could be impartial and decide whether Sampson should be executed based solely on the evidence presented in court. About 140 potential jurors not disqualified based on their written responses were individually questioned over fifteen days by the court and the parties for this purpose.  Twelve jurors, including one who has been publicly identified as "C," were empaneled, with six alternates.  Two of the original jurors were excused during trial when it was discovered that they had not answered voir dire questions truthfully.

The jury heard evidence for about six weeks.  It then unanimously found that the death penalty was justified. Accordingly, in January, 2004, the court sentenced Sampson to be executed.  See United States v. Sampson, 300 F. Supp. 2d 278, 284 (D. Mass. 2004); United States v. Sampson, 300 F. Supp. 2d 275 (D. Mass. 2004).

**G.Add.4**

The First Circuit affirmed the death sentence on May 7, 2007. See United States v. Sampson, 486 F.3d 13, 52 (1st Cir.), reh'g and reh'g on banc denied, 497 F.3d 55 (1st Cir. 2007). On May 12, 2008, the Supreme Court denied Sampson's petition for a writ of certiorari. See Sampson v. United States, 553 U.S. 1035 (2008).

On May 11, 2009, Sampson filed a Motion for a New Trial and to Vacate, Set Aside, and Correct Conviction and Death Sentence Made Pursuant to 28 U.S.C. §2255 and/or Rule 33 of the Federal Rules of Criminal Procedure, seeking relief from his conviction and sentence. A First Amended Motion under §2255 and Rule 33 was filed on March 29, 2010 (the "Motion"). The 250-page Motion raised eight distinct claims for relief (referred to here and in the October 20, 2011 Memorandum and Order on Summary Dismissal as Claims III-X), several of which had multiple subclaims. The Motion included claims that Sampson's counsel had been ineffective in their advice to Sampson about his guilty plea, in their investigation of mitigating evidence, and during the sentencing hearing; a claim that the inaccurate answers of three jurors during voir dire deprived Sampson of his constitutional right to an impartial jury; and a claim that Sampson cannot constitutionally be executed because he is severely mentally impaired, as well as several other claims. The government requested summary dismissal of all of Sampson's claims.

The court received hundreds of pages of briefing and held

**G.Add.5**

three days of hearings on the request for summary dismissal in August and September, 2010. In addition, after concluding that Sampson's claim that he was deprived of his right to an impartial jury (Claim IV) could not be summarily dismissed, the court held an evidentiary hearing on November 18, 2010, at which three jurors implicated in Sampson's claim testified about their answers during the jury selection process. One of these jurors, C, testified further at evidentiary hearings held on March 18, 2011, and August 8, 2011.

On October 20, 2011, the court issued the Memorandum and Order on Jury Claim. See Sampson, 820 F. Supp. 2d 151. The court held that Sampson was entitled to a new hearing to determine whether he should be sentenced to death because repeated perjury by C during jury selection deprived the court of important information that would have prompted it to excuse her for cause and, therefore, Sampson had been deprived of his Sixth Amendment right to have the question of whether he would live or die decided by twelve impartial jurors – jurors "'capable and willing to decide the case solely on the evidence before [them].'" Id. at 159, 188 (quoting McDonough, 464 U.S. at 554).

In summarizing some of its extensive factual findings, the court wrote that:

> [A]s explained in detail in this Memorandum, the court
> . . . finds that C intentionally and repeatedly answered
> a series of questions dishonestly in an effort to avoid
> disclosing or discussing painful experiences she had

endured concerning her daughter J and her former husband P. Her dishonesty began when she filled out her questionnaire in September, 2003, continued when she returned for individual voir dire in October, 2003, and was repeated when she was required to testify in these §2255 proceedings.

More specifically, C intentionally lied during the jury selection process in response to questions that should have elicited the facts that: in 2000 her husband P had a rifle or shotgun and threatened to shoot her; C had feared that P would kill her; as a result, C obtained an Abuse Prevention Order against P; P was later arrested in her presence and prosecuted for violating that Order; C's marriage to P ended because of his substance abuse; J also had a drug problem; and J's drug abuse resulted in her serving time in prison, where C visited her. As information concerning these experiences involving J and P emerged slowly in the course of three hearings in these §2255 proceedings, C repeatedly characterized each of those experiences as "horrible" and a "nightmare." She often cried when required to think about these matters. She was frequently unable to discuss them candidly or coherently.

Sampson, 820 F. Supp. 2d at 158.

The court also analyzed the Supreme Court's decision in McDonough and subsequent cases applying that decision. See id. at 170-181. It summarized as follows the holding of McDonough and its understanding of what Sampson had to prove in order to show that C's perjury entitled him to a new trial pursuant to McDonough:

In McDonough, the Supreme Court described the circumstances in which inaccurate responses to voir dire questions would deny a party his right to an impartial jury and, therefore, require a new trial. See 464 U.S. at 556. It stated:

We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a

7

**G.Add.7**

> valid basis for a challenge for cause. The
> motives for concealing information may vary,
> but only those reasons that affect a juror's
> impartiality can truly be said to affect the
> fairness of a trial.

Id.

> Accordingly . . . to obtain relief under McDonough,
> Sampson was required to prove by a preponderance of the
> evidence that: (1) C was asked a question during voir
> dire that should have elicited particular information;
> (2) the question was material; (3) C's response was
> dishonest, meaning deliberately false, rather than the
> result of a good faith misunderstanding or mistake; (4)
> her motive for answering dishonestly relates to her
> ability to decide the case solely on the evidence and,
> therefore, calls her impartiality into question; and (5)
> the concealed information, when considered along with the
> motive for concealment, the manner of its discovery, and
> C's demeanor when required to discuss J and P, would have
> required or resulted in her excusal for cause for either
> actual bias, implied bias, or what the Second Circuit
> characterizes as "inferable bias."

Sampson, 820 F. Supp. 2d at 158-59.

This formulation of the McDonough test does not require proof

of either of the two types of bias that were recognized before

McDonough – "actual bias," meaning bias in fact, or "implied bias,"

meaning bias which is presumed as a matter of law. See id. at 162-

64, 169-70, 174-75. Instead, the court concluded that it is

sufficient to obtain relief under McDonough to prove that a juror

intentionally provided a false answer to a material question, the

motive for the juror's dishonesty related to the juror's ability to

be impartial, and discovery of the deliberately concealed

information before trial would have actually resulted in the

juror's excusal for cause based on a third type of bias that the

8

**G.Add.8**

Second Circuit has characterized as "inferable" or "inferred" bias. See id. at 165-66, 180-81 (quoting United States v. Torres, 128 F.3d 38, 46-47 (2d Cir. 1997) and United States v. Greer, 285 F.3d 158, 171 (2d Cir. 2000)).  "'Inferable' or 'inferred' bias exists 'when a juror discloses a fact that bespeaks a risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make mandatory a presumption of bias.'"  Sampson, 820 F. Supp. 2d at 165 (quoting Greer, 285 F.3d at 171 (quoting Torres, 128 F.3d at 47)).  This court found that the McDonough test would be met if Sampson proved inferable bias that would have provided the court the discretion to excuse C for cause prior to trial, and that the court would in fact have done so.  See Sampson, 820 F. Supp. 2d at 159, 175 (citing Dall v. Coffin, 970 F.2d 964, 970 (1st Cir. 1992)).

As fully explained in the Memorandum and Order on Jury Claim, the McDonough test recognizes the unique connection between deliberately dishonest answers and the likely partiality of a potential juror.  Sampson, 820 F. Supp. 2d at 171.  McDonough creates a special test that applies when it is proven that a potential juror has deliberately answered a material question falsely.  "If the McDonough test required a showing of actual or implied bias in addition to a showing of dishonesty, the test Justice Rehnquist stated for the majority would be superfluous."

9

**G.Add.9**

<u>Sampson</u>, 820 F. Supp. 2d at 176.  The court noted that in <u>Amirault</u> <u>v. Fair</u>, 968 F.3d 1404, 1405-06 & n.2 (1st Cir. 1992), the First Circuit held that if relief under <u>McDonough</u> is unavailable, a court must still consider whether a juror has been shown to be actually or impliedly biased.  <u>Sampson</u>, 820 F. Supp. 2d at 176.  In doing so, the First Circuit implicitly recognized that there are three distinct tests for determining whether a party is entitled to a new trial because of juror bias  – actual bias, implied bias, and the <u>McDonough</u> test.   See  <u>id.</u>   As  the  court  also  explained,  its conclusion  that  actual  and  implied  bias  are  not  required  is supported by <u>Dall</u>, 970 F.2d at 970, in which the First Circuit stated that relief under <u>McDonough</u> would be available where correct responses  to  the  voir  dire  questions  would  have  "required  or resulted in" the juror's disqualification for cause.  <u>Id.</u>  This language  is  significant  because  while  actual  and  implied  bias <u>require</u> a juror's disqualification, inferable bias does not require disqualification, but provides the judge the discretion to excuse a juror for cause.  See <u>id.</u> at 176-77.

The court applied the facts it had found to this understanding of <u>McDonough</u> and summarized its analysis as follows:

> The court finds that Sampson has satisfied his burden of proving every element of the <u>McDonough</u> test. C did not falsely answer any question as part of a conscious effort to become a juror and punish Sampson for the abuse inflicted on her by P. However, it has been proven that during the jury selection process C dishonestly answered all  material  questions  that  should  have  revealed important events concerning J and P because C was deeply

10

**G.Add.10**

ashamed, and became distraught when required to think about them. She repeatedly lied because the events concerning J and P were too painful for her to disclose or discuss. C's decision to lie rather than reveal these events demonstrates the tremendous emotional impact that they had on C at the time of the voir dire and calls her impartiality into question.

The matters about which C repeatedly lied under oath were comparable to matters presented by the evidence in Sampson's case. C dishonestly did not disclose prior to the empanelment that, among other things, she had been threatened with being shot and killed, had ended a marriage due to her husband's substance abuse, and felt deeply ashamed of her daughter's criminal activity, drug abuse, and incarceration. If these matters had been revealed, the court would have found that there was a high risk that after being exposed to the evidence at trial C's decision on whether Sampson should be executed would be influenced by her own life experiences and, therefore, a high risk that she would be substantially impaired in her ability to decide whether Sampson should be executed based solely on the evidence. Like other potential jurors, C would have been excused for cause solely for that reason. The decision to excuse her for cause would have been reinforced by her demonstrated dishonesty, which was alone a reason that other potential jurors were excused for cause.

As the requirements of <u>McDonough</u> have been satisfied, the court is compelled to vacate Sampson's death sentence and grant him a new trial to determine his sentence. In essence, despite dedicated efforts by the parties and the court to assure that the trial would be fair and the verdict final, it has now been proven that perjury by a juror resulted in a violation of Sampson's constitutional right to have the issue of whether he should live or die decided by twelve women and men who were each capable of deciding that most consequential question impartially.

<u>Id.</u> at 159.[1]

---

[1] The court also found that Sampson was not entitled to a new sentencing hearing because two other jurors inadvertently provided inaccurate answers during the voir dire process. <u>Id.</u> at 198-99, 201. In addition, the court concluded that Sampson was not entitled to a new sentencing proceeding because the

11

**G.Add.11**

In his submissions relating to his jury claim, Sampson asserted that an order requiring a new hearing to determine whether the death penalty is justified would not be appealable until after that hearing was concluded. See Hammer, 564 F.3d at 632-36; Stitt, 459 F.3d at 484-86; see also Andrews v. United States, 373 U.S. 334, 339-40 (1963). The government had not addressed this issue. Therefore, the court deferred entering an order implementing its decision on the jury claim until the parties had an opportunity to confer and brief the issue of whether that decision is immediately appealable. See United States v. Sampson, 820 F. Supp. 2d 249 (D. Mass. 2011) (Memorandum and Procedural Order).

In a separate order also issued on October 20, 2011, the court decided that the government was entitled to summary dismissal of many, but not all, of Sampson's claims that did not relate to the jury. See United States v. Sampson, 820 F. Supp. 2d 202, 213 (D. Mass. 2011) (Memorandum and Order on Summary Dismissal). The court summarized the surviving non-jury claims as follows:

> [Certain] claims cannot be conclusively resolved based on the motion and the record before the court. For example, Sampson alleges that his trial counsel failed to give his medical experts certain medical records that, if considered, would have led to additional investigation and, in turn, would have led to substantial additional evidence of brain abnormality, an important mitigating factor to be considered by the sentencing jury in a capital case (Claim III(C)). See, e.g., Porter v.

inaccurate responses by C and the two other jurors deprived him of his right to exercise his peremptory challenges on a properly informed basis. Id. at 201-02.

**G.Add.12**

McCollum, 130 S.Ct. 447, 454 (2009) (per curiam). On the present record, the court cannot conclude that Sampson's characterization of these events is inaccurate. Nor can it conclude that Sampson was not prejudiced at trial by the absence of this information. Similarly, the court cannot conclude that Sampson is not entitled to relief based on his claims that his counsel were ineffective because their investigation and presentation of mitigating evidence was inadequate in other respects, because their investigation and impeachment of a government witness was inadequate, because they did not present evidence to the jury that Sampson's demeanor in court was caused by medication, or because they did not raise a question with the court about Sampson's competency (Claims III(B),(D)-(F), (I)-(L) and (N)). Nor can the court conclude that Sampson is not entitled to relief based on the cumulative effect of some or all of these alleged errors (Claim X).

Id. In addition, the court deferred decision on Sampson's claim that he is so severely brain damaged that his execution would be unconstitutional. See id. at 249. Pursuant to the Memorandum and Order on Summary Dismissal, all of the claims which challenged the validity of Sampson's guilty plea are subject to summary dismissal.[2]

It was not clear to the court whether the claims that survived summary dismissal would be moot if a new hearing to determine Sampson's sentence was conducted. Nor was it clear whether the court should decide whether to issue a certificate of appealability

---

[2] In its Memorandum and Order on Summary Dismissal, the court addressed the possibility that Sampson's claim of ineffectiveness of counsel for failure to raise a question of competency could relate to the validity of the plea, not merely the validity of the sentence. Id. at 249. However, the parties have since communicated to the court their shared understanding that this claim challenged only the validity of the sentence, not the plea. See Feb. 1, 2012 Joint Report at 3-4.

13

**G.Add.13**

on any of the dismissed claims before a new sentencing proceeding was conducted, and whether Sampson would request a stay to pursue an appeal concerning any of the dismissed claims. See Sampson, 820 F. Supp. 2d at 250-51 (Memorandum and Procedural Order). The court ordered the parties to confer and address these issues too. See id.

On February 1, 2012, the parties responded in a joint report. The report notified the court of the government's intention to seek review of the court's decision on the jury claim as soon as an order was entered requiring a new sentencing proceeding, and the defendant's position that no appeal could now be taken. More specifically, the government asserted that an order implementing the court's decision on the jury claim and requiring a new sentencing hearing would be final and automatically appealable under 28 U.S.C. §1291, which gives courts of appeals jurisdiction over appeals "from all final decisions of the district courts of the United States." The government stated that it would pursue such an appeal as soon as the court entered an order directing that a new sentencing hearing be conducted. However, acknowledging the decisions holding that an order requiring a resentencing in a §2255 proceeding is interlocutory rather than final, the government also stated its intention to seek certification from this court for an interlocutory appeal under 28 U.S.C. §1292(b), which permits such appeals in civil cases that meet certain standards. Sampson

14

**G.Add.14**

reported his position that an order granting the defendant a new sentencing hearing would not now be appealable under either §1291 or §1292(b).

Both parties agreed that a stay of proceedings before this court pending resolution of any appeal by the government would be appropriate.  They proposed a briefing schedule relating to the government's request that this court make the findings necessary to authorize an interlocutory appeal under §1292(b).

The parties also reported their agreement that the decision to dismiss summarily certain of Sampson's claims would not now be appealable, and that Sampson's remaining claims challenging the validity of his death sentence would be moot if a new hearing to determine his sentence were conducted.

The court adopted the parties' proposed briefing schedule and stayed the remainder of the case.  The parties have now submitted memoranda addressing the questions: (1) whether an interlocutory appeal of the court's decision on the jury claim is authorized by §1292(b); and (2) if so, whether the requirements for an interlocutory appeal under §1292(b) have been met.

III. ANALYSIS

The parties dispute whether it is permissible to use §1292(b) to obtain interlocutory appeal of an order vacating a death sentence and ordering a new sentencing hearing in a §2255 proceeding.  Arguing that the government cannot now appeal this

court's grant of a new sentencing hearing, Sampson relies on Andrews, in which the Supreme Court found that in a §2255 proceeding, a district court's order mandating a new sentencing was "interlocutory not final," and that it was "obvious that there could be no final disposition of the §2255 proceedings until the petitioners were resentenced."  373 U.S. at 339-40.  In Andrews, the Court concluded that the government did not have the right to appeal the order requiring resentencing, and the Court of Appeals lacked jurisdiction to review it, until the resentencing had occurred.  Id. at 337, 339.  Although Andrews was not a capital case and, therefore, did not involve a resentencing before a jury, two circuits have concluded that an appellate court does not have jurisdiction over the government's appeal of a district court's order vacating a death sentence but denying relief as to all claims concerning guilt.  See Hammer, 564 F.3d at 634 (3d Cir.); Stitt, 459 F.3d at 485-86 (4th Cir.).  Applying Andrews, the Third and Fourth Circuits held that a §2255 proceeding is not final until after a new sentencing hearing occurs and, therefore, an order requiring such a hearing is not subject to appeal.  See Hammer, 564 F.3d at 634; Stitt, 459 F.3d at 485-86.  Andrews, Hammer, and Stitt did not, however, address the possibility of interlocutory appeal pursuant to §1292(b).

Although recognizing that the Supreme Court's decision in Andrews has been interpreted by the Third and Fourth Circuits to

16

**G.Add.16**

mean that an order requiring a new sentencing hearing in a capital case is not final or appealable prior to the resentencing, the government intends to appeal this court's decision immediately to the First Circuit on the theory that the decision is final and appealable as of right under §1291. As requested by the parties, this court will stay the proceedings until that appeal is resolved. Therefore, an appeal to the First Circuit will be taken and there will be an associated delay in the proceedings before this court.

The issue now being decided is whether this court should make the findings necessary to allow the government to present to the First Circuit the additional questions of whether its decision on the jury claim is eligible for interlocutory appeal under §1292(b); if so, whether the requirements of §1292(b) have been met; and, if so, whether the First Circuit should exercise its discretion to decide the merits of the jury claim decision before a new sentencing hearing is conducted.

Section 1292 provides courts of appeals with jurisdiction to review certain interlocutory orders, including orders granting or refusing to grant injunctions, and orders appointing receivers. See 28 U.S.C. §1292(a). As relevant here, §1292 also provides courts of appeals with the discretion to permit interlocutory appeals in certain other circumstances, with the agreement of the district court. Specifically, §1292(b) states that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall

17

**G.Add.17**

be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order.

(Emphasis added).

By its terms, §1292(b) applies only to civil cases.  To obtain certification from the district court, the moving party must show that the matter involves: (1) a "controlling question of law;" (2) "as to which there is substantial ground for difference of opinion;" and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." §1292(b); see Caraballo-Seda v. Municipality Of Hormigueros, 395 F.3d 7, 9 (1st Cir. 2005); see also Bank of New York v. Hoyt, 108 F.R.D. 184, 190 (D.R.I. 1985) (Selya, J.) ("[t]he movant has the obligation of showing that the §1292(b) criteria are met" (citing Fisons Ltd. v. United States, 458 F.2d 1241, 1248 (7th Cir.), cert. denied, 405 U.S. 1041 (1972))).  If it makes these findings in a civil case, the district court is permitted, but not required, to authorize an interlocutory appeal.  See Swint v. Chambers County Comm'n, 514 U.S. 35, 47 (1995) ("Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals."); Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 145-46 (E.D.N.Y. 1999) (Weinstein, J.).

18

**G.Add.18**

Therefore, "[d]istrict courts . . . have independent and 'unreviewable' authority to deny certification even where the three statutory criteria are met." Nat'l Asbestos, 71 F. Supp. 2d at 146 (quoting Executive Software N. Am., Inc. v. U.S. Dist. Court, 24 F.3d 1545, 1550 (9th Cir. 1994)); see also Hoyt, 108 F.R.D. at 190 ("As the legislative history indicates, 'the appeal is discretionary rather than a matter of right. It is discretionary in the first instance with the district judge.'" (quoting S. Rep. 2434, 85th Cong., 2d Sess., 1958, reprinted in 1958 U.S. Code Cong. & Admin. News 5255, 5257)).

If this court makes the necessary findings and certifies its decision on Sampson's jury claim for interlocutory appeal, the First Circuit may have to decide three questions. First, it will have to resolve the dispute as to whether a §2255 proceeding is a "civil action" from which an interlocutory appeal can be taken under §1292(b). See Francisco Sanchez v. Esso Standard Oil Co., 572 F.3d 1, 9 (1st Cir. 2009) (court of appeals has duty to inquire into its own jurisdiction). If the First Circuit finds that §1292(b) applies, it will have to decide independently whether the three §1292(b) criteria are satisfied. See Caraballo-Seda, 395 F.3d at 9 (analyzing §1292(b) requirements and concluding two were not satisfied); In re Heddendorf, 263 F.2d 887, 889 (1st Cir. 1959) (in evaluating whether §1292(b) requirements are satisfied, court of appeals should "weigh the asserted need for the proposed

19

interlocutory appeal with the policy in the ordinary case of discouraging 'piecemeal' appeals"); White v. Nix, 43 F.3d 374, 376-78 (8th Cir. 1994).  The issue of whether §1292(b) applies is a pure matter of law and will determine the First Circuit's jurisdiction if the jury claim decision is not appealable under §1291 or some other statutory provision.  Whether the requirements of §1292(b) have been met has at times been characterized as jurisdictional as well.  See Couch v. Telescope, Inc., 611 F.3d 629, 633 (9th Cir. 2010) ("the requirements of §1292(b) are jurisdictional" (internal quotations omitted)).  If §1292(b) applies and its requirements are met, the First Circuit will have "to decide whether, in the exercise of discretion granted . . . by the statute, [it] want[s] to accept jurisdiction." In re Cement Antitrust Litig., 673 F.2d 1020, 1026 (9th Cir. 1982), aff'd, 459 U.S. 1990 (1983).

Therefore, this court is, in effect, a gatekeeper.  If it declines to make the findings necessary to permit interlocutory review under §1292(b), the First Circuit will only decide if the jury claim decision can be appealed as a final order under §1291. See Rivera-Jimenez v. Pierluisi, 362 F.3d 87, 92 (1st Cir. 2004). If the court does make the required findings, the First Circuit will have the opportunity to decide the full range of §1292(b) issues presented to this court.  For the reasons described below, in the unique circumstances of this case, it is appropriate to

20

**G.Add.20**

provide the First Circuit that opportunity.

Whether a §2255 proceeding is a "civil action" for the purpose of §1292(b) is a challenging question.  The Supreme Court has recently noted that in some contexts "there has been some confusion over whether §2255 proceedings are civil or criminal in nature." Wall v. Kholi, 131 S.Ct. 1278, 1289 n.7 (2011).  However, the Court did not clarify that question.  See id.

Sampson asserts that the decision on the jury claim is not an order in a "civil action" eligible for a possible interlocutory appeal under §1292(b).  He argues that the Advisory Committee Notes to the Rules Governing Section 2255 Proceedings for the United States District Courts (the "Notes") characterize proceedings under §2255 as a "continuation of the criminal case."  See Note to Rule 1 ("a motion under §2255 is a further step in the movant's criminal case and not a separate civil action"); Note to Rule 11 ("a §2255 action is a continuation of the criminal case").[3]  Sampson observes

---

[3] If Sampson is correct in his contention that §2255 proceedings are criminal rather than civil, a question could be raised regarding whether 18 U.S.C. §3731, concerning appeals by the government in criminal cases, applies to the instant case. Section 3731 permits appeals by the government in criminal cases for orders "granting a new trial after verdict or judgment."  In addressing a decision to grant a new sentencing hearing in a capital case, the Sixth Circuit has held that the order would not have been appealable if entered in a §2255 proceeding, but was appealable under §3731 because the order granted a motion brought under Rule 33(b)(2) of the Federal Rules of Criminal Procedure. See United States v. Lawrence, 555 F.3d 254, 258-60 (6th Cir. 2009).

Rule 33(b)(1) requires that "[a]ny motion for a new trial

that there is a strong policy against piecemeal appeals.  See Abney v. United States, 431 U.S. 651, 656 (1977) ("[S]ince appeals of right have been authorized by Congress in criminal cases, as in civil cases, there has been a firm congressional policy against interlocutory or 'piecemeal' appeals and courts have consistently given effect to that policy.").  Section 2255(d) states only that "[a]n appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for write of habeas corpus."; see also 28 U.S.C. §2253(a) ("In a habeas

---

grounded on newly discovered evidence must be filed within 3 years after the verdict or finding of guilty."  Sampson pled guilty in 2003.  The Motion was not filed in this case until 2009.  Therefore, in contrast to Lawrence, it does not appear that a timely Rule 33 motion has been presented to this court.

Nevertheless, §3731 may deserve some consideration.  This court recognizes that in Andrews the Supreme Court stated that the Criminal Appeals Act "has no applicability" to a §2255 proceeding.  373 U.S. at 338.  However, Andrews relied at least in part on the Court's understanding that "[a]n action under 28 U.S.C. §2255 is a separate proceeding, independent of the original criminal case."  Id.  This reasoning may have been eroded by the revision of the §2255 Rules which now provide that "a motion under §2255 is a further step in the movant's criminal case and not a separate civil action."  Note to Rule 1. Furthermore, Andrews relied on a "long-established rule against piecemeal appeals," 383 U.S. at 340, but §3731 was amended after Andrews to increase the government's opportunity to obtain review of certain non-final orders, and it expressly states that its provisions "shall be liberally construed to effectuate its purposes."  §3731; see Lawrence, 555 F.3d at 258; see also United States v. Wilson, 420 U.S. 332, 337 (1975); United States v. Kane, 646 F.2d 4, 7 (1st Cir. 1981).

The government has not argued that the jury claim decision is appealable pursuant to §3731, Sampson has not addressed the question, and this court is not deciding it.  However, the First Circuit may wish to consider the issue.

22

G.Add.22

corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.").  Sampson contends, therefore, that §2255 occupies the field and makes no provision for extraordinary, interlocutory appeals.  Sampson asserts that in Hammer and Stitt, the government implicitly recognized this by not contending that §1292(b) was a vehicle for obtaining review.  Indeed, it appears that the government has never made such a claim in any §2255 case.

However, there are factors that favor the government's position that decisions in §2255 proceedings are eligible for interlocutory review under §1292(b).  Arguably, §2255 proceedings are hybrids, which in some contexts should be considered criminal actions and in other contexts should be considered civil actions. In certain contexts the First Circuit has characterized §2255 proceedings as civil in nature.  See Trenkler v. United States, 536 F.3d 85, 94 (1st Cir. 2008) ("Section 2255 proceedings, like classic petitions for habeas corpus, are generally treated as civil in nature."); Rogers v. United States, 180 F.3d 349, 352 n.3 (1st Cir. 1999) ("Motions under §2255 have often been construed as civil actions, much like habeas corpus proceedings.").  Sections 2253(a) and 2255(d) directly address how a final order in such a proceeding may be appealed, but do not state that interlocutory appeals are prohibited.  The Supreme Court has held that "appeals from orders

23

**G.Add.23**

denying motions under Section 2255 are governed by the civil rules applicable to appeals from final judgment in habeas corpus actions." United States v. Hayman, 342 U.S. 205, 209 n.4 (1952). Moreover, Rule 11(b) of the Rules Governing §2255 Proceedings provides that Rule 4(a) of the Federal Rules of Appellate Procedure, which establishes the time to appeal in civil cases, "governs the time to appeal an order entered under these rules." In addition, although without discussion of the implications of Andrews or any other analysis, courts have occasionally allowed interlocutory appeals under §1292(b) in §2255 actions. See United States v. Pelullo, 399 F.3d 197, 202 (3d Cir. 2005); United States v. Barron, 127 F.3d 890, 892 (9th Cir. 1997), rev'd on other grounds on rehearing on banc, 172 F.3d 1153 (9th Cir. 1999) (en banc).

In view of the foregoing, reasonable judges might differ on whether §1292(b) applies to the decision on the jury claim in this case. While §1292(b) requires that this court state its opinion on certain issues, it does not require that this court decide whether a §2255 proceeding is a "civil action" for the purpose of §1292(b). For the reasons described below, the court concludes that the requirements of §1292(b) are satisfied and it is in the interest of justice to give the First Circuit the opportunity to decide the full range of issues raised by the government. Therefore, the court is not deciding whether or not §1292(b) applies to its

24

**G.Add.24**

decision on the jury claim, but is making the findings necessary to provide the First Circuit the opportunity to decide that issue, and others if it determines that it has jurisdiction.

In finding that the requirements of §1292(b) have been met, the court understands that interlocutory certification "should be used sparingly and only in exceptional circumstances, and where the proposed immediate appeal presents one or more difficult and pivotal questions of law not settled by controlling authority." Caraballo-Seda, 395 F.3d at 9 (internal quotations omitted); see McGillicuddy v. Clements, 746 F.2d 76, 76 n.1 (1st Cir. 1984). Certification under §1292(b) must be rare because appellate review is generally limited to final decisions precisely in order to "avoid piecemeal litigation, promote judicial efficiency, reduce the cost of litigation, and eliminate the delays caused by interlocutory appeals." Appeal of Licht & Semonoff, 796 F.2d 564, 569 (1st Cir. 1986); see also In re Clark-Franklin-Kingston Press, Inc., C.A. 90-11231-WF, 1993 WL 160580, *2 (D. Mass. 1993) ("appeals of interlocutory orders result in piecemeal litigation, causing delay").  Therefore, "the party seeking interlocutory appeal under §1292(b) bears the heavy burden of persuading the court that exceptional circumstances warrant 'departure from the basic policy of postponing appellate review until after entry of final judgment.'"  Clark-Franklin-Kingston, 1993 WL 160580 at *2 (quoting Hoyt, 108 F.R.D. at 190); see also Vimar Seguros Y

**G.Add.25**

<u>Reaseguros, S.A. v. M/V Sky Reefer</u>, C.A. 91-13345-WF, 1993 WL 137483, *6 (D. Mass. 1993), <u>aff'd</u>, 29 F.3d 727 (1st Cir. 1994), <u>aff'd</u>, 515 U.S. 528 (1995).

However, as Professors Wright, Miller, and Cooper have written:

> [T]he three factors that justify interlocutory appeal should be treated as guiding criteria rather than jurisdictional requisites. Section 1292(b) is best used to inject an element of flexibility into the technical rules of appellate jurisdiction established for final judgment appeals under §1291 and for interlocutory appeals under §1292(a). The three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of immediate appeal.

16 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure §3930 (2d ed. 1996), at 415.[4]  In the instant case, the §1292(b) factors, viewed together, indicate that it is permissible and appropriate that this court authorize an interlocutory appeal of its decision on Sampson's jury claim.

The court's decision on the jury claim involves a "controlling question of law" within the meaning of §1292(b).  That issue is the question of whether a litigant seeking to obtain relief under <u>McDonough</u> is required to prove, among other things, actual or implied bias.  As explained earlier, this court found that actual

---

[4] This court has regularly employed this understanding in deciding whether to certify decisions for interlocutory appeal under §1292(b).  <u>See</u> <u>Clark-Franklin-Kingston</u>, 1993 WL 160580 at *3; <u>Vimar Seguros</u>, 1993 WL 137483 at *6; <u>United States ex rel. LaValley v. First Nat. Bank of Boston</u>, C.A. 86-236-WF, 1990 WL 112285, *3-4 (D. Mass. 1990).

26

**G.Add.26**

and implied bias are not required to be proven to obtain relief under McDonough, see Sampson, 820 F. Supp. 2d at 174-75, and that neither was proven with regard to C.  Id. at 188, 192.  If this court is found to be incorrect in its holding that McDonough provides a third basis for obtaining relief – distinct from actual bias and implied bias – or incorrect in some material respect concerning its statement of the McDonough test, then its decision that a new hearing to determine Sampson's sentence is required will be reversed or remanded.  Therefore, a "controlling question of law" is implicated in the proposed interlocutory appeal.  See In re Heddendorf, 263 F.2d at 890.

With regard to the second §1292(b) factor, "[t]he level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case."  16 Wright, Miller & Cooper, Federal Practice and Procedure §3930, at 422.  In certain circumstances, "certification may be justified at a relatively low threshold of doubt."  Id.

This court continues to find that it has correctly interpreted McDonough.  As indicated earlier, "if the McDonough test required a showing of actual or implied bias in addition to a showing of dishonesty," as the government contends, "the test Justice Rehnquist stated for the majority would be superfluous."  Sampson, 820 F. Supp. 2d at 176.  Moreover, this court's interpretation of

McDonough is consistent with the First Circuit's most relevant decisions, Amirault and Dall. See Sampson, 820 F. Supp. 2d at 176-77.

However, in McDonough two Justices concurred only in the judgment because they had "difficulty understanding the import of the legal standard adopted by the Court." 464 U.S. at 557 (Brennan, J., concurring). In addition, "[a]s the Sixth Circuit has noted, the case law reflects some confusion concerning the meaning of McDonough." Sampson, 820 F. Supp. 2d at 177 (citing Zerka v. Green, 49 F.3d 1181, 1185 (6th Cir. 1995)). This confusion is manifest in certain cases from other jurisdictions that are inconsistent with this court's interpretation of McDonough and incorrect for the reasons explained in the Memorandum and Order on Jury Claim. See Sampson, 820 F. Supp. 2d at 179-80 nn.16-18. Moreover, as this court wrote, its:

> statement of the McDonough test has been developed without the benefit of extensive discussion by the First Circuit. The lack of extensive discussion is, in part, the result of the fact that the First Circuit has never decided a case in which the party seeking a new trial proved that a juror had been dishonest at voir dire and it has not, therefore, been required to analyze the remaining prongs of the McDonough test.

Id. at 177.

In essence, the court believes that in reaching its conclusions, the court harmonized the three opinions in McDonough, well-reasoned decisions from several Courts of Appeals, and language in several First Circuit cases whose analysis was less

28

**G.Add.28**

extensive. However, in recognition of the lack of binding First Circuit authority concerning the meaning of McDonough and the confusion that is manifest in some decisions in other circuits, the court finds that there is a "substantial ground for difference of opinion" regarding its conclusion that McDonough is satisfied without proof of actual or implied bias if the trial judge would have had the discretion to excuse for cause a juror who answered a material question dishonestly, and would in fact have excused her. See Sampson, 820 F. Supp. 2d at 159.

Finally, "immediate appeal from the [jury claim] order may materially advance the ultimate termination of the litigation." §1292(b). If the court's decision on Sampson's jury claim is reversed on interlocutory appeal, it is possible that a new sentencing hearing will not be necessary. The court will still have to decide the claims not involving the jury that have not been summarily dismissed. Discovery will be necessary and evidentiary hearings may be required. It is not now possible to predict whether any of Sampson's remaining claims will prove to be meritorious. However, it is possible that they will not justify a new sentencing hearing.

If this court's decision on the jury claim is affirmed, the issues concerning Sampson's other claims that were not summarily dismissed will be moot. The government will then have to decide whether it is now possible and appropriate to conduct another long,

29

**G.Add.29**

expensive, and exhausting sentencing hearing. An affirmance may cause the government to conclude that it is in the interests of justice to try to reach an agreement to resolve this matter with Sampson, who previously offered to accept a sentence of life in prison without possibility of parole rather than face possible execution. Such an agreement would expedite the termination of this case. See Clark-Franklin-Kingston, 1993 WL 160580 at *3 ("interlocutory appeals should be granted where resolution of the issues on appeal might lead to settlement"). Therefore, while inherently uncertain, the conclusion of this §2255 proceeding before this court "may" be facilitated by an interlocutory appeal. See §1292(b).

While the court is of the opinion that each of the §1292(b) factors has been adequately established, it still must decide whether to exercise its discretion to allow the First Circuit to consider whether interlocutory appeal of the jury claim decision is legally permissible and, if so, justified. See Swint, 514 U.S. at 47; Nat'l Asbestos, 71 F. Supp. 2d at 145-46; Hoyt, 108 F.R.D. at 190. It is, at this point, particularly appropriate "to consider the probable gains and losses of immediate appeal." 16 Wright, Miller & Cooper, Federal Practice and Procedure §3930, at 416.

The instant case is truly an "exceptional" case. See Caraballo-Seda, 395 F.3d at 9 (internal quotations omitted). It is the only case in the First Circuit in which a person has been

**G.Add.30**

sentenced to be executed under the Federal Death Penalty Act. A resentencing hearing in this case will be far more complicated and consume far more resources than a resentencing in a non-capital case such as Andrews. See Stitt, 459 F.3d at 487 (Williams, J., concurring). It will also be agonizing for the families of the victims. If meritorious, an immediate appeal of the jury claim decision may keep these costs from being incurred.

Interlocutory review of the jury claim decision may also promote confidence in the administration of justice. If there is not an immediate appeal and a second jury finds that Sampson should be sentenced to death, this court's jury claim decision will probably never be reviewed and there will be no appellate determination of whether the second capital sentencing proceeding was necessary. If the jury at a second sentencing hearing finds that Sampson should not be executed, the court's decision on Sampson's jury claim will be final and ripe for appellate review. The First Circuit will then be required to decide whether Sampson should be executed despite a more recent jury determination that the death penalty is not justified. This situation may raise additional, unprecedented appellate issues. In any event, a decision to allow Sampson to be executed despite a more recent finding that the death sentence is not justified would forseeably prompt public confusion and controversy. An interlocutory appeal and determination of the merits of the jury claim decision would

31

**G.Add.31**

reduce these risks and also assure that the expense and anguish of any second sentencing hearing is, as this court has found, legally required to provide Sampson "the fair process that the Constitution guarantees every man no matter how despicable his conduct." Sampson, 820 F. Supp. 2d at 160.

As described earlier, the instant case will be stayed pending the government's attempt to appeal the decision vacating Sampson's death sentence as a final order under §1291.  Therefore, there will be some piecemeal litigation and delay in any event.  Certification of an interlocutory appeal will only provide the First Circuit the opportunity to consider a fuller range of issues concerning the jury claim decision.  Thus, the delay caused by authorizing an interlocutory appeal in this case is not as significant a factor weighing against certification as delay is in the usual case.  Cf. Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 866-67 (2d Cir. 1996) (certification under §1292(b) was improvidently granted where appeal would delay rather than advance termination of litigation); Nat'l Asbestos, 71 F. Supp. 2d at 167 ("The lengthy delay of trial court proceedings pending the appeal, the probability that an interlocutory appeal will require lengthy appellate consideration on an incomplete record, and the likelihood that continued district court proceedings might moot the issues now sought to be appealed, . . . counsel against interlocutory review at this stage."); Clark-Franklin-Kingston, 1993 WL 160580 at *3 (denying leave to bring

**G.Add.32**

interlocutory appeal of order of Bankruptcy Court where appeal would delay the action's progress towards a trial).

In view of the foregoing, the court concludes that it is permissible and most appropriate to certify for interlocutory review, pursuant to §1292(b), the questions of: (1) whether McDonough requires proof of actual bias or implied bias to obtain relief; and, if not, (2) whether this court correctly stated the McDonough test in its Memorandum and Order on Jury Claim.

As explained earlier, the First Circuit may decide as a matter of law that an interlocutory appeal is not permissible or may conclude that this is not one of the rare cases in which an interlocutory appeal should be granted as an exercise of its discretion. However, it serves the interests of justice for this court to allow the First Circuit to make those decisions.

IV. ORDER

Therefore, for the reasons explained in this Memorandum and in the October 20, 2011 Memorandum and Order on Jury Claim, it is hereby ORDERED that:

1. Claim IV of the Motion (Docket No. 1035) is ALLOWED and Sampson's death sentence is VACATED.

2.   The Government's Request for Summary Dismissal of the First Amended 2255 Petition (Docket No. 1055) is DENIED as to Claim IV, the jury claim.

3. Assuming, without finding, that 28 U.S.C. §1292(b) is

**G.Add.33**

applicable, the government's Motion to Certify Interlocutory Appeal Under 28 U.S.C. §1292(b) and for Stay (Docket No. 1235) is ALLOWED as to the questions of: (1) whether <u>McDonough</u> requires proof of actual bias or implied bias to obtain relief; and, if not, (2) whether this court correctly stated the <u>McDonough</u> test in its Memorandum and Order on Jury Claim.

4. A separate Order concerning the claims to be dismissed pursuant to the October 20, 2011 Memorandum and Order on Summary Dismissal shall enter.

5. This case shall continue to be STAYED pending a resolution of the government's appeal by the First Circuit.

     <u>/s/ Mark L. Wolf</u>
UNITED STATES DISTRICT JUDGE

**G.Add.34**