**Nos. 12-1643 & 12-8019**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

---------------------------------------------------x

GARY SAMPSON

     Appellee-Respondent,

                               On appeal from the District of

v.                               Massachusetts (Wolf, C.J.)

UNITED STATES OF AMERICA,      Civil Action No. 09-10762-MLW

                               Criminal No. 01-10384-MLW

     Appellant-Petitioner.

---------------------------------------------------x

## <u>BRIEF OF APPELLEE GARY SAMPSON</u>

William E. McDaniels, Esq.
Jennifer G. Wicht, Esq.
Cadence Mertz, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC  20005
(202) 434-5000

J. Martin Richey, Esq.
Elizabeth L. Prevett, Esq.
Federal Defender's Office
51 Sleeper Street, Fifth Floor
Boston, MA  02110
(617) 223-8061

Susan K. Marcus, Esq.
3 Fort Mason
San Francisco, CA  94123
(212) 876-5500

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ............................................................1

STATEMENT OF ISSUES ........................................................................1

INTRODUCTION .....................................................................................1

STATEMENT OF THE CASE....................................................................4

STATEMENT OF FACTS ..........................................................................5

    A.    The Jury Selection Process For Mr. Sampson's 2003
Sentencing Hearing. .......................................................5

        1.    Aggravating And Mitigating Factors To Be Presented To
The Jury...........................................................7

        2.    The *Voir Dire* Instructions Emphasized Honesty And
Completeness. .......................................................9

        3.    Juror Dismissals Before And During The Sentencing
Hearing. ...........................................................11

            a.    Jurors Struck For Dishonesty. .......................11

                1)    Prospective Jurors. .............................11

                2)    Sitting Jurors.........................................12

            b.    Jurors Struck For Similar Personal Experiences. ...........13

    B.    Mr. Sampson's Juror Claim. ......................................16

        1.    The § 2255 Motion's Allegations Regarding Juror C. .............17

        2.    The Evidentiary Hearings On Juror Misconduct. .....................18

            a.    The First Evidentiary Hearing – November 18,
2010. ...........................................................18

            b.    The Second Evidentiary Hearing – March 18,
2011. ...........................................................20

                1)    Juror C Acknowledges Her Prior
Dishonesty.............................................23

                2)    Juror C's Responses Reveal Her Disdain For
Her Daughter's Criminal Conduct. .......................24

            c.    The Third Evidentiary Hearing – August 8, 2011..........25

        3.    Juror C's Dishonest Answers To The Questionnaire. ..............27

        4.    Juror C's Demeanor During The Evidentiary Hearings. ..........29

        5.    Juror C's Dishonesty Undermined *Voir Dire*. ......................30

    C.    Proceedings Following The § 2255 Evidentiary Hearings. ...............33

        1.    The District Court's October 20, 2011 Orders. .......................33

        2.    The District Court's May 10, 2012 Order................................34

        3.    The Government's Attempted Appeals. ..................................35

i

ARGUMENT ...................................................................................38

I.   This Court Lacks Jurisdiction Over The Government's Appeals. ...............38

    A.   The Government's § 1291 Appeal Should Be Dismissed As Premature...............................................................................38

        1.   28 U.S.C. § 1291 And The Supreme Court's *Andrews* Decision Require That The Government's Appeal Be Dismissed. ...............................................................39

        2.   Authority From Other Circuits Uniformly Follows *Andrews*...........................................................................42

        3.   The Government's Position Is Contrary To The Plain Statutory Language. ................................................43

    B.   The Government's Petition Seeking Interlocutory Appeal Under § 1292(b) Should Be Denied. .....................................48

        1.   Section 2255 Motions Are Not "Civil Actions" Within The Meaning Of § 1292(b). ...........................................49

            a.   Proceedings Under § 2255 Are Continuations Of The Movant's Criminal Case...........................................49

            b.   The Government's Cited Authority Is Inapposite Or Abrogated. .....................................................53

            c.   The Government's Argument That Appeals Of § 2255 Orders Are Civil Is A Non-Sequitur.......................54

        2.   Section 2255's Comprehensive Remedial Scheme Is The Exclusive Means Of Appeal. ....................................56

        3.   Even Assuming § 1292(b) Applies, The Government Has Not Met The Statute's Certification Requirements. .................58

    C.   18 U.S.C. § 3731 Is Inapplicable. .........................................59

    D.   The Government's Petition For A Writ Of Advisory Mandamus Should Be Denied.....................................................62

II.   The District Court's Order Granting Mr. Sampson A New Sentencing Hearing Should Be Affirmed.................................................66

    A.   Standard of Review. ...................................................67

    B.   Mr. Sampson Is Entitled To A New Sentencing Hearing Under *McDonough*. .................................................68

        1.   The District Court Properly Enunciated The *McDonough* Test And Appropriately Granted Mr. Sampson A New Sentencing Hearing On That Basis. ...........................69

            a.   A Juror's Impairment Is A Valid Basis For A Challenge For Cause.......................................70

                1)   Impairment Is Sufficient....................................71

2)      The District Court Has Substantial Discretion To Excuse Jurors For Cause. ..............74

b.      The District Court Properly Concluded That Juror C Would Have Been Struck For Cause. .........................75

2.      *McDonough* Does Not Require A Showing Of Actual Or Implied Bias. ..................................................................83

a.      The *McDonough* Test Is Clearly Stated. .......................83

1)      *McDonough*'s Concurrences Confirm That The Majority's Test Does Not Require Actual Or Implied Bias ..........................................85

2)      Cases Of Juror Dishonesty Merit *McDonough*'s Separate Analysis .........................89

b.      This Circuit's Decisions Regarding *McDonough* Do Not Require A Showing Of Actual Or Implied Bias. ..................................................................91

c.      Other Circuits Agree That *McDonough* Does Not Require A Showing Of Actual Or Implied Bias.............95

3.      None Of The Government's Alternative Theories Require Reversal Of The District Court's Order. ...................101

a.      *Teague* Presents No Bar To Relief. ..............................101

b.      The Government's Suggestion That Juror *Voir Dire* Perjury Does Not Merit Relief Is Contrary To Law. ....................................................................102

C.      As An Alternative Basis For Affirmance, This Court Should Hold That The Facts Found By The District Court Establish That Juror C Was Impliedly Biased. .................................103

1.      Standard of Review. ...............................................................104

2.      Juror C Was Impliedly Biased. ..............................................105

CONCLUSION .................................................................................................110

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ....................................112

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Agostini v. Felton*, 521 U.S. 203 (1997) ...........................................................41, 42

*Am. Tradition P'ship, Inc. v. Bullock*, 132 S. Ct. 1307 (2012)................................41

*Amirault v. Fair*, 968 F.2d 1404 (1st Cir. 1992)..............................................passim

*Andrews v. United States*, 373 U.S. 334 (1963) .............................................passim

*Billiot v. Epps*, 107 F. App'x 385, 387 (5th Cir. 2004) ..........................................58

*Brown v. United States*, 480 F.2d 1036 (5th Cir. 1973) .......................................102

*Burton v. Johnson*, 948 F.2d 1150 (10th Cir. 1991) ...............................80, 106, 109

*C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*
    513 F.3d 279 (1st Cir. 2008)................................................................104, 105

*Camacho v. P.R. Ports Auth.*, 369 F.3d 570 (1st Cir. 2004) ...................................58

*Campbell v. United States*, 108 F. App'x 1 (1st Cir. 2004) ....................................72

*Caterpillar Inc. v. Sturman Indus. Inc.*, 387 F.3d 1358 (Fed. Cir. 2004)..............104

*Chandler v. Florida*, 449 U.S. 560 (1981)...............................................................89

*Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (1st Cir. 2002).......................................95

*Dall v. Coffin*, 970 F.2d 964 (1st Cir. 1992) ....................................................passim

*Danforth v. Minnesota*, 552 U.S. 264 (2008) ........................................................101

*DeBurgo v. St. Amand*, 587 F.3d 61 (1st Cir. 2009).........................................94, 95

*Dennis v. United States*, 339 U.S. 162 (1950) ....................................71, 88, 89, 91

*Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) ............................................passim

*Ferrara v. United States*, 456 F.3d 278 (1st Cir. 2006)........................................101

*Fields v. Brown*, 503 F.3d 755 (9th Cir. 2007)....................................................105

iv

*Figueroa v. Rivera*, 147 F.3d 77 (1st Cir. 1998) .......................................................41

*Gonzales v. Thomas*, 99 F.3d 978 (10th Cir. 1996)...................................................97

*Grinnell Corp. v. Hackett*, 519 F.2d 595 (1st Cir. 1975)...........................................63

*Heddendorf v. Goldfine (In re Heddendorf)*, 263 F.2d 887 (1st Cir. 1959) ............58

*Heflin v. United States*, 358 U.S. 415, 418 n.7 (1959) .............................................49

*In re Bushkin Assocs., Inc.*, 864 F.2d 241 (1st Cir. 1989) ..................................62, 63

*In re Justices of the Super. Court Dep't of the Mass. Trial Ct.*, 218 F.3d 11
     (1st Cir. 2000) ..................................................................................................64

*In re Providence Journal Co.*, 293 F.3d 1 (1st Cir. 2002)........................................65

*In re Recticel Foam Corp.*, 859 F.2d 1000 (1st Cir. 1988).........................37, 38, 62

*In re Sterling-Suarez*, 306 F.3d 1170 (1st Cir. 2002) ...............................................62

*In re United States*, 426 F.3d 1 (1st Cir. 2005).........................................................65

*Jackson v. Ala. Tenure Comm'n*, 405 F.3d 1276 (11th Cir. 2005)...................97, 103

*Jimenez v. Quarterman*, 555 U.S. 113 (2009) ..........................................................46

*Johnson v. Luoma*, 425 F.3d 318 (6th Cir. 2005).....................................................96

*Jones v. Cooper*, 311 F.3d 306 (4th Cir. 2002) ........................................................97

*Jones v. United States*, 527 U.S. 373 (1999) ............................................................46

*Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50 (1st Cir.
     2004) ................................................................................................................94

*Lorillard v. Pons*, 434 U.S. 575 (1978) ...................................................................47

*McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984) ......passim

*Morgan v. Illinois*, 504 U.S. 719 (1992)...........................................................89, 102

*Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. Richey*, 510 F.2d
     1239 (D.C. Cir. 1975) ......................................................................................63

v

*Palmquist v. Shinseki*, 689 F.3d 66 (1st Cir. 2012) ....................................46

*Pierce v. Underwood*, 487 U.S. 552 (1988).................................................67

*Remmer v. United States*, 347 U.S. 227 (1954) ..........................................89

*Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) .........................50, 53

*Ross v. Oklahoma*, 487 U.S. 81 (1988).....................................................103

*Sampson v. United States*, 553 U.S. 1035 (2008) .........................................4

*Sepulveda v. United States*, 330 F.3d 55 (1st Cir. 2003) .........................101

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) ......87

*Skaggs v. Otis Elevator Co.*, 164 F.3d 511 (10th Cir. 1998)............97, 104

*Smith v. Phillips*, 455 U.S. 209 (1982) ...............................................passim

*Teague v. Lane*, 489 U.S. 288 (1989) .......................................................101

*Trenkler v. United States*, 536 F.3d 85 (1st Cir. 2008)...........50, 53, 56, 57

*United States v. Allen*, 613 F.2d 1248 (3d Cir. 1980)................................42

*United States v. Anderson*, 260 F. Supp. 2d 310 (D. Mass. 2003) .............7

*United States v. Aponte-Suarez*, 905 F.2d 483 (1st Cir. 1990)................94

*United States v. Barone*, 114 F.3d 1284 (1st Cir. 1997)...........................72

*United States v. Barrett*, 178 F.3d 34 (1st Cir. 1999)...............................57

*United States v. Boney*, 977 F.2d 624 (D.C. Cir. 1992)..................105, 109

*United States v. Colombo*, 869 F.2d 149 (2d Cir. 1989) .........74, 105, 109

*United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174 (1st Cir. 2003) ................................................................................................64

*United States v. Cook*, 997 F.2d 1312 (10th Cir. 1993)............................51

*United States v. Craig*, 907 F.2d 653 (7th Cir. 1990)...............................55

*United States v. Daugerdas*, 867 F. Supp. 2d 445 (S.D.N.Y. 2012) .78, 97, 100, 110

*United States v. Doke*, 171 F.3d 240 (5th Cir. 1999)................................................96

*United States v. Duardi*, 514 F.2d 545 (8th Cir. 1975) ...........................................43

*United States v. Ebron*, 683 F.3d 105 (5th Cir. 2012) .............................................46

*United States v. Fiorelli*, 337 F.3d 282 (3d Cir. 2003).............................................51

*United States v. Futch*, 518 F.3d 887 (11th Cir. 2008).............................................43

*United States v. Gonzalez*, 214 F.3d 1109 (9th Cir. 2000) ...........................106, 109

*United States v. Gonzalez-Soberal*, 109 F.3d 64 (1st Cir. 1997)............................75

*United States v. Gordon*, 634 F.2d 638 (1st Cir. 1980)......................................51, 53

*United States v. Greer*, 285 F.3d 158 (2d Cir. 2002)..............................96, 97, 100

*United States v. Hadden*, 475 F.3d 652 (4th Cir. 2007) ...........................................43

*United States v. Hammer*, 564 F.3d 628 (3d Cir. 2009) ........................39, 41, 42, 43

*United States v. Hayes*, 532 F.3d 349 (5th Cir. 2008) ..............................................43

*United States v. Hayman*, 342 U.S. 205 (1952).......................................................55

*United States v. Horn*, 29 F.3d 754 (1st Cir. 1994)............................................63, 64

*United States v. Kane*, 646 F.2d 4 (1st Cir. 1981)...............................................62, 63

*United States v. Lawrence*, 555 F.3d 254 (6th Cir. 2009) .......................................61

*United States v. Lewko*, 269 F.3d 64 (1st Cir. 2001)................................................53

*United States v. Lowe*, 145 F.3d 45 (1st Cir. 1998)..................................................75

*United States v. Martin*, 226 F.3d 1042 (9th Cir. 2000)......................................43, 51

*United States v. Martinez-Salazar*, 528 U.S. 304 (2000) ................................88, 103

*United States v. McCoy*, 410 F.3d 124 (3d Cir. 2005)..............................................43

*United States v. McGaughy*, 670 F.3d 1149 (10th Cir. 2012) .................................43

vii

*United States v. Misla-Aldarondo*, 478 F.3d 52 (1st Cir. 2007)........................67, 74

*United States v. Mitchell*, 690 F.3d 137 (3d Cir. 2012)........................................105

*United States v. North*, 910 F.2d 843 (D.C. Cir. 1990) ........................................96

*United States v. Perkins*, 748 F.2d 1519................................................105, 106, 109

*United States v. Pleau*, 680 F.3d 1 (1st Cir. 2012) (en banc) ...........................62, 65

*United States v. Quin*¸ 836 F.2d 654 (1st Cir. 1988) ..............................................51

*United States v. Rhodes*, 556 F.2d 599 (1st Cir. 1977)...................................80, 106

*United States v. Rivera-Sola*, 713 F.2d 866 (1st Cir. 1983) ..................................94

*United States v. Sampson*, 300 F. Supp. 2d 278 (D. Mass. 2004) ...........................4

*United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007)..................................passim

*United States v. Sampson*, 820 F. Supp. 2d 151 (D. Mass. 2011) ...................passim

*United States v. Sampson*, No. 01-10384-MLW, 2012 WL 1633296 (D.
    Mass. May 10, 2012) ....................................................................................passim

*United States v. Scott*, 854 F.2d 697 (5th Cir. 1988) ..............................80, 106, 109

*United States v. Stewart*, 433 F.3d 273 (2d Cir. 2006)........................................100

*United States v. Stitt*, 459 F.3d 483 (4th Cir. 2006)........................................passim

*United States v. Torres*, 128 F.3d 38 (2d Cir. 1997) ......................................96, 105

*United States v. Villar*, 586 F.3d 76 (1st Cir. 2009) ...............................................66

*United States v. Walsh*, 75 F.3d 1 (1st Cir. 1996) ...........................................72, 74

*United States v. Wood*, 299 U.S. 123 (1936) ........................................................72

*Wagenmann v. Adams*, 829 F.2d 196 (1st Cir. 1987)...........................................47

*Wainwright v. Witt*, 469 U.S. 412 (1985) .................................................71, 72, 73

*Wall v. Kholi*, 131 S. Ct. 1278 (2011)...........................................................49, 54

viii

*Williams v. Netherland*, 181 F. Supp. 2d 604 (E.D. Va. 2002) ...............76, 105, 109

*Williams v. Taylor*, 529 U.S. 420 (2000) ...............................................................102

*Williams v. True*, 39 F. App'x 830 (4th Cir. 2002) ..................................................77

*Williams v. United States*, 984 F.2d 28, 30 (2d Cir. 1993).......................................51

## OTHER AUTHORITIES

U.S. Const. Amendment VI .........................................................16, 88, 102

28 U.S.C. § 2241 ...............................................................................57, 58

18 U.S.C. § 401 ........................................................................................74

18 U.S.C. § 1621 ......................................................................................74

18 U.S.C. § 2119(3) ...................................................................................4

18 U.S.C. § 3592.................................................................................46, 47

18 U.S.C. § 3593.................................................................................passim

18 U.S.C. § 3594.................................................................................passim

18 U.S.C. § 3595......................................................................................45

18 U.S.C. § 3731.................................................................................passim

28 U.S.C. § 636(c) .............................................................................51, 52

28 U.S.C. § 1291................................................................................passim

28 U.S.C. § 1292(b) ...........................................................................passim

28 U.S.C. § 2253......................................................................................58

28 U.S.C. § 2254................................................................................passim

28 U.S.C. § 2255................................................................................passim

§ 2255 Rule 1 .....................................................................................50, 51

§ 2255 Rule 3 ...........................................................................................50

§ 2255 Rule 6 ..................................................................................................50

§ 2255 Rule 11 ......................................................................................50, 55, 56

§ 2255 Rule 12 ...........................................................................................50, 51

Federal Rule of Appellate Procedure 4 .................................................................55

Federal Rule of Criminal Procedure 23(b) ...........................................................72

Federal Rule of Criminal Procedure 33 ................................................................61

*Brown v. United States*
    Nos. 11-15149-EE & 12-10293-EE (11th Cir. Feb. 27, 2012) ..............41, 52, 53

*Brown v. United States*, Nos. 11-15149-EE & 12-10293-EE (11th Cir. June
    29, 2012) ................................................................................................52, 53

*United States v. Johnson*, No. 11-1326, D.E. 12 (7th Cir. May 26, 2011)..............39

15B Charles Alan Wright et al., *Federal Practice and Procedure* § 3919.9
    (2d ed. 1991) ...............................................................................................43

x

## JURISDICTIONAL STATEMENT

This Court does not have jurisdiction over these consolidated appeals, for the reasons discussed in greater detail in Part I of the Argument herein. Consequently, the consolidated appeals should be dismissed.

## STATEMENT OF ISSUES

1.  Whether this Court has jurisdiction.

2.  If so:

    a.  Whether the District Court properly granted Mr. Sampson a new sentencing hearing based on the test enunciated in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984).

    b.  Whether the *McDonough* test requires a showing of actual or implied bias.

3.  If *McDonough* requires implied bias, or as an alternative basis for affirmance, whether Mr. Sampson has proven implied bias by a juror.

## INTRODUCTION

The District Court for the District of Massachusetts (Wolf, C.J.) concluded that the jury that recommended death for Gary Sampson included a juror who "persistently committed perjury" during *voir dire* (and repeatedly thereafter) concerning important questions affecting her ability to be impartial. The District Court also concluded that this juror, Juror C, would have been dismissed for cause

had she told the truth during *voir dire*.  The District Court's factual findings, made after three separate evidentiary hearings in which the perjured juror was questioned under oath, are unassailable.  The Government does not challenge them.  *See* Br. at 75 ("[T]he government here is only challenging the district court's legal conclusions . . . .").[1]

The District Court found that Juror C perjured herself on ten separate questions on a 77-question juror questionnaire.  *See United States v. Sampson*, 820 F. Supp. 2d 151, 186 n.21 (D. Mass. 2011).  The District Court further found that the juror's lies continued "during individual voir dire, and in these § 2255 proceedings."  *Id.* at 181.  Juror C's lies were material: "The matters about which [the juror] repeatedly lied under oath were comparable to matters presented by the evidence in Sampson's case."  *Id.* at 159.  Ultimately, the District Court concluded, "if, before empanelment, the court had the information it now possesses, [the juror] would have been excused for cause because of the high risk that she would not be able to decide whether Sampson should live or die based solely on the evidence; and the decision to excuse her for cause would have been reinforced by her repeated perjury."  *Id.* at 181.

With these factual findings in hand, the District Court conducted an extensive review of Supreme Court, First Circuit, and other Circuits' caselaw

---

[1] The Government's brief is cited herein as "Br. at ___"

2

regarding juror misconduct.  The District Court found that the Supreme Court's decision in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), as further interpreted and applied by this Court's decisions in *Amirault v. Fair*, 968 F.2d 1404 (1st Cir. 1992) (per curiam), and *Dall v. Coffin*, 970 F.2d 964 (1st Cir. 1992) (Wolf, J., sitting by designation), required the conclusion that Mr. Sampson is entitled to a new sentencing hearing based on the perjured juror's misconduct.  The District Court determined that the facts here were "a *paradigm* for granting relief under *McDonough*," *Sampson*, 820 F. Supp. 2d at 192 (emphasis added), and that it was "comfortably" following "the law as it has been described by the First Circuit . . . because the First Circuit's recognition in *Amirault* that there are three tests for determining whether a juror was impartial—actual bias, implied bias, and *McDonough*—is consistent with the language and reasoning of the Supreme Court in that case," *id.* at 180.  Juror C's perjury deprived Mr. Sampson of an impartial jury "capable and willing to decide the case solely on the evidence," *McDonough*, 464 U.S. at 554 (quotation marks omitted)—and therefore, the District Court concluded, Mr. Sampson had met his burden of proving a *McDonough* violation.

As argued below, the District Court's order vacating the death penalty and requiring re-sentencing is not appealable at this stage, interlocutorily or otherwise. If reached, however, the District Court's decision on the merits should be affirmed,

3

because the District Court correctly understood and applied the test the Supreme Court laid out in *McDonough*, as is confirmed by this Court's prior interpretations of that case.

### STATEMENT OF THE CASE

Mr. Sampson was indicted by a federal grand jury on October 24, 2001, on two counts of violating 18 U.S.C. § 2119(3), in connection with the carjackings and murders of Philip McCloskey and Jonathan Rizzo.  Mr. Sampson pleaded guilty to the controlling indictment on September 9, 2003.  On December 23, 2003, at the conclusion of the "separate sentencing hearing" mandated by 18 U.S.C. § 3593(b), a jury recommended that Mr. Sampson be sentenced to death.  On January 29, 2004, the District Court imposed a death sentence on Mr. Sampson, as required by 18 U.S.C. § 3594.  *See United States v. Sampson*, 300 F. Supp. 2d 278 (D. Mass. 2004).  This Court affirmed on May 7, 2007, *see United States v. Sampson*, 486 F.3d 13 (1st Cir. 2007), and the Supreme Court denied certiorari, *see Sampson v. United States*, 553 U.S. 1035 (2008).

In May 2009, Mr. Sampson timely sought relief under 28 U.S.C. § 2255, and filed an amended 28 U.S.C. § 2255 motion in March 2010.  The District Court preliminarily granted relief based on Mr. Sampson's juror *voir dire* perjury claim on October 20, 2011, *see Sampson*, 820 F. Supp. 2d 151,  and confirmed that relief in a second order in May 2012, *see United States v. Sampson*, No. 01-10384-

4

MLW, 2012 WL 1633296 (D. Mass. May 10, 2012).  The Government filed two separate appeals—an attempted direct appeal and a petition for interlocutory appeal—and this Court consolidated the briefing of the two appeals.

**STATEMENT OF FACTS**

Mr. Sampson pleaded guilty to the two counts of the indictment, and his guilt is not at issue here.  While the Government's brief details Mr. Sampson's crimes, which are undeniably horrible, it omits mention of the critical facts for purposes of Mr. Sampson's juror *voir dire* perjury claim: the District Court's and parties' labored, time-intensive efforts to ensure the selection of a fair and impartial jury for Mr. Sampson's separate sentencing hearing.  Months before Mr. Sampson's guilty plea, the parties and the District Court were looking ahead to the process of selecting a qualified and impartial jury.  In a federal capital case like this one, a death verdict requires jurors to be unanimous.  *See* 18 U.S.C. § 3593(e).  One juror, therefore, may make the difference between life and death.  *See Sampson*, 820 F. Supp. 2d at 162.

**A.   The Jury Selection Process For Mr. Sampson's 2003 Sentencing Hearing.**

As early as January 2003 the parties and the District Court began discussing jury selection and the questionnaire that would be given to potential jurors before individual *voir dire*.  *See Sampson*, 820 F. Supp. 2d at 181–82; Supplemental Appendix ("SA") 2–3 [Hr'g Tr. (Jan. 3, 2003) at 76–77].  The subject came up at

nearly every status conference between January and September, when *voir dire* began. *See, e.g.*, SA5–9 [Hr'g Tr. (May 22, 2003) at 31–35].

In all of these discussions, the District Court's "paramount concern [was] the fairness of this trial." SA11 [Hr'g Tr. (June 16, 2003) at 63]. Each party submitted a proposed juror questionnaire. *See, e.g.*, D.E. 245.[2] The District Court drew from both versions, conferring with the parties even on subtle nuances in the final wording. *See, e.g.*, SA15–17 [Sealed Lobby Tr. (Sept. 9, 2003) at 61–63] ("[W]e're focusing on [the juror questionnaire], and I want the jurors to get it right.").[3]

"[T]he court and the parties made an extensive effort to assure that each and every juror in this case would be able to decide whether [Mr.] Sampson should be sentenced to death based solely on the evidence." *Sampson*, 820 F. Supp. 2d at 157. Hundreds of potential jurors were summoned. *See id*. Each was required to fill out the questionnaire, and those not removed for obvious impairment were required to sit for individual *voir dire*. *See id*. at 157, 182. From there, the District Court winnowed the pool, and the process ultimately resulted in the seating of twelve jurors and six alternates.

---

[2] "D.E. ___" refers to the Docket Entry in criminal case *United States v. Sampson*, No. 01-cr-10384, which is the case number for all pre-trial, sentencing, and § 2255 proceedings in the District Court.

[3] Citations to once "sealed" transcripts refer to facts that have been unsealed.

### 1. Aggravating And Mitigating Factors To Be Presented To The Jury.

The discussions between the District Court and the parties on the subject of jury selection fill hundreds of transcript pages.  The parties labored over the questions to be included in the questionnaire.  Defense counsel, for example, sought to include a question about the occupations of potential jurors' adult children to elicit any family members working in law enforcement; the District Court agreed to ask whether anyone close to potential jurors worked in law enforcement.  SA13 [Hr'g Tr. (Aug. 20, 2003) at 28].

By the time of *voir dire*, Mr. Sampson had pleaded guilty, thus the District Court and the parties were preparing for a sentencing hearing.  They knew by then that jurors would hear aggravating and mitigating evidence including:

- Mr. Sampson intended to introduce as a mitigating factor evidence of his mental illness.  *See, e.g.*, JSA277, 280.[4]

- Mr. Sampson intended to introduce as a mitigating factor evidence that he had attempted to turn himself in to the FBI before his crimes, but the FBI switchboard operator dropped his call.  SA19–21 [*See* Tr. (Oct. 1, 2003) at 103–05].  *See generally United States v. Anderson*, 260 F. Supp. 2d 310 (D. Mass. 2003) (explaining sentencing for the FBI employee, who was convicted of perjury after lying about the dropped call).

---

[4] "JA___" and "JSA___" refer to citations to the Joint Appendix and the Joint Sealed Appendix, respectively.  The JSA citations herein refer only to public (unsealed) facts, though in some cases the cited JSA pages also contain non-public (sealed) facts.

- The Government intended to introduce as an aggravating factor evidence of Mr. Sampson's North Carolina bank robberies, in which he threatened several female bank tellers at the point of a gun. *See Sampson*, 820 F. Supp. 2d at 195.

- The Government intended to introduce as an aggravating factor evidence of Mr. Sampson's broken relationships with his former wives and children. *See, e.g., id*.; JSA266–69 (listing potential witnesses).

- Both parties would likely introduce evidence about Mr. Sampson's years in prison and criminal history, as well as life in prison generally in the future dangerousness context. *See, e.g., Sampson*, 820 F. Supp. 2d at 195; JSA266–69 (listing potential witnesses).

- Evidence would likely be introduced about Mr. Sampson's substance abuse. *See, e.g.*, JSA266–69 (listing potential witnesses).

- Evidence would likely be introduced about Mr. Sampson's upbringing and his troubled relationship with his family. *See, e.g.*, JSA266–69 (listing potential witnesses); *Sampson*, 820 F. Supp. 2d at 181.

The juror questionnaire was intended to elicit not just jurors' potential biases but also how the particular, anticipated evidence might affect the jurors and their ability to remain impartial. *See, e.g., Sampson*, 820 F. Supp. 2d at 157, 181–82 ("The questions were also designed to obtain information concerning life experiences that were relevant to determining whether a juror would be able to decide the issues presented based solely on the evidence, unimpaired by the influence of anything that he or she may have experienced personally."). Just as the District Court and the parties had crafted the questionnaire in light of the evidence supporting the aggravating and mitigating factors, the District Court conducted *voir dire* with this evidence in mind. *See, e.g., id.*

### 2.    The *Voir Dire* Instructions Emphasized Honesty And Completeness.

The hundreds of potential jurors, including Juror C, arrived at the courthouse on September 18, 2003.  The District Court first instructed them at length on the nature of jury service, Mr. Sampson's case, and their obligations in completing the juror questionnaire.  JSA516–35; D.E. 385-2, at 1–16.  The instructions from the District Court—orally and on the questionnaire—paid special attention to, first, potential jurors' obligation to answer all questions fully and honestly and, second, the protections available to potential jurors if full and honest answers required the disclosure of sensitive personal information.  *See Sampson*, 820 F. Supp. 2d at 182.

The questionnaire instructed recipients: "If you request that your response to a particular question not be made public, write the number of that question in your response to the last question, Question 77.  Alternatively, if you would prefer not to answer a sensitive question because of the private nature of your response, write 'Private' after that question."  JSA263–64.  The final question, Question 77, specifically addressed jurors' potential privacy concerns: "(a) Are there responses to any specific questions that you request not be made public? . . . (b) If so, please list the numbers of those questions."  JSA292.  *See generally Sampson*, 820 F. Supp. 2d at 182.  After the District Court instructed the *venire*, the potential jurors were excused to complete their questionnaires, *see* JSA534–35; D.E. 385-2, at 15–16, which they did under penalty of perjury, affirmed by their signature, *see, e.g.*,

9

JSA292.  *See also* JSA534.  Juror C marked nothing on her questionnaire "private," answered "No" to Question 77, and signed her name under the oath.  *See* JSA263–95; *Sampson*, 820 F. Supp. 2d at 182.

The District Court conducted individual *voir dire* of each potential juror. When Juror C appeared on October 2, 2003 for *voir dire,* the District Court asked whether she understood that she remained under oath.  *See Sampson*, 820 F. Supp. 2d at 182–83.  She said that she did.  *See id.*  The District Court asked whether she had re-read the court's instructions as directed and if she wished to change or update her questionnaire responses.  *See id.* at 183.  She raised just one issue about a question, Question 24, not at issue in these § 2255 proceedings and ultimately did not change any of her answers.  *See id.*  She was empanelled.

During Mr. Sampson's sentencing hearing—because of juror misconduct that resulted in the dismissal of two sitting jurors—the District Court twice had cause to individually *voir dire* each juror again, including Juror C.  Both times, the District Court reminded Juror C that she was under oath and obligated to be truthful.  JSA254, JSA258.  Both times, she responded that she understood. JSA254, JSA258.  Despite all of these instructions, reminders, oaths, affirmations, and inquiries, Juror C neither told the truth about nor ever sought to change her false questionnaire answers.

3.    **Juror Dismissals Before And During The Sentencing Hearing.**

During *voir dire* and the sentencing hearing, the District Court dismissed *for cause* at least ten *veniremen* and sitting jurors expressly because they had been dishonest or their personal experiences raised doubt about their ability to serve impartially.

a.    **Jurors Struck For Dishonesty.**

The District Court struck for cause three prospective jurors (Jurors 33, 126, and 198) and two sitting jurors (Jurors 58 and 180) because they were not, or appeared not to be, candid.

1)    **Prospective Jurors.**

Juror 33 had not mentioned that he had a drug problem when he responded to questionnaire Question 32, though he had mentioned his brother's addiction. *See Sampson*, 820 F. Supp. 2d at 196 (juror "just didn't really feel [he] had to" disclose the information (alteration original) (internal quotation marks omitted)). The District Court excused him upon learning of this dishonesty. *See id.*

Juror 126's answers to questions during *voir dire* led the District Court to believe he was not being candid. "I have, observing his demeanor, the definite impression that he would be unable to apply the law, and, indeed, in some respects, was not candid when he filled out the questionnaire." *Id.* (internal quotation marks

11

omitted).  Based on this apparent lack of candor, the District Court excused him.
*See id.*

Juror 198 said in *voir dire* that, though he had written on his questionnaire
that he believed Mr. Sampson should be executed, his understanding of the death
penalty had become more nuanced in the ensuing month before his individual *voir
dire.  See* SA33–35 [Tr. (Oct. 21, 2003) at 112–14].  The District Court believed
the juror was dissembling so he would be selected and dismissed him.  *See* SA36
[*id.* at 148] ("I really do have the definite impression that this person is not
trustworthy in terms of following the law.").

### 2)    Sitting Jurors.

Juror 58 was observed during the sentencing hearing nodding to someone in
the courtroom gallery and, separately, intently watching members of the victims'
families as they reacted to particularly difficult evidence.  *See* SA42–43 [Tr. (Nov.
18, 2003) at 18–21]; SA50 [Sealed Lobby Tr. (Nov. 20, 2003) at 3].  When
interviewed by the District Court, he denied the conduct and reiterated his
impartiality.  *See* SA45–46 [Sealed Lobby Tr. (Nov. 19, 2003) at 26–32].  But the
District Court itself had seen the juror's conduct at issue and, after re-reading the
juror's questionnaire and initial *voir dire* transcript, determined he had been
dishonest from the start:  Though at *voir dire* Juror 58 had denied seeing any pre-
sentencing news coverage, when questioned during the sentencing hearing, he said

12

he recognized a victim's father from pre-sentencing news coverage. *See* SA49–55 [Sealed Lobby Tr. (Nov. 20, 2003) at 2–8]. The District Court excused Juror 58, because "[w]e all worked hard to select a jury that would be fair and impartial and follow the law. It's not appropriate to jeopardize that by keeping [Juror 58]." SA51 [*id.* at 4].

Juror 180 violated the District Court's instruction when, according to two witnesses, he discussed Mr. Sampson's ongoing sentencing hearing with his fellow Sons of the American Legion members. *See, e.g.,* SA56–57 [Sealed Lobby Tr. Pt. II (Dec. 12, 2003) at 4–7]. In a mid-sentencing hearing *voir dire*, Juror 180 admitted his involvement in the Sons of the American Legion, which he had not disclosed in response to the questionnaire's express inquiry, and admitted talking about the case. *See* SA58–59 [*id.* at 13–18]. The District Court excused Juror 180, citing his lack of candor on the questionnaire and during the mid-sentencing *voir dire*. *See* SA59–60 [*id.* at 20–24].

### b.      Jurors Struck For Similar Personal Experiences.

The District Court also found cause to strike five prospective jurors (Jurors 14, 28, 52, 118 and 230) because their life experiences, or the experiences of those close to them, had parallels to some of the mitigating or aggravating evidence the jury would hear at the sentencing hearing.

13

Juror 14's brother was mentally ill.  *See Sampson*, 820 F. Supp. 2d at 195. At *voir dire*, Juror 14 said that, because of her personal experiences, she was "very concerned" about her ability to balance the facts for and against the death penalty if she heard evidence of Mr. Sampson's mental illness.  *See Sampson*, 486 F.3d at 40.  The District Court excused Juror 14, concluding the sentencing hearing would "become an especially difficult ordeal for her," such that the court was "sufficiently concerned that her experience with her brother will substantially impair her ability to succeed in what [the court thought] would be an effort to follow the law and that she would be in such great risk of having a breakdown of some sort that it could infect the rest of the jury." *Sampson*, 820 F. Supp. 2d at 195 (alteration original) (internal quotation marks omitted).

Juror 28 also had a close relative with psychological problems.  *See Sampson*, 486 F.3d at 40.  On her questionnaire, she wrote that she would be unable to sentence a mentally ill defendant to death regardless of the facts, *see id.*, but also said she would be able to follow the law as instructed by the court, *see* SA22–23 [Tr. (Oct. 1, 2003) at 117–18].  The District Court excused her:  "I think that she has such intense and recent experience with the mental problems of her child that, as she heard the evidence, . . . it would be uncommonly and unduly difficult for her to follow the law and . . . she would actually prove to be

substantially impaired in her ability to consider everything once she heard . . . about Mr. Sampson's mental condition." SA24–25 [*id.* at 123–24].[5]

Juror 52 wrote on her juror questionnaire that her sister suffered from mental illness and was an alcoholic. *See Sampson*, 820 F. Supp. 2d at 194. The District Court observed that the juror was "on the verge of weeping" as she discussed her sister and excused her, saying it was "'concerned that if we start hearing about somebody else's family history and claims of mental illness that it's going to have an unduly emotional effect on her and that it could not only be very painful for her, but cause her to be unable to go through the process that a juror has to go through.'" *See id.* at 195.

Juror 118 had stated on his questionnaire that his godson recently had been shot in the course of a carjacking. *See* SA27–28 [Tr. (Oct. 14, 2003) at 153–54]. The District Court immediately drew the parallel to Mr. Sampson's underlying carjacking crimes. *See* SA29–30 [*id.* at 155–56]. Following a lengthy *voir dire*, the District Court excused Juror 118 because "I have the definite impression . . . that he would not be able to apply the law in one significant respect. I don't

---

[5] On direct appeal, at the Government's urging, this Court found no abuse of discretion in the District Court's dismissal of Jurors 14 and 28 because the District Court's "determin[ation] that the juror's personal circumstances were such as to substantially impair his or her ability to serve impartially in a capital case . . . presented a judgment call" and were "therefore, paradigmatic examples of a trial court's exercise of informed discretion." *See United States v. Sampson*, 486 F.3d 13, 41 (1st Cir. 2007).

believe he'd be able to follow the law with regard to disregarding his personal experience. . . . I know he's determined to put that aside, but it is a brutal omnipresence." SA31 [*id*. at 196].

Juror 230 revealed during individual *voir dire* that his wife was on medication for emotional problems. *See* SA38–40 [Tr. (Oct. 23, 2003) at 68–69, 86]. He attributed her medication to her not being a "strong person," SA39 [*id.* at 69], expressed his view that the mental health professionals treating her were "push[ing] medication too much," SA38 [*id.* at 68], and stated that he had tried to get her to stop taking the prescribed medication, *see* SA39 [*id.* at 69]. The District Court excused him because, *inter alia*, "he's essentially mitigation impaired on mental illness. He's going through a divorce. His wife suffers or has been diagnosed with depression and taking medication, but he expresses in his body language more than his words even, I would say, antipathy to mental illness and people who treat it." SA40 [*id.* at 86].

### B.    Mr. Sampson's Juror Claim.

Mr. Sampson filed his Amended § 2255 Motion on March 29, 2010 (hereinafter, "§ 2255 motion"). As is relevant here, the § 2255 motion alleged juror misconduct in violation of Mr. Sampson's Fifth and Sixth Amendment rights. In the motion, Mr. Sampson presented evidence that three of the empanelled jurors had provided what appeared to be inaccurate responses to material questions

during *voir dire*. JSA193.[6] The § 2255 motion argued that the jurors' apparently dishonest answers implicated Mr. Sampson's constitutional right to a fair and impartial jury, either because the jurors were actually or impliedly biased or under *McDonough*. *See* JSA193–212. Mr. Sampson sought an evidentiary hearing.

### 1. The § 2255 Motion's Allegations Regarding Juror C.

Through § 2255 counsel's investigation, Mr. Sampson learned facts indicating that Juror C had given multiple inaccurate answers on her juror questionnaire. Before Mr. Sampson's sentencing hearing, Juror C had been a victim of domestic violence at the hands of her ex-husband, P, and as a result P had been arrested and criminally charged. *See* JSA194–96. Juror C had been questioned by police following one violent incident and had taken out a restraining order against P. JSA195. These events showed that Juror C had been a victim of a crime and had some involvement with the criminal justice system, despite her uniformly negative answers to the relevant questions on her questionnaire. JSA194.

Relying on these facts, the § 2255 motion alleged that Juror C had given inaccurate responses to at least three of the questions on her questionnaire.

---

[6] Though the § 2255 motion implicated three jurors, Mr. Sampson ultimately sought relief based on the conduct of only two jurors. While the District Court made findings regarding all three jurors, only Juror C is at issue in this appeal.

JSA194.  The District Court agreed that the § 2255 motion's allegations merited an evidentiary hearing.

### 2.    The Evidentiary Hearings On Juror Misconduct.

### a.    The First Evidentiary Hearing – November 18, 2010.

Juror C was placed under oath upon appearing in the District Court on November 18, 2010.  *See Sampson*, 820 F. Supp. 2d at 187.  The District Court instructed her to re-read her responses to her 2003 questionnaire and the court's related instructions.  *See* JSA430.  After she had done so, the District Court—as it had multiple times in 2003—asked whether she wished to make any changes to her 2003 questionnaire responses.  *See Sampson*, 820 F. Supp. 2d at 187.  Juror C said only that she believed one of her answers was incomplete, the same question, Question 24, with which she had struggled in 2003; she did not change any of her responses.  *See* JSA433–34.  Under pointed questioning thereafter, Juror C admitted a multitude of relevant facts, numbered below—all of which she had concealed in 2003:

Juror C was twice married.  *See Sampson*, 820 F. Supp. 2d at 184.  Her first marriage ended because her husband was unfaithful.  JSA784.  Juror C's second husband, P, (1) had a drinking and drug problem which contributed to the breakdown of their marriage.  *See Sampson*, 820 F. Supp. 2d at 184.  P (2) was violent toward Juror C and had threatened her multiple times, including at

18

gunpoint, and was (3) arrested in connection with these threats. *See id.* (4) Police had been called to the family's home on at least one occasion, and on another, (5) Juror C had taken P's gun to the local police chief to keep it away from her husband. *See id.* (6) Juror C's sons had witnessed P's assaults, and (7) both she and (8) they had been questioned by police as a result. *See id.* at 184, 186 n.21. (9) Juror C had obtained a restraining order against P, (10) which he violated, (11) resulting in him being criminally charged. *See id.* at 184–85. Juror C believed (12) she was treated fairly by the police and the courts in connection with P's domestic violence. *See id.* at 185. These events were "horrible . . . like the end of [her] life." *See id.* at 184.

Every one of these dozen newly disclosed facts was the subject of a direct inquiry on the questionnaire.[7] *See id.* at 185–86 & n.21. Each required an affirmative answer to a question Juror C instead had answered in the negative. *See id.* And, each required Juror C to correct the record at the earliest opportunity, especially when the District Court asked her, as it did multiple times, if she wished to change or correct any of her earlier responses. *See id.* at 183, 187. Despite the District Court's repeated emphasis and instruction—that she was required to provide personal information in response to the questionnaire and could do so

---

[7] The full text of each question to which Juror C gave a dishonest answer is set forth *infra* in Part B.3 of this Statement of Facts ("SOF").

19

privately if she wished—Juror C testified: "'*When I was filling out this questionnaire, my personal life—that was my personal life. . . . I didn't think my personal life had anything to do with me being a juror.*'" *Sampson*, 820 F. Supp. 2d at 187 (ellipsis original) (emphasis added).  Nor had she wanted to provide that information.  *See, e.g.*, JSA819–20 ("I didn't think it was anybody's business.").

The facts concerning P were not the only relevant facts Juror C had concealed, however.  The parties and the court learned in November 2010 for the first time that, instead of having two sons, as she had responded on her questionnaire, Juror C actually had five children, including a daughter, J.  *See Sampson*, 820 F. Supp. 2d at 187.  At the first evidentiary hearing, the significance of this previously concealed fact was not yet clear.

### b.    The Second Evidentiary Hearing – March 18, 2011.

Based on the new information Juror C revealed during the first evidentiary hearing, Mr. Sampson's counsel conducted further investigation, the results of which prompted the District Court to recall Juror C for a second evidentiary hearing on March 18, 2011.  *See id*.  Specifically, Mr. Sampson's counsel found material, undisclosed information regarding the employment and criminal history of J, Juror C's daughter, whose existence and identity Juror C had concealed until the November 2010 evidentiary hearing.  *See id*. 186–87.

At the March 2011 hearing, the District Court once again opened by asking Juror C if she wished to amend her prior answers or testimony.  This time she did: She told the District Court that at the November 2010 evidentiary hearing she had omitted that her "daughter . . . 'like 20 years ago, was arrested.'"[8]  *Id*. at 187.  Juror C testified that she had realized her omission after leaving the first evidentiary hearing, but did not have the District Court's telephone number by which to inform it of this omission.  *See* JSA779–80.  This excuse, the District Court found, was "dishonest," as the District Court previously had given Juror C its phone number in connection with securing her presence at these very hearings.  *See Sampson*, 820 F. Supp. 2d at 187.  Juror C later undermined her excuse even further, testifying that she had *intentionally* omitted her daughter's incarceration because she had not wanted to admit to it.  *See id*. at 185 & n.20.  The District Court concluded that "[Juror] C mentioned J at the outset of the March 18, 2011 hearing only because she had correctly inferred that she had been recalled because J's criminal history had been discovered."  *Id*. at 187.

At the second evidentiary hearing, Juror C had volunteered this single limited correction to her prior testimony.  Actually, the facts of J's life required

---

[8] In fact, J was arrested twice in 1997 and once in 1998, *see* 820 F. Supp. 2d at 183—and again in June 2010.  JSA795–96.

Juror C to change her answers to multiple material questions on her questionnaire. The following new facts emerged in the March 2011 hearing:

J, who lived in Florida with (1) her own children, (2) was Juror C's first child and only daughter. *See id*. at 183. J (3) had been a highly regarded administrative secretary and part-time police dispatcher at the Sanibel, Florida, Police Department. *See, e.g., id*.; JSA985, 990, 997; D.E. 1194, at 23 (¶ 55). J had "loved the job," JSA789, and Juror C was very proud of her daughter at that point. *See Sampson*, 820 F. Supp. 2d at 183. In 1997, however, (4) J was arrested and (5) charged with stealing police department equipment and then (6) arrested a second time and (7) charged with stealing and using a co-worker's credit card. *See id*. (8) J was sentenced to six months probation, but in 1998 (9) violated her probation by absconding and (10) possessing and testing positive for cocaine. *See id*. She subsequently (11) was sentenced to six months in prison for the probation violations, during which time Juror C visited J in jail and was "distraught by her daughter's appearance." *See id*. at 183. Juror C felt (12) J was treated fairly by the police and the courts. *See id*. at 186 n.21.

Every one of these dozen numbered facts was the subject of a direct inquiry on the questionnaire.[9] *See id*. at 185–86 & n.21. Each required an affirmative

---

[9] The text of the questions to which Juror C provided dishonest answers is set forth *infra* in SOF Part B.3.

answer to a question Juror C instead had answered "No" or answered incompletely. *See id.* And, each required Juror C to correct the record at the earliest opportunity, especially when the District Court asked her, as it did multiple times, if she wished to change or correct any of her earlier responses. *See id.* at 183, 187.

### 1)    Juror C Acknowledges Her Prior Dishonesty.

J's arrest was the only fact Juror C volunteered at the second evidentiary hearing. Counsel's investigation and briefing after the first evidentiary hearing, however, meant that by the second hearing the parties and the District Court were better equipped to elicit information from her through pointed questioning. In response to that questioning, Juror C acknowledged the facts relating to J's employment in—and later run-ins with—law enforcement.

Juror C also admitted under questioning to some of her other prior dishonesty during *voir dire*. For example, she had lied about whether anyone close to her had ever been in prison because she had not wanted to admit the truth. *See Sampson*, 820 F. Supp. 2d at 185 n.20, 187 ("THE WITNESS: I didn't want to admit it. THE COURT: But you knew it? THE WITNESS: Oh, yeah. THE COURT: *So with regard to [that question], you gave me, and everybody else, an answer that you knew was not true, right?* THE WITNESS: *Yes.*"). And she had concealed both her domestic dispute with P, as well as her own religion, because "I

23

didn't think it was anybody's business." JSA819–20. *See also Sampson*, 820 F. Supp. 2d at 186 n.21, 187.

### 2) Juror C's Responses Reveal Her Disdain For Her Daughter's Criminal Conduct.

Juror C's attitude toward the facts she had concealed was as striking as the facts themselves. She was visibly proud of her daughter's accomplishments working for the police department, on the one hand, and on the other hand became overwrought discussing J's transgressions. *See Sampson*, 820 F. Supp. 2d at 158, 193. Juror C was personally, deeply "ashamed" by J's actions, which were "'humiliating'" and a "'nightmare'" and "'a horrible, horrible time in [Juror C's] life.'" *Id.* at 183–84, 187. The thought of J's drug addiction and incarceration "kill[ed]" Juror C, so much so that after J's arrest, Juror C had refused to associate with her daughter for a period of time. *See id.* at 183–84, 187, 194. She repeatedly tried to dissociate herself from the life her daughter (and her ex-husband) had led. *See id.* at 183–84 ("she 'could not admit that [ ] would happen in [her] family'" (alterations original)).

The import of Juror C's dishonesty and demeanor was unmistakable to the District Court:

> If the court had known that [Juror] C was deeply distressed because: three years earlier she had herself been threatened with being shot and killed; she had ended a marriage due to her husband's substance abuse; and she felt deeply ashamed of her daughter's criminal activity, drug abuse, and incarceration, the

24

> court would have found that, after being exposed to the evidence in the case, [Juror] C was likely to be influenced by her own life experiences and probably be substantially impaired in her ability to decide the case based solely on the evidence. ***She would, therefore, have been excused for cause for this significant risk of partiality alone***.

*Id*. at 195–96 (emphasis added).

### c.    The Third Evidentiary Hearing – August 8, 2011.

After the second evidentiary hearing, the parties filed proposed findings of fact and conclusions of law. In its proposed findings, the Government bolstered its contention that Juror C was unbiased by emphasizing her testimony during the first evidentiary hearing that she had had no contact with the victims' families, her fellow jurors, or the press since "the day the verdict was handed down in 2003." *See* D.E. 1192, at 22. Once again, though, Juror C's version of events was not true. *See* 820 F. Supp. 2d at 187.

In fact, in January 2004—a month after the jury's service concluded—Juror C and a fellow juror attended Mr. Sampson's sentencing. *See id*. at 188. At the sentencing, Juror C told newspaper reporters that she had come because she needed "'to meet the [victims'] families'." *Id*. (alteration original). Based on the newspaper articles and the Government's emphasis on Juror C's prior testimony contradicting them, the District Court recalled Juror C for a third evidentiary hearing on August 8, 2011. *See Sampson*, 820 F. Supp. 2d at 188. Once again, the District Court began by asking Juror C if she wished to correct any of her prior

25

testimony. *See* JSA1031. Once again, Juror C said she was not aware of anything that needed correcting. *See* JSA1031.

Under questioning, however, she acknowledged that she had attended Mr. Sampson's sentencing.[10] *See Sampson*, 820 F. Supp. 2d at 188. Asked whether she had a chance to meet with the victims' families the day of the sentencing, Juror C gave a non-answer: "I was—we were just standing there watching them leave. We waited for them to go and then we had—I had to get back to work." JSA1034. Asked more specifically whether she had talked to either the Rizzo or McCloskey family, Juror C acknowledged that she had: "They saw me and they came over and gave me a hug and thanked me and I just cried and left." JSA1034.[11] Pressed as to whether she could remember anything else, Juror C at first said she did not, but then provided specific details: "[W]hat I said was to [Mrs. Rizzo], I just said: 'My son's going to Iraq.' You know, 'I might lose my son, too.' . . . And [Mrs. Rizzo] was just skin and bones and—it was just very emotional. . . . Just skin and bones. Just dealing with—just—the poor thing." JSA1034–36, 1045.

---

[10] As the District Court noted, Juror C's attendance was not improper, but was relevant to her credibility and to the Government's argument that she was impartial. *See Sampson*, 820 F. Supp. 2d at 188 n.23.

[11] *See also* Exhibit subject to Sealed Assented-To Motion to Correct or Modify the Record on Appeal (Jan. 10, 2013).

26

Asked by the District Court whether she had had any other communications from the families (other than a letter she had previously mentioned), Juror C answered "No." JSA1050. Asked more directly whether she had received anything, such as a card, from any member of any victim's family, Juror C admitted that actually she had received a letter from another of the families. JSA1050–51; *Sampson*, 820 F. Supp. 2d at 188. Eventually, it came out that, seven years after the sentencing hearing, Juror C knew exactly where she kept the letters in her (new) home. JSA1053–54, 1063–64, 1105.

### 3.     Juror C's Dishonest Answers To The Questionnaire.

In all, Juror C dishonestly answered at least ten material questions on the juror questionnaire, *see Sampson*, 820 F. Supp. 2d at 186; JSA263–95:

- Question 32(a): "Have you or anyone close to you ever had or been treated for a drug problem."

  Answer: "No."

  ***In fact:*** Juror C's daughter and ex-husband both had had drug problems, which were known to Juror C.

- Question 34(a): "Do you or anyone close to you work as or for a federal, state, or local prosecutor, or for the federal government in any capacity?"

  Answer: "No."

  ***In fact:*** Juror C's ex-husband, with whom she was still in regular contact, was a United States Postal Service employee of long-standing.

- Question 47: "If you have a spouse or live in companion, and/or any children or grandchildren, please provide the following information [relationship, age, gender, education, employment] for each of them."

Answer: Two sons.

*In fact:* Juror C has four sons and a daughter and has grandchildren.

- Question 54: "(a) What, if any, religion were you raised in?  (b) Are you now a member of any religion?  (c) If so, what is your religion?"

  Answer: Juror C answered subpart (b) "No" and did not answer (a) or (c).

  *In fact:* Juror C is an Episcopalian.  She lied about this in November 2010, testifying that she was not religious.  In March 2011, she admitted her faith, testifying that she intentionally answered Question 54 dishonestly because she did not "think it's anybody's business."

- Question 59(a): "Have you or anyone close to you ever been a victim or a witness to a crime, whether it was reported or not?"

  Answer: "No."

  *In fact:* Juror C was a victim of multiple acts of domestic violence, including being threatened at gunpoint with a murder-suicide at the hands of her former husband; her sons had witnessed these events.

- Question 61(a): "Have you or anyone close to you ever been questioned as part of a criminal investigation?"

  Answer: "No."

  *In fact:* Juror C gave police a statement when she turned P's gun over to them; she gave police an oral and then a written, signed statement, and her sons were questioned by police after P later violated the restraining order she had against him.

- Question 63(a): "Have you or anyone close to you ever been charged with committing a crime?"

  Answer: "No."

  *In fact:* Juror C's ex-husband had been criminally charged with violating her restraining order, and Juror C's daughter had been charged with grand theft, fraudulent use of a credit card, and probation violation.

28

- Question 64(a): "Do you or anyone close to you know anyone who is, or has been, in prison?"

  Answer: "No."

  ***In fact:*** Juror C's daughter had been incarcerated, and Juror C had visited her in prison.  Juror C concealed this information until the second evidentiary hearing in March 2011.

- Questions 65(a): "Have you or anyone close to you ever had an experience with the police or the criminal justice system in which you or that person were treated fairly?"

  Answer: "No."

  ***In fact:*** Juror C believed she and her family had been treated fairly in connection with her domestic dispute and that her daughter had been treated fairly in connection with her crimes.

- Question 68(a):  "Have you or anyone close to you ever been employed as a private security agent or in law enforcement as a police officer or investigative agent, a prosecutor, or in any other way?"

  Answer: "No."

  ***In fact:*** Juror C was proud of her daughter's two years working for the Sanibel, Florida, Police Department.  Juror C concealed this information until questioned in March 2011.

### 4.    Juror C's Demeanor During The Evidentiary Hearings.

The cold transcript does not adequately convey Juror C's emotional state during the three evidentiary hearings.  In the District Court's words, Juror C "repeatedly characterized each of [her] experiences as 'horrible' and a 'nightmare.' She often cried when required to think about these matters.  She was frequently unable to discuss them candidly or coherently."  *Sampson*, 820 F. Supp. 2d at 158. She was "'tearful[ ]'" describing J's criminal conduct, *id*. at 183, and P's domestic

violence, *id*. at 184, and "visibly distraught" as she talked about matters involving her ex-husband, *id*. at 187.

Juror C's demeanor in the evidentiary hearings was central to the District Court's decision that "each of [Juror] C's inaccurate responses to questions that should have elicited relevant information about J and P was dishonest, *meaning knowingly and intentionally false, rather than the result of a good faith misunderstanding or mistake*." *Id*. at 193 (emphasis added). *See, e.g., id*. at 159, 181 (discussing demeanor). According to the District Court, even years after Mr. Sampson's sentencing hearing, Juror C's "shame and embarrassment were so intense that she could not discuss those matters candidly, unemotionally or, often, coherently. Moreover, thinking of J and P damaged, if not destroyed, [Juror] C's general ability to think clearly and respond rationally, rather than with excessive emotion, about other [matters]." *Id*. at 193.

### 5.  Juror C's Dishonesty Undermined *Voir Dire*.

*Voir dire* was intended to uncover jurors' views on substance abuse, criminal behavior, law enforcement, and the justice system. Because Juror C did not give truthful answers, *voir dire* could not serve its purpose and her views and life experiences similar to the evidence remained hidden, as the District Court observed:

> We labored over that questionnaire for a long time in every which way. It should have elicited the fact that her husband, as

30

she perceived it, threatened to kill her and her daughter was in prison.   And she didn't misunderstand the questions, she testified in November [2010] and repeated in March [2010] that she thought that was her private life, it was nobody's business, it didn't have anything to do with this case.  *It fundamentally undermined the purpose of voir dire*.

*See* JSA1135–36 (emphasis added).

Juror C intentionally concealed her negative views on drug abuse that had led her to distance herself from her daughter and ex-husband and to make clear to others that her daughter's and her ex-husband's problems were of their own making, not hers.  She intentionally concealed her negative views on criminal behavior that had led her to temporarily cut off her daughter after her transgressions and hide her husband's unlawful conduct.  She intentionally concealed her positive views on law enforcement that caused her such pride in her daughter's prior employment at the Sanibel Police Department and such shame at her daughter's fall from grace.  She intentionally concealed her positive views of the justice system that she believed had treated her and her family members fairly on multiple occasions.  And, she intentionally concealed even basic facts like the number of children she had, her religion, and her ex-husband's federal employer, some of which would have led to the discovery of her more substantive views.

The personal experiences Juror C had perjured herself to conceal and could not discuss without becoming irrational and overwrought paralleled Mr. Sampson's personal experiences about which the jury heard testimony:

31

- ▪ <u>At the sentencing hearing</u>, four female bank tellers testified about the experience of having Mr. Sampson point a gun at them as part of the Government's aggravation case.  <u>Juror C</u> had been threatened at gunpoint and in numerous other ways by her ex-husband, an experience that put her in fear for her life.  *Sampson*, 820 F. Supp. 2d at 193–94 ("*Like Sampson's victims, [Juror] C had experienced the fear of being murdered.  Like the bank tellers Sampson robbed, she had been threatened with being shot.*" (emphasis added)).

- ▪ <u>At the sentencing hearing</u>, multiple witnesses testified about Mr. Sampson's drug and alcohol abuse, and Mr. Sampson's ex-wife testified that his substance abuse led to the break-up of their marriage. <u>Juror C</u> blamed the failure of her second marriage on her husband's substance abuse, and could barely acknowledge the fact of her daughter's substance abuse.  *See id*. at 194 ("*Like Sampson's former wife [Juror] C had a marriage that was destroyed by her husband's substance abuse.*" (emphasis added)).

- ▪ <u>At the sentencing hearing</u>, multiple witnesses testified about Mr. Sampson's decades in and out of prison.  <u>Juror C</u> was so ashamed of her own daughter's incarceration that she repeatedly perjured herself to conceal it.  *See id*. at 159, 193.

- ▪ <u>At the sentencing hearing</u>, Mr. Sampson's ex-wife was the only member of his family to testify on his behalf, and jurors learned that Mr. Sampson's biological family members had turned their backs on him after his arrest, flatly refusing to speak with defense counsel in connection with the mitigation case.  <u>Juror C</u> herself had cut off her daughter after her arrest on theft charges.  *See id*. at 194 ("*And like Sampson's parents, [Juror] C was deeply ashamed of her child and refused to be associated publicly with her problems.*" (emphasis added)).

As the District Court found:

> The matters about which [Juror] C repeatedly lied under oath were *comparable* to matters presented by the evidence in Sampson's case. . . . *[T]here was a high risk that after being exposed to the evidence at trial, [Juror] C's decision on whether Sampson should be executed would be influenced by her own life experiences* and, therefore, a high risk that she

would be substantially impaired in her ability to decide whether Sampson should be executed based solely on the evidence.

*Id*. at 159 (emphases added).

The District Court held that Juror C "would have been excused for cause solely" on the basis of the similarities between her life experiences and the evidence to be presented at the sentencing hearing even if she had revealed all these facts the first time she was asked. *See id*. at 159. Her dishonesty made her excusal for cause that much more certain. *See id*.

### C.    Proceedings Following The § 2255 Evidentiary Hearings.

#### 1.    The District Court's October 20, 2011 Orders.

On October 20, 2011, the District Court granted the § 2255 motion's juror misconduct claim with respect to Juror C, applying the test the Supreme Court laid out in *McDonough*. *See generally Sampson*, 820 F. Supp. 2d 151. The Order emphasized her repeated perjury, the close resemblance Juror C's life experiences had to the evidence, *see id*. at 181–82, 193–94, and her unchecked emotions—still raw these many years since *voir dire*—as she was forced to face those experiences, which made it improbable that she could decide Mr. Sampson's fate solely on the evidence, *see id*. at 189–90, 193. The District Court had its own precedent for the decision, having dismissed multiple potential and sitting jurors for cause for these same reasons during Mr. Sampson's case. *See id*. at 194–96; *see supra* SOF Part A.3. The District Court held that Juror C's ability to be impartial was doubtful and

that had Juror C honestly answered the questions put to her in 2003, it would have dismissed her for cause. Consequently, the District Court found, Mr. Sampson is entitled to a new sentencing hearing.

In a contemporaneous order, the District Court directed the parties to brief what procedural steps it should take, including the form of its forthcoming order granting resentencing and whether that order would entitle the Government to immediate appeal.[12] In its response, the Government indicated that it would attempt to appeal directly, under 28 U.S.C. § 1291, the District Court's ruling on the juror claim. But—acknowledging potential jurisdictional problems with a direct appeal at this stage—the Government also stated that it would seek certification to take an interlocutory appeal under 28 U.S.C. § 1292(b) and otherwise petition for mandamus relief. *See* JA299–303.

### 2.      The District Court's May 10, 2012 Order.

On May 10, 2012, the District Court issued the order that triggered the Government's appeals, vacating Mr. Sampson's death sentence and ordering Mr. Sampson's resentencing under § 2255. *See Sampson*, 2012 WL 1633296, at *15. The District Court also allowed the Government's Motion to Certify Interlocutory

---

[12] In a third order, also dated October 20, 2011, the District Court granted the Government's motion for summary dismissal as to certain of Mr. Sampson's non-jury-related claims and denied it as to others. This order is not relevant to the instant appeal.

34

Appeal Under 28 U.S.C. § 1292(b), but in so doing expressly did not decide the key question of whether § 1292(b) is available in this § 2255 proceeding. *See id.* at *1. The District Court left that question for this Court to decide, should it reach the issue. *See id.* at *11. The District Court then stayed the proceedings pending resolution of the Government's attempts to appeal. *See id.* at *15.

### 3.    The Government's Attempted Appeals.

On May 18, 2012, the Government simultaneously filed (1) a Notice of Appeal in the District Court (First Circuit Case No. 12-1643), and (2) a petition seeking interlocutory appeal under § 1292(b) in this Court (First Circuit Case No. 12-8019). On June 12, 2012, on the Government's motion, this Court consolidated the two cases and ordered the parties to file unified briefs on "all issues, including jurisdiction, certification, merits and relief requested." On September 27, 2012, in its opening brief, the Government also argued that appellate jurisdiction is available under 18 U.S.C. § 3731 and petitioned this Court for a writ of advisory mandamus.

### SUMMARY OF THE ARGUMENT

Seeking to reverse the District Court's ruling, the Government attempts an appeal where none is available. Trying to overcome the multiple hurdles that preclude appellate jurisdiction now, the Government presents this Court with an internally inconsistent menu of options, none of which provides the jurisdictional

35

access the Government seeks:  First, the Government's attempted direct appeal under 28 U.S.C. § 1291, in Case No. 12-1643, is premature; the Supreme Court's decision in *Andrews v. United States*, 373 U.S. 334 (1963)—which held that a § 2255 resentencing order is not a final order—bars the Government from appealing until after the conclusion of Mr. Sampson's new sentencing hearing.  Second, the Government's petition for interlocutory appeal under 28 U.S.C. § 1292(b), in Case No. 12-8019, should be denied because a § 2255 motion is not a "civil action" within the meaning of § 1292(b), § 2255 itself provides the exclusive mechanism for appeal, and because the other criteria for granting § 1292(b) interlocutory appeal are not present here.  Third, the Government's newly-asserted argument that 18 U.S.C. § 3731 permits appellate jurisdiction fails because the District Court's order does not meet the requirements of the statute's plain language.  Fourth, the Government's petition for a writ of advisory mandamus should be denied because granting it would stretch the limited confines of mandamus relief beyond recognition.

Should this Court reach them, the Government's merits arguments also are fatally flawed.  The District Court's interpretation of *McDonough* is sound under the clear language of that opinion and this Court's case law interpreting it.  The Government argues that relief under *McDonough* is only available upon a showing of actual or implied bias.  This is incorrect.  In fact, the plain language of

36

*McDonough* shows that it is a separate test for those rare instances where a party proves a juror gave intentionally false answers to material questions demonstrating a lack of impartiality that would have given rise to a valid challenge for cause. The Government cannot overcome a fundamental problem with its position: As the District Court noted, "[i]f the *McDonough* test required a showing of actual or implied bias in addition to a showing of dishonesty, the test Justice Rehnquist stated for the majority would be superfluous." *Sampson*, 820 F. Supp. 2d at 176. *See also id.* ("If the *McDonough* test required actual or implied bias, the application of the *McDonough* test in *Amirault* would have been superfluous in light of the First Circuit's conclusion that neither actual nor implied bias were shown."). Nor does the Government fare better by attempting to recast the District Court order to mean that *McDonough* would be met anytime a juror theoretically *could* have been struck for cause. The District Court made no such ruling; instead, the court found that it *would have* struck Juror C for cause, a factual finding the Government does not challenge.

Ultimately, this Court does not have jurisdiction at this stage and should "pretermit [these] proceedings shy of the merits." *In re Recticel Foam Corp.*, 859 F.2d 1000, 1001 (1st Cir. 1988). But if it reaches the merits, this Court should affirm the District Court's order granting Mr. Sampson a new sentencing hearing.

37

**ARGUMENT**

**I.    This Court Lacks Jurisdiction Over The Government's Appeals.**

It is elementary that a court is obligated to inquire into its own jurisdiction. *In re Recticel Foam Corp.*, 859 F.2d 1000, 1002 (1st Cir. 1988).  Thus, before addressing the merits, this Court first must determine whether it has jurisdiction over the Government's appeals.  *See, e.g.*, *id*.  It does not.

The Government accuses Mr. Sampson of wanting to "have it both ways," *i.e.*, for neither the civil nor criminal appellate rules to create appellate jurisdiction.  *See* Br. at 67.  Mr. Sampson's position is consistent, however:  the District Court's decision can later be appealed under § 1291 when there is a final order.  Nor does the District Court's interlocutory order fall within the limited jurisdictional bases permitted by the plain language of either § 1292(b) or § 3731, both of which are far more limited than § 1291.  It is, instead, the Government that wants it both ways— or rather, four ways—by alleging the existence of appellate jurisdiction under four mutually exclusive avenues, none of which currently permits appeal of the District Court's non-final order.

**A.    The Government's § 1291 Appeal Should Be Dismissed As Premature.**

The Government's attempted § 1291 direct appeal of the District Court's order granting Mr. Sampson's motion for resentencing should be dismissed as premature.  This Court lacks jurisdiction to review the order below until after the

occurrence of the new "sentence[ing]" required by 18 U.S.C. § 3594, which itself cannot occur until after the "separate sentencing hearing" mandated by 18 U.S.C. § 3593(b).  For the Government to be heard now on direct appeal, it must convince this Court to disregard the well-established and never-contravened Supreme Court precedent of *Andrews v. United States*, 373 U.S. 334 (1963), and to disagree with the Third and Fourth Circuits, which both have ruled in capital cases against the Government on the exact same issue, in the exact same circumstances.  *See United States v. Hammer*, 564 F.3d 628, 635–36 (3d Cir. 2009); *United States v. Stitt*, 459 F.3d 483, 485 (4th Cir. 2006).[13]  Ultimately, the Government cannot overcome the unquestioned bar to this Court's jurisdiction, and the § 1291 direct appeal must be dismissed.

> **1.     28 U.S.C. § 1291 And The Supreme Court's *Andrews* Decision Require That The Government's Appeal Be Dismissed.**

Under the plain language of 28 U.S.C. § 1291, this Court has jurisdiction of appeals "from all final decisions" of the district courts.  *See* 28 U.S.C. § 1291. Since 1963, it has been settled that an order of the district court in a § 2255

---

[13] The Government must also explain away its decision to dismiss its own appeal in the Seventh Circuit, again under the exact same circumstances as here, when confronted with a § 2255 capital movant's motion to dismiss.  *See United States v. Johnson*, No. 11-1326, D.E. 12 (7th Cir. May 26, 2011); *id*., D.E. 3 (Feb. 23, 2011).

39

proceeding that grants a movant the relief of a resentencing is not such a final decision. *See Andrews*, 373 U.S. at 339.

In *Andrews*, the Supreme Court pointed out that § 2255 has its own appeal provision that states: "An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." *Id.* at 338 (quotation marks omitted). The Court went on to hold that "where, as here, what was appropriately asked and appropriately granted was the resentencing of the petitioners"—one of the specific remedies available in § 2255—"*it is obvious that there could be no final disposition of the § 2255 proceedings until the petitioners were resentenced.*" *Id.* at 340 (emphasis added). The Court emphasized "the long-established rule against piecemeal appeals in federal cases," stressing that the basic reason for the rule "is particularly apparent" when resentencing is ordered because until the resentencing occurs "*it is impossible to know whether the Government will be able to show any colorable claim of prejudicial error.*" *Id.* (emphasis added). As the Supreme Court stated, "until the [trial] court acts [on the resentencing], none of the parties to this controversy will have had a final adjudication of his claims by the trial court in these § 2255 proceedings." *Id.*

Consistent with and citing *Andrews*, the Government itself has advised the Eleventh Circuit in a currently pending case that "*no final judgment results in the §*

40

*2255 proceeding until the relief the defendant has appropriately requested has been completed.*"  *See* Brief for the United States, *Brown v. United States*, Nos. 11-15149-EE & 12-10293-EE (11th Cir. Feb. 27, 2012) ("First *Brown* Brief") at 11 (emphasis added).  And yet, the Government asks this Court to rule contrary to *Andrews*, relying on various policy arguments.  The Third and Fourth Circuits rejected almost identical policy arguments the Government advanced in *Stitt* and *Hammer*.[14]  Even were this Court to disagree with its sister Circuits and find any of these policy arguments persuasive, it nonetheless would be obliged to follow the unambiguous, binding Supreme Court precedent—and dismiss the Government's appeal—unless and until the Supreme Court decides to overturn *Andrews*.  *See Stitt*, 459 F.3d at 485 ("[I]f a Supreme Court precedent 'has direct application in a case,' we must follow it, leaving to the Supreme Court 'the prerogative of overruling its own decisions.'" (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)).  *See also Am. Tradition P'ship, Inc. v. Bullock*, 132 S. Ct. 1307, 1308 (2012) (order granting stay pending certiorari) ("[L]ower courts are bound to follow this Court's decision[s] until they are withdrawn or modified . . . ."); *Figueroa v. Rivera*, 147 F.3d 77, 81 n.3 (1st Cir. 1998) ("The [Supreme] Court, however, has admonished the lower federal courts to follow its directly applicable

---

[14] *See, e.g., United States v. Hammer*, 564 F.3d at 634 ("As to the government's argument that a capital sentencing should be equated with a new trial, we find this to be an interesting argument but ultimately lacking in persuasive appeal.").

precedent, . . . and to leave to the Court 'the prerogative of overruling its own decisions.' [quoting *Agostini*.] We obey this admonition." (citations omitted)).

### 2.    Authority From Other Circuits Uniformly Follows *Andrews*.

Consistent with and relying on *Andrews*, the Third and Fourth Circuits—in the precise circumstances presented here, a § 2255 order granting a new § 3594 "sentencing" and § 3593(b) "separate sentencing hearing"—reconfirmed that *Andrews* precludes a Government appeal until the result of the resentencing is known. *See Hammer*, 564 F.3d at 635–36; *Stitt*, 459 F.3d at 485.  In *Hammer*, the Third Circuit dismissed the appeal for lack of jurisdiction, finding *Andrews* controlling and *Stitt* persuasive:  "We agree with the *Stitt* court.  The Supreme Court in *Andrews* and our own court in [*United States v.*] *Allen*[, 613 F.2d 1248 (3d Cir. 1980),] have held all too clearly that we do not have jurisdiction over the government's appeal of the District Court's resentencing order: a § 2255 proceeding is not final until the prisoner is resentenced."  *Hammer*, 564 F.3d at 634.  As the Third Circuit stated, consistent with *Andrews*, "[t]he government will not be able to show prejudicial error until the District Court resentences [the movant], and it will presumably have no reason to appeal if a jury again imposes a

death sentence." *Id.* at 635–36.[15]  The Government did not petition the Supreme Court for a writ of certiorari after either *Hammer* or *Stitt*.

Indeed, *Hammer* and *Stitt* are but two capital case additions to the long line of non-capital cases following *Andrews* and making clear that the Government cannot appeal § 2255 resentencing orders before the resentencing occurs.  *See, e.g.*, *United States v. Hayes*, 532 F.3d 349, 352 (5th Cir. 2008); *United States v. Futch*, 518 F.3d 887, 889, 892 (11th Cir. 2008); *United States v. Hadden*, 475 F.3d 652, 662 (4th Cir. 2007); *United States v. Martin*, 226 F.3d 1042, 1048 (9th Cir. 2000); *United States v. McCoy*, 410 F.3d 124, 130–31 (3d Cir. 2005); *United States v. Duardi*, 514 F.2d 545, 547 (8th Cir. 1975).  *See also* 15B Charles Alan Wright et al., *Federal Practice and Procedure* § 3919.9 (2d ed. 1991).

No Circuit split currently exists on *Andrews'* preclusion of interlocutory appeal of § 2255 resentencing orders, and the Government offers no valid reason for this Court to create one.

### 3.    The Government's Position Is Contrary To The Plain Statutory Language.

Even if this Court were not bound by *Andrews* or persuaded by *Hammer* or *Stitt* and other circuits' caselaw, the Government's statutory argument is simply

---

[15] Though not faced with precisely the same issue, the Tenth Circuit, too, recently agreed that *Hammer* and *Stitt* were correctly decided.  *See United States v. McGaughy*, 670 F.3d 1149, 1154 (10th Cir. 2012).

incorrect. The Government argues that certain "features of a penalty phase trial under the FDPA distinguish it from a 'sentencing' as that term is commonly understood, and support the conclusion that the district court's order is an order granting a 'new trial' within the meaning of § 2255," and, thus, is a final, appealable order within the meaning of § 1291. Br. at 29. The Government's argument, therefore, rises or falls on whether the terminology used in the FDPA is, within the plain meaning of § 2255, a "resentenc[ing]" or a "new trial." The FDPA's language is clear: A new § 3594 "*sentencing*" occurs after a § 3593(b) "separate *sentencing hearing*."

Ignoring the statute's plain terms, the Government renames what Congress calls a "separate sentencing hearing" to be instead a "penalty phase trial," and then makes the bewildering claim that "[t]here is no indication that in using these terms in § 3593(b), Congress intended to demarcate the 'trial' as only occurring during the guilt phase of a federal capital case . . . ." Br. at 45. But Congress's "indication" is the plain statutory language that uses the term "separate sentencing hearing" and then repeatedly differentiates that "separate sentencing hearing" from the "trial."

Section 3594 specifically requires a District Court to impose a "sentence." That sentence, in turn, can only be imposed after the § 3593 "separate sentencing hearing." Section 3593 is titled "Special *hearing* to determine whether a sentence

44

of death is justified." (Emphasis added). The statute provides that "the judge who presided at the *trial* or before whom the guilty plea was entered" shall preside at the "separate sentencing *hearing*." 18 U.S.C. § 3593(b) (emphasis added). As well, "[i]nformation presented [at the separate sentencing *hearing*] may include the *trial* transcript and exhibits if the *hearing* is held before a jury or judge not present during the *trial*, or at the *trial* judge's discretion." 18 U.S.C. § 3593(c) (emphases added). A victim who "attended or observed the *trial*" shall not be excluded automatically from participating in the "separate sentencing *hearing*." *Id.* (emphasis added). And, while the Federal Rules of Evidence govern evidentiary admissions during the "*trial*," during the "separate sentencing *hearing*" "[i]nformation is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials," barring one exception immaterial here. 18 U.S.C. § 3593(c) (emphasis added). Congress even differentiated between the trial and the separate sentencing hearing for purposes of appeal. *See* 18 U.S.C. § 3595. The FDPA's statutory language is clear—neither the § 3594 "sentencing" nor § 3593(b) "separate sentencing hearing" is a "trial."

Notwithstanding the plain statutory language, the Government points to language in a variety of cases discussing issues that—quite literally—have nothing

45

to do with the issue at hand. *See* Br. at 42–44.[16]  Having seized upon a term that

Congress did not use, the Government then suggests that this Court "must begin by

considering the ordinary understanding of" the § 2255 terms "new trial" and

"resentencing" in order to determine which is closest to what the Government calls

the "penalty phase trial." Br. at 39.  But, of course, where this Court must begin is

with the plain language of the statute. *See Jimenez v. Quarterman*, 555 U.S. 113,

118 (2009); *Palmquist v. Shinseki*, 689 F.3d 66, 73 (1st Cir. 2012) ("Our inquiry

begins, as it must, with the statutory text.").

The Government buttresses its argument by asserting that the District Court

order should be construed to grant a "new trial" because "the § 2255 court cannot

'resentence' Sampson, as the lower court was able to do in *Andrews*, but must

convene a jury trial under the FDPA." Br. at 46.  A jury, however, is not required

if both parties agree, in which case the district court alone determines the sentence.

*See* 18 U.S.C. § 3593(b)(3). *See also* 18 U.S.C. § 3592(b) ("The jury, *or if there is*

*no jury, the court*, may consider whether any other aggravating factor for which

---

[16] The Government simultaneously ignores cases that correctly note the statute's
distinction between the trial and the "separate sentencing hearing." *See, e.g.*, *Jones
v. United States*, 527 U.S. 373, 376 (1999) ("The District Court then conducted a
separate sentencing hearing pursuant to § 3593."); *United States v. Ebron*, 683
F.3d 105, 149 (5th Cir. 2012) ("Under the Federal Death Penalty Act . . .
conviction of an offense punishable by death is followed by a separate sentencing
hearing which involves both an eligibility and selection phase."), *petition for cert.
filed* (U.S. Oct. 24, 2012) (No. 12-6956).

notice has been given exists." (emphasis added)); *id.* § 3592(c) (same); *id.* § 3592(d) (same); *id.* § 3593(d) ("The jury, or if there is no jury, the court, shall consider all the information received during the hearing."); *id.* ("the jury, of if there is no jury, the court, shall consider . . . ."); *id.* ("[T]he jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.").

Under the Government's argument, if the parties agreed under § 3593(b)(3) to permit the District Court to conduct the "separate sentencing hearing" *without a jury*, an order granting a new "separate sentencing hearing" would not be a grant of a "new trial" under § 2255. But if the parties did not so agree, the exact same order granting a "separate sentencing hearing"—this time, with a jury—would be a "new trial" within the statutory meaning. This Court should not accept positions that lead to such an absurd result. *See Wagenmann v. Adams*, 829 F.2d 196, 223–24 (1st Cir. 1987) ("Because 'we honor the rule that a statute should be construed so as to avoid unjust or absurd results,' we decline to bend the plain meaning of [a statute] to suit the appellants' wishes." (citation omitted)).

Finally, the Government's argument also fails because, in 1994, when § 2255 was re-enacted and the FDPA was enacted, Congress is presumed to have known of *Andrews*. *See Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is

47

presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change."). By not altering the relevant language of § 2255 or otherwise addressing *Andrews*—and indeed, by purposefully separating the sentencing and "separate sentencing hearing" into different statutes than § 2255—Congress is presumed to have ratified the interpretation of § 2255 set forth in *Andrews*. *See id.* The same legislative ratification—this time, of both *Andrews* and the capital case *Stitt*—is presumed by law to have occurred in 2008 when § 2255 was again re-enacted with the same relevant language.

**B.    The Government's Petition Seeking Interlocutory Appeal Under § 1292(b) Should Be Denied.**

In apparent recognition of the substantial impediments to its § 1291 direct appeal, the Government concurrently moved in the District Court for § 1292(b) certification. But resort to § 1292(b) is not permissible in this case. First, the Government's request turns on the assertion that a § 2255 motion is a "civil action" to which § 1292(b) applies, which it is not. Second, interlocutory appeal is foreclosed by § 2255's comprehensive statutory scheme. Third, even if § 1292(b) did apply to § 2255 motions, the Government cannot meet its burden of proving the factors warranting its application here.

### 1. Section 2255 Motions Are Not "Civil Actions" Within The Meaning Of § 1292(b).

Section 1292(b) permits an appeal, under certain circumstances, "[w]hen a district judge, in making in *a civil action* an order not otherwise appealable under this section" (emphasis added) certifies an interlocutory appeal and this Court accepts the certification. The Government's argument that § 1292(b) applies because a § 2255 motion is a "civil action" within the meaning of that statute is contrary to what the Supreme Court, other courts, certain panels of this Court, and even the Government itself in a pending Eleventh Circuit case have said.

### a. Proceedings Under § 2255 Are Continuations Of The Movant's Criminal Case.

The Supreme Court recently acknowledged lower court confusion over the proper characterization of § 2255 as criminal or civil. *See Wall v. Kholi*, 131 S. Ct. 1278, 1289 n.7 (2011). That confusion appears to stem largely from the Supreme Court's 1959 opinion in *Heflin v. United States* in which a plurality of the Justices stated, in a footnote, that "a motion under § 2255, like a petition for a writ of habeas corpus, is not a proceeding in the original criminal prosecution but an independent civil suit." 358 U.S. 415, 418 n.7 (1959) (citation omitted). *See* Br. at 57 n.13 (agreeing that only four Justices supported the footnote). Relying on that *Heflin* plurality footnote, a number of courts have stated that § 2255 proceedings are civil in nature—including the two decisions of this Court relied on by the

49

Government.  *See* Br. at 52–53 (citing *Trenkler v. United States*, 536 F.3d 85, 94 (1st Cir. 2008); *Rogers v. United States*, 180 F.3d 349, 352 n.3 (1st Cir. 1999)).

The better view among the lower courts that have addressed the issue, however, is that the Court and Congress abrogated the 1959 *Heflin* plurality dicta in 1976 when they approved the Rules Governing Section 2255 Proceedings ("§ 2255 Rules").  The Advisory Committee Notes to the § 2255 Rules ("Note(s)") repeatedly characterize proceedings under § 2255 as a "continuation of the criminal case."  For example, the Note to § 2255 Rule 1 states that "a motion under § 2255 is *a further step in the movant's criminal case and not a separate civil action*," and the Note to § 2255 Rule 11 states that "*a § 2255 action is a continuation of the criminal case*." (Emphases added).  The Notes actually distinguish § 2255 proceedings from civil actions.  *See* Note to § 2255 Rule 3 (noting change to require no filing fee of movant "*to recognize specifically the nature of a § 2255 motion as being a continuation of the criminal case whose judgment is under attack*" (emphasis added)); *id.*, Rule 6 ("This rule differs from the corresponding discovery rule under the § 2254 rules in that it includes the processes of discovery available under the Federal Rules of Criminal Procedure as well as the civil.  This is because of the nature of a *§ 2255 motion as a continuing part of the criminal proceeding* . . . ." (emphasis added)); *id.*, Rule 12 (similar).

50

In a thorough examination of the issue, the Second Circuit in *Williams v. United States* recognized that the adoption of the § 2255 Rules had rendered the old *Heflin* plurality dicta a dead letter. 984 F.2d 28, 30 (2d Cir. 1993). Other courts have followed, acknowledging that "it is now clear that 'a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action.'" *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) (quoting Note to § 2255 Rule 1). *See also United States v. Fiorelli*, 337 F.3d 282, 285 (3d Cir. 2003); *United States v. Cook*, 997 F.2d 1312, 1319 (10th Cir. 1993). Indeed, as the Government acknowledges, *see* Br. at 53–54, certain panels of this Court have stated the same, albeit without discussion of *Heflin*. *See, e.g.*, *United States v. Quin*¸ 836 F.2d 654, 655 n.2 (1st Cir. 1988) ("Although § 2255 proceedings are, strictly criminal, and § 2254 (habeas corpus) civil, the Civil Rules are equally applicable [under § 2255 Rule 12]."); *United States v. Gordon*, 634 F.2d 638, 639 (1st Cir. 1980) ("Although a section 2255 motion may possess several characteristics of a separate civil proceeding, procedurally it is a 'further step in the movant's criminal case.'" (quoting Note to § 2255 Rule 1)).

Consistent with the prevailing view that § 2255 is not a civil action, the Government's recently filed brief in the Eleventh Circuit argues that a § 2255 proceeding is *not* a "civil matter" subject to dispositive resolution by a Magistrate Judge under 28 U.S.C. § 636(c), and, therefore, the Eleventh Circuit lacks

jurisdiction over that defendant's appeal. *See* First *Brown* Brief at 7. The

Government in *Brown* points out that *Heflin* is unreliable *dicta* and post-dated by

the § 2255 Rules. *See id*. at 14 n.9; Brief for the United States, *Brown v. United*

*States*, Nos. 11-15149-EE & 12-10293-EE (11th Cir. June 29, 2012) ("Second

*Brown* Brief") at 30 n.18. According to the Government in *Brown*, "[t]he available

guidance from the statute, the Rules Governing Section 2255 proceedings, and the

decisions of this Court and other courts of appeals strongly suggest that Section

2255 should not be regarded as a 'civil matter' for purposes of Section 636(c)(1)."

First *Brown* Br. at 14. The Government explained:

> Section 2255 sets out several respects in which a motion
> under that section is more like a continuation of the
> criminal case than like a new, distinct civil action. A
> request for relief under Section 2255 is styled a
> "motion," not a petition or a complaint. Section 2255
> motions are filed in the district where the defendant was
> convicted, rather than the district where he is confined
> (as a habeas petition would be); they are entered on the
> criminal docket, under the same docket number as the
> criminal judgment; and they are generally referred to the
> same judge who imposed sentence. They are initially
> reviewed based not only on the motion itself, but on the
> already-existing "files and records of the case."
>
> Most importantly for these purposes, the court hearing a
> Section 2255 motion has the authority to resentence the
> defendant as part of the Section 2255 proceedings.

*Id.* at 10.  The Government affirmed its position in its later brief filed in the same case in June 2012.  *See* Second *Brown* Brief at 21, 24.[17]  Mr. Sampson submits that the Government's position in *Brown*, that § 2255 is not civil, is correct rather than its contrary argument here.

### b. The Government's Cited Authority Is Inapposite Or Abrogated.

The Government has produced no authority aside from dicta in *Trenkler* and *Rogers* to support its own position that § 2255 should be considered civil at all, much less for purposes of the specific statutory language of § 1292(b).  In neither *Trenkler* nor *Rogers* did the language the Government here cites have anything to do with the opinions' holdings.

The cited dicta from *Trenkler* and *Rogers* cannot bear the weight the Government puts on it:  Both cases relied on *Heflin*'s now-abrogated plurality footnote, *see Trenkler*, 536 F.3d at 94; *Rogers*, 180 F.3d at 352 n.3.  In any event, these cases do not settle the issue given the contrary dicta of the *predecessor* panels in *Quin* and *Gordon*, described above, characterizing § 2255 motions as criminal.  *See United States v. Lewko*, 269 F.3d 64, 66 (1st Cir. 2001) (stating that a prior panel decision cannot be disturbed by a later panel absent certain extreme circumstances not present here).

---

[17] As of the date of the instant filing, the Eleventh Circuit had set oral argument in *Brown* for February 2013.

In the best case scenario for the Government, then, this Court's authority contains conflicting dicta reflecting precisely the "confusion" the Supreme Court noted in *Wall v. Kholi*. The view more consistent with the § 2255 statutory language and the § 2255 Rules is that a § 2255 proceeding is criminal in nature, and not a "civil action" for purposes of § 1292(b). Thus, the central premise of the Government's petition for permission to appeal—that § 1292(b) is available because this § 2255 proceeding is a "civil action"—is incorrect. Consequently, the petition for § 1292(b) appeal must be denied.

### c.    The Government's Argument That Appeals Of § 2255 Orders Are Civil Is A Non-Sequitur.

The Government next asserts that, even if § 2255 proceedings are not civil actions in the district court, at least "§ 2255 proceedings should be considered civil for appellate purposes." Br. at 54. This argument misses the mark, because it overlooks the limiting proscriptions of § 1292(b). The statute, by its plain text, permits jurisdiction in the appellate court *only* for an "order" rendered by a "district judge" in a "civil action"—that is, the statute permits appellate jurisdiction based on an event (an order) in a particular type of case before a District Court (a civil action). These statutory terms in no way suggest that jurisdiction somehow is created by how an appeal is characterized once in, or en route to, the Court of Appeals.

54

In making this argument the Government relies on § 2255(d), which actually undercuts any notion that § 2255 contemplates interlocutory review. As discussed below, that subsection provides only for appeals "from the order entered on the motion as from a *final judgment* on application for a writ of habeas corpus." 28 U.S.C. § 2255(d) (emphasis added). So even assuming the Government's proposition was correct regarding the civil nature of § 2255 appeals, that proposition would only apply to appeals taken from final judgments.

The Government's citations to § 2255 Rule 11(b) and footnote dicta in *United States v. Hayman*, 342 U.S. 205, 209 n.4 (1952), are equally unavailing. *See* Br. at 55. Rule 11(b) only sets forth that the *deadline* for filing a notice of appeal (*i.e.*, an appeal of a final judgment, not an interlocutory appeal) shall be the same as in civil cases, and the *Hayman* footnote merely stands for the same proposition under older rules. Applying a procedural rule regarding a filing deadline to a § 2255 notice of appeal does nothing to change the nature of the underlying proceedings nor the circumstances allowing appeal; it just means that an appellant has 30 days to file a notice of appeal (following Federal Rule of Appellate Procedure 4(a)) instead of 14 days (following Federal Rule of Appellate Procedure 4(b)). *See, e.g.*, *United States v. Craig*, 907 F.2d 653, 656–57 (7th Cir. 1990) ("The time limits for civil appeals govern a section 2255 motion, even

though a section 2255 motion . . . is considered a continuation of a criminal proceeding.").

Moreover, Rule 11's other subsection strongly evidences Congress's intent that § 2255 provides the sole means of appeal, to the exclusion of § 1292(b). Under Rule 11(a), in order for a § 2255 movant to seek an appeal, he must obtain a Certificate of Appealability ("COA").  *See also* 28 U.S.C. §§ 2253(c), 2255(d). Were the Government correct that § 1292(b) creates an exception to the § 2255 rule of finality, § 1292(b) necessarily would create a corresponding exception to the requirement that the § 2255 movant obtain a COA—permitting him to skirt § 2255's narrow parameters, just as the Government is trying to do here.  Such a result surely is counter to Congressional intent.

### 2. Section 2255's Comprehensive Remedial Scheme Is The Exclusive Means Of Appeal.

Even if a § 2255 proceeding were considered a "civil action," the Government still would be barred from taking an interlocutory appeal because of the comprehensive remedial scheme of § 2255.  Section 2255(d) permits a § 2255 appeal to be taken "from the order entered on the motion as from a final judgment on application for a writ of habeas corpus."  As discussed in Part I.A, no such final order exists here.  This Court has acknowledged that § 2255's "comprehensive remedial scheme" is "intended to provide a federal prisoner with an *exclusive means* of challenging the validity of his conviction or sentence." *Trenkler*, 536

56

F.3d at 96 (emphasis added). In keeping with this structure and intent, § 2255 provides the specific manner and mechanism for appeal in proceedings under its aegis. *See* 28 U.S.C. § 2255(d). And since § 2255's statutory scheme includes its own narrow means of appeal, applying § 1292(b) to this case would conflict with the plain language of § 2255. Simply put, the § 2255 statute "occup[ies] the field," leaving no room for exception other than the one, statutorily defined (and inapplicable here) savings clause in § 2255(e).[18] *See Trenkler*, 536 F.3d at 96, 98.

In *Trenkler* and *United States v. Barrett*, 178 F.3d 34 (1st Cir. 1999), this Court discussed the comprehensive § 2255 scheme at length. In these cases, the movants sought an end-run around the § 2255 limitation on "second or successive" motions by asserting that a different avenue of collateral review was available, via writ of *coram nobis* and § 2241, respectively. *See Trenkler*, 536 F.3d at 92; *Barrett*, 178 F.3d at 38. This Court barred these attempts to evade § 2255's restrictive provisions. *See Trenkler*, 536 F.3d at 98; *Barrett*, 178 F.3d at 38, 50.

It is true, as the Government notes, that certain panels in other Circuits have permitted § 1292(b) appeals in habeas and collateral review cases. *See* Br. at 58–60. Those courts have done so with little, if any, reference to the statutory basis for permitting such an appeal. None has considered, much less addressed, the conflict

---

[18] The very fact that Congress included § 2255(e)'s single exception supports the notion that it intended no others.

between the comprehensive text of § 2255 (or § 2241 or § 2254) and § 1292(b).

To Mr. Sampson's knowledge, only the Fifth Circuit has flagged the issue, noting

in *Billiot v. Epps* that the "parties cited no authority for construing 28 U.S.C. §

2253(a) (authorizing appeals from 'final' orders in habeas corpus proceedings) to

permit an appeal from an interlocutory order certified under 28 U.S.C. §

1292(b)."[19]   107 F. App'x 385, 387 (5th Cir. 2004) (per curiam) (unpublished).

The *Billiot* panel left the question unanswered, ruling on other grounds, but, as the

preceding analysis of the statutory text demonstrates, the statutes cannot be

reconciled because § 2255 does not permit exceptions to its exclusive mechanism

for appeal.

> **3.    Even Assuming § 1292(b) Applies, The Government Has Not Met The Statute's Certification Requirements.**

"Section 1292(b) is meant to be used sparingly, and appeals under it are,

accordingly, hen's-teeth rare."  *Camacho v. P.R. Ports Auth.*, 369 F.3d 570, 573

(1st Cir. 2004).  If this Court reaches the issue, it should decline to accept this

appeal.  *See Heddendorf v. Goldfine (In re Heddendorf)*, 263 F.2d 887, 889 (1st

Cir. 1959) (this Court uses § 1292(b) criteria to determine whether to exercise

jurisdiction).

---

[19] By its text, § 2253(a) applies equally to proceedings under § 2255.

For the reasons argued more fully in the merits section *infra*, this Court's jurisprudence makes clear that a § 2255 movant can prove entitlement to a new sentencing hearing by meeting the *McDonough* test or, separately, by showing that a juror was actually or impliedly biased. *See Amirault v. Fair*, 968 F.2d 1404, 1405–06 (1st Cir. 1992) (per curiam); *Dall v. Coffin*, 970 F.2d 964, 969 (1st Cir. 1992). Further, as the Government concedes, *see* Br. at 64, interlocutory review of the District Court's order will not terminate the litigation below. If this Court were to affirm the District Court order, there will have been the expenditure of additional resources and time, and needless delay of the relief due Mr. Sampson— a constitutionally sound sentencing hearing. And if this Court were to reverse, Mr. Sampson's remaining § 2255 claims will have to be litigated, requiring document and deposition discovery, argument over thorny privilege issues, and most likely an evidentiary hearing of considerable length, involving testimony of potentially dozens of fact and expert witnesses, that in many ways would resemble a new sentencing hearing and may well result in relief being granted again on alternative grounds.

## C.   18 U.S.C. § 3731 Is Inapplicable.

For the first time in these proceedings, the Government asserts here that if § 2255 motions are not civil actions within the meaning of § 1292(b), they must be criminal actions appealable under 18 U.S.C. § 3731. Section 3731 provides: "In a

criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court . . . granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof . . . ." The Government's newly-asserted view is unsupported by the statutory text and contrary to Supreme Court precedent.

First, as the Supreme Court expressly has held, "[t]he Criminal Appeals Act [18 U.S.C. § 3731] has no applicability" to a § 2255 proceeding. *Andrews*, 373 U.S. at 338. The Government cannot circumvent this binding precedent.[20]

Second, the Government's new argument is just another iteration of its primary argument that an order granting a new § 3594 "sentencing" and § 3593(b) "separate sentencing hearing" is, actually, an order granting a "new trial." For this Court to have jurisdiction under § 3731, by the statute's plain terms the District Court order must be a grant of a "new trial." But if the Government's argument is correct, then the order would be a final, appealable order under § 1291 and resort to § 3731 would be unnecessary. Moreover, the limiting language of § 3731 is even more restrictive than § 1291, since § 3731 requires that the District Court's order would have to "grant[ ] a new trial . . . *as to any one or more counts, or any*

---

[20] While the District Court noted certain changes to § 3731 since *Andrews*, the clarity of the Supreme Court's statement in *Andrews* is not undercut. *See Sampson*, No. 01-10384-MLW, 2012 WL 1633296, at *10 n.3 (D. Mass. May 10, 2012).

*part thereof.*"  (Emphasis added).  The only two "counts" against Mr. Sampson were the two carjacking charges to which Mr. Sampson pleaded guilty before the § 3594 "sentencing" and § 3593(b) "separate sentencing hearing" even began and which are not at issue here.  *See Sampson*, 486 F.3d at 17.

Third, the Government's citation to the Sixth Circuit's decision in *United States v. Lawrence*, 555 F.3d 254, 258–60 (6th Cir. 2009), is inapposite, and contravenes the Government's own position in the District Court and on appeal.  In *Lawrence*, the Sixth Circuit permitted a direct appeal of a grant of a new sentencing hearing not under § 2255 but rather under Federal Rule of Criminal Procedure 33.  The Sixth Circuit distinguished *Lawrence* from *Andrews* because of the distinction between Rule 33 and § 2255, re-affirmed that *Andrews* "remains good law," and agreed that *Andrews* "recognized that the Criminal Appeals Act [§ 3731] has no applicability to an action under § 2255."  *See Lawrence*, 555 F.3d at 258.  The Government previously argued to the District Court—and the District Court accepted—that Mr. Sampson could not have brought this motion under Rule 33, and argues in this Court that Mr. Sampson's post-conviction motion was "brought pursuant to § 2255" rather than "a timely Rule 33 motion."  *See* D.E. 1236, at 3 n.1; D.E. 1240; Br. at 73, 74 n.15.  The Government's § 3731 argument is meritless.

61

**D.    The Government's Petition For A Writ Of Advisory Mandamus Should Be Denied.**

The Government lastly petitions for a writ of advisory mandamus, claiming that this case presents a "hornbook example of a case in which advisory mandamus is appropriate." Br. at 69. Neither a hornbook nor, more importantly, the caselaw of this Circuit, however, supports this final attempt to establish jurisdiction.

"[T]he usual requisites [for advisory mandamus] are that the issue be an unsettled one of substantial public importance, that it be likely to recur, and that deferral of review would potentially impair the opportunity for effective review or relief later on." *United States v. Pleau*, 680 F.3d 1, 4 (1st Cir. 2012) (en banc). Since this case does not meet those requirements, it is not suitable for the "drastic" remedy of mandamus. *In re Recticel Foam Corp.*, 859 F.2d 1000, 1005 (1st Cir. 1988). *See also In re Bushkin Assocs., Inc.*, 864 F.2d 241, 247 (1st Cir. 1989) ("[P]roper occasions for employing advisory mandamus are hen's-teeth rare: it is reserved for blockbuster issues, not merely interesting ones."); *In re Sterling-Suarez*, 306 F.3d 1170, 1172 (1st Cir. 2002) ("The occasions for employing advisory mandamus are and should remain extremely rare . . . .").

Granting mandamus here would be especially inappropriate since "Congress has chosen to deny [this Court] appellate jurisdiction." *United States v. Kane*, 646 F.2d 4, 9 (1st Cir. 1981). This is not an instance in which statutory language has led to unintended jurisdictional results; rather, by re-enacting the relevant § 2255

62

statutory text (coupled with § 3594 and § 3593(b)) after *Andrews*, and re-enacting it again after *Stitt*, Congress affirmatively has determined that the instant appeal is impermissible by regular statute—whether §§ 1291, 1292(b), or 3731—until *after* a new § 3594 sentencing. *See Kane*, 646 F.2d at 9 ("[C]ongressional choice would be thwarted if [this Court] were to use [its] mandamus power to review an order of the district court under the same standards as we apply on appeal."). *See also In re Bushkin Assocs., Inc.*, 864 F.2d at 243, 247 (stating that "[t]he Supreme Court has expressly forbidden interlocutory appeals of disqualification orders" and denying advisory mandamus because "[w]hile [the Supreme Court precedents barring § 1291 appeal] do not bar mandamus challenges to disqualification orders in so many words, their import is clear").

**"Public Importance."**    As this Court has repeatedly stated, advisory mandamus *may* be appropriate to clarify "novel" questions of law that are "of great public importance," *United States v. Horn*, 29 F.3d 754, 769–70 (1st Cir. 1994), but "it is available *only* where the question presented 'is likely to confront a number of lower court judges in a number of suits before appellate review is possible,'" *Grinnell Corp. v. Hackett*, 519 F.2d 595, 599 (1st Cir. 1975) (emphasis added) (quoting *Nat'l Right to Work Legal Def. & Educ. Found., Inc. v. Richey*, 510 F.2d 1239, 1243 (D.C. Cir. 1975)).

63

Here, the Supreme Court and this Court's past decisions already address the legal issue the Government presses, making it far from "novel." *See McDonough*, 464 U.S. 548; *Amirault*, 968 F.2d at 1405; *Dall*, 970 F.2d at 969. And the issue the Government seeks to present is not one of "great public importance" as that term has been defined by this Court in the context of mandamus relief. *See Horn*, 29 F.3d at 769–70. This Court's decisions show that, when the writ is granted, the underlying issue is "important" typically because the district court's order impinges on the petitioner's (here, the Government's) constitutional rights, usually by overstepping the bounds of federalism, separation of powers, Article III jurisdiction, or access to court proceedings. *See, e.g., Horn*, 29 F.3d at 770 (granting advisory mandamus and stating that, within advisory mandamus considerations, question was "important in the right way" because "[i]t poses an elemental question of judicial authority–involving precisely the sort of 'Article III-type jurisdictional considerations' that traditionally have triggered mandamus review" (citation omitted)); *In re Justices of the Super. Court Dep't of the Mass. Trial Ct.*, 218 F.3d 11, 15 n.4, 16 (1st Cir. 2000) (granting mandamus when federal habeas proceeding interfered with on-going state criminal trial, presenting "greater issues of federalism" that "implicate the concerns with judicial overextension of jurisdiction that the mandamus writ has traditionally been used to correct"); *United States v. Connolly (In re Boston Herald, Inc.)*, 321 F.3d 174, 177 (1st Cir. 2003)

64

(finding advisory mandamus appropriate "where media outlets challenged limitations placed on their access to a proceeding or document by a district court"). Those concerns are entirely lacking in this case, as no fundamental right of the Government is jeopardized by the District Court order. This is only a question of timing: The Government can appeal the result of a resentencing *after* the resentencing occurs.

**"Likely To Recur."** The Government also fails to show the situation presented here is "*likely* to recur." *Pleau*, 680 F.3d at 4 (emphasis added). The Government points to no other cases pending in the district courts of this Circuit in which a prompt determination of the Government's appeal will be of assistance. *See In re United States*, 426 F.3d 1, 5 (1st Cir. 2005) ("'[A]dvisory mandamus,' has sometimes been granted in this circuit, and elsewhere, to settle critical questions of law that affect multiple cases and warrant immediate resolution." (citations omitted)). It appears that courts in this Circuit have only ever been faced with a minimal number of jury misconduct cases involving *McDonough*.[21] And Mr. Sampson is unaware of any case, anywhere, involving the extent and import of the repeated falsehoods made by the perjured juror here. *See In re Providence Journal Co.*, 293 F.3d 1, 15 (1st Cir. 2002) ("Consistent with the core purpose of

---

[21] A review of cases in Westlaw reveals seven appellate cases and five unique District Court cases (including this one) citing *McDonough* in a juror misconduct context.

advisory mandamus, the principal value of our rulings is in terms of future cases.").

**"Opportunity For Effective Review."** The Government raises the specter that "there is a risk that [the District Court's] order will evade review unless the Court exercises mandamus authority" because the Double Jeopardy Clause may forbid a later Government appeal if Mr. Sampson's resentencing results in life imprisonment rather than death. Br. at 70–71. The Government made the same argument in *Stitt*, while arguing in favor of § 1291 jurisdiction, and Judge Williams' concurrence in *Stitt* rejected it. *See United States v. Stitt*, 459 F.3d 483, 489 n.3 (4th Cir. 2006).

\*    \*    \*    \*

The Government's four inconsistent jurisdictional hooks—§§ 1291, 1292(b), 3731, and advisory mandamus—all fail to permit appellate jurisdiction at this stage over the District Court's resentencing order. Consequently, these consolidated appeals must be dismissed.

## II.    The District Court's Order Granting Mr. Sampson A New Sentencing Hearing Should Be Affirmed.

As the Supreme Court and this Circuit have stated, and as the Government too embraces, "[o]ne touchstone of a fair trial is an impartial trier of fact" which is defined as "'a jury capable and willing to decide the case solely on the evidence before it." *United States v. Villar*, 586 F.3d 76, 84 (1st Cir. 2009) (quoting

66

*McDonough*, 464 U.S. at 554), *cert. denied*, 131 S. Ct. 2167 (2011); *Sampson*, 820 F. Supp. 2d at 156; Br. at 78.  To protect this constitutional right, the Supreme Court's *McDonough* opinion endorsed three tests for determining whether a juror is impartial: the *McDonough* test, actual bias, or implied bias.  Here, the District Court granted Mr. Sampson a new sentencing hearing because it found the *McDonough* test satisfied: Juror C intentionally lied on material questions during *voir dire* and the District Court, had it known the truth, would have struck her for cause due to the effect on her inability to be impartial.  This Court should affirm the District Court on that basis, or in the alternative because Juror C was impliedly biased against Mr. Sampson.

### A.    Standard of Review.

This Court reviews a district court's for-cause excusal of a juror for clear abuse of discretion, *see United States v. Misla-Aldarondo*, 478 F.3d 52, 61 (1st Cir. 2007), and its factual determinations for clear error, *see, e.g.*, *Pierce v. Underwood*, 487 U.S. 552, 558 (1988).  The Government does not dispute either the District Court's factual finding that Juror C was intentionally dishonest, nor its factual finding that, had Juror C honestly answered during *voir dire*, the court would have dismissed her for cause.  The question of law, regarding whether *McDonough* requires a showing of actual or implied bias, is reviewed *de novo*.  *See id*.

67

**B.     Mr. Sampson Is Entitled To A New Sentencing Hearing Under *McDonough*.**

In *McDonough*, the Supreme Court adopted a test to control a particular category of juror bias claims: where a juror gives an intentionally dishonest answer to a material question on *voir dire*:

> We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response *would have provided* a valid basis for a challenge for cause.   The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

*McDonough*, 464 U.S. at 556 (emphasis added).   Within this formulation, the District Court discerned five embedded elements, each of which Mr. Sampson was required to (and did) prove by a preponderance of the evidence:

> (1) A juror gave an inaccurate answer to a question that was asked on voir dire; (2) the question was material; (3) the inaccurate response was dishonest, meaning knowingly and intentionally false, rather than the result of a good faith misunderstanding or mistake; (4) the reasons for the knowingly and intentionally false response relate to the juror's ability to decide the particular case based solely on the evidence and, therefore, call into question the juror's ability to be impartial; and (5) a correct response would have provided a valid basis for a challenge for cause and would have required or resulted in the excusal of the juror for cause based on actual bias, implied bias, or inferable bias.

*Sampson*, 820 F. Supp. 2d at 170–71.

The Government does not dispute the District Court's factual findings that Juror C gave intentionally false answers to material questions for reasons that affected her ability to decide this capital case based solely on the evidence. Nor does the Government dispute that Juror C's lies so greatly called into question her ability to be impartial that the District Court found as a fact that it would have removed her for cause had it known the truth. Instead, the Government raises a question of law related to the final element only, whether the *McDonough* test is satisfied only by a showing of actual or implied bias. *See* Br. at 27–32, 61, 75. As shown herein, this Court should determine that the District Court properly applied the *McDonough* test and that *McDonough* does not require proof of actual or implied bias to obtain relief.

> **1.    The District Court Properly Enunciated The *McDonough* Test And Appropriately Granted Mr. Sampson A New Sentencing Hearing On That Basis.**

The District Court found that Juror C intentionally lied on multiple material questions on *voir dire* and that her truthful answers, her demeanor while the truth was extracted, and her dishonesty gave rise to a valid challenge for cause going to her partiality that would, in fact, have been granted. *McDonough*, by its plain terms, requires nothing more.

Juror C's conduct, which the District Court labeled "inferable bias" or "inferred bias," fell well within the grounds for valid challenges for cause

recognized by this Court and other circuits as well. *See Sampson*, 820 F. Supp. 2d at 165–67. Indeed, the Government does not contest any of the District Court's factual determinations; it contests only whether the District Court's findings form a *valid* basis for a causal challenge under the language of *McDonough*, taking issue with the District Court's use of the label "inferable bias." But "inferable bias" merely describes conduct that falls squarely within the types of impairment universally recognized as valid bases for causal challenges.

### a.    A Juror's Impairment Is A Valid Basis For A Challenge For Cause.

This Court previously ruled on certain juror challenges during the direct appeal of Mr. Sampson's case (unrelated to Juror C). Certain guiding principles from this Court's analysis at that time are useful here. First, jurors may be excused for cause because of impairment in the ability to perform a juror's duties. *See Sampson*, 486 F.3d at 39. Second, a juror's "personal circumstances" can be sufficient to create impairment. *See id*. at 41 ("In each of the three instances we have just chronicled, the district court determined that the juror's personal circumstances were such as to substantially impair his or her ability to serve impartially in a capital case. Each of these instances presented a judgment call. They are, therefore, paradigmatic examples of a trial court's exercise of informed discretion."). Third, dismissal of a juror is reviewed for abuse of discretion, often because the trial court's first-hand view of the juror is superior to a reading of the

70

cold transcript. *See Wainwright v. Witt*, 469 U.S. 412, 425–26 (1985) ("Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. . . .  [T]his is why deference must be paid to the trial judge who sees and hears the juror.").

### 1)      Impairment Is Sufficient.

"The baseline rule is that a court appropriately may excuse a juror for his views on capital punishment if those views 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Sampson*, 486 F.3d at 39 (citation omitted).  As the Government correctly informed the District Court, this standard, set forth in *Wainwright*, 469 U.S. at 424, and relied on by this Court in deciding Mr. Sampson's direct appeal, "has come to be understood as the generic for-cause standard in all cases, capital and otherwise." *See* SA64 [Gov't Br. at 26 (Jan. 14, 2011)].  *See also Wainwright*, 469 U.S. at 424 ("We note that . . . this standard likewise does not require that a juror's bias be proved with 'unmistakable clarity.'  This is because determinations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism."); *Dennis v. United States*, 339 U.S. 162, 172 (1950) ("'Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution

71

lays down no particular tests and procedure is not chained to any ancient and artificial formula.'" (quoting *United States v. Wood*, 299 U.S. 123, 145–46 (1936))).

Indeed, at times, this Court has approved of a standard potentially less demanding than in *Wainwright*, holding that dismissals for cause are required where a juror is impaired (as opposed to substantially impaired) from performing his or her duties. For example, in *United States v. Walsh*, 75 F.3d 1 (1st Cir. 1996), this Court affirmed the decision of the district court to excuse a juror during deliberations and stated "[t]he trial judge has substantial discretion in exercising this responsibility and may remove the juror when 'convinced that the juror's abilities to perform his duties [have] become impaired," *id*. at 5 (second alteration original). *See also Campbell v. United States*, 108 F. App'x 1, 4 (1st Cir. 2004) (per curiam) (citing *Walsh* in a § 2255 case); *United States v. Barone*, 114 F.3d 1284, 1306–07 (1st Cir. 1997) (affirming the decision of the district court to dismiss a juror during deliberations, under Federal Rule of Criminal Procedure 23(b), based on finding that the juror's "ability to deliberate had been impaired").

Neither *Wainwright* when discussing "substantial impairment," nor this Court's cases discussing an "impairment" standard, require a showing of actual or implied bias to support a causal challenge. Indeed, Mr. Sampson is unable to find a single case in this Circuit that states that district courts can only remove

72

prospective jurors—or even sitting jurors—for cause upon a finding of actual bias or implied bias. Consistent with this theme, when the District Court dismissed *veniremen* or sitting jurors for cause during the trial, it made repeated findings that personal circumstances and/or dishonesty—rather than actual or implied bias— prevented them from serving impartially. *See supra* SOF Part A.3.

In granting *McDonough* relief, the District Court applied the proper standard for a valid challenge for cause. According to the District Court, "to qualify as an impartial juror an individual must not have views or personal experiences that will prevent or substantially impair his or her ability to decide a matter based solely on the evidence." *Sampson*, 820 F. Supp. 2d at 156. The District Court ruled that "a juror is not impartial if his experiences, opinions, predispositions, biases, prejudices, interests, or relationships 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Id*. at 162 (quoting *Wainwright*, 469 U.S. at 424*). See also id.* at 167 (citing *Wainwright*); *id.* at 175 (same). The District Court found that "if the court had been properly informed before empanelment of [Juror] C's painful personal experiences, it would have excused [Juror] C for cause primarily because of the substantial risk that those experiences would significantly impair her ability to decide whether the death penalty was justified based solely on the evidence." *Id*. at 194. *See also Sampson*, 486 F.3d at 41.

73

Concomitantly, dishonesty about one's personal circumstances is an equally compelling reason to excuse a juror. The motive, personal interest, or partiality of the juror is exhibited not just by the lie itself—or, in this case, the repeated lies— but also by the fact that a juror was willing to violate her oath and risk prosecution for contempt of court (18 U.S.C. § 401) or perjury (18 U.S.C. § 1621). *See United States v. Colombo*, 869 F.2d 149, 151 (2d Cir. 1989). Whatever the unknown, and potentially unknowable, motive behind it, a material lie exposing a prospective juror to criminal liability "not only suggests a view on the merits and/or knowledge of evidentiary facts but is also quite inconsistent with an expectation that a prospective juror will give truthful answers concerning her or his ability to weigh the evidence fairly and obey the instructions of the court." *Id*. at 151–52 (footnote omitted). Indeed, "[i]f a juror treats with contempt the court's admonition to answer voir dire questions truthfully, she can be expected to treat her responsibilities as a juror—to listen to the evidence, not to consider extrinsic facts, to follow the judge's instructions—with equal scorn." *Dyer v. Calderon*, 151 F.3d 970, 983 (9th Cir. 1998).

### 2) The District Court Has Substantial Discretion To Excuse Jurors For Cause.

This Court has made clear that the selection or excusal of jurors is at or near the apex of a district court's discretionary powers. *See United States v. Misla-Aldarondo*, 478 F.3d 52, 61 (1st Cir. 2007); *Walsh*, 75 F.3d at 5. As the District

Court stated, "[s]uch discretion on the part of [the] trial judges deciding matters of juror bias both during trial and after it has also been recognized by the First Circuit." *Sampson*, 820 F. Supp. 2d at 166–67 (citing cases, *e.g.*, *United States v. Lowe*, 145 F.3d 45, 49 (1st Cir. 1998)).  In *Lowe*, this Court articulated this deferential review as follows:  "'There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empaneling of a jury.'" *Lowe*, 145 F.3d at 49 (quoting *United States v. Gonzalez-Soberal*, 109 F.3d 64, 69–70 (1st Cir. 1997)).  *See also Sampson*, 486 F.3d at 39–41 ("There is no precise formula to guide judges in juror qualification matters.").  Indeed, in defending against the direct appeal of this case, the Government expressly advocated in favor of the district court's ample discretion in determining whether to strike a juror for cause and this Court's deferential review of such determinations.  *See* Case No. 04-6001, Gov't Br. at 44–52.  Regularly accepted bases for causal challenges, in addition to actual or implied bias, include an unwillingness to follow the law, an incapacity to follow the law, and life experiences too close for comfort to the disputed issues, among other well-founded reasons.

### b.     The District Court Properly Concluded That Juror C Would Have Been Struck For Cause.

The Government attempts to minimize the District Court's discussion of "inferable bias"—and Juror C's persistent perjury—by arguing that the District

75

Court granted *McDonough* relief merely because "if fully informed before empanelment, the court *would have had the discretion* to excuse Juror C for cause." Br. at 72 (emphasis added). But the fact that the District Court had discretion to remove Juror C both is uncontested[22] and of no moment in the totality of the *McDonough* analysis. Rather, the linchpin of the District Court's *McDonough* analysis is not just that the District Court *could* have excused Juror C, but that the District Court actually *would* have dismissed Juror C for cause. *See, e.g., Sampson*, 2012 WL 1633296, at *4. Thus, in a situation where one juror may make the difference between life and death, Juror C *would not* have sat on the jury that eventually recommended a death sentence for Mr. Sampson because of valid concerns regarding her ability to be impartial on this critical question. *See also Williams v. Netherland*, 181 F. Supp. 2d 604, 616 (E.D. Va. 2002) (granting *McDonough* relief in capital case because juror's truthful answers would have supported a causal challenge that "would certainly have been granted"), *aff'd sub nom. Williams v. True*, 39 F. App'x 830 (4th Cir. 2002) (per curiam).

The Government disparages the legal import of that unchallenged factual finding, comparing its basis to mere "hints of bias" that *McDonough* indicates may be useful to the parties in exercising peremptory challenges but not to the court in

---

[22] *See Sampson*, 820 F. Supp. 2d at 194 n.29 ("At the August 8, 2011 hearing the government acknowledged that the court would have had the legitimate discretion to excuse C for cause.").

76

ruling on causal challenges. Properly seen, however, this argument is only a subpart of the Government's legal argument that *McDonough* requires actual or implied bias for relief. The phrase "hints of bias" appears *nowhere* in the District Court's opinion. Rather, the District Court found as a matter of fact egregious juror misconduct far afield from "hints of bias" that would have resulted in a causal strike of Juror C:

- "[P]erjury by a juror resulted in a violation of Sampson's constitutional right" to have his capital sentence determined "by twelve women and men who were each capable of deciding that most consequential question impartially." *Sampson*, 820 F. Supp. 2d at 159.[23]

- "[The Court] would have excused [Juror] C for cause primarily because of the substantial risk that those experiences would significantly impair her ability to decide whether the death penalty was justified based solely on the evidence." *Id*. at 194.

- "[T]here was a high risk" or a "substantial risk" of impairment. *See id*. at 159, 181, 194.

- "[Juror] C was likely to be influenced by her own life experiences and probably be substantially impaired in her ability to decide the case based solely on the evidence. She would, therefore, have been excused for cause for this significant risk of partiality alone." *Id*. at 195–96.

- "Such dishonesty during a jury selection process in which the importance of accurate answers was emphasized would also have

---

[23] This determination alone should end this Court's inquiry and result in an affirmance of the order below. *See Williams v. True*, 39 F. App'x at 834 (affirming because juror was not "fair and impartial" and stating "we believe [the state government] parses too finely the district court's decision" (internal quotation marks omitted)).

77

Case: 12-1643   Document: 00116477956   Page: 89   Date Filed: 01/10/2013   Entry ID: 5702713

> caused the court substantial concern that [Juror] C would not follow its instructions on other issues and would, therefore, have provided another reason to have excused her for cause." *Id*. at 194.

The District Court made these findings having observed the perjured juror's demeanor over three separate evidentiary hearings in which she repeatedly lied, and in the end either admitted or was found to have deliberately given dishonest answers on her original juror questionnaire, at *voir dire*, and during the § 2255 evidentiary hearings. The false answers were given in response to questions touching directly on issues critical to the jury's determination of life or death for Mr. Sampson, in a setting where the vote of one juror would make that difference.

The Government repeatedly characterizes the District Court's decision as "unprecedented." *See, e.g.*, Br. at 27, 69. This characterization is incorrect on its face, as is the Government's argument that no other court "has held that a claim of juror bias can succeed under *McDonough* based on a showing of 'inferable bias.'" Br. at 97. *See United States v. Daugerdas*, 867 F. Supp. 2d 445, 472–77 (S.D.N.Y. 2012) (finding inferable bias and granting new trial). The term "inferable bias" is merely a label describing underlying conduct that calls into question a juror's capacity to serve impartially to the degree that it gives rise to a valid causal challenge.

The label "inferable bias"—or any other the District Court also used, such as, substantial impairment or impairment—should not be confused with what it

78

identifies: the underlying, unchallenged factual findings that Juror C's dishonesty and concealed life experiences warranted dismissal for cause. This determination, no matter its label, fits squarely within the final prong of the *McDonough* standard. As the District Court noted, while the *label* "inferable bias" has not been used in this Court, the term merely describes the familiar practice, consistent with this Court's prior decisions, of recognizing "a category of bias" in "which removal of a juror for cause is permissible, but not mandatory." *See Sampson*, 820 F. Supp. 2d at 166–67.

The list of the perjured juror's false answers to material questions is lengthy. *See supra* SOF Part B.3. Juror C dishonestly withheld information and provided intentionally false answers to at least *ten separate questions* on the juror questionnaire, not including subparts. As the District Court found, an accurate response to almost any one of these questions would have elicited the circumstances regarding P's crimes against her or his drug use; her daughter J's employment by law enforcement, criminal record, drug use, or imprisonment; or all of the above.

Frequently by her own admission and otherwise by the overwhelming weight of the evidence, the evidentiary hearings revealed that Juror C purposefully chose to give dishonest answers because she did not think her personal life was "anybody's business"—certainly not the District Court's or the parties'. *See*

79

JSA819–20. She made a deliberate choice to withhold details of her personal life from the *voir dire* process: "'When I was filling out this questionnaire, my personal life—that was my personal life. . . . I didn't think my personal life had anything to do with me being a juror.'" *Sampson*, 820 F. Supp. 2d at 187 (ellipsis original). In so doing, she violated the District Court's instructions and impermissibly arrogated to herself the responsibility of determining her own qualifications to serve as a juror in this death penalty case. *See United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988) ("[The] juror . . . consciously censored the information. He believed that it was *his* place, and not the place of the court or defense counsel, to determine whether his relations were a bar to jury service in this case."); *Burton v. Johnson*, 948 F.2d 1150, 1154, 1158–59 (10th Cir. 1991) (affirming finding of *McDonough* violation when juror stated that "she did not 'connect' her own experiences with the discussion and that she tried not to think about her own situation"). *Cf. United States v. Rhodes*, 556 F.2d 599, 601 (1st Cir. 1977) (vacating convictions and remanding for new trial, upon claim that jury was exposed to prejudicial information outside of court, where "[t]he [district] court's questioning . . . let the jurors decide for themselves the ultimate question whether what they had learned had prejudiced them, without permitting the court to give any further instruction, or pursue further interrogation").

The manifest appropriateness of a dismissal for cause is confirmed when considering the manner in which the truth came to light. Juror C concealed material, responsive information on her juror questionnaire, *again* three weeks later on her individual *voir dire*, *again* during two individual *voir dire* sessions during the sentencing hearing, *again* during her testimony at the November 18, 2010 evidentiary hearing, and *again* during the March 18, 2011 evidentiary hearing. *See Sampson*, 820 F. Supp. 2d at 183 ("Both during voir dire in 2003 and in the course of these § 2255 proceedings, [Juror] C deliberately and systematically gave false answers . . . ."). Only when presented with record documentation that conflicted with her prior answers, and only when posed with direct, inescapable questions, did Juror C reluctantly confess to her prior false answers or omissions, even then requiring counsel and even the District Court to pull them out of her fact by fact. The District Court dismissed prospective and sitting jurors for cause during Mr. Sampson's sentencing hearing for far less egregious conduct. *See supra* SOF Part A.3. Given this deliberate pattern of dishonesty, there can be no assurance that Juror C followed her juror oath and rendered a verdict based solely upon the evidence. *See, e.g., Sampson*, 820 F. Supp. 2d at 159, 194. *See also Dyer*, 151 F.3d at 983.

What is more, Juror C's lies and omissions concealed facts materially similar to the evidence presented at Mr. Sampson's sentencing hearing. The

81

perjured juror intentionally concealed, *inter alia*, that she had been put in fear of death at the point of a loaded gun (the Government called four female witnesses who testified to being put in fear at the point of a gun by Mr. Sampson).  Her lies concealed that she was highly critical and ashamed that her daughter became addicted to drugs and was imprisoned for stealing (the jury heard evidence that Mr. Sampson was addicted to drugs and went to prison for stealing).   Her lies concealed that she had cut off contact with her daughter because of her criminal behavior (the jury heard evidence that Mr. Sampson's family did not support him in his mitigation case).  Her lies concealed that she was extremely proud of her daughter's exemplary performance while employed as a law enforcement secretary and part-time police dispatcher, and viewed police and the court system favorably because of how they treated her when she needed them (a central feature of Mr. Sampson's mitigation case was critical of law enforcement, as Mr. Sampson presented evidence that he attempted to turn himself in to the FBI prior to the crimes, but the FBI operator dropped his call and they failed to show up to arrest him).  Her lies concealed that her marriage fell apart because her husband chose alcohol and drugs over her (the Government drew out of Mr. Sampson's mitigation witness, his former wife, that he ruined their marriage when he would not give up drugs).  *See, e.g., Sampson*, 820 F. Supp. 2d at 193–94.

### 2. *McDonough* Does Not Require A Showing Of Actual Or Implied Bias.

The Government can only succeed on this appeal if it convinces this Court that the *McDonough* majority meant what it did not say—that is, when it used the phrase "valid challenge for cause" it meant to say "actual bias and implied bias," or even possibly only "actual bias." The Government's argument is inconsistent with the plain language of *McDonough*, the import of the concurrences, and this Court's *McDonough* precedents.

### a. The *McDonough* Test Is Clearly Stated.

By its plain language, *McDonough* does not require a showing of actual or implied bias. *See Sampson*, 820 F. Supp. 2d at 175 ("By its own terms, the *McDonough* test does not require proof of actual or implied bias."); *id.* ("The plain language of *McDonough* does not require actual or implied bias."). The terms "actual bias" and "implied bias" appear nowhere in the opinion of the Court, authored by Justice Rehnquist. Had the *McDonough* opinion meant to impose the requirement of showing actual or implied bias as well as an intentionally dishonest answer to a material question, it certainly would have said so.

The Government contends that conduct like Juror C's can never be the basis for post-conviction relief because only mandatory challenges to a juror at *voir dire* so qualify. Br. at 80, 88–89. It points to language in *McDonough* eschewing the re-creation of the *voir dire* process for a post-trial do-over. The context of that

language is critical to give it proper meaning and undermines the Government's argument. *McDonough* was not a juror perjury case. Instead, the issue was whether the court below was correct in ordering a new trial because a juror's mistaken, but honest, non-response on *voir dire* deprived a party of information he should have had for the peremptory challenge process. It was in this context that Justice Rehnquist wrote: "it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained . . . ." *McDonough*, 464 U.S. at 555. The Court went on to fault a new trial granted merely upon "any evidence of abstract imperfection." *Id.* at 555–56. Here, Juror C's misconduct subverted the court's laboriously constructed causal challenge process, and her pervasive perjury far exceeds "abstract imperfection."

Given that the Rehnquist opinion for the Court never used the terms "actual bias" or "implied bias," the Government is compelled to put great weight on the opinion's use of the term "demonstrated bias." Br. at 75, 79, 86–87. Once again, the full context of the phrase actually runs counter to the Government's position: "Demonstrated bias in the responses to questions on *voir dire may* result in a juror's being excused for cause . . . ." *McDonough*, 464 U.S. at 554 (emphasis added). The use of the word "may" clearly connotes a discretionary challenge for cause, not a mandatory one as would be required in the case of either actual or

84

implied bias. Considering whether the appellants had been improperly deprived of a peremptory challenge, the *McDonough* Court distinguished between the kind of bias that "may" give rise to a valid discretionary *for-cause* challenge and "hints of bias" that may lead a party to use a *peremptory* challenge. *See id*. at 554. Contrary to the Government's suggestion, *see* Br. at 87, the Court did not thereafter elaborate what conduct may give rise to a for-cause challenge other than to define the "touchstone" of a fair trial, impartiality, as "a jury capable and willing to decide the case solely on the evidence before it." *McDonough*, 464 U.S. at 554 (internal quotation marks omitted). The District Court found as a fact that the answers Juror C should have given if she had told the truth and her repeated lies demonstrated her bias under this standard.

### 1) *McDonough*'s Concurrences Confirm That The Majority's Test Does Not Require Actual Or Implied Bias

With the three justices who joined Justice Blackmun's concurrence, Justice Rehnquist's opinion carried a majority of the Court. Thus, seven justices agreed that relief was merited if a juror gave an intentionally dishonest answer to a material question if the honest answer went to the juror's partiality and would have given rise to a valid challenge for cause, *and* a majority of the Court (the five concurring justices) agreed that, as Justice Blackmun put it, the "normal avenue of relief" of actual and implied bias remained available in the absence of dishonesty.

The Government's theory would render *McDonough*'s first prong (requiring a dishonest answer) superfluous, because proving the second prong would merit relief for either actual or implied bias, making a showing of dishonesty unnecessary. This is a central problem with the Government's argument, as the District Court observed. *See Sampson*, 820 F. Supp. 2d at 176 ("If the *McDonough* test required a showing of actual or implied bias in addition to a showing of dishonesty, the test Justice Rehnquist stated for the majority would be superfluous."); *id.* ("If the *McDonough* test required actual or implied bias, the application of the *McDonough* test in *Amirault* would have been superfluous in light of the First Circuit's conclusion that neither actual nor implied bias were shown.").

Attempting to cure this problem, the Government offers a new reading of *McDonough* in this appeal: The Government claims *McDonough* did create a new standard for relief for juror bias, but one that is "narrower" and "more restrictive" than the then-existing "normal avenue" of actual and implied bias. Br. at 89. The Government contends that Rehnquist's opinion for the majority limited relief for juror bias to proof of an intentionally dishonest answer to a material question *plus* proof of either actual or implied bias. *See* Br. at 89–90, 93–94. The Government goes so far as to suggest that only actual bias, and not even implied bias, is sufficient proof of the second prong of *McDonough*. *See id.*

86

It defies logic—and is unsupported by any caselaw—to assert that Justice Rehnquist wrote an opinion making such a sea change to long-standing constitutional law regarding juror bias without expressly so stating, without explaining or justifying the change, and without even mentioning in his opinion either actual bias or implied bias—the doctrines, the Government claims, he was sharply limiting by requiring additional proof of juror perjury or, in the case of implied bias, perhaps eliminating altogether. *See, e.g.*, *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."). This is particularly true where a majority of justices wrote separately to say that, in the absence of juror dishonesty, the normal route of actual and implied bias still existed and the Rehnquist opinion took no exception to those positions. Had the opinion of the court in *McDonough* sought to eliminate the opportunity for (previously available) relief in the vast majority of cases not involving juror dishonesty at *voir dire* surely that would be reflected in its text. It is not. Nor could three of the concurring justices have joined the opinion if it had done so.[24]

---

[24] The Government looks to the Supreme Court's earlier decision in *Smith v. Phillips*, 455 U.S. 209 (1982), to support its theory of "tension" between the majority *McDonough* opinion and the concurrences over the requirement of a dishonest answer. The important point, however, is that in *McDonough* seven Justices agreed on the standard set forth in the majority opinion to control juror *voir dire* perjury affecting impartiality. There was no tension for seven Justices on that issue. And, in *Smith v. Phillips*, juror dishonesty was not at issue. There, the

Under the Government's theory, if the District Court had found as a fact that Juror C was actually biased but that she did not lie in response to any *voir dire* questions, Mr. Sampson would *not* be entitled to relief even though an actually biased juror sat on the jury that imposed the death penalty. Such a result is plainly unconstitutional. *See* U.S. Const. amend. VI; *United States v. Martinez-Salazar*, 528 U.S. 304, 316–17 (2000) (reaffirming that a conviction must be reversed if a district court errs in failing to strike a juror for cause). *See also Dennis*, 339 U.S. at 171–72 ("Preservation of the opportunity to prove actual bias is a guarantee of a defendant's right to an impartial jury.").

Indeed, though the Government did not make this argument below, the District Court appears to have considered and rejected it: "If the *McDonough* test replaced the actual or implied biased inquiries, a litigant who could not satisfy the other elements of *McDonough* would be deprived of the ability to obtain a new trial even in the face of clear evidence of actual bias, a result that has been rejected by the First Circuit, and would leave no remedy to litigants who could show that they were deprived of their constitutional right to an impartial jury." *See Sampson*, 820 F. Supp. 2d at 176. This cannot be and is not the law. The District Court's

---

question was a juror's post-empanelment act of seeking employment with the prosecutor's office. At *voir dire*, the juror had candidly stated, *inter alia*, his interest in law enforcement and his employment application to another law enforcement agency—and the defense had not challenged for cause or exercised an available peremptory challenge. *See id.* at 212–14.

reading of *McDonough* is far more consistent with its language and the teaching of the concurrences.

### 2) Cases Of Juror Dishonesty Merit *McDonough*'s Separate Analysis

It is understandable that *McDonough* provides a separate path to relief; the opinion addresses a narrow and unique class of cases—juror perjury on *voir dire*. Most juror bias claims do not arise from a juror's intentional dishonesty at *voir dire*, but rather from, *inter alia*, non-disclosure by a juror where no pertinent question was asked, an innocent miscommunication between counsel and a juror, or third-party interference. *See Sampson*, 820 F. Supp. 2d at 169 (discussing non-disclosure cases). *See also Smith v. Phillips*, 455 U.S. 209, 212–14 (1982) (juror was candid at *voir dire*, bias claim based on his subsequent application for employment with prosecutor); *Chandler v. Florida*, 449 U.S. 560 (1981) (televised proceedings claimed to bias jurors); *Remmer v. United States*, 347 U.S. 227 (1954) (third-party attempted to bribe juror); *Dennis*, 339 U.S. 162 (claim of juror bias based on jurors' employment).

A juror who intentionally lies at v*oir dire* subverts the process on which the constitutional guarantee of an impartial jury rests. *McDonough*, 464 U.S. at 554. *Cf. Morgan v. Illinois*, 504 U.S. 719, 729–30 (1992) ("*Voir dire* plays a critical function in assuring the criminal defendant that his [constitutional] right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's

89

responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled." (quotation marks omitted) (alteration original)).   Once a juror has proved her willingness to lie and to undermine the court's authority, her impartiality is already profoundly in doubt.   And it may be difficult, if not impossible, to determine her true motives thereafter.  *See, e.g.*, *Smith v. Phillips*, 455 U.S. at 221–22 (O'Connor, J., concurring) ("Determining whether a juror is biased or has prejudged a case is difficult, partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it.   *The problem may be compounded when the charge of bias arises from juror misconduct.*" (emphasis added)).  *See also McDonough*, 464 U.S. at 556 (Blackmun, J., concurring) ("[I]n most cases, the honesty or dishonesty of a juror's response is the best initial indicator of whether the juror in fact was impartial.").

The District Court recognized this problem here, concluding:

> [Juror C] testified that she would be very disturbed if her conduct caused the jury's verdict to be vacated; as she put it, "[i]t would kill [her]."  This concern provided a motive for her to lie about whether her painful personal experiences impacted her performance as a juror . . . [Juror] C began providing dishonest answers to relevant questions when she filled out her questionnaire and she continued to respond dishonestly during individual voir dire and in her testimony in these § 2255 proceedings.  *She may well have done so with regard to whether she was able to compartmentalize her own experiences and decide the issues presented based solely on the evidence.*

90

*Sampson*, 820 F. Supp. 2d at 190 (emphasis added) (second and third alterations original).    *Cf. Dennis*, 338 U.S. at 171 ("One may not know or altogether understand the imponderables which cause [a juror] to think what he thinks, but surely one who is trying as an honest man to live up to the sanctity of his oath is well qualified to say whether he has an unbiased mind in a certain matter.").    One like Juror C, who deliberately violates the sanctity of the oath—here, repeatedly—loses that qualification.

In this unique class of cases, *McDonough* grants relief when a movant can meet his onerous burden of proving both that a juror intentionally lied at *voir dire* in response to a material question and that the honest answer "affect[ed the] juror's impartiality" and would have provided the basis for a valid challenge for cause.  *See* 464 U.S. at 555.

>                   **b.**      **This Circuit's Decisions Regarding *McDonough* Do Not Require A Showing Of Actual Or Implied Bias.**

This Court already has expressly recognized that *McDonough* is a test for dishonest *voir dire* answers separate and distinct from that for claims based  on actual or implied bias alone.  *See Amirault v. Fair*, 968 F.2d 1404, 1405–06 (1st Cir. 1992) (per curiam) ("[W]e read the majority vote in *McDonough* . . . to require a further determination on the question of juror bias even where a juror is found to have been honest . . . ." (citation omitted)); *Sampson*, 820 F. Supp. 2d at 177 ("[T]he First Circuit stated [in *Amirault*] that actual or implied bias provide a

91

separate means of relief from that provided under the *McDonough* test."); *id.* at 180 ("[T]he First Circuit's recognition in *Amirault* that there are three tests for determining whether a juror was impartial—actual bias, implied bias, and *McDonough*—is consistent with the language and reasoning of the Supreme Court in that case.").

The District Court described *Amirault* as "the case whose analysis is most explicit and most faithful to *McDonough* itself." *Sampson*, 820 F. Supp. 2d at 177. In *Amirault*, this Court cited both *McDonough* concurrences for the proposition that *McDonough* "require[s] a further determination on the question of juror bias even where a juror is found to have been honest." *See Amirault*, 968 F.2d at 1405–06 & n.2. This Court separately discussed and dismissed arguments in favor of relief based on each of the three tests. *See id.* at 1405–06. As the District Court stated, "[t]he corollary to the court's conclusion in *Amirault* that implied and actual bias are separate tests from the *McDonough* test is that actual and implied bias are not requirements for relief pursuant to *McDonough*." *Sampson*, 820 F. Supp. 2d at 176.

This Court's later decision in *Dall v. Coffin* also is dispositive in making the distinction between the standard for cases involving intentionally dishonest answers and those that do not. 970 F.2d 964 (1st Cir. 1992). When the *Dall* Court discussed the showing required had the *Dall* appellants proven a dishonest answer,

it stated: "Moreover, even if [the juror]'s answers were not candid, the appellants have not shown that a proper response would have provided a basis for a successful challenge for cause [citing *McDonough*, 464 U.S. at 556] . . . ." *Dall*, 970 F.2d at 970. The *Dall* Court then describes what meets the second *McDonough* prong as "'correct' responses . . . [that] would have *required or resulted in* the disqualification of [the juror] for cause." *Id.* (emphasis added). As the District Court correctly discerned from this disjunctive phrase, this means that the second *McDonough* prong is met either (1) "when the court would have been *required* to excuse a juror because of actual or implied bias" <u>or</u> (2) "where the court would have had discretion, and would have exercised that discretion, to excuse a juror because of inferable bias." *Sampson*, 820 F. Supp. 2d at 174.

Later in *Dall*, this Court, after reciting the *McDonough* test, went on to state that "[f]urther, we have held that a party seeking a new trial based on *nondisclosure* by a juror must 'demonstrate actual prejudice or bias.'" 970 F.2d at 969 (emphasis added) (citation omitted). In the context of the *Dall* opinion, the term "nondisclosure" means either an inadvertent nondisclosure or information that the parties might have been interested to know but that was not responsive to a question propounded during *voir dire*—as distinguished from affirmative false answers. *See Sampson*, 820 F. Supp. 2d at 169 (distinguishing between "non-disclosure cases" and "inaccurate answer cases"). In instances of inadvertent non-

93

disclosure—as opposed to intentional omission—actual or implied bias provides the only avenue of relief. This distinction is clear from *Dall* itself, as well as the post-*McDonough* case cited in *Dall* that quoted the same language, *United States v. Aponte-Suarez*, 905 F.2d 483, 492 (1st Cir. 1990). Neither *Dall* nor *Aponte-Suarez* involved a dishonest answer to a material question; rather, both involved undisclosed information that was not responsive to any question asked during *voir dire*. *See Dall*, 970 F.2d at 969–70; *Aponte-Suarez*, 905 F.2d at 492. Indeed, the *Aponte-Suarez* opinion does not even mention *McDonough*, further supporting the view that this Court's opinion in that case was not intended to superimpose an additional requirement on the *McDonough* test, since the conduct in *Aponte-Suarez* so clearly fell outside *McDonough*.[25]

The few other First Circuit cases cited by the Government in support of its position do nothing to limit the deference afforded district courts in matters of juror bias, nor do they require finding actual or implied bias to strike jurors. *See* Br. at 94–96. For example, in *DeBurgo v. St. Amand*, 587 F.3d 61, 72 (1st Cir. 2009), a §

---

[25] To the extent there is any ambiguity in *Dall*, the pre-*McDonough* Circuit precedent on which *Dall* relied must be viewed in light of *McDonough*. The quoted passage in *Dall* comes from a pre-*McDonough* First Circuit case, *United States v. Rivera-Sola*, 713 F.2d 866, 874 (1st Cir. 1983), which *McDonough* necessarily superseded the following year. *See Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 57 (1st Cir. 2004) ("An intervening Supreme Court decision trumps the usual rule that a panel decision is to be followed by a successor panel.").

2254 federal habeas review of a state conviction, the court was bound to uphold any reasonable determination of the facts made by the state trial court judge, who had questioned jurors post-trial and determined that it was merely "speculative" that the juror had lied during *voir dire* about her knowledge of the defendant.  Even while affirming the denial of § 2254 relief, this Court noted that the petitioner "raise[d] legitimate questions about the trial judge's reasoning" but ultimately could not overcome the § 2254 presumption of correctness:  "That a different factfinder might have reached a different conclusion is not sufficient to reverse the state court's determination on habeas review." *Id.* at 72.[26]  And in *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 407–08 (1st Cir. 2002), a direct appeal of a civil case, the juror did not give a dishonest answer or even a factually incorrect answer when she averred that she knew of nothing in her background that would affect her ability to serve impartially, nor did the district court hold a hearing to question the juror.

### c.   Other Circuits Agree That *McDonough* Does Not Require A Showing Of Actual Or Implied Bias.

The Government points to a variety of authority from other Circuits for the proposition that actual or implied bias are required to establish *McDonough* relief.

---

[26] Additionally, the District Court correctly stated that *DeBurgo* stands "only for the proposition that a defendant must prove a juror was not impartial," not for the proposition that impartiality may only be proven by a showing of actual bias. *Sampson*, 820 F. Supp. 2d at 177 n.12.  "[S]atisfying the *McDonough* test is one way in which a party may prove a juror was not impartial." *Id.*

*See, e.g.*, Br. at 96–97 & nn.19–20. But in addition to its extensive analysis of governing First Circuit caselaw, the District Court analyzed all of these cases from other Circuits and instead found persuasive that authority—none of which the Government mentions—holding that actual or implied bias are *not* required to establish *McDonough* relief.

For example, the Government relies on *United States v. North*, 910 F.2d 843 (D.C. Cir. 1990) (per curiam), *United States v. Doke*, 171 F.3d 240 (5th Cir. 1999), and *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005). *See* Br. at 96 & nn.19–20. In analyzing each of these cases, though, the District Court found them either contrary to *McDonough*, *Amirault*, and *Dall*, contrary to other cases in their own Circuits, or otherwise inapposite. *See generally Sampson*, 820 F. Supp. 2d at 179–80 & n.18.

The District Court instead found persuasive opinions from the Second, Fourth, and Tenth Circuits. *See, e.g., id*. at 177–78. Relying in part on several Second Circuit cases, the District Court determined that the second *McDonough* prong may also be satisfied upon a showing that inferable bias exists and would have resulted in Juror C's dismissal for cause. *See id*. at 165–67, 178–79. *See, e.g., United States v. Torres*, 128 F.3d 38 (2d Cir. 1997); *United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2002) ("Challenges for cause are generally based on

96

actual bias, implied bias, or inferable bias.").[27]  The cases from other Circuits cited by the District Court confirmed that actual or implied bias are not requisites to *McDonough* relief.  *See Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 516 (10th Cir. 1998); *Gonzales v. Thomas*, 99 F.3d 978, 987 (10th Cir. 1996); *Jones v. Cooper*, 311 F.3d 306, 311–13 (4th Cir. 2002); *Jackson v. Ala. Tenure Comm'n*, 405 F.3d 1276, 1277–79 (11th Cir. 2005).

*     *     *     *

The Government now asserts that the Supreme Court "left no doubt" that actual or implied bias are required to warrant a new trial under *McDonough*, Br. at 86, and that *McDonough* "cannot plausibly be read" to suggest otherwise, Br. at 94.  The Government's emphatic statements, though, must be viewed in light of the Government's equally unequivocal embrace of the contrary argument for much of the § 2255 proceedings and briefing in the District Court.

On November 19, 2010, after the first evidentiary hearing in which Juror C testified, the Government argued that *McDonough* was a *separate* test from actual or implied bias:

---

[27] The Government makes much of certain language in *Greer* that "questioned" whether the doctrine of inferable bias could apply to post-trial allegations.  Br. at 83.  Certain *Greer* dicta does raise that point, but *Greer* expressly did "not answer that question" because the lower court had not found that inferable bias existed in that case.  *Greer*, 285 F.3d at 172.  A case in the Southern District of New York later confirmed that inferable bias is a permissible ground for granting *McDonough* relief in a post-trial setting.  *See Daugerdas*, 867 F. Supp. 2d at 473–76.

> THE COURT:  All right.  So then let[’]s say there's a dishonest statement concerning a material fact that would have resulted in a challenge for cause.  Is that legally the end of the inquiry or do I do some further analysis to try to determine whether there was actual bias?
>
> [GOVERNMENT COUNSEL]:I think that is actually the end of the inquiry.  *I think that in determining whether there would be a valid basis for a cause, of course, you know, one way somebody could show that is to make an assertion of bias, but I think you could make that showing in other ways as well.*

JSA630 (emphasis added).

Thereafter, the District Court ordered the parties brief "[w]hether the court must decide the actual or implied bias of a juror if the standard stated by the majority in *McDonough* is met."  In response, the Government argued that "[t]he Court need not decide the actual or implied bias of a juror if it determines that the *McDonough Power* standard has been met unless it wanted to avoid a potentially unnecessary remand."  JSA733.  In its reply brief in response to the same court order, the Government affirmed its position.  *See* SA66 [Gov't Br. (Jan. 21, 2011) at 10] ("The government agrees with Petitioner . . . .").  Then, during oral argument on March 18, 2011, the Government again affirmed its position and agreed that the *McDonough* and bias tests are separate.  *See* JSA848 (Government Counsel: "I think we agree with how your Honor has framed the legal issues in terms of the *McDonough Power* test on the one hand and the considerations of actual or implied bias on the other.").

98

It is difficult to discern how the Government could argue—specifically and repeatedly, orally and in writing, in November 2010, January 2011, and March 2011—that actual or implied bias need not be shown to prove a *McDonough* violation, and then on appeal argue that the Supreme Court "left no doubt" that that same position is patently incorrect. Though the Government is not be estopped from changing its argument, as it finally did below in May 2011 (after it had become clear that the District Court was highly likely to grant Mr. Sampson relief),[28] surely this Court can consider the shifting sands on which the Government's argument rests.

This is a juror *voir dire* perjury case. Juror C intentionally gave false answers to multiple material questions because she decided her personal life was nobody else's business. A far cry from "abstract imperfection" or "hints of bias," Juror C deprived Mr. Sampson and the District Court of critical information that was the basis for a valid challenge for cause that would have been granted. Her truthful answers demonstrated the "high risk that she would be substantially impaired in her ability to decide whether Sampson should be executed based solely

---

[28] The Government abandoned its long-running view of *McDonough* soon after the District Court's comments at the second evidentiary hearing that "if she told me what she told me today that, you know, 'I was very proud when [J] worked for the Sanibel Police Department. I was disheartened when she went to prison on drug charges. I'm trying to repress it and don't like to think about it,' um, I wouldn't have put her on this jury." JSA860.

on the evidence" and deprived Mr. Sampson of his "constitutional right to have the issue of whether he should live or die decided by twelve women and men who were each capable of deciding that most consequential question impartially." *Sampson*, 820 F. Supp. 2d at 159.

*McDonough* requires nothing more. By its plain language the standard looks to what the District Court would have done at the time of *voir dire* if it had had the truth—that is, if it had known at the time of the original *voir dire* what it learned as a result of the post-trial evidentiary hearing. *See also United States v. Stewart*, 433 F.3d 273, 304 (2d Cir. 2006) (satisfying the second *McDonough* prong requires district court to "determine if it would have granted the hypothetical challenge" (internal quotation marks omitted)); *United States v. Greer*, 285 F.3d 158, 171 (2d Cir. 2000, 2002) (same); *Daugerdas*, 867 F. Supp. 2d at 470 (same); *Sampson*, 820 F. Supp. 2d at 174 (same). The *McDonough* majority emphasized just this point: "The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." *McDonough*, 464 U.S. at 554. One juror in a capital case may make the difference between life and death; had Juror C answered honestly at *voir dire*, someone else would have had her seat on this jury.

100

### 3.    None Of The Government's Alternative Theories Require Reversal Of The District Court's Order.

#### a.    *Teague* Presents No Bar To Relief.

For the first time, the Government asserts on appeal that the District Court's order is barred by *Teague v. Lane*, 489 U.S. 288 (1989).  The Government plainly has waived any argument that *Teague* bars relief here, *see* Br. at 75 (admitting to the Government's "forfeiture" of the *Teague* argument by having failed to raise it below), which precludes the Government from raising the issue now, *Ferrara v. United States*, 456 F.3d 278, 289 (1st Cir. 2006).  But beyond the waiver issues, and also assuming that *Teague* applies to grants of relief in § 2255 proceedings,[29] *Teague* does not bar relief here.

Far from articulating a "new rule" of constitutional procedure, the District Court's order was "dictated by precedent existing at the time" of Mr. Sampson's sentencing hearing.  *See Ferrara*, 456 F.3d at 288–90 (affirming grant of § 2255 motion by Wolf, J., and dismissing Government's argument that *Teague* barred relief).  The District Court relied on *McDonough*, a 1984 case that long pre-dated Mr. Sampson's sentencing hearing.  *McDonough*, in turn, recognized long-standing

---

[29] Mr. Sampson recognizes that this Court has concluded that *Teague* is applicable in § 2255 proceedings.  *See, e.g.*, *Sepulveda v. United States*, 330 F.3d 55 (1st Cir. 2003).  However, the Supreme Court has "express[ed] no opinion" on "whether the *Teague* rule applies to cases brought under 28 U.S.C. § 2255."  *Danforth v. Minnesota*, 552 U.S. 264, 269 n.4 (2008).  Mr. Sampson is preserving the right to argue against *Teague* applicability at a later stage, should that become necessary.

principles rooted in the Sixth Amendment.  The District Court's holding also relied

on *Amirault* and *Dall*, both of which interpreted *McDonough* more than a decade

before Mr. Sampson's sentencing hearing.[30]  The District Court did nothing new; it

simply relied on long-standing precedent to protect Mr. Sampson's constitutional

right to a fair hearing before an impartial trier of fact.

> **b.**     **The Government's Suggestion That Juror *Voir Dire* Perjury Does Not Merit Relief Is Contrary To Law.**

The Government asks this Court to hold that juror perjury at *voir dire*,

though constitutional error, does not justify § 2255 relief.  Yet, courts uniformly

treat the type of juror misconduct alleged here as structural error requiring a new

trial.  *See Sampson*, 820 F. Supp. 2d at 157 ("The Supreme Court has held that if

even one member of a jury that has sentenced a defendant to death was not

impartial, that sentence must be vacated." (citing *Morgan v. Illinois*, 504 U.S. 719,

---

[30] The Government reminds this Court of the "cause and prejudice" doctrine.  *See* Br. at 74 n.15.  This Court should take at face value the Government's assertion that it "does not raise the doctrine here."  *Id.*  Nevertheless, the "cause and prejudice" test would be satisfied under these circumstances.  It would not have been possible for Mr. Sampson to raise his allegations of juror misconduct on direct appeal, for "[w]hen his appellate brief was filed, the predicate for appellate review of the contention—a recorded event, a timely objection, and a ruling by the trial court—was nonexistent."  *Brown v. United States*, 480 F.2d 1036, 1038 (5th Cir. 1973).  *See also Williams v. Taylor*, 529 U.S. 420, 442–43 (2000).  And there can be no question that Mr. Sampson suffered prejudice, since "[t]he Supreme Court has held that if even one member of a jury that has sentenced a defendant to death was not impartial, that sentence must be vacated."  *Sampson*, 820 F. Supp. 2d at 157.

102

729 (1992))).  *See also Jackson*, 405 F.3d at 1288–89 (affirming *McDonough* relief where district court "did not consider the effect that said juror might have had on the outcome of the jury's deliberations or any possible bias she might have had" (quotation marks omitted)); *Dyer*, 151 F.3d at 973 n.2 ("The presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice.").  *Cf. United States v. Martinez-Salazar*, 528 U.S. 304, 316–17 (2000) (reaffirming that a conviction must be reversed if a district court errs in failing to strike a juror for cause); *Ross v. Oklahoma*, 487 U.S. 81, 85 (1988) ("Had [the biased juror] sat on the jury that ultimately sentenced petitioner to death, and had petitioner properly preserved his right to challenge the trial court's failure to remove [the juror] for cause, the sentence would have to be overturned.").  *McDonough* itself does not mention adding another harmless error component on top of the test stated therein.  Nothing in the Government's abbreviated argument compels a contrary determination here.

> **C.     As An Alternative Basis For Affirmance, This Court Should Hold That The Facts Found By The District Court Establish That Juror C Was Impliedly Biased.**

In addition to arguing for relief under *McDonough*, Mr. Sampson argued in the District Court that a new sentencing hearing was required because Juror C was impliedly biased.  *See* D.E. 1194, at 71–74.  The District Court stated that "[w]hether Sampson is entitled to a new trial because [Juror] C should be found to

have been impliedly biased is a close question." *Sampson*, 820 F. Supp. 2d at 190.

*See id.* at 192 (similar). Ultimately, though, the District Court concluded that

implied bias had not "been proven because [Juror] C did not have a direct

relationship to the parties or events in the case, the occurrences in her own life

which may have affected her ability to decide the case based solely on the evidence

occurred before rather than during the trial, and she did not lie in order to secure a

seat on the jury." *Id.* at 192.

### 1.     Standard of Review.

Whether a juror was impliedly biased is a question of law, reviewable *de*

*novo* on appeal. *See Sampson*, 820 F. Supp. 2d at 163–64 ("Implied bias . . . is

determined as a matter of law . . . ."). *See also Caterpillar Inc. v. Sturman Indus.*

*Inc.*, 387 F.3d 1358, 1367 (Fed. Cir. 2004) ("Thus, in cases of implied bias . . .

'whether a juror's partiality may be presumed from the circumstances is a question

of law,' which we review *de novo*." (brackets and citation omitted)); *Skaggs*, 164

F.3d at 517 ("The determination of implied bias is a question of law reviewed *de*

*novo*."). If this Court, in its *de novo* review, finds that Juror C was impliedly

biased, it may affirm the District Court's order granting a new sentencing hearing

on this alternative ground. *See C.G. ex rel. A.S. v. Five Town Cmty. Sch. Dist.*, 513

F.3d 279, 288 (1st Cir. 2008). In determining whether Juror C was impliedly

biased, this Court may take the factual findings the District Court applied in the

*McDonough* discussion, all of which are uncontested, and "realign those findings under a different legal matrix and decide the case on that basis." *Id.*

### 2.     Juror C Was Impliedly Biased.

Implied bias exists in "exceptional circumstances." *McDonough*, 464 U.S. at 556–57 (Blackmun, J., concurring); *Amirault*, 968 F.2d at 1406.     Such circumstances include "where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances." *Fields v. Brown*, 503 F.3d 755, 770 (9th Cir. 2007) (quotation marks omitted).[31] The standard for determining whether a juror would be impliedly biased "is essentially an objective one." *Id.* at 807 (quotation marks omitted). "The test focuses on 'whether an average person in the position of the juror in controversy would be prejudiced.'" *United States v. Mitchell*, 690 F.3d 137, 142 (3d Cir. 2012) (quoting *United States v. Torres*, 128 F.3d 38, 45 (2d Cir. 1997)). Though dishonesty is not a prerequisite to a finding of implied bias, a willingness to lie is extremely probative of whether a juror is biased. *See Dyer*, 151 F.3d at 983; *United States v. Boney*, 977 F.2d 624, 634 (D.C. Cir. 1992); *Colombo*, 869 F.2d at 152; *United States v. Perkins*, 748 F.2d 1519, 1532; *Williams v. Netherland*, 181 F.

---

[31] Other examples of categories of implied bias that do not appear applicable in the instant case were set forth in Justice O'Connor's concurrence in *Smith v. Phillips*, 455 U.S. at 222.

Supp. 2d 604, 609 (E.D. Va. 2002).  Doubts about the juror's bias must be resolved in favor of the defendant.  *See United States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000); *Burton v. Johnson*, 948 F.2d 1150 (10th Cir. 1991); *Scott*, 854 F.2d at 700; *Perkins*, 748 F.2d at 1533.  Moreover, implied bias is an especially useful construct when facts and memories that would support a claim of actual bias cannot be gleaned from the testimony of a repeatedly perjurious juror.  *See, e.g., Dyer*, 151 F.3d at 981 (finding implied bias and granting relief after noting that "[w]hether [the implicated juror] was actually biased—*i.e.*, whether she was disposed to cast a vote against [the defendant]—is difficult to figure out eighteen years later").  *Cf. United States v. Rhodes*, 556 F.2d 599, 602 (1st Cir. 1977) (remanding for a new trial where misconduct that occurred less than two years prior could not be adequately explored).

While neither Mr. Sampson nor the Government challenges any of the District Court's factual findings, Mr. Sampson respectfully disagrees with the District Court's legal conclusion that the factual findings do not rise to the level of implied bias.  The extensive pattern of deceit discussed *supra*, as well as the similarities that correct responses would have revealed between Juror C's life experience and certain evidence presented in Mr. Sampson's sentencing hearing constitute exceptional circumstances establishing that Juror C was impliedly biased.

Certain facts presented during Mr. Sampson's sentencing hearing were simply too close to many of the facts of Juror C's life that she lied about during *voir dire*. For example, as early as opening statements, the jury was told that Mr. Sampson had "spent 16 years in prison . . . on and off for a series of non-violent crimes, mostly commercial burglaries, breaking and entering into a gas station, crimes of that nature, stealing money for drugs. And you'll learn about his drug history, his alcohol history." JA186. *See also* JA191 ("This is a photograph of an 11-year old Gary Sampson, smiling for a school picture, and going out to drink alcohol and smoke marijuana at the end of the day."). In Juror C's past, but concealed during *voir dire*, her daughter J had been arrested for grand theft and incarcerated for a drug-related probation violation. As discussed above, her daughter's crimes, drug use, and incarceration "humiliate[ed]" and "kill[ed]" Juror C. *See supra* in SOF Parts B.2.b & B.4. An "average person" hearing the repeated testimony concerning Mr. Sampson's crimes, drug use, and incarceration could not help but call to mind her own daughter's similar struggles and the shame it brought to her family. Juror C's initial disdain after her daughter was jailed, and subsequent difficulty maintaining a mother-daughter relationship in light of J's perceived failings, would also surely be called to the average juror's mind as she heard evidence of Mr. Sampson's alienation from his family after his crimes.

107

Additionally, the Government called as witnesses four separate bank tellers, who variously testified that Mr. Sampson had pointed a gun at them, inducing fear of death. *See supra* SOF Parts A.1 & B.5. It is highly unlikely that an average person could remain impartial if, in her past, she had been threatened with a gun and put in fear for her life, just as had the bank tellers. The average person surely would have been reminded of her own experience in having a gun pointed at her and the associated verbal threat against her life. And with a history of being threatened with death by a weapon, as Juror C was, the average person could not be impartial in the face of the evidence that Mr. Sampson threatened his carjacking victims with a weapon.

Moreover, several facts conveyed during the testimony of Karen Alexander, Mr. Sampson's ex-wife, point to Juror C's implied bias. It is telling that Juror C remembered Ms. Alexander's testimony these many years later during the 2010 evidentiary hearing, and specifically recalled Ms. Alexander describing Mr. Sampson's "addiction problem and the problems it caused in his marriage." JSA478. The parallel facts of Juror C's marriages and their dissolution are striking and belie the contention that she was impartial in judging the actions of Mr. Sampson. Ms. Alexander testified that she gave Mr. Sampson "the choice between partying and . . . being with me" and that Mr. Sampson did not choose her, *see* D.E. 1194 at 48 (¶ 226); Juror C testified that she divorced P, at least in part,

108

because "[h]e liked to drink.  He liked his vodka.  And he liked smoking his pot.  And I had had it," *see* JSA453–54.  Ms. Alexander also testified that Mr. Sampson tried to get back together with her while he was seeing somebody else, *see* D.E. 1194 at 48 (¶ 226); Juror C testified that her first marriage ended because "he just wanted to go with other people and I got tired of it.  I wanted to be with my family.  Every time I turned around, he was seeing someone else," *see* JSA784.

Further, it is not just the parallel facts between Juror C's personal circumstances and evidence presented, but also her willingness—indeed, her compulsion—to lie about it, that warrant a finding of implied bias.  *See Dyer*, 151 F.3d at 983; *Boney*, 977 F.2d at 634; *Colombo*, 869 F.2d at 152; *Perkins*, 748 F.2d at 1532; *Williams*, 181 F. Supp. 2d at 609.  Finally, to the extent any doubt remains about Juror C's partiality in the face of the fact and extent of her rampant dishonesty during *voir dire* and the § 2255 proceedings, the Circuit courts that have considered the question are uniform in holding that those doubts must be resolved against the juror.  *See Gonzalez*, 214 F.3d at 1114; *Burton*, 948 F.2d 1150; *Scott*, 854 F.2d at 700; *Perkins*, 748 F.2d at 1533.

Mr. Sampson respectfully submits that Juror C's extensive pattern of dishonesty, coupled with the similarity of her experience to the evidence presented at the sentencing hearing, meets the "exceptional circumstance" standard.  Underscoring the exceptionality of the circumstances here, this is a capital case

109

where the vote of one juror can make the difference between life and death—had Juror C told the truth, she would not have sat on the jury that sentenced Mr. Sampson to death.

## CONCLUSION

"Because 'justice must satisfy the appearance of justice,' courts need to ensure that tainted jury verdicts—even those reached after long and costly trials— do not stand." *Daugerdas*, 867 F. Supp. 2d at 448.  Mr. Sampson is aware of no other case like this one, where a juror has given so many intentionally false answers to so many material questions after having been given so many opportunities to tell the truth, where the truth could have made the difference between life and death.  The District Court properly ordered a new sentencing hearing.  For the foregoing reasons, Mr. Sampson respectfully requests that this Court dismiss the Government's consolidated appeals or, in the alternative, affirm the District Court's order.

GARY SAMPSON
By his attorneys,


s/Cadence Mertz
William E. McDaniels, Esq.
Jennifer G. Wicht, Esq.
Cadence Mertz, Esq.
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
(202) 434-5000

110

J. Martin Richey, Esq.
Elizabeth L. Prevett, Esq.
Federal Defender's Office
51 Sleeper Street, Fifth Floor
Boston, MA  02110
(617) 223-8061

Susan K. Marcus, Esq.
3 Fort Mason
San Francisco, CA  94123
(212) 876-5500

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(A)</u>

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. This brief complies with the Court's Order of September 12, 2012 allowing Mr. Sampson to file a principal brief of not more than 28,000 words, because this brief contains 27,817 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word.

<u>/s Cadence Mertz, Esq.</u>
Cadence Mertz, Esq.
Dated: January 10, 2013

## **CERTIFICATE OF SERVICE**

I, Cadence Mertz, hereby certify that this document filed through the ECF system will be sent electronically to registered participants of the CM/ECF system Assistant U.S. Attorneys Mark T. Quinlivan, Zachary R. Hafer, and John Albert Wortmann, Jr., as identified on the Notice of Electronic Filing, on January 10, 2013.

/s/ Cadence Mertz
Cadence Mertz

**Nos. 12-1643 & 12-8019**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

-------------------------------------------------------x

GARY SAMPSON

     Appellee-Respondent,

                                  On appeal from the District of

v.                             Massachusetts (Wolf, C.J.)

UNITED STATES OF AMERICA,      Civil Action No. 09-10762-MLW
                                  Criminal No. 01-10384-MLW

     Appellant-Petitioner.

-------------------------------------------------------x

**<u>APPELLEE ADDENDUM</u>**

                                 William E. McDaniels, Esq.
                                 Jennifer G. Wicht, Esq.
                                 Cadence Mertz, Esq.
                                 Williams & Connolly LLP
                                 725 Twelfth Street, N.W.
                                 Washington, DC  20005
                                 (202) 434-5000

                                 J. Martin Richey, Esq.
                                 Elizabeth L. Prevett, Esq.
                                 Federal Defender's Office
                                 51 Sleeper Street, Fifth Floor
                                 Boston, MA  02110
                                 (617) 223-8061

                                 Susan K. Marcus, Esq.
                                 3 Fort Mason
                                 San Francisco, CA  94123
                                 (212) 876-5500

**Nos. 12-1643 & 12-8019**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

------------------------------------------------------x

GARY SAMPSON

      Appellee-Respondent,

                              On appeal from the District of

v.                             Massachusetts (Wolf, C.J.)

UNITED STATES OF AMERICA,       Civil Action No. 09-10762-MLW
                                 Criminal No. 01-10384-MLW

      Appellant-Petitioner.

------------------------------------------------------x

## <u>APPELLEE ADDENDUM</u>

## <u>TABLE OF CONTENTS</u>

1.  18 U.S.C. 3592...................................................... Samp.Add.1

2.  18 U.S.C. 3593...................................................... Samp.Add. 3

3.  18 U.S.C. 3594...................................................... Samp.Add. 5

4.  18 U.S.C. 3595...................................................... Samp.Add. 5

5.  18 U.S.C. 3731...................................................... Samp.Add. 6

6.  28 U.S.C. 636....................................................... Samp.Add. 8

7.  28 U.S.C. 1291...................................................... Samp.Add. 13

8.  28 U.S.C. 1292...................................................... Samp.Add. 15

9.  28 U.S.C. 2253...................................................... Samp.Add. 17

10. 28 U.S.C. 2255 (incl. 2255 Rules)........................ Samp.Add. 19

(2) an offense referred to in section 408(c)(1) of the Controlled Substances Act (21 U.S.C. 848(c)(1)), committed as part of a continuing criminal enterprise offense under that section, where the defendant is a principal administrator, organizer, or leader of such an enterprise, and the defendant, in order to obstruct the investigation or prosecution of the enterprise or an offense involved in the enterprise, attempts to kill or knowingly directs, advises, authorizes, or assists another to attempt to kill any public officer, juror, witness, or members of the family or household of such a person,

shall be sentenced to death if, after consideration of the factors set forth in section 3592 in the course of a hearing held pursuant to section 3593, it is determined that imposition of a sentence of death is justified, except that no person may be sentenced to death who was less than 18 years of age at the time of the offense.

(Added Pub. L. 103–322, title VI, § 60002(a), Sept. 13, 1994, 108 Stat. 1959.)

### SHORT TITLE

Section 60001 of title VI of Pub. L. 103–322 provided that: "This title [enacting this chapter and sections 36, 37, 1118 to 1121, 2245, 2280, 2281, and 2332a of this title, amending sections 34, 241, 242, 245, 247, 794, 844, 924, 930, 1091, 1111, 1114, 1116, 1117, 1201, 1203, 1503, 1512, 1513, 1716, 1958, 1959, 1992, 2113, 2119, 2251, 2332, 2340A, 3005, and 3432 of this title and section 1324 of Title 8, Aliens and Nationality, renumbering former section 2245 of this title as 2246, repealing section 46503 of Title 49, Transportation, and enacting provisions set out as notes under this section and sections 36, 37, and 2280 of this title] may be cited as the 'Federal Death Penalty Act of 1994'."

### APPLICABILITY TO UNIFORM CODE OF MILITARY JUSTICE

Section 60004 of title VI of Pub. L. 103–322 provided that: "Chapter 228 of title 18, United States Code, as added by this title, shall not apply to prosecutions under the Uniform Code of Military Justice (10 U.S.C. 801)."

### § 3592. Mitigating and aggravating factors to be considered in determining whether a sentence of death is justified

(a) MITIGATING FACTORS.—In determining whether a sentence of death is to be imposed on a defendant, the finder of fact shall consider any mitigating factor, including the following:

(1) IMPAIRED CAPACITY.—The defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform conduct to the requirements of law was significantly impaired, regardless of whether the capacity was so impaired as to constitute a defense to the charge.

(2) DURESS.—The defendant was under unusual and substantial duress, regardless of whether the duress was of such a degree as to constitute a defense to the charge.

(3) MINOR PARTICIPATION.—The defendant is punishable as a principal in the offense, which was committed by another, but the defendant's participation was relatively minor, regardless of whether the participation was so minor as to constitute a defense to the charge.

(4) EQUALLY CULPABLE DEFENDANTS.—Another defendant or defendants, equally cul-

pable in the crime, will not be punished by death.

(5) NO PRIOR CRIMINAL RECORD.—The defendant did not have a significant prior history of other criminal conduct.

(6) DISTURBANCE.—The defendant committed the offense under severe mental or emotional disturbance.

(7) VICTIM'S CONSENT.—The victim consented to the criminal conduct that resulted in the victim's death.

(8) OTHER FACTORS.—Other factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence.

(b) AGGRAVATING FACTORS FOR ESPIONAGE AND TREASON.—In determining whether a sentence of death is justified for an offense described in section 3591(a)(1), the jury, or if there is no jury, the court, shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:

(1) PRIOR ESPIONAGE OR TREASON OFFENSE.— The defendant has previously been convicted of another offense involving espionage or treason for which a sentence of either life imprisonment or death was authorized by law.

(2) GRAVE RISK TO NATIONAL SECURITY.—In the commission of the offense the defendant knowingly created a grave risk of substantial danger to the national security.

(3) GRAVE RISK OF DEATH.—In the commission of the offense the defendant knowingly created a grave risk of death to another person.

The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.

(c) AGGRAVATING FACTORS FOR HOMICIDE.—In determining whether a sentence of death is justified for an offense described in section 3591(a)(2), the jury, or if there is no jury, the court, shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:

(1) DEATH DURING COMMISSION OF ANOTHER CRIME.—The death, or injury resulting in death, occurred during the commission or attempted commission of, or during the immediate flight from the commission of, an offense under section 32 (destruction of aircraft or aircraft facilities), section 33 (destruction of motor vehicles or motor vehicle facilities), section 37 (violence at international airports), section 351 (violence against Members of Congress, Cabinet officers, or Supreme Court Justices), an offense under section 751 (prisoners in custody of institution or officer), section 794 (gathering or delivering defense information to aid foreign government), section 844(d) (transportation of explosives in interstate commerce for certain purposes), section 844(f) (destruction of Government property by explosives), section 1118 (prisoners serving life term), section 1201 (kidnapping), section 844(i) (destruction of property affecting interstate commerce by explosives), section 1116 (killing or attempted killing of diplomats), section

1203 (hostage taking), section 1992[1] (wrecking trains), section 2245 (offenses resulting in death), section 2280 (maritime violence), section 2281 (maritime platform violence), section 2332 (terrorist acts abroad against United States nationals), section 2332a (use of weapons of mass destruction), or section 2381 (treason) of this title, or section 46502 of title 49, United States Code (aircraft piracy).

(2) PREVIOUS CONVICTION OF VIOLENT FELONY INVOLVING FIREARM.—For any offense, other than an offense for which a sentence of death is sought on the basis of section 924(c), the defendant has previously been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a firearm (as defined in section 921) against another person.

(3) PREVIOUS CONVICTION OF OFFENSE FOR WHICH A SENTENCE OF DEATH OR LIFE IMPRISONMENT WAS AUTHORIZED.—The defendant has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or a sentence of death was authorized by statute.

(4) PREVIOUS CONVICTION OF OTHER SERIOUS OFFENSES.—The defendant has previously been convicted of 2 or more Federal or State offenses, punishable by a term of imprisonment of more than 1 year, committed on different occasions, involving the infliction of, or attempted infliction of, serious bodily injury or death upon another person.

(5) GRAVE RISK OF DEATH TO ADDITIONAL PERSONS.—The defendant, in the commission of the offense, or in escaping apprehension for the violation of the offense, knowingly created a grave risk of death to 1 or more persons in addition to the victim of the offense.

(6) HEINOUS, CRUEL, OR DEPRAVED MANNER OF COMMITTING OFFENSE.—The defendant committed the offense in an especially heinous, cruel, or depraved manner in that it involved torture or serious physical abuse to the victim.

(7) PROCUREMENT OF OFFENSE BY PAYMENT.—The defendant procured the commission of the offense by payment, or promise of payment, of anything of pecuniary value.

(8) PECUNIARY GAIN.—The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value.

(9) SUBSTANTIAL PLANNING AND PREMEDITATION.—The defendant committed the offense after substantial planning and premeditation to cause the death of a person or commit an act of terrorism.

(10) CONVICTION FOR TWO FELONY DRUG OFFENSES.—The defendant has previously been convicted of 2 or more State or Federal offenses punishable by a term of imprisonment of more than one year, committed on different occasions, involving the distribution of a controlled substance.

(11) VULNERABILITY OF VICTIM.—The victim was particularly vulnerable due to old age, youth, or infirmity.

---

[1] See References in Text note below.

(12) CONVICTION FOR SERIOUS FEDERAL DRUG OFFENSES.—The defendant had previously been convicted of violating title II or III of the Comprehensive Drug Abuse Prevention and Control Act of 1970 for which a sentence of 5 or more years may be imposed or had previously been convicted of engaging in a continuing criminal enterprise.

(13) CONTINUING CRIMINAL ENTERPRISE INVOLVING DRUG SALES TO MINORS.—The defendant committed the offense in the course of engaging in a continuing criminal enterprise in violation of section 408(c) of the Controlled Substances Act (21 U.S.C. 848(c)), and that violation involved the distribution of drugs to persons under the age of 21 in violation of section 418 of that Act (21 U.S.C. 859).

(14) HIGH PUBLIC OFFICIALS.—The defendant committed the offense against—

(A) the President of the United States, the President-elect, the Vice President, the Vice President-elect, the Vice President-designate, or, if there is no Vice President, the officer next in order of succession to the office of the President of the United States, or any person who is acting as President under the Constitution and laws of the United States;

(B) a chief of state, head of government, or the political equivalent, of a foreign nation;

(C) a foreign official listed in section 1116(b)(3)(A), if the official is in the United States on official business; or

(D) a Federal public servant who is a judge, a law enforcement officer, or an employee of a United States penal or correctional institution—

(i) while he or she is engaged in the performance of his or her official duties;

(ii) because of the performance of his or her official duties; or

(iii) because of his or her status as a public servant.

For purposes of this subparagraph, a "law enforcement officer" is a public servant authorized by law or by a Government agency or Congress to conduct or engage in the prevention, investigation, or prosecution or adjudication of an offense, and includes those engaged in corrections, parole, or probation functions.

(15) PRIOR CONVICTION OF SEXUAL ASSAULT OR CHILD MOLESTATION.—In the case of an offense under chapter 109A (sexual abuse) or chapter 110 (sexual abuse of children), the defendant has previously been convicted of a crime of sexual assault or crime of child molestation.

(16) MULTIPLE KILLINGS OR ATTEMPTED KILLINGS.—The defendant intentionally killed or attempted to kill more than one person in a single criminal episode.

The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.

(d) AGGRAVATING FACTORS FOR DRUG OFFENSE DEATH PENALTY.—In determining whether a sentence of death is justified for an offense described in section 3591(b), the jury, or if there is no jury, the court, shall consider each of the following aggravating factors for which notice has been given and determine which, if any, exist:

(1) PREVIOUS CONVICTION OF OFFENSE FOR WHICH A SENTENCE OF DEATH OR LIFE IMPRISONMENT WAS AUTHORIZED.—The defendant has previously been convicted of another Federal or State offense resulting in the death of a person, for which a sentence of life imprisonment or death was authorized by statute.

(2) PREVIOUS CONVICTION OF OTHER SERIOUS OFFENSES.—The defendant has previously been convicted of two or more Federal or State offenses, each punishable by a term of imprisonment of more than one year, committed on different occasions, involving the importation, manufacture, or distribution of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) or the infliction of, or attempted infliction of, serious bodily injury or death upon another person.

(3) PREVIOUS SERIOUS DRUG FELONY CONVICTION.—The defendant has previously been convicted of another Federal or State offense involving the manufacture, distribution, importation, or possession of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) for which a sentence of five or more years of imprisonment was authorized by statute.

(4) USE OF FIREARM.—In committing the offense, or in furtherance of a continuing criminal enterprise of which the offense was a part, the defendant used a firearm or knowingly directed, advised, authorized, or assisted another to use a firearm to threaten, intimidate, assault, or injure a person.

(5) DISTRIBUTION TO PERSONS UNDER 21.—The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by section 418 of the Controlled Substances Act (21 U.S.C. 859) which was committed directly by the defendant.

(6) DISTRIBUTION NEAR SCHOOLS.—The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by section 419 of the Controlled Substances Act (21 U.S.C. 860) which was committed directly by the defendant.

(7) USING MINORS IN TRAFFICKING.—The offense, or a continuing criminal enterprise of which the offense was a part, involved conduct proscribed by section 420 of the Controlled Substances Act (21 U.S.C. 861) which was committed directly by the defendant.

(8) LETHAL ADULTERANT.—The offense involved the importation, manufacture, or distribution of a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), mixed with a potentially lethal adulterant, and the defendant was aware of the presence of the adulterant.

The jury, or if there is no jury, the court, may consider whether any other aggravating factor for which notice has been given exists.

(Added and amended Pub. L. 103–322, title VI, § 60002(a), title XXXIII, § 330021(1), Sept. 13, 1994, 108 Stat. 1960, 2150; Pub. L. 104–132, title VII, § 728, Apr. 24, 1996, 110 Stat. 1302; Pub. L. 104–294, title VI, §§ 601(b)(7), 604(b)(35), Oct. 11, 1996, 110 Stat. 3499, 3508; Pub. L. 107–273, div. B, title IV, § 4002(e)(2), Nov. 2, 2002, 116 Stat. 1810; Pub. L.

109–248, title II, § 206(a)(4), July 27, 2006, 120 Stat. 614.)

REFERENCES IN TEXT

Section 1992 of this title, referred to in subsec. (c)(1), was repealed and a new section 1992 enacted by Pub. L. 109–177, title I, § 110(a), Mar. 9, 2006, 120 Stat. 205, and, as so enacted, section 1992 no longer relates only to the crime of wrecking trains.

The Comprehensive Drug Abuse Prevention and Control Act of 1970, referred to in subsec. (c)(12), is Pub. L. 91–513, Oct. 27, 1970, 84 Stat. 1236, as amended. Title II of the Act, known as the Controlled Substances Act, is classified principally to subchapter I (§ 801 et seq.) of chapter 13 of Title 21, Food and Drugs. Title III of the Act, known as the Controlled Substances Import and Export Act, is classified principally to subchapter II (§ 951 et seq.) of chapter 13 of Title 21. For complete classification of this Act to the Code, see Short Title note set out under sections 801 and 951 of Title 21 and Tables.

AMENDMENTS

2006—Subsec. (c)(1). Pub. L. 109–248 inserted "section 2245 (offenses resulting in death)," after "section 1992 (wrecking trains),".

2002—Subsec. (c)(1). Pub. L. 107–273 substituted "section 37" for "section 36".

1996—Subsec. (c)(1). Pub. L. 104–294, § 601(b)(7), substituted "section 2332a (use of weapons of mass destruction)" for "section 2339 (use of weapons of mass destruction)".

Subsec. (c)(12). Pub. L. 104–294, § 604(b)(35), substituted "Comprehensive Drug Abuse Prevention and Control Act of 1970" for "Controlled Substances Act".

Subsec. (c)(16). Pub. L. 104–132 added par. (16).

1994—Subsec. (c)(1). Pub. L. 103–322, § 330021(1), substituted "kidnapping" for "kidnaping".

EFFECTIVE DATE OF 1996 AMENDMENT

Amendment by section 604(b)(35) of Pub. L. 104–294 effective Sept. 13, 1994, see section 604(d) of Pub. L. 104–294, set out as a note under section 13 of this title.

§ 3593. Special hearing to determine whether a sentence of death is justified

(a) NOTICE BY THE GOVERNMENT.—If, in a case involving an offense described in section 3591, the attorney for the government believes that the circumstances of the offense are such that a sentence of death is justified under this chapter, the attorney shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—

(1) stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and

(2) setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

The factors for which notice is provided under this subsection may include factors concerning the effect of the offense on the victim and the victim's family, and may include oral testimony, a victim impact statement that identifies the victim of the offense and the extent and scope of the injury and loss suffered by the victim and the victim's family, and any other relevant information. The court may permit the

attorney for the government to amend the notice upon a showing of good cause.

(b) HEARING BEFORE A COURT OR JURY.—If the attorney for the government has filed a notice as required under subsection (a) and the defendant is found guilty of or pleads guilty to an offense described in section 3591, the judge who presided at the trial or before whom the guilty plea was entered, or another judge if that judge is unavailable, shall conduct a separate sentencing hearing to determine the punishment to be imposed. The hearing shall be conducted—

(1) before the jury that determined the defendant's guilt;

(2) before a jury impaneled for the purpose of the hearing if—

(A) the defendant was convicted upon a plea of guilty;

(B) the defendant was convicted after a trial before the court sitting without a jury;

(C) the jury that determined the defendant's guilt was discharged for good cause; or

(D) after initial imposition of a sentence under this section, reconsideration of the sentence under this section is necessary; or

(3) before the court alone, upon the motion of the defendant and with the approval of the attorney for the government.

A jury impaneled pursuant to paragraph (2) shall consist of 12 members, unless, at any time before the conclusion of the hearing, the parties stipulate, with the approval of the court, that it shall consist of a lesser number.

(c) PROOF OF MITIGATING AND AGGRAVATING FACTORS.—Notwithstanding rule 32 of the Federal Rules of Criminal Procedure, when a defendant is found guilty or pleads guilty to an offense under section 3591, no presentence report shall be prepared. At the sentencing hearing, information may be presented as to any matter relevant to the sentence, including any mitigating or aggravating factor permitted or required to be considered under section 3592. Information presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, or at the trial judge's discretion. The defendant may present any information relevant to a mitigating factor. The government may present any information relevant to an aggravating factor for which notice has been provided under subsection (a). Information is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. For the purposes of the preceding sentence, the fact that a victim, as defined in section 3510, attended or observed the trial shall not be construed to pose a danger of creating unfair prejudice, confusing the issues, or misleading the jury. The government and the defendant shall be permitted to rebut any information received at the hearing, and shall be given fair opportunity to present argument as to the adequacy of the information to establish the existence of any aggravating or mitigating factor, and as to the appropriateness in the case of imposing a sentence of death. The government

shall open the argument. The defendant shall be permitted to reply. The government shall then be permitted to reply in rebuttal. The burden of establishing the existence of any aggravating factor is on the government, and is not satisfied unless the existence of such a factor is established beyond a reasonable doubt. The burden of establishing the existence of any mitigating factor is on the defendant, and is not satisfied unless the existence of such a factor is established by a preponderance of the information.

(d) RETURN OF SPECIAL FINDINGS.—The jury, or if there is no jury, the court, shall consider all the information received during the hearing. It shall return special findings identifying any aggravating factor or factors set forth in section 3592 found to exist and any other aggravating factor for which notice has been provided under subsection (a) found to exist. A finding with respect to a mitigating factor may be made by 1 or more members of the jury, and any member of the jury who finds the existence of a mitigating factor may consider such factor established for purposes of this section regardless of the number of jurors who concur that the factor has been established. A finding with respect to any aggravating factor must be unanimous. If no aggravating factor set forth in section 3592 is found to exist, the court shall impose a sentence other than death authorized by law.

(e) RETURN OF A FINDING CONCERNING A SENTENCE OF DEATH.—If, in the case of—

(1) an offense described in section 3591(a)(1), an aggravating factor required to be considered under section 3592(b) is found to exist;

(2) an offense described in section 3591(a)(2), an aggravating factor required to be considered under section 3592(c) is found to exist; or

(3) an offense described in section 3591(b), an aggravating factor required to be considered under section 3592(d) is found to exist,

the jury, or if there is no jury, the court, shall consider whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death. Based upon this consideration, the jury by unanimous vote, or if there is no jury, the court, shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence.

(f) SPECIAL PRECAUTION TO ENSURE AGAINST DISCRIMINATION.—In a hearing held before a jury, the court, prior to the return of a finding under subsection (e), shall instruct the jury that, in considering whether a sentence of death is justified, it shall not consider the race, color, religious beliefs, national origin, or sex of the defendant or of any victim and that the jury is not to recommend a sentence of death unless it has concluded that it would recommend a sentence of death for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or of any victim may be. The jury, upon return of a finding under subsection (e), shall also return to the court a certificate, signed by each juror, that consideration of the race, color, religious be-

liefs, national origin, or sex of the defendant or any victim was not involved in reaching his or her individual decision and that the individual juror would have made the same recommendation regarding a sentence for the crime in question no matter what the race, color, religious beliefs, national origin, or sex of the defendant or any victim may be.

(Added Pub. L. 103–322, title VI, § 60002(a), Sept. 13, 1994, 108 Stat. 1964; amended Pub. L. 105–6, § 2(c), Mar. 19, 1997, 111 Stat. 12; Pub. L. 107–273, div. B, title IV, § 4002(e)(8), Nov. 2, 2002, 116 Stat. 1810.)

#### REFERENCES IN TEXT

The Federal Rules of Criminal Procedure, referred to in subsec. (c), are set out in the Appendix to this title.

#### AMENDMENTS

2002—Subsec. (c). Pub. L. 107–273 substituted ''rule 32'' for ''rule 32(c)'' in first sentence.

1997—Subsec. (c). Pub. L. 105–6 inserted ''For the purposes of the preceding sentence, the fact that a victim, as defined in section 3510, attended or observed the trial shall not be construed to pose a danger of creating unfair prejudice, confusing the issues, or misleading the jury.''

#### EFFECTIVE DATE OF 1997 AMENDMENT

Amendment by Pub. L. 105–6 applicable to cases pending on Mar. 19, 1997, see section 2(d) of Pub. L. 105–6, set out as an Effective Date note under section 3510 of this title.

### § 3594. Imposition of a sentence of death

Upon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly. Otherwise, the court shall impose any lesser sentence that is authorized by law. Notwithstanding any other law, if the maximum term of imprisonment for the offense is life imprisonment, the court may impose a sentence of life imprisonment without possibility of release.

(Added Pub. L. 103–322, title VI, § 60002(a), Sept. 13, 1994, 108 Stat. 1966.)

### § 3595. Review of a sentence of death

(a) APPEAL.—In a case in which a sentence of death is imposed, the sentence shall be subject to review by the court of appeals upon appeal by the defendant. Notice of appeal must be filed within the time specified for the filing of a notice of appeal. An appeal under this section may be consolidated with an appeal of the judgment of conviction and shall have priority over all other cases.

(b) REVIEW.—The court of appeals shall review the entire record in the case, including—

(1) the evidence submitted during the trial;

(2) the information submitted during the sentencing hearing;

(3) the procedures employed in the sentencing hearing; and

(4) the special findings returned under section 3593(d).

(c) DECISION AND DISPOSITION.—

(1) The court of appeals shall address all substantive and procedural issues raised on the appeal of a sentence of death, and shall consider whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor and whether the evidence supports the special finding of the existence of an aggravating factor required to be considered under section 3592.

(2) Whenever the court of appeals finds that—

(A) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(B) the admissible evidence and information adduced does not support the special finding of the existence of the required aggravating factor; or

(C) the proceedings involved any other legal error requiring reversal of the sentence that was properly preserved for appeal under the rules of criminal procedure,

the court shall remand the case for reconsideration under section 3593 or imposition of a sentence other than death. The court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless, including any erroneous special finding of an aggravating factor, where the Government establishes beyond a reasonable doubt that the error was harmless.

(3) The court of appeals shall state in writing the reasons for its disposition of an appeal of a sentence of death under this section.

(Added Pub. L. 103–322, title VI, § 60002(a), Sept. 13, 1994, 108 Stat. 1967.)

### § 3596. Implementation of a sentence of death

(a) IN GENERAL.—A person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence. When the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed. If the law of the State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law.

(b) PREGNANT WOMAN.—A sentence of death shall not be carried out upon a woman while she is pregnant.

(c) MENTAL CAPACITY.—A sentence of death shall not be carried out upon a person who is mentally retarded. A sentence of death shall not be carried out upon a person who, as a result of mental disability, lacks the mental capacity to understand the death penalty and why it was imposed on that person.

(Added Pub. L. 103–322, title VI, § 60002(a), Sept. 13, 1994, 108 Stat. 1967.)

### § 3597. Use of State facilities

(a) IN GENERAL.—A United States marshal charged with supervising the implementation of

Page 777                    TITLE 18—CRIMES AND CRIMINAL PROCEDURE                    § 3731

Sec.
3732.    Taking of appeal; notice; time—Rule.
3733.    Assignment of errors—Rule.
3734.    Bill of exceptions abolished—Rule.
3735.    Bail on appeal or certiorari—Rule.
3736.    Certiorari—Rule.
3737.    Record—Rule.
3738.    Docketing appeal and record—Rule.
3739.    Supervision—Rule.
3740.    Argument—Rule.
3741.    Harmless error and plain error—Rule.
3742.    Review of a sentence.

### AMENDMENTS

1984—Pub. L. 98–473, title II, §213(b), Oct. 12, 1984, 98 Stat. 2013, added item 3742.

## § 3731. Appeal by United States

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

The provisions of this section shall be liberally construed to effectuate its purposes.

(June 25, 1948, ch. 645, 62 Stat. 844; May 24, 1949, ch. 139, §58, 63 Stat. 97; Pub. L. 90–351, title VIII, §1301, June 19, 1968, 82 Stat. 237; Pub. L. 91–644, title III, §14(a), Jan. 2, 1971, 84 Stat. 1890; Pub. L. 98–473, title II, §§205, 1206, Oct. 12, 1984, 98 Stat. 1986, 2153; Pub. L. 99–646, §32, Nov. 10, 1986, 100 Stat. 3598; Pub. L. 103–322, title XXXIII, §330008(4), Sept. 13, 1994, 108 Stat. 2142; Pub. L. 107–273, div. B, title III, §3004, Nov. 2, 2002, 116 Stat. 1805.)

### HISTORICAL AND REVISION NOTES

#### 1948 ACT

Based on title 18, U.S.C., 1940 ed., §682 (Mar. 2, 1907, ch. 2564, 34 Stat. 1246; Mar. 3, 1911, ch. 231, §291, 36 Stat. 1167; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54; May 9, 1942, ch. 295, §1, 56 Stat. 271).

The word "dismissing" was substituted for "sustaining a motion to dismiss" in two places for conciseness and clarity, there being no difference in effect of a deci-sion of dismissal whether made on motion or by the court sua sponte.

Minor changes were made to conform to Rule 12 of the Federal Rules of Criminal Procedure. The final sentence authorizing promulgation of rules is omitted as redundant.

#### 1949 ACT

This section [section 58] corrects a typographical error in the second paragraph of section 3731 of title 18, U.S.C., and conforms the language of the fifth, tenth, and eleventh paragraphs of such section 3731 with the changed nomenclature of title 28, U.S.C., Judiciary and Judicial Procedure. See sections 41, 43, and 451 of the latter title.

### AMENDMENTS

2002—First par. Pub. L. 107–273 inserted ", or any part thereof" after "as to any one or more counts".

1994—Second par. Pub. L. 103–322 substituted "order of a district court" for "order of a district courts".

1986—Fifth par. Pub. L. 99–646 struck out fifth par. which read as follows: "Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be released in accordance with chapter 207 of this title."

1984—First par. Pub. L. 98–473, §1206, inserted "or granting a new trial after verdict or judgment," after "indictment or information".

Third par. Pub. L. 98–473, §205, inserted third par. relating to appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

1971—First par. Pub. L. 91–644, §14(a)(1), enacted provision for appeal to a court of appeals from decision, judgment, or order of district court dismissing an indictment or information as to any one or more counts, except that no appeal shall lie where double jeopardy prohibits further prosecution.

Second par. Pub. L. 91–644, §14(a)(1), enacted provision for appeal to a court of appeals from decision or order of district court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.

Such first and second pars. superseded former first eight pars. Pars. one through four had provided for appeal from district courts to Supreme Court from decision or judgment setting aside, or dismissing any indictment or information, or any count thereof and from decision arresting judgment of conviction for insufficiency of indictment or information, where such decision or judgment was based upon invalidity or construction of the statute upon which the indictment or information was founded and for an appeal from decision or judgment sustaining a motion in bar, where defendant had not been put in jeopardy. Pars. five through eight provided for appeal from district courts to a court of appeals where there were no provisions for direct appeal to Supreme Court from decision or judgment setting aside, or dismissing any indictment or information, or any count thereof and from decision arresting a judgment of conviction, and from an order, granting a motion for return of seized property or a motion to suppress evidence, made before trial of a person charged with violation of a Federal law, if the United States attorney certified to the judge who granted the motion that the appeal was not taken for purpose of delay and that the evidence was a substantial proof of the charge pending against the defendant.

Third par. Pub. L. 91–644, §14(a)(2), authorized within third par., formerly ninth, an appeal within thirty days after order has been rendered.

Fourth par. Pub. L. 91–644, §14(a), in revising the provisions, had the effect of designating former tenth par. as fourth par.

Fifth par. Pub. L. 91–644, §14(a)(3), substituted as a fifth par. provision for liberal construction of this section for prior eleventh par. provision respecting remand of case by Supreme Court to court of appeals that should have been taken to such court and treatment of the court's jurisdiction to hear and determine the case as if the appeal were so taken in the first instance and for prior twelfth par. provision respecting certification of case to Supreme Court that should have been taken directly to such Court and treatment of the Court's jurisdiction to hear and determine the case as if the appeal were taken directly to such Court.

1968—Pub. L. 90–351 inserted eighth par. providing for an appeal by the United States from decisions sustaining motions to suppress evidence and substituted in tenth par. "defendant shall be released in accordance with chapter 207 of this title" for "defendant shall be admitted to bail on his own recognizance", respectively.

1949—Act May 24, 1949, substituted "invalidity" for "validity" after "upon the" in second par., and conformed language of fifth, tenth, and eleventh pars. to the changed nomenclature of the courts.

#### SAVINGS PROVISION

Section 14(b) of Pub. L. 91–644 provided that: "The amendments made by this section [amending this section] shall not apply with respect to any criminal case begun in any district court before the effective date of this section [Jan. 2, 1971]."

### § 3732. Taking of appeal; notice; time—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Taking appeal; notice, contents, signing; time, Rule 37(a).

(June 25, 1948, ch. 645, 62 Stat. 845.)

#### REFERENCES IN TEXT

Rule 37 of the Federal Rules of Criminal Procedure was abrogated Dec. 4, 1967, eff. July 1, 1968, and is covered by Rule 3, Federal Rules of Appellate Procedure, set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### § 3733. Assignment of errors—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Assignments of error on appeal abolished, Rule 37(a)(1).
Necessity of specific objection in order to assign error in instructions, Rule 30.

(June 25, 1948, ch. 645, 62 Stat. 845.)

#### REFERENCES IN TEXT

Rule 37 of the Federal Rules of Criminal Procedure was abrogated Dec. 4, 1947, eff. July 1, 1968, and is covered by Rule 3, Federal Rules of Appellate Procedure, set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### § 3734. Bill of exceptions abolished—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Exceptions abolished, Rule 51.
Bill of exceptions not required, Rule 37(a)(1).

(June 25, 1948, ch. 645, 62 Stat. 845.)

#### REFERENCES IN TEXT

Rule 37 of the Federal Rules of Criminal Procedure was abrogated Dec. 4, 1967, eff. July 1, 1968, and is covered by Rule 3, Federal Rules of Appellate Procedure, set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### § 3735. Bail on appeal or certiorari—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Bail on appeal or certiorari; application, Rules 38(c) and 46(a)(2).

(June 25, 1948, ch. 645, 62 Stat. 845.)

#### REFERENCES IN TEXT

Rule 38(c) of the Federal Rules of Criminal Procedure was abrogated Dec. 4, 1967, eff. July 1, 1968, and is covered by rule 9, Federal Rules of Appellate Procedure, set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

Rule 46 was amended as part of the Bail Reform Act in 1966 and in 1972, and some provisions originally contained in Rule 46 are covered by this chapter, see Notes of Advisory Committee on Rules and Amendment notes under Rule 46, this Appendix.

### § 3736. Certiorari—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Petition to Supreme Court, time, Rule 37(b).

(June 25, 1948, ch. 645, 62 Stat. 845.)

#### REFERENCES IN TEXT

Rule 37 of the Federal Rules of Criminal Procedure was abrogated Dec. 4, 1967, eff. July 1, 1968. Provisions of such former rule for certiorari are covered by rule 19 et seq. of the Rules of the United States Supreme Court.

### § 3737. Record—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Preparation, form; typewritten record, Rule 39(b).
Exceptions abolished, Rule 51.
Bill of exceptions unnecessary, Rule 37(a)(1).

(June 25, 1948, ch. 645, 62 Stat. 846.)

#### REFERENCES IN TEXT

Rules 37 and 39 of the Federal Rules of Criminal Procedure were abrogated Dec. 4, 1967, eff. July 1, 1968, and are covered by Rule 10, Federal Rules of Appellate Procedure, set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### § 3738. Docketing appeal and record—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Filing record on appeal and docketing proceeding; time, Rule 39(c).

(June 25, 1948, ch. 645, 62 Stat. 846.)

#### REFERENCES IN TEXT

Rule 39 of the Federal Rules of Criminal Procedure was abrogated Dec. 4, 1967, eff. July 1, 1968, and is covered by Rules 10 to 12, Federal Rules of Appellate Procedure, set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### § 3739. Supervision—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Control and supervision in appellate court, Rule 39(a).

(June 25, 1948, ch. 645, 62 Stat. 846.)

#### REFERENCES IN TEXT

Rule 39 of the Federal Rules of Criminal Procedure was abrogated Dec. 4, 1967, eff. July 1, 1968, and is covered by Rule 27, Federal Rules of Appellate Procedure, set out in the Appendix to Title 28, Judiciary and Judicial Procedure.

### § 3740. Argument—(Rule)

#### SEE FEDERAL RULES OF CRIMINAL PROCEDURE

Setting appeal for argument; preference to criminal appeals, Rule 39(d).

Stat. 184, 186; Aug. 1, 1946, ch. 721, §§1-4, 60 Stat. 752, 753).

The provision of section 597c of title 28, U.S.C., 1940 ed., excepting commissioners in the Territory of Alaska was omitted as unnecessary since this exception is implicit in the revised section. The words "in each judicial district" limit the section to the commissioners in the districts enumerated in chapter 5 which includes Hawaii, Puerto Rico, and District of Columbia but omits Alaska, Canal Zone, [Guam] and Virgin Islands.

Salaries of park commissioners are provided by section 634 of this title.

Changes were made in phraseology.

#### AMENDMENTS

1979—Subsec. (a). Pub. L. 96-82 inserted reference to the compensation of such legal assistants as the Judicial Conference, on the basis of the recommendations of the judicial councils of the circuits, considers necessary.

1968—Pub. L. 90-578 substituted provisions relating to expenses for provisions prescribing residence for park commissioners. See section 631(b)(3) of this title.

#### CHANGE OF NAME

Words "magistrate judges" and "magistrate judge" substituted for "magistrates" and "magistrate", respectively, wherever appearing in text pursuant to section 321 of Pub. L. 101-650, set out as a note under section 631 of this title.

#### EFFECTIVE DATE OF 1968 AMENDMENT

Amendment by Pub. L. 90-578 effective Oct. 17, 1968, except when a later effective date is applicable, which is the earlier of date when implementation of amendment by appointment of magistrates [now United States magistrate judges] and assumption of office takes place or third anniversary of enactment of Pub. L. 90-578 on Oct. 17, 1968, see section 403 of Pub. L. 90-578, set out as a note under section 631 of this title.

### § 636. Jurisdiction, powers, and temporary assignment

(a) Each United States magistrate judge serving under this chapter shall have within the district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law—

(1) all powers and duties conferred or imposed upon United States commissioners by law or by the Rules of Criminal Procedure for the United States District Courts;

(2) the power to administer oaths and affirmations, issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial, and take acknowledgements, affidavits, and depositions;

(3) the power to conduct trials under section 3401, title 18, United States Code, in conformity with and subject to the limitations of that section;

(4) the power to enter a sentence for a petty offense; and

(5) the power to enter a sentence for a class A misdemeanor in a case in which the parties have consented.

(b)(1) Notwithstanding any provision of law to the contrary—

(A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

(B) a judge may also designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A), of applications for posttrial[1] relief made by individuals convicted of criminal offenses and of prisoner petitions challenging conditions of confinement.

(C) the magistrate judge shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties.

Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

(2) A judge may designate a magistrate judge to serve as a special master pursuant to the applicable provisions of this title and the Federal Rules of Civil Procedure for the United States district courts. A judge may designate a magistrate judge to serve as a special master in any civil case, upon consent of the parties, without regard to the provisions of rule 53(b) of the Federal Rules of Civil Procedure for the United States district courts.

(3) A magistrate judge may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.

(4) Each district court shall establish rules pursuant to which the magistrate judges shall discharge their duties.

(c) Notwithstanding any provision of law to the contrary—

(1) Upon the consent of the parties, a full-time United States magistrate judge or a part-time United States magistrate judge who serves as a full-time judicial officer may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction by the district court or courts he serves. Upon the consent of the parties, pursuant to their specific written request, any other part-time magistrate judge may exercise such jurisdic-

---

[1] So in original. Probably should be "post-trial".

tion, if such magistrate judge meets the bar membership requirements set forth in section 631(b)(1) and the chief judge of the district court certifies that a full-time magistrate judge is not reasonably available in accordance with guidelines established by the judicial council of the circuit. When there is more than one judge of a district court, designation under this paragraph shall be by the concurrence of a majority of all the judges of such district court, and when there is no such concurrence, then by the chief judge.

(2) If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties of the availability of a magistrate judge to exercise such jurisdiction. The decision of the parties shall be communicated to the clerk of court. Thereafter, either the district court judge or the magistrate judge may again advise the parties of the availability of the magistrate judge, but in so doing, shall also advise the parties that they are free to withhold consent without adverse substantive consequences. Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.

(3) Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court. The consent of the parties allows a magistrate judge designated to exercise civil jurisdiction under paragraph (1) of this subsection to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Nothing in this paragraph shall be construed as a limitation of any party's right to seek review by the Supreme Court of the United States.

(4) The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection.

(5) The magistrate judge shall, subject to guidelines of the Judicial Conference, determine whether the record taken pursuant to this section shall be taken by electronic sound recording, by a court reporter, or by other means.

(d) The practice and procedure for the trial of cases before officers serving under this chapter shall conform to rules promulgated by the Supreme Court pursuant to section 2072 of this title.

(e) CONTEMPT AUTHORITY.—

(1) IN GENERAL.—A United States magistrate judge serving under this chapter shall have within the territorial jurisdiction prescribed by the appointment of such magistrate judge the power to exercise contempt authority as set forth in this subsection.

(2) SUMMARY CRIMINAL CONTEMPT AUTHORITY.—A magistrate judge shall have the power to punish summarily by fine or imprisonment, or both, such contempt of the authority of such magistrate judge constituting misbehavior of any person in the magistrate judge's presence so as to obstruct the administration of justice. The order of contempt shall be issued under the Federal Rules of Criminal Procedure.

(3) ADDITIONAL CRIMINAL CONTEMPT AUTHORITY IN CIVIL CONSENT AND MISDEMEANOR CASES.—In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, the magistrate judge shall have the power to punish, by fine or imprisonment, or both, criminal contempt constituting disobedience or resistance to the magistrate judge's lawful writ, process, order, rule, decree, or command. Disposition of such contempt shall be conducted upon notice and hearing under the Federal Rules of Criminal Procedure.

(4) CIVIL CONTEMPT AUTHORITY IN CIVIL CONSENT AND MISDEMEANOR CASES.—In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, the magistrate judge may exercise the civil contempt authority of the district court. This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure.

(5) CRIMINAL CONTEMPT PENALTIES.—The sentence imposed by a magistrate judge for any criminal contempt provided for in paragraphs (2) and (3) shall not exceed the penalties for a Class C misdemeanor as set forth in sections 3581(b)(8) and 3571(b)(6) of title 18.

(6) CERTIFICATION OF OTHER CONTEMPTS TO THE DISTRICT COURT.—Upon the commission of any such act—

(A) in any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, or in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, that may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection, or

(B) in any other case or proceeding under subsection (a) or (b) of this section, or any other statute, where—

(i) the act committed in the magistrate judge's presence may, in the opinion of the magistrate judge, constitute a serious criminal contempt punishable by penalties exceeding those set forth in paragraph (5) of this subsection,

(ii) the act that constitutes a criminal contempt occurs outside the presence of the magistrate judge, or

(iii) the act constitutes a civil contempt,

the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose be-

havior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge.

(7) APPEALS OF MAGISTRATE JUDGE CONTEMPT ORDERS.—The appeal of an order of contempt under this subsection shall be made to the court of appeals in cases proceeding under subsection (c) of this section. The appeal of any other order of contempt issued under this section shall be made to the district court.

(f) In an emergency and upon the concurrence of the chief judges of the districts involved, a United States magistrate judge may be temporarily assigned to perform any of the duties specified in subsection (a), (b), or (c) of this section in a judicial district other than the judicial district for which he has been appointed. No magistrate judge shall perform any of such duties in a district to which he has been temporarily assigned until an order has been issued by the chief judge of such district specifying (1) the emergency by reason of which he has been transferred, (2) the duration of his assignment, and (3) the duties which he is authorized to perform. A magistrate judge so assigned shall not be entitled to additional compensation but shall be reimbursed for actual and necessary expenses incurred in the performance of his duties in accordance with section 635.

(g) A United States magistrate judge may perform the verification function required by section 4107 of title 18, United States Code. A magistrate judge may be assigned by a judge of any United States district court to perform the verification required by section 4108 and the appointment of counsel authorized by section 4109 of title 18, United States Code, and may perform such functions beyond the territorial limits of the United States. A magistrate judge assigned such functions shall have no authority to perform any other function within the territory of a foreign country.

(h) A United States magistrate judge who has retired may, upon the consent of the chief judge of the district involved, be recalled to serve as a magistrate judge in any judicial district by the judicial council of the circuit within which such district is located. Upon recall, a magistrate judge may receive a salary for such service in accordance with regulations promulgated by the Judicial Conference, subject to the restrictions on the payment of an annuity set forth in section 377 of this title or in subchapter III of chapter 83, and chapter 84, of title 5 which are applicable to such magistrate judge. The requirements set forth in subsections (a), (b)(3), and (d) of section 631, and paragraph (1) of subsection (b) of such section to the extent such paragraph requires membership of the bar of the location in which an individual is to serve as a magistrate judge, shall not apply to the recall of a retired magistrate judge under this subsection or section 375 of this title. Any other requirement set forth in section 631(b) shall apply to the recall of a retired magistrate judge under this subsection or section 375 of this title unless such retired magistrate judge met such requirement upon appointment or reappointment as a magistrate judge under section 631.

(June 25, 1948, ch. 646, 62 Stat. 917; Pub. L. 90–578, title I, § 101, Oct. 17, 1968, 82 Stat. 1113; Pub. L. 92–239, §§ 1, 2, Mar. 1, 1972, 86 Stat. 47; Pub. L. 94–577, § 1, Oct. 21, 1976, 90 Stat. 2729; Pub. L. 95–144, § 2, Oct. 28, 1977, 91 Stat. 1220; Pub. L. 96–82, § 2, Oct. 10, 1979, 93 Stat. 643; Pub. L. 98–473, title II, § 208, Oct. 12, 1984, 98 Stat. 1986; Pub. L. 98–620, title IV, § 402(29)(B), Nov. 8, 1984, 98 Stat. 3359; Pub. L. 99–651, title II, § 201(a)(2), Nov. 14, 1986, 100 Stat. 3647; Pub. L. 100–659, § 4(c), Nov. 15, 1988, 102 Stat. 3918; Pub. L. 100–690, title VII, § 7322, Nov. 18, 1988, 102 Stat. 4467; Pub. L. 100–702, title IV, § 404(b)(1), title X, § 1014, Nov. 19, 1988, 102 Stat. 4651, 4669; Pub. L. 101–650, title III, §§ 308(a), 321, Dec. 1, 1990, 104 Stat. 5112, 5117; Pub. L. 104–317, title II, §§ 201, 202(b), 207, Oct. 19, 1996, 110 Stat. 3848–3850; Pub. L. 106–518, title II, §§ 202, 203(b), Nov. 13, 2000, 114 Stat. 2412, 2414; Pub. L. 107–273, div. B, title III, § 3002(b), Nov. 2, 2002, 116 Stat. 1805; Pub. L. 109–63, § 2(d), Sept. 9, 2005, 119 Stat. 1995; Pub. L. 111–16, § 6(1), May 7, 2009, 123 Stat. 1608.)

HISTORICAL AND REVISION NOTES

*Prior jurisdiction, powers, and procedure provisions in section 632.*—Based on sections 27, 66, 67, 68, 80f, 100, 117e, 129, 172, 181b, 204e, 256d, 376, 395e, 403c–5, 403c–6, 403h–5, 404c–5, and 408m of title 16, U.S.C., 1940 ed., Conservation (May 7, 1894, ch. 72, § 5, 28 Stat. 74; Apr. 20, 1904, ch. 1400, § 6, 33 Stat. 188; Mar. 2, 1907, ch. 2516, §§ 1, 2, 34 Stat. 1218; Mar. 3, 1911, ch. 230, 36 Stat. 1086; Mar. 3, 1911, ch. 231, § 291, 36 Stat. 1167; Aug. 22, 1914, ch. 264, § 6, 38 Stat. 700; June 30, 1916, ch. 197, § 6, 39 Stat. 245; Aug. 21, 1916, ch. 368, § 6, 39 Stat. 523; June 2, 1920, ch. 218, §§ 7, 8, 41 Stat. 733; Apr. 25, 1928, ch. 434, § 6, 45 Stat. 460; Apr. 26, 1928, ch. 438, § 6, 45 Stat. 464; Apr. 19, 1930, ch. 200, § 6, 4 Stat. 228; May 2, 1932, ch. 155, § 3, 47 Stat. 145; June 25, 1935, ch. 309, § 1, 49 Stat. 422; Aug. 19, 1937, ch. 703, §§ 5, 6, 50 Stat. 702; June 25, 1938, ch. 684, § 1, 52 Stat. 1164; June 28, 1938, ch. 778, § 1, 52 Stat. 1213; Mar. 4, 1940, ch. 40, § 2, 54 Stat. 43; Mar. 6, 1942, ch. 150, § 5, 56 Stat. 134; Mar. 6, 1942, ch. 151, § 5, 56 Stat. 137; Apr. 29, 1942, ch. 264, § 5, 56 Stat. 260; June 5, 1942, ch. 341, § 5, 56 Stat. 318; Apr. 23, 1946, ch. 202, § 2, 60 Stat. 120; June 24, 1946, ch. 463, § 2, 60 Stat. 303).

Section consolidates provisions of sections 27, 66, 67, 68, 80f, 100, 117e, 129, 172, 181b, 204e, 256d, 376, 395e, 403c–5, 403c–6, 403h–5, 404c–5 and 408m of title 16, U.S.C., 1940 ed., relating to jurisdiction and powers of park commissioners with necessary changes in arrangement and phraseology. For other provisions of such sections, see Distribution Table.

The provisions of sections 27, 66, 67, 68, 100, 117e, 129, 172, 181b, 204e, 256d, 376, 395e, 403c–5, 403c–6, 403h–5, 404c–5 and 408m of title 16, U.S.C., 1940 ed., relating to the powers of park commissioners respecting issuance of warrants of arrest and other process were omitted and are recommended for repeal as covered by sections 3041 and 3141 of revised title 18 (H.R. 1600, 80th Cong.), and Rules, 4, 5(c), and 9 of the new Federal Rules of Criminal Procedure.

Provisions in sections 27, 66, 67, 68, 100, 117e, 129, 172, 181b, 204e, 256d, 376, 395e, 403c–5, 403c–6, 403h–5, 404c–5 and 408m of title 16, U.S.C., 1940 ed., for arrest without warrant for violation of law or regulation within a national park were also omitted and are recommended for repeal as covered by section 3054 of revised title 18 (H.R. 2200, 79th Cong.), Rule 4 of the Federal Rules of Criminal Procedure and Rule 4 of the Federal Rules of Civil Procedure.

### SENATE REVISION AMENDMENT

As finally enacted, section 158b of Title 16, U.S.C., which was derived from act May 15, 1947, ch. 55, §2, 61 Stat. 92, was an additional source of this section, and such act was accordingly included by Senate amendment in the schedule of repeals. No change in the text of the section was necessary as the result of inclusion of such section 158b. See 80th Congress Senate Report No. 1559.

As finally enacted, act May 15, 1947, ch. 57, 61 Stat. 92, which amended section 403c–5 of Title 16, U.S.C., was an additional source of this section, and such act was accordingly included by Senate amendment in the schedule of repeals. See 80th Congress Senate Report No. 1559.

*Prior oaths, acknowledgments, affidavits, and depositions provisions in section 637.*—Based on title 28, U.S.C., 1940 ed., §§525, 758 (R.S. §945; May 28, 1896, ch. 252, §19, 29 Stat. 184; Mar. 2, 1901, ch. 814, 31 Stat. 956; Mar. 3, 1911, ch. 231, §291, 36 Stat. 1167).

This section consolidates part of section 525 with section 758 of title 28, U.S.C., 1940 ed. The provision of said section 525 empowering clerks and deputy clerks to administer oaths is incorporated in section 953 of this title. The provision of said section 758 that acknowledgments of bail and affidavits should have the same effect as if taken before judges was omitted as surplusage.

The exception as to Alaska, provided in section 591 of title 28, U.S.C., 1940 ed., and referred to in section 525 of title 28, U.S.C., 1940 ed., was omitted as unnecessary since section 108 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions, and section 1119 of the Compiled Laws of Alaska, 1933, give commissioners all powers of notaries public. See also reviser's notes to sections 631 and 633 of this title.

Word "acknowledgments" was inserted to make it clear that commissioners, like justices of the peace, can take acknowledgments as well as oaths, affidavits, etc.

The authority to take depositions was included to conform to Federal Rules of Civil Procedure, Rule 28.

Changes were made in phraseology.

### REFERENCES IN TEXT

The Rules of Criminal Procedure for the United States District Courts, referred to in subsecs. (a)(1) and (e)(2)–(4), are set out in the Appendix to Title 18, Crimes and Criminal Procedure.

The Federal Rules of Civil Procedure for the United States district courts, referred to in subsecs. (b)(2), (c)(3), and (e)(4), are set out in the Appendix to this title.

### AMENDMENTS

2009—Subsec. (b)(1). Pub. L. 111–16 substituted "fourteen days" for "ten days" in concluding provisions.

2005—Subsec. (a). Pub. L. 109–63 substituted "district in which sessions are held by the court that appointed the magistrate judge, at other places where that court may function, and elsewhere as authorized by law—" for "territorial jurisdiction prescribed by his appointment—" in introductory provisions.

2002—Subsec. (e)(2). Pub. L. 107–273, §3002(b)(1), inserted ", or both," after "fine or imprisonment".

Subsec. (e)(3). Pub. L. 107–273, §3002(b)(2), inserted "or both," after "fine or imprisonment,".

2000—Subsec. (a)(4), (5). Pub. L. 106–518, §203(b), added pars. (4) and (5) and struck out former pars. (4) and (5) which read as follows:

"(4) the power to enter a sentence for a petty offense that is a class B misdemeanor charging a motor vehicle offense, a class C misdemeanor, or an infraction; and

"(5) the power to enter a sentence for a class A misdemeanor, or a class B or C misdemeanor not covered by paragraph (4), in a case in which the parties have consented."

Subsec. (e). Pub. L. 106–518, §202, amended subsec. (e) generally. Prior to amendment, subsec. (e) specified conduct before a magistrate judge which constituted

contempt of court and prescribed procedure for adjudicating and punishing contempts.

1996—Subsec. (a)(3). Pub. L. 104–317, §202(b)(1), substituted a semicolon for ", and" at end.

Subsec. (a)(4), (5). Pub. L. 104–317, §202(b)(2), added pars. (4) and (5) and struck out former par. (4) which read as follows: "the power to enter a sentence for a misdemeanor or infraction with the consent of the parties."

Subsec. (c)(3). Pub. L. 104–317, §207(1)(A), substituted "The consent of the parties" for "In this circumstance, the consent of the parties".

Subsec. (c)(4) to (7). Pub. L. 104–317, §207(1)(B), (C), redesignated pars. (6) and (7) as (4) and (5) and struck out former pars. (4) and (5) which read as follows:

"(4) Notwithstanding the provisions of paragraph (3) of this subsection, at the time of reference to a magistrate, the parties may further consent to appeal on the record to a judge of the district court in the same manner as on an appeal from a judgment of the district court to a court of appeals. Wherever possible the local rules of the district court and the rules promulgated by the conference shall endeavor to make such appeal inexpensive. The district court may affirm, reverse, modify, or remand the magistrate's judgment.

"(5) Cases in the district courts under paragraph (4) of this subsection may be reviewed by the appropriate United States court of appeals upon petition for leave to appeal by a party stating specific objections to the judgment. Nothing in this paragraph shall be construed to be a limitation on any party's right to seek review by the Supreme Court of the United States."

Subsec. (d). Pub. L. 104–317, §207(2), struck out ", and for the taking and hearing of appeals to the district courts," after "officers serving under this chapter".

Subsec. (f). Pub. L. 104–317, §201, substituted "subsection (a), (b), or (c)" for "subsection (a) or (b)" in first sentence.

1990—Subsec. (c)(2). Pub. L. 101–650 substituted "the availability of a magistrate to exercise" for "their right to consent to the exercise of" in first sentence and amended third sentence generally. Prior to amendment, third sentence read as follows: "Thereafter, neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate."

1988—Subsec. (a)(4). Pub. L. 100–690 added par. (4).

Subsec. (c)(7). Pub. L. 100–702, §1014, amended par. (7) generally. Prior to amendment, par. (7) read as follows: "The magistrate shall determine, taking into account the complexity of the particular matter referred to the magistrate, whether the record in the proceeding shall be taken, pursuant to section 753 of this title, by electronic sound recording means, by a court reporter appointed or employed by the court to take a verbatim record by shorthand or by mechanical means, or by an employee of the court designated by the court to take such a verbatim record. Notwithstanding the magistrate's determination, (A) the proceeding shall be taken down by a court reporter if any party so requests, (B) the proceeding shall be recorded by a means other than a court reporter if all parties so agree, and (C) no record of the proceeding shall be made if all parties so agree. Reporters referred to in this paragraph may be transferred for temporary service in any district court of the judicial circuit for reporting proceedings under this subsection, or for other reporting duties in such court."

Subsec. (d). Pub. L. 100–702, §404(b)(1), substituted "section 2072 of this title" for "section 3402 of title 18, United States Code".

Subsec. (h). Pub. L. 100–659 inserted "section 377 of this title or in" after "annuity set forth in" and "which are applicable to such magistrate" after "title 5" in second sentence.

1986—Subsec. (h). Pub. L. 99–651 added subsec. (h).

1984—Subsec. (a)(2). Pub. L. 98–473 substituted "issue orders pursuant to section 3142 of title 18 concerning release or detention of persons pending trial" for "impose conditions of release under section 3146 of title 18".

Samp.Add. 11

Subsec. (c)(4). Pub. L. 98–620 struck out "expeditious and" before "inexpensive".

1979—Subsec. (c). Pub. L. 96–82, §2(2), added subsec. (c). Former subsec. (c) redesignated (d).

Subsecs. (d) to (g). Pub. L. 96–82, §2(1), redesignated former subsecs. (c) to (f) as (d) to (g), respectively.

1977—Subsec. (f). Pub. L. 95–144 added subsec. (f).

1976—Subsec. (b). Pub. L. 94–577 completely revised provisions under which additional duties may be assigned to a United States Magistrate by allowing, among other additional duties, the assignment of pretrial matters, dispositive motions, and service as a special master.

1972—Pub. L. 92–239, §2, substituted "Jurisdiction, powers, and temporary assignment" for "Jurisdiction and powers" in section catchline.

Subsec. (e). Pub. L. 92–239, §1, added subsec. (e).

1968—Pub. L. 90–578 substituted provisions declaratory of jurisdiction and powers of United States magistrates for prior provisions respecting rendition of accounts by United States commissioners.

### CHANGE OF NAME

Words "magistrate judge", "magistrate judge's", and "magistrate judges" substituted for "magistrate", "magistrate's", and "magistrates", respectively, wherever appearing in text pursuant to section 321 of Pub. L. 101–650, set out as a note under section 631 of this title.

### EFFECTIVE DATE OF 2009 AMENDMENT

Amendment by Pub. L. 111–16 effective Dec. 1, 2009, see section 7 of Pub. L. 111–16, set out as a note under section 109 of Title 11, Bankruptcy.

### EFFECTIVE DATE OF 1988 AMENDMENTS

Amendment by section 404(b)(1) of Pub. L. 100–702 effective Dec. 1, 1988, see section 407 of Pub. L. 100–702, set out as a note under section 2071 of this title.

Amendment by Pub. L. 100–659 effective Nov. 15, 1988, and applicable to bankruptcy judges and magistrate judges who retire on or after Nov. 15, 1988, with exception for bankruptcy judges and magistrate judges retiring on or after July 31, 1987, see section 9 of Pub. L. 100–659, as amended, set out as an Effective Date note under section 377 of this title.

### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–651 effective Jan. 1, 1987, see section 203 of Pub. L. 99–651, set out as a note under section 155 of this title.

### EFFECTIVE DATE OF 1984 AMENDMENT

Amendment by Pub. L. 98–620 not applicable to cases pending on Nov. 8, 1984, see section 403 of Pub. L. 98–620, set out as an Effective Date note under section 1657 of this title.

### EFFECTIVE DATE OF 1968 AMENDMENT

Amendment by Pub. L. 90–578 effective Oct. 17, 1968, except when a later effective date is applicable, which is the earlier of date when implementation of amendment by appointment of magistrates [now United States magistrate judges] and assumption of office takes place or third anniversary of enactment of Pub. L. 90–578 on Oct. 17, 1968, see section 403 of Pub. L. 90–578, set out as a note under section 631 of this title.

### § 637. Training

The Federal Judicial Center shall conduct periodic training programs and seminars for both full-time and part-time United States magistrate judges, including an introductory training program for new magistrate judges, to be held within one year after initial appointment.

(June 25, 1948, ch. 646, 62 Stat. 917; Pub. L. 90–578, title I, §101, Oct. 17, 1968, 82 Stat. 1114; Pub. L. 101–650, title III, §321, Dec. 1, 1990, 104 Stat. 5117.)

### AMENDMENTS

1968—Pub. L. 90–578 substituted provisions for periodic training programs and seminars for United States magistrates for prior authorization of United States commissioners to administer oaths and take bail, acknowledgements, affidavits, and depositions, now incorporated in section 636(a)(2) of this title.

### CHANGE OF NAME

Words "magistrate judges" substituted for "magistrates" wherever appearing in text pursuant to section 321 of Pub. L. 101–650, set out as a note under section 631 of this title.

### EFFECTIVE DATE OF 1968 AMENDMENT

Amendment by Pub. L. 90–578 effective Oct. 17, 1968, except when a later effective date is applicable, which is the earlier of date when implementation of amendment by appointment of magistrates [now United States magistrate judges] and assumption of office takes place or third anniversary of enactment of Pub. L. 90–578 on Oct. 17, 1968, see section 403 of Pub. L. 90–578, set out as a note under section 631 of this title.

### § 638. Dockets and forms; United States Code; seals

(a) The Director shall furnish to United States magistrate judges adequate docket books and forms prescribed by the Director. The Director shall also furnish to each such officer a copy of the current edition of the United States Code.

(b) All property furnished to any such officer shall remain the property of the United States and, upon the termination of his term of office, shall be transmitted to his successor in office or otherwise disposed of as the Director orders.

(c) The Director shall furnish to each United States magistrate judge appointed under this chapter an official impression seal in a form prescribed by the conference. Each such officer shall affix his seal to every jurat or certificate of his official acts without fee.

(June 25, 1948, ch. 646, 62 Stat. 917; Pub. L. 90–578, title I, §101, Oct. 17, 1968, 82 Stat. 1114; Pub. L. 101–650, title III, §321, Dec. 1, 1990, 104 Stat. 5117.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§528, 528a (June 28, 1906, ch. 3573, 34 Stat. 546; July 10, 1946, ch. 548, 60 Stat. 525).

Section consolidates section 528 and part of section 528a of title 28, U.S.C., 1940 ed., with changes in phraseology necessary to effect consolidation.

Provisions of section 528a of title 28, U.S.C., 1940 ed., relating to dockets and forms, are incorporated in section 639 of this title.

Words "Director of the Administrative Office of the United States Courts" were substituted for "Attorney General", contained in section 528 of title 28, U.S.C., 1940 ed., in view of Act Aug. 7, 1939, ch. 501, §6, 53 Stat. 1226, 28 U.S.C., 1940 ed., following §446, giving the Directors supervision of court administrative matters.

Changes in phraseology were made.

### AMENDMENTS

1968—Subsec. (a). Pub. L. 90–578 incorporated in provisions designated as subsec. (a) provisions of first par. of former section 639 of this title, substituting "United States magistrates" for prior designation as "United States Commissioners", specifying that the copy of the United States Code be a current edition, and dispensing with approval by the chief judge of the district court for a copy of such Code.

Subsec. (b). Pub. L. 90–578 incorporated in provisions designated as subsec. (b) provisions of the second par. of former section 639 of this title.

§ 1258   TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE   Page 330

### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–352 effective ninety days after June 27, 1988, except that such amendment not to apply to cases pending in Supreme Court on such effective date or affect right to review or manner of reviewing judgment or decree of court which was entered before such effective date, see section 7 of Pub. L. 100–352, set out as a note under section 1254 of this title.

### EFFECTIVE DATE OF 1970 AMENDMENT

Section 199(a) of title I of Pub. L. 91–358 provided that: "The effective date of this title (and the amendments made by this title) [enacting sections 1363, 1451, and 2113 of this title and amending this section, sections 292 and 1869 of this title, section 5102 of Title 5, Government Organization and Employees, and section 260a of Title 42, The Public Health and Welfare] shall be the first day of the seventh calendar month which begins after the date of the enactment of this Act [July 29, 1970]."

### § 1258. Supreme Court of Puerto Rico; certiorari

Final judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of the Commonwealth of Puerto Rico is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

(Added Pub. L. 87–189, § 1, Aug. 30, 1961, 75 Stat. 417; amended Pub. L. 100–352, § 4, June 27, 1988, 102 Stat. 662.)

### AMENDMENTS

1988—Pub. L. 100–352 struck out "appeal;" before "certiorari" in section catchline and amended text generally. Prior to amendment, text read as follows: "Final judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico may be reviewed by the Supreme Court as follows:

"(1) By appeal, where is drawn in question the validity of a treaty or statute of the United States and the decision is against its validity.

"(2) By appeal, where is drawn in question the validity of a statute of the Commonwealth of Puerto Rico on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of its validity.

"(3) By writ of certiorari, where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of the Commonwealth of Puerto Rico is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution, treaties, or statutes of, or commission held or authority exercised under, the United States."

### EFFECTIVE DATE OF 1988 AMENDMENT

Amendment by Pub. L. 100–352 effective ninety days after June 27, 1988, except that such amendment not to apply to cases pending in Supreme Court on such effective date or affect right to review or manner of reviewing judgment or decree of court which was entered before such effective date, see section 7 of Pub. L. 100–352, set out as a note under section 1254 of this title.

### § 1259. Court of Appeals for the Armed Forces; certiorari

Decisions of the United States Court of Appeals for the Armed Forces may be reviewed by the Supreme Court by writ of certiorari in the following cases:

(1) Cases reviewed by the Court of Appeals for the Armed Forces under section 867(a)(1) of title 10.

(2) Cases certified to the Court of Appeals for the Armed Forces by the Judge Advocate General under section 867(a)(2) of title 10.

(3) Cases in which the Court of Appeals for the Armed Forces granted a petition for review under section 867(a)(3) of title 10.

(4) Cases, other than those described in paragraphs (1), (2), and (3) of this subsection, in which the Court of Appeals for the Armed Forces granted relief.

(Added Pub. L. 98–209, § 10(a)(1), Dec. 6, 1983, 97 Stat. 1405; amended Pub. L. 101–189, div. A, title XIII, § 1304(b)(3), Nov. 29, 1989, 103 Stat. 1577; Pub. L. 103–337, div. A, title IX, § 924(d)(1)(C), (2)(A), Oct. 5, 1994, 108 Stat. 2832.)

### AMENDMENTS

1994—Pub. L. 103–337 substituted "Court of Appeals for the Armed Forces" for "Court of Military Appeals" in section catchline and wherever appearing in text.

1989—Pub. L. 101–189 substituted "section 867(a)(1)" for "section 867(b)(1)" in par. (1), "section 867(a)(2)" for "section 867(b)(2)" in par. (2), and "section 867(a)(3)" for "section 867(b)(3)" in par. (3).

### EFFECTIVE DATE

Section effective on the first day of the eighth calendar month beginning after Dec. 6, 1983, see section 12(a)(1) of Pub. L. 98–209, set out as an Effective Date of 1983 Amendment note under section 801 of Title 10, Armed Forces.

## CHAPTER 83—COURTS OF APPEALS

| Sec. | |
|---|---|
| 1291. | Final decisions of district courts. |
| 1292. | Interlocutory decisions. |
| [1293. | Repealed.] |
| 1294. | Circuits in which decisions reviewable. |
| 1295. | Jurisdiction of the United States Court of Appeals for the Federal Circuit. |
| 1296. | Review of certain agency actions. |

### AMENDMENTS

1996—Pub. L. 104–331, § 3(a)(2), Oct. 26, 1996, 110 Stat. 4069, added item 1296.

1984—Pub. L. 98–620, title IV, § 402(29)(C), Nov. 8, 1984, 98 Stat. 3359, struck out item 1296 "Precedence of cases in the United States Court of Appeals for the Federal Circuit".

1982—Pub. L. 97–164, title I, § 127(b), Apr. 2, 1982, 96 Stat. 39, added items 1295 and 1296.

1978—Pub. L. 95–598, title II, § 236(b), Nov. 6, 1978, 92 Stat. 2667, directed the addition of item 1293, "Bankruptcy appeals", which amendment did not become effective pursuant to section 402(b) of Pub. L. 95–598, as amended, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

1961—Pub. L. 87–189, § 4, Aug. 30, 1961, 75 Stat. 417, struck out item 1293 "Final decisions of Puerto Rico and Hawaii Supreme Courts".

### § 1291. Final decisions of district courts

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit)

shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

(June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, §48, 65 Stat. 726; Pub. L. 85–508, §12(e), July 7, 1958, 72 Stat. 348; Pub. L. 97–164, title I, §124, Apr. 2, 1982, 96 Stat. 36.)

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§225(a), 933(a)(1), and section 1356 of title 48, U.S.C., 1940 ed., Territories and Insular Possessions, and sections 61 and 62 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, §128, 36 Stat. 1133; Aug. 24, 1912, ch. 390, §9, 37 Stat. 566; Jan. 28, 1915, ch. 22, §2, 38 Stat. 804; Feb. 7, 1925, ch. 150, 43 Stat. 813; Sept. 21, 1922, ch. 370, §3, 42 Stat. 1006; Feb. 13, 1925, ch. 229, §1, 43 Stat. 936; Jan. 31, 1928, ch. 14, §1, 45 Stat. 54; May 17, 1932, ch. 190, 47 Stat. 158; Feb. 16, 1933, ch. 91, §3, 47 Stat. 817; May 31, 1935, ch. 160, 49 Stat. 313; June 20, 1938, ch. 526, 52 Stat. 779; Aug. 2, 1946, ch. 753, §412(a)(1), 60 Stat. 844).

This section rephrases and simplifies paragraphs "First", "Second", and "Third" of section 225(a) of title 28, U.S.C., 1940 ed., which referred to each Territory and Possession separately, and to sections 61 and 62 of the Canal Zone Code, section 933(a)(1) of said title relating to jurisdiction of appeals in tort claims cases, and the provisions of section 1356 of title 48, U.S.C., 1940 ed., relating to jurisdiction of appeals from final judgments of the district court for the Canal Zone.

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.)

Paragraph "Fourth" of section 225(a) of title 28, U.S.C., 1940 ed., is incorporated in section 1293 of this title.

Words "Fifth. In the United States Court for China, in all cases" in said section 225(a) were omitted. (See reviser's note under section 411 of this title.)

Venue provisions of section 1356 of title 48, U.S.C., 1940 ed., are incorporated in section 1295 of this title.

Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1295 of this title.

In addition to the jurisdiction conferred by this chapter, the courts of appeals also have appellate jurisdiction in proceedings under Title 11, Bankruptcy, and jurisdiction to review:

(1) Orders of the Secretary of the Treasury denying an application for, suspending, revoking, or annulling a basic permit under chapter 8 of title 27;

(2) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(3) Orders of the Secretary of the Army under sections 504, 505 and 516 of title 33, U.S.C., 1940 ed., Navigation and Navigable Waters;

(4) Orders of the Civil Aeronautics Board under chapter 9 of title 49, except orders as to foreign air carriers which are subject to the President's approval;

(5) Orders under chapter 1 of title 7, refusing to designate boards of trade as contract markets or suspending or revoking such designations, or excluding persons from trading in contract markets;

(6) Orders of the Federal Power Commission under chapter 12 of title 16;

(7) Orders of the Federal Security Administrator under section 371(e) of title 21, in a case of actual controversy as to the validity of any such order, by any person adversely affected thereby;

(8) Orders of the Federal Power Commission under chapter 15B of title 15;

(9) Final orders of the National Labor Relations Board;

(10) Cease and desist orders under section 193 of title 7;

(11) Orders of the Securities and Exchange Commission;

(12) Orders to cease and desist from violating section 1599 of title 7;

(13) Wage orders of the Administrator of the Wage and Hour Division of the Department of Labor under section 208 of title 29;

(14) Orders under sections 81r and 1641 of title 19, U.S.C., 1940 ed., Customs Duties.

The courts of appeals also have jurisdiction to enforce:

(1) Orders of the Interstate Commerce Commission, the Federal Communications Commission, the Civil Aeronautics Board, the Board of Governors of the Federal Reserve System, and the Federal Trade Commission, based on violations of the antitrust laws or unfair or deceptive acts, methods, or practices in commerce;

(2) Final orders of the National Labor Relations Board;

(3) Orders to cease and desist from violating section 1599 of title 7.

The Court of Appeals for the District of Columbia also has jurisdiction to review orders of the Post Office Department under section 576 of title 39 relating to discriminations in sending second-class publications by freight; Maritime Commission orders denying transfer to foreign registry of vessels under subsidy contract; sugar allotment orders; decisions of the Federal Communications Commission granting or refusing applications for construction permits for radio stations, or for radio station licenses, or for renewal or modification of radio station licenses, or suspending any radio operator's license.

Changes were made in phraseology.

### AMENDMENTS

1982—Pub. L. 97–164, §124, inserted "(other than the United States Court of Appeals for the Federal Circuit)" after "The court of appeals" and inserted provision that the jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

1958—Pub. L. 85–508 struck out provisions which gave courts of appeals jurisdiction of appeals from District Court for Territory of Alaska. See section 81A of this title which establishes a United States District Court for the State of Alaska.

1951—Act Oct. 31, 1951, inserted reference to District Court of Guam.

### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

### EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85–508 effective Jan. 3, 1959, on admission of Alaska into the Union pursuant to Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c.16 as required by sections 1 and 8(c) of Pub. L. 85–508, see notes set out under section 81A of this title and preceding section 21 of Title 48, Territories and Insular Possessions.

### TERMINATION OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE CANAL ZONE

For termination of the United States District Court for the District of the Canal Zone at end of the "transition period", being the 30-month period beginning Oct.

§ 1292          TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE          Page 332

1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 2101 and 2201 to 2203 of Pub. L. 96–70, title II, Sept. 27, 1979, 93 Stat. 493, formerly classified to sections 3831 and 3841 to 3843, respectively, of Title 22, Foreign Relations and Intercourse.

### § 1292. Interlocutory decisions

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

(1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

(2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

(b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

(c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

(2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

(d)(1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(2) When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

(4)(A) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title.

(B) When a motion to transfer an action to the Court of Federal Claims is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Court of Federal Claims pursuant to the motion shall be carried out.

(e) The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

(June 25, 1948, ch. 646, 62 Stat. 929; Oct. 31, 1951, ch. 655, § 49, 65 Stat. 726; Pub. L. 85–508, § 12(e), July 7, 1958, 72 Stat. 348; Pub. L. 85–919, Sept. 2, 1958, 72 Stat. 1770; Pub. L. 97–164, § 125, Apr. 2, 1982, 96 Stat. 36; Pub. L. 98–620, title IV, § 412, Nov. 8, 1984, 98 Stat. 3362; Pub. L. 100–702, title V, § 501, Nov. 19, 1988, 102 Stat. 4652; Pub. L. 102–572, title I, § 101, title IX, §§ 902(b), 906(c), Oct. 29, 1992, 106 Stat. 4506, 4516, 4518.)

Page 333                    TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE                    [§ 1293

### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., §§ 225(b), 227, 227a, and section 61 of title 7 of the Canal Zone Code (Mar. 3, 1911, ch. 231, §§ 128, 129, 36 Stat. 1133, 1134; Feb. 13, 1925, ch. 229, § 1, 43 Stat. 937; Feb. 28, 1927, ch. 228, 44 Stat. 1261; Apr. 3, 1926, ch. 102, 44 Stat. 233; May 20, 1926, ch. 347, § 13(a), 44 Stat. 587; Apr. 11, 1928, ch. 354, § 1, 45 Stat. 422; May 17, 1932, ch. 190, 47 Stat. 158).

Section consolidates sections 225(b), 227 and part of 227a of title 28, U.S.C., 1940 ed., with necessary changes in phraseology to effect the consolidation.

The second paragraph of section 225(b) of title 28, U.S.C., 1940 ed., relating to review of decisions of the district courts, under section 9 of the Railway Labor Act (section 159 of title 45), was omitted as covered by section 1291 of this title.

Words in section 227 of title 28, U.S.C., 1940 ed., "or decree," after "interlocutory order," were deleted, in view of Rule 65 of the Federal Rules of Civil Procedure, using only the word "order."

Provisions of sections 227 and 227a of title 28, U.S.C., 1940 ed., relating to stay of proceedings pending appeal were omitted as superseded by Federal Rules of Civil Procedure, Rule 73.

Provisions of section 227 of title 28, U.S.C., 1940 ed., requiring an additional bond by the district court as a condition of appeal were omitted in view of Federal Rules of Civil Procedure, Rule 73.

Words in section 227 of title 28, U.S.C., 1940 ed., "and sections 346 and 347 of this title shall apply to such cases in the circuit courts of appeals as to other cases therein," at the end of the first sentence of section 227 of title 28, U.S.C., 1940 ed., were deleted as fully covered by section 1254 of this title, applicable to any case in a court of appeals. Other procedural provisions of said section 227 were omitted as covered by section 2101 et seq. of this title.

In subsection (4), which is based on section 227a of title 28, U.S.C., 1940 ed., words "civil actions" were substituted for "suits in equity" and word "judgments" was substituted for "decree," in view of Rules 2 and 54 of the Federal Rules of Civil Procedure.

The provision of sections 227 and 227a of title 28, U.S.C., 1940 ed., that appeal must be taken within thirty days after entry of order, decree or judgment is incorporated in section 2107 of this title.

The provisions of section 227a of title 28, U.S.C., 1940 ed., relating to stay of proceedings pending appeal, were omitted as superseded by Rule 73 of the Federal Rules of Civil Procedure.

The district courts for the districts of Hawaii and Puerto Rico are embraced in the term "district courts of the United States." (See definitive section 451 of this title.) Consequently the specific reference in section 225 of title 28, U.S.C., 1940 ed., to "the United States district courts for Hawaii" was omitted.

The District Court for the District of Puerto Rico is not enumerated in section 225(b) of title 28, U.S.C., 1940 ed., nevertheless subsection (2) of the revised section does not except such court. Thus in conformity with the last sentence of section 864, title 48, U.S.C., 1940 ed. For distribution of said section 864, see Distribution Table.

Section 61 of title 7 of the Canal Zone Code is also incorporated in sections 1291 and 1294 of this title.

### AMENDMENTS

1992—Subsec. (d)(2). Pub. L. 102–572, §§ 902(b)(1), 906(c), substituted "When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims" for "When any judge of the United States Claims Court".

Subsec. (d)(3). Pub. L. 102–572, § 902(b)(2), substituted "Court of Federal Claims" for "Claims Court" in two places.

Subsec. (d)(4). Pub. L. 102–572, § 902(b), substituted "United States Court of Federal Claims" for "United States Claims Court" in subpar. (A) and "Court of Fed-

eral Claims" for "Claims Court" in two places in subpar. (B).

Subsec. (e). Pub. L. 102–572, § 101, added subsec. (e).

1988—Subsec. (d)(4). Pub. L. 100–702 added par. (4).

1984—Subsec. (b). Pub. L. 98–620, § 412(a), inserted "which would have jurisdiction of an appeal of such action" after "The Court of Appeals".

Subsec. (c)(1). Pub. L. 98–620, § 412(b), inserted "or (b)" after "(a)".

1982—Subsec. (a). Pub. L. 97–164, § 125(a)(1), substituted "Except as provided in subsections (c) and (d) of this section, the courts" for "The courts" in introductory provisions.

Subsec. (a)(4). Pub. L. 97–164, § 125(a)(2), (3), struck out par. (4) which related to judgments in civil actions for patent infringement which were final except for accounting.

Subsecs. (c), (d). Pub. L. 97–164, § 125(b), added subsecs. (c) and (d).

1958—Pub. L. 85–919 designated existing provisions as subsec. (a) and added subsec. (b).

Par. (1). Pub. L. 85–508 struck out reference to District Court for Territory of Alaska. See section 81A of this title which established a United States District Court for the State of Alaska.

1951—Par. (1). Act Oct. 31, 1951, inserted reference to District Court of Guam.

### EFFECTIVE DATE OF 1992 AMENDMENT

Amendment by section 101 of Pub. L. 102–572 effective Jan. 1, 1993, see section 1101(a) of Pub. L. 102–572, set out as a note under section 905 of Title 2, The Congress.

Amendment by sections 902(b) and 906(c) of Pub. L. 102–572 effective Oct. 29, 1992, see section 911 of Pub. L. 102–572, set out as a note under section 171 of this title.

### EFFECTIVE DATE OF 1988 AMENDMENT

Section 502 of title V of Pub. L. 100–702 provided that: "The amendment made by section 501 [amending this section] shall apply to any action commenced in the district court on or after the date of enactment of this title [Nov. 19, 1988]."

### EFFECTIVE DATE OF 1982 AMENDMENT

Amendment by Pub. L. 97–164 effective Oct. 1, 1982, see section 402 of Pub. L. 97–164, set out as a note under section 171 of this title.

### EFFECTIVE DATE OF 1958 AMENDMENT

Amendment by Pub. L. 85–508 effective Jan. 3, 1959, on admission of Alaska into the Union pursuant to Proc. No. 3269, Jan. 3, 1959, 24 F.R. 81, 73 Stat. c16, as required by sections 1 and 8(c) of Pub. L. 85–508, see notes set out under section 81A of this title and preceding section 21 of Title 48, Territories and Insular Possessions.

### TERMINATION OF UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE CANAL ZONE

For termination of the United States District Court for the District of the Canal Zone at end of the "transition period", being the 30-month period beginning Oct. 1, 1979, and ending midnight Mar. 31, 1982, see Paragraph 5 of Article XI of the Panama Canal Treaty of 1977 and sections 3831 and 3841 to 3843 of Title 22, Foreign Relations and Intercourse.

### [§ 1293. Repealed. Pub. L. 87–189, § 3, Aug. 30, 1961, 75 Stat. 417]

Section, acts June 25, 1948, ch. 646, 62 Stat. 929; Mar. 18, 1959, Pub. L. 86–3, § 14(b), 73 Stat. 10, provided for appeal from supreme court of Puerto Rico to court of appeals for first circuit. See section 1258 of this title.

A subsequent section 1293, added Pub. L. 95–598, title II, § 236(a), Nov. 6, 1978, 92 Stat. 2667, which related to bankruptcy appeals, did not become effective pursuant to section 402(b) of Pub. L. 95–598, as amended, set out as an Effective Date note preceding section 101 of Title 11, Bankruptcy.

Samp.Add. 16

ant to a judgment of a court of the United States, the respondent shall promptly file with the court certified copies of the indictment, plea of petitioner and the judgment, or such of them as may be material to the questions raised, if the petitioner fails to attach them to his petition, and same shall be attached to the return to the writ, or to the answer to the order to show cause.

(June 25, 1948, ch. 646, 62 Stat. 966.)

#### HISTORICAL AND REVISION NOTES

Derived from H.R. 4232, Seventy-ninth Congress, first session. It conforms to the prevailing practice in habeas corpus proceedings.

### § 2250. Indigent petitioner entitled to documents without cost

If on any application for a writ of habeas corpus an order has been made permitting the petitioner to prosecute the application in forma pauperis, the clerk of any court of the United States shall furnish to the petitioner without cost certified copies of such documents or parts of the record on file in his office as may be required by order of the judge before whom the application is pending.

(June 25, 1948, ch. 646, 62 Stat. 966.)

#### HISTORICAL AND REVISION NOTES

Derived from H.R. 4232, Seventy-ninth Congress, first session. It conforms to the prevailing practice.

### § 2251. Stay of State court proceedings

(a) IN GENERAL.—

(1) PENDING MATTERS.—A justice or judge of the United States before whom a habeas corpus proceeding is pending, may, before final judgment or after final judgment of discharge, or pending appeal, stay any proceeding against the person detained in any State court or by or under the authority of any State for any matter involved in the habeas corpus proceeding.

(2) MATTER NOT PENDING.—For purposes of this section, a habeas corpus proceeding is not pending until the application is filed.

(3) APPLICATION FOR APPOINTMENT OF COUNSEL.—If a State prisoner sentenced to death applies for appointment of counsel pursuant to section 3599(a)(2) of title 18 in a court that would have jurisdiction to entertain a habeas corpus application regarding that sentence, that court may stay execution of the sentence of death, but such stay shall terminate not later than 90 days after counsel is appointed or the application for appointment of counsel is withdrawn or denied.

(b) NO FURTHER PROCEEDINGS.—After the granting of such a stay, any such proceeding in any State court or by or under the authority of any State shall be void. If no stay is granted, any such proceeding shall be as valid as if no habeas corpus proceedings or appeal were pending.

(June 25, 1948, ch. 646, 62 Stat. 966; Pub. L. 109–177, title V, § 507(f), Mar. 9, 2006, 120 Stat. 251.)

#### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 465 (R.S. § 766; Mar. 3, 1893, ch. 226, 27 Stat. 751; Feb. 13, 1925, ch. 229, § 8(c), 43 Stat. 940; June 19, 1934, ch. 673, 48 Stat. 1177).

Provisions relating to proceedings pending in 1934 were deleted as obsolete.

A provision requiring an appeal to be taken within 3 months was omitted as covered by sections 2101 and 2107 of this title.

Changes were made in phraseology.

#### AMENDMENTS

2006—Pub. L. 109–177 designated first par. of existing provisions as subsec. (a)(1) and inserted headings, added pars. (2) and (3), and designated second par. of existing provisions as subsec. (b) and inserted heading.

#### EFFECTIVE DATE OF 2006 AMENDMENT

Pub. L. 109–177, title V, § 507(d), Mar. 9, 2006, 120 Stat. 251, provided that:

"(1) IN GENERAL.—This section [enacting section 2265 of this title, amending this section and sections 2261 and 2266 of this title, and repealing former section 2265 of this title] and the amendments made by this section shall apply to cases pending on or after the date of enactment of this Act [Mar. 9, 2006].

"(2) TIME LIMITS.—In a case pending on the date of enactment of this Act, if the amendments made by this section establish a time limit for taking certain action, the period of which began on the date of an event that occurred prior to the date of enactment of this Act, the period of such time limit shall instead begin on the date of enactment of this Act."

### § 2252. Notice

Prior to the hearing of a habeas corpus proceeding in behalf of a person in custody of State officers or by virtue of State laws notice shall be served on the attorney general or other appropriate officer of such State as the justice or judge at the time of issuing the writ shall direct.

(June 25, 1948, ch. 646, 62 Stat. 967.)

#### HISTORICAL AND REVISION NOTES

Based on title 28, U.S.C., 1940 ed., § 462 (R.S. § 762).

Section 462 of title 28, U.S.C., 1940 ed., was limited to alien prisoners described in section 453 of title 28, U.S.C., 1940 ed. The revised section extends to all cases of all prisoners under State custody or authority, leaving it to the justice or judge to prescribe the notice to State officers, to specify the officer served, and to satisfy himself that such notice has been given.

Provision for making due proof of such service was omitted as unnecessary. The sheriff's or marshal's return is sufficient.

Changes were made in phraseology.

### § 2253. Appeal

(a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

(b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

(B) the final order in a proceeding under section 2255.

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

(June 25, 1948, ch. 646, 62 Stat. 967; May 24, 1949, ch. 139, §113, 63 Stat. 105; Oct. 31, 1951, ch. 655, §52, 65 Stat. 727; Pub. L. 104–132, title I, §102, Apr. 24, 1996, 110 Stat. 1217.)

### HISTORICAL AND REVISION NOTES
#### 1948 ACT

Based on title 28, U.S.C., 1940 ed., §§463(a) and 466 (Mar. 10, 1908, ch. 76, 36 [35] Stat. 40; Feb. 13, 1925, ch. 229, §§6, 13, 43 Stat. 940, 942; June 29, 1938, ch. 806, 52 Stat. 1232).

This section consolidates paragraph (a) of section 463, and section 466 of title 28, U.S.C., 1940 ed.

The last two sentences of section 463(a) of title 28, U.S.C., 1940 ed., were omitted. They were repeated in section 452 of title 28, U.S.C., 1940 ed. (See reviser's note under section 2241 of this title.)

Changes were made in phraseology.

#### 1949 ACT

This section corrects a typographical error in the second paragraph of section 2253 of title 28.

#### AMENDMENTS

1996—Pub. L. 104–132 reenacted section catchline without change and amended text generally. Prior to amendment, text read as follows:

"In a habeas corpus proceeding before a circuit or district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit where the proceeding is had.

"There shall be no right of appeal from such an order in a proceeding to test the validity of a warrant to remove, to another district or place for commitment or trial, a person charged with a criminal offense against the United States, or to test the validity of his detention pending removal proceedings.

"An appeal may not be taken to the court of appeals from the final order in a habeas corpus proceeding where the detention complained of arises out of process issued by a State court, unless the justice or judge who rendered the order or a circuit justice or judge issues a certificate of probable cause."

1951—Act Oct. 31, 1951, substituted "to remove, to another district or place for commitment or trial, a person charged with a criminal offense against the United States, or to test the validity of his" for "of removal issued pursuant to section 3042 of Title 18 or the" in second par.

1949—Act May 24, 1949, substituted "3042" for "3041" in second par.

### § 2254. State custody; remedies in Federal courts

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(f) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such deter-

§ 2255                 TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE                    Page 520

IN FORMA PAUPERIS DECLARATION

[Insert appropriate court]

| | DECLARATION IN |
|---|---|
| (Petitioner) | SUPPORT |
| | OF REQUEST |
| v. | TO PROCEED |
| | *IN FORMA* |
| (Respondent(s)) | *PAUPERIS* |

I, _____, declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed? Yes ☐ No ☐
    a. If the answer is "yes," state the amount of your salary or wages per month, and give the name and address of your employer.

    _____

    b. If the answer is "no," state the date of last employment and the amount of the salary and wages per month which you received.

    _____

2. Have you received within the past twelve months any money from any of the following sources?
    a. Business, profession or form of self-employment? Yes ☐ No ☐
    b. Rent payments, interest or dividends? Yes ☐ No ☐
    c. Pensions, annuities or life insurance payments? Yes ☐ No ☐
    d. Gifts or inheritances? Yes ☐ No ☐
    e. Any other sources? Yes ☐ No ☐
    If the answer to any of the above is "yes," describe each source of money and state the amount received from each during the past twelve months.

    _____
    _____
    _____

3. Do you own cash, or do you have money in a checking or savings account?
    Yes ☐ No ☐ (Include any funds in prison accounts.)
    If the answer is "yes," state the total value of the items owned.

    _____
    _____

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?
    Yes ☐ No ☐
    If the answer is "yes," describe the property and state its approximate value.

    _____
    _____

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

    _____
    _____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on _____.
                            (date)

                    _____
                        Signature of Petitioner

                        Certificate

I hereby certify that the petitioner herein has the sum of $_____ on account to his credit at the _____ institution where he is confined. I further certify that petitioner likewise has the following securities to his credit according to the records of said _____ institution:

_____
_____
_____
_____

                    _____
                        Authorized Officer of
                             Institution

(As amended Apr. 28, 1982, eff. Aug. 1, 1982; Apr. 26, 2004, eff. Dec. 1, 2004.)

MODEL FORM FOR USE IN 28 U.S.C. § 2254 CASES INVOLVING A RULE 9 ISSUE

Form No. 9

[Abrogated Apr. 30, 2007, eff. Dec. 1, 2007.]

*Changes Made After Publication and Comments—Forms Accompanying Rules Governing § 2254 and § 2255 Proceedings.* Responding to a number of comments from the public, the Committee deleted from both sets of official forms the list of possible grounds of relief. The Committee made additional minor style corrections to the forms.

## § 2255. Federal custody; remedies on motion attacking sentence

(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(b) Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

(c) A court may entertain and determine such motion without requiring the production of the prisoner at the hearing.

(d) An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

(e) An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by

motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

(f) A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

(g) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and any subsequent proceedings on review, the court may appoint counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

(h) A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

(June 25, 1948, ch. 646, 62 Stat. 967; May 24, 1949, ch. 139, §114, 63 Stat. 105; Pub. L. 104–132, title I, §105, Apr. 24, 1996, 110 Stat. 1220; Pub. L. 110–177, title V, §511, Jan. 7, 2008, 121 Stat. 2545.)

### HISTORICAL AND REVISION NOTES

#### 1948 ACT

This section restates, clarifies and simplifies the procedure in the nature of the ancient writ of error coram nobis. It provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus. It has the approval of the Judicial Conference of the United States. Its principal provisions are incorporated in H.R. 4233, Seventy-ninth Congress.

#### 1949 ACT

This amendment conforms language of section 2255 of title 28, U.S.C., with that of section 1651 of such title and makes it clear that the section is applicable in the district courts in the Territories and possessions.

### REFERENCES IN TEXT

Section 408 of the Controlled Substances Act, referred to in subsec. (g), is classified to section 848 of Title 21, Food and Drugs.

### AMENDMENTS

2008—Pub. L. 110–177 designated first through eighth undesignated pars. as subsecs. (a) to (h), respectively.

1996—Pub. L. 104–132 inserted at end three new undesignated paragraphs beginning "A 1-year period of limitation", "Except as provided in section 408 of the Controlled Substances Act", and "A second or successive motion must be certified" and struck out second and fifth undesignated pars. providing, respectively, that "A motion for such relief may be made at any time." and "The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

1949—Act May 24, 1949, substituted "court established by Act of Congress" for "court of the United States" in first par.

### APPROVAL AND EFFECTIVE DATE OF RULES GOVERNING SECTION 2254 CASES AND SECTION 2255 PROCEEDINGS FOR UNITED STATES DISTRICT COURTS

For approval and effective date of rules governing petitions under section 2254 and motions under section 2255 of this title filed on or after Feb. 1, 1977, see section 1 of Pub. L. 94–426, set out as a note under section 2074 of this title.

### POSTPONEMENT OF EFFECTIVE DATE OF PROPOSED RULES AND FORMS GOVERNING PROCEEDINGS UNDER SECTIONS 2254 AND 2255 OF THIS TITLE

Rules and forms governing proceedings under sections 2254 and 2255 of this title proposed by Supreme Court order of Apr. 26, 1976, effective 30 days after adjournment sine die of 94th Congress, or until and to the extent approved by Act of Congress, whichever is earlier, see section 2 of Pub. L. 94–349, set out as a note under section 2074 of this title.

### RULES GOVERNING SECTION 2255 PROCEEDINGS FOR THE UNITED STATES DISTRICT COURTS

*(Effective Feb. 1, 1977, as amended to Jan. 7, 2011)*

Rule
1.      Scope.
2.      The Motion.
3.      Filing the Motion; Inmate Filing.
4.      Preliminary Review.
5.      The Answer and the Reply.
6.      Discovery.
7.      Expanding the Record.
8.      Evidentiary Hearing.
9.      Second or Successive Motions.
10.     Powers of a Magistrate Judge.
11.     Certificate of Appealability; Time to Appeal.
12.     Applicability of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure.

### APPENDIX OF FORMS

Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody.

### EFFECTIVE DATE OF RULES; EFFECTIVE DATE OF 1975 AMENDMENT

Rules, and the amendments thereto by Pub. L. 94–426, Sept. 28, 1976, 90 Stat. 1334, effective with respect to petitions under section 2254 of this title and motions under section 2255 of this title filed on or after Feb. 1, 1977, see section 1 of Pub. L. 94–426, set out as a note under section 2074 of this title.

### Rule 1. Scope

These rules govern a motion filed in a United States district court under 28 U.S.C. §2255 by:

(a) a person in custody under a judgment of that court who seeks a determination that:

(1) the judgment violates the Constitution or laws of the United States;

(2) the court lacked jurisdiction to enter the judgment;

(3) the sentence exceeded the maximum allowed by law; or

(4) the judgment or sentence is otherwise subject to collateral review; and

(b) a person in custody under a judgment of a state court or another federal court, and subject to future custody under a judgment of the district court, who seeks a determination that:

(1) future custody under a judgment of the district court would violate the Constitution or laws of the United States;

(2) the district court lacked jurisdiction to enter the judgment;

(3) the district court's sentence exceeded the maximum allowed by law; or

(4) the district court's judgment or sentence is otherwise subject to collateral review.

(As amended Apr. 26, 2004, eff. Dec. 1, 2004.)

### ADVISORY COMMITTEE NOTE

The basic scope of this postconviction remedy is prescribed by 28 U.S.C. § 2255. Under these rules the person seeking relief from federal custody files a motion to vacate, set aside, or correct sentence, rather than a petition for habeas corpus. This is consistent with the terminology used in section 2255 and indicates the difference between this remedy and federal habeas for a state prisoner. Also, habeas corpus is available to the person in federal custody if his "remedy by motion is inadequate or ineffective to test the legality of his detention."

Whereas sections 2241–2254 (dealing with federal habeas corpus for those in state custody) speak of the district court judge "issuing the writ" as the operative remedy, section 2255 provides that, if the judge finds the movant's assertions to be meritorious, he "shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." This is possible because a motion under § 2255 is a further step in the movant's criminal case and not a separate civil action, as appears from the legislative history of section 2 of S. 20, 80th Congress, the provisions of which were incorporated by the same Congress in title 28 U.S.C. as § 2255. In reporting S. 20 favorably the Senate Judiciary Committee said (Sen. Rep. 1526, 80th Cong. 2d Sess., p. 2):

The two main advantages of such motion remedy over the present habeas corpus are as follows:

First, habeas corpus is a separate civil action and not a further step in the criminal case in which petitioner is sentenced (*Ex parte Tom Tong*, 108 U.S. 556, 559 (1883)). It is not a determination of guilt or innocence of the charge upon which petitioner was sentenced. Where a prisoner sustains his right to discharge in habeas corpus, it is usually because some right—such as lack of counsel—has been denied which reflects no determination of his guilt or innocence but affects solely the fairness of his earlier criminal trial. Even under the broad power in the statute "to dispose of the party as law and justice require" (28 U.S.C.A., sec. 461), the court or judge is by no means in the same advantageous position in habeas corpus to do justice as would be so if the matter were determined in the criminal proceeding (see *Medley*, petitioner, 134 U.S. 160, 174 (1890)). For instance, the judge (by habeas corpus) cannot grant a new trial in the criminal case. Since the motion remedy is in the criminal proceeding, this section 2 affords the opportunity and expressly gives the broad powers to set aside the judgment and to "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."

The fact that a motion under § 2255 is a further step in the movant's criminal case rather than a separate civil action has significance at several points in these rules. See, *e.g.*, advisory committee note to rule 3 (re no filing fee), advisory committee note to rule 4 (re availability of files, etc., relating to the judgment), advisory committee note to rule 6 (re availability of discovery under criminal procedure rules), advisory committee note to rule 11 (re no extension of time for appeal), and advisory committee not to rule 12 (re applicability of federal criminal rules). However, the fact that Congress has characterized the motion as a further step in the criminal proceedings does *not* mean that proceedings upon such a motion are of necessity governed by the legal principles which are applicable at a criminal trial regarding such matters as counsel, presence, confrontation, self-incrimination, and burden of proof.

The challenge of decisions such as the revocation of probation or parole are not appropriately dealt with under 28 U.S.C. § 2255, which is a continuation of the original criminal action. Other remedies, such as habeas corpus, are available in such situations.

Although rule 1 indicates that these rules apply to a motion for a determination that the judgment was imposed "in violation of the . . . laws of the United States," the language of 28 U.S.C. § 2255, it is not the intent of these rules to define or limit what is encompassed within that phrase. See *Davis v. United States*, 417 U.S. 333 (1974), holding that it is not true "that every asserted error of law can be raised on a § 2255 motion," and that the appropriate inquiry is "whether the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice,' and whether [i]t . . . present[s] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'"

For a discussion of the "custody" requirement and the intended limited scope of this remedy, see advisory committee note to § 2254 rule 1.

### COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 1 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended.

*Changes Made After Publication and Comments.* The Committee made no changes to Rule 1.

### Rule 2. The Motion

(a) APPLYING FOR RELIEF. The application must be in the form of a motion to vacate, set aside, or correct the sentence.

(b) FORM. The motion must:

(1) specify all the grounds for relief available to the moving party;

(2) state the facts supporting each ground;

(3) state the relief requested;

(4) be printed, typewritten, or legibly handwritten; and

(5) be signed under penalty of perjury by the movant or by a person authorized to sign it for the movant.

(c) STANDARD FORM. The motion must substantially follow either the form appended to these rules or a form prescribed by a local district-court rule. The clerk must make forms available to moving parties without charge.

(d) SEPARATE MOTIONS FOR SEPARATE JUDGMENTS. A moving party who seeks relief from more than one judgment must file a separate motion covering each judgment.

(As amended Pub. L. 94–426, § 2(3), (4), Sept. 28, 1976, 90 Stat. 1334; Apr. 28, 1982, eff. Aug. 1, 1982; Apr. 26, 2004, eff. Dec. 1, 2004.)

### ADVISORY COMMITTEE NOTE

Under these rules the application for relief is in the form of a motion rather than a petition (see rule 1 and

advisory committee note). Therefore, there is no requirement that the movant name a respondent. This is consistent with 28 U.S.C. § 2255. The United States Attorney for the district in which the judgment under attack was entered is the proper party to oppose the motion since the federal government is the movant's adversary of record.

If the movant is attacking a federal judgment which will subject him to future custody, he must be in present custody (see rule 1 and advisory committee note) as the result of a state or federal governmental action. He need not alter the nature of the motion by trying to include the government officer who presently has official custody of him as a psuedo-respondent, or third-party plaintiff, or other fabrication. The court hearing his motion attacking the future custody can exercise jurisdiction over those having him in present custody without the use of artificial pleading devices.

There is presently a split among the courts as to whether a person currently in state custody may use a § 2255 motion to obtain relief from a federal judgment under which he will be subjected to custody in the future. Negative, see *Newton v. United States*, 329 F.Supp. 90 (S.D. Texas 1971); affirmative, see *Desmond v. The United States Board of Parole*, 397 F.2d 386 (1st Cir. 1968), cert. denied, 393 U.S. 919 (1968); and *Paalino v. United States*, 314 F.Supp. 875 (C.D.Cal. 1970). It is intended that these rules settle the matter in favor of the prisoner's being able to file a § 2255 motion for relief under those circumstances. The proper district in which to file such a motion is the one in which is situated the court which rendered the sentence under attack.

Under rule 35, Federal Rules of Criminal Procedure, the court may correct an illegal sentence or a sentence imposed in an illegal manner, or may reduce the sentence. This remedy should be used, rather than a motion under these § 2255 rules, whenever applicable, but there is some overlap between the two proceedings which has caused the courts difficulty.

The movant should not be barred from an appropriate remedy because he has misstyled his motion. See *United States v. Morgan*, 346 U.S. 502, 505 (1954). The court should construe it as whichever one is proper under the circumstances and decide it on its merits. For a § 2255 motion construed as a rule 35 motion, see *Heflin v. United States*, 358 U.S. 415 (1959); and *United States v. Coke*, 404 F.2d 836 (2d Cir. 1968). For writ of error coram nobis treated as a rule 35 motion, see *Hawkins v. United States*, 324 F.Supp. 223 (E.D.Texas, Tyler Division 1971). For a rule 35 motion treated as a § 2255 motion, see *Moss v. United States*, 263 F.2d 615 (5th Cir. 1959); *Jones v. United States*, 400 F.2d 892 (8th Cir. 1968), cert. denied 394 U.S. 991 (1969); and *United States v. Brown*, 413 F.2d 878 (9th Cir. 1969), cert. denied, 397 U.S. 947 (1970).

One area of difference between § 2255 and rule 35 motions is that for the latter there is no requirement that the movant be "in custody." *Heflin v. United States*, 358 U.S. 415, 418, 422 (1959); *Duggins v. United States*, 240 F.2d 479, 483 (6th Cir. 1957). Compare with rule 1 and advisory committee note for § 2255 motions. The importance of this distinction has decreased since *Peyton v. Rowe*, 391 U.S. 54 (1968), but it might still make a difference in particular situations.

A rule 35 motion is used to attack the sentence imposed, not the basis for the sentence. The court in *Gilinsky v. United States*, 335 F.2d 914, 916 (9th Cir. 1964), stated, "a Rule 35 motion presupposes a valid conviction. * * * [C]ollateral attack on errors allegedly committed at trial is not permissible under Rule 35." By illustration the court noted at page 917: "a Rule 35 proceeding contemplates the correction of a sentence of a court having jurisdiction. * * * [J]urisdictional defects * * * involve a collateral attack, they must ordinarily be presented under 28 U.S.C. § 2255." In *United States v. Semet*, 295 F.Supp. 1084 (E.D. Okla. 1968), the prisoner moved under rule 35 and § 2255 to invalidate the sentence he was serving on the grounds of his failure to understand the charge to which he pleaded guilty. The court said:

As regards Defendant's Motion under Rule 35, said Motion must be denied as its presupposes a valid conviction of the offense with which he was charged and may be used only to attack the sentence. It may not be used to examine errors occurring prior to the imposition of sentence.

### 295 F.Supp. at 1085

See also: *Moss v. United States*, 263 F.2d at 616; *Duggins v. United States*, 240 F. 2d at 484; *Migdal v. United States*, 298 F.2d 513, 514 (9th Cir. 1961); *Jones v. United States*, 400 F.2d at 894; *United States v. Coke*, 404 F.2d at 847; and *United States v. Brown*, 413 F.2d at 879.

A major difficulty in deciding whether rule 35 or § 2255 is the proper remedy is the uncertainty as to what is meant by an "illegal sentence." The Supreme Court dealt with this issue in *Hill v. United States*, 368 U.S. 424 (1962). The prisoner brought a § 2255 motion to vacate sentence on the ground that he had not been given a Fed.R.Crim. P. 32(a) opportunity to make a statement in his own behalf at the time of sentencing. The majority held this was not an error subject to collateral attack under § 2255. The five-member majority considered the motion as one brought pursuant to rule 35, but denied relief, stating:

[T]he narrow function of Rule 35 is to permit correction at any time of an illegal *sentence*, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence. The sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself legally or constitutionally invalid in any other respect.

### 368 U.S. at 430

The four dissenters felt the majority definition of "illegal" was too narrow.

[Rule 35] provides for the correction of an "illegal sentence" without regard to the reasons why that sentence is illegal and contains not a single word to support the Court's conclusion that only a sentence illegal by reason of the punishment it imposes is "illegal" within the meaning of the Rule. I would have thought that a sentence imposed in an illegal manner—whether the amount or form of the punishment meted out constitutes an additional violation of law or not—would be recognized as an "illegal sentence" under any normal reading of the English language.

### 368 U.S. at 431–432

The 1966 amendment of rule 35 added language permitting correction of a sentence imposed in an "illegal manner." However, there is a 120-day time limit on a motion to do this, and the added language does not clarify the intent of the rule or its relation to § 2255.

The courts have been flexible in considering motions under circumstances in which relief might appear to be precluded by *Hill v. United States*. In *Peterson v. United States*, 432 F.2d 545 (8th Cir. 1970), the court was confronted with a motion for reduction of sentence by a prisoner claiming to have received a harsher sentence than his codefendants because he stood trial rather than plead guilty. He alleged that this violated his constitutional right to a jury trial. The court ruled that, even though it was past the 120-day time period for a motion to reduce sentence, the claim was still cognizable under rule 35 as a motion to correct an illegal sentence.

The courts have made even greater use of § 2255 in these types of situations. In *United States v. Lewis*, 392 F.2d 440 (4th Cir. 1968), the prisoner moved under § 2255 and rule 35 for relief from a sentence he claimed was the result of the judge's misunderstanding of the relevant sentencing law. The court held that he could not get relief under rule 35 because it was past the 120 days for correction of a sentence imposed in an illegal manner and under *Hill v. United States* it was not an illegal

sentence. However, § 2255 was applicable because of its "otherwise subject to collateral attack" language. The flaw was not a mere trial error relating to the finding of guilt, but a rare and unusual error which amounted to "exceptional circumstances" embraced in § 2255's words "collateral attack." See 368 U.S. at 444 for discussion of other cases allowing use of § 2255 to attack the sentence itself in similar circumstances, especially where the judge has sentenced out of a misapprehension of the law.

In *United States v. McCarthy*, 433 F.2d 591, 592 (1st Cir. 1970), the court allowed a prisoner who was past the time limit for a proper rule 35 motion to use § 2255 to attack the sentence which he received upon a plea of guilty on the ground that it was induced by an unfulfilled promise of the prosecutor to recommend leniency. The court specifically noted that under § 2255 this was a proper collateral attack on the sentence and there was no need to attack the conviction as well.

The court in *United States v. Malcolm*, 432 F.2d 809, 814, 818 (2d Cir. 1970), allowed a prisoner to challenge his sentence under § 2255 without attacking the conviction. It held rule 35 inapplicable because the sentence was not illegal on its face, but the manner in which the sentence was imposed raised a question of the denial of due process in the sentencing itself which was cognizable under § 2255.

The flexible approach taken by the courts in the above cases seems to be the reasonable way to handle these situations in which rule 35 and § 2255 appear to overlap. For a further discussion of this problem, see C. Wright, Federal Practice and Procedure; Criminal §§ 581–587 (1969, Supp. 1975).

See the advisory committee note to rule 2 of the § 2254 rules for further discussion of the purposes and intent of rule 2 of these § 2255 rules.

#### 1982 AMENDMENT

Subdivision (b). The amendment takes into account 28 U.S.C. § 1746, enacted after adoption of the § 2255 rules. Section 1746 provides that in lieu of an affidavit an unsworn statement may be given under penalty of perjury in substantially the following form if executed within the United States, its territories, possessions or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)." The statute is "intended to encompass prisoner litigation," and the statutory alternative is especially appropriate in such cases because a notary might not be readily available. *Carter v. Clark*, 616 F.2d 228 (5th Cir. 1980). The § 2255 forms have been revised accordingly.

#### COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 2 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended, except as described below.

Revised Rule 2(b)(5) has been amended by removing the requirement that the motion be signed personally by the moving party. Thus, under the amended rule the motion may be signed by [the] movant personally or by someone acting on behalf of the movant, assuming that the person is authorized to do so, for example, an attorney for the movant. The Committee envisions that the courts would apply third-party, or "next-friend," standing analysis in deciding whether the signer was actually authorized to sign the motion on behalf of the movant. *See generally Whitmore v. Arkansas*, 495 U.S. 149 (1990) (discussion of requisites for "next friend" standing in habeas petitions). *See also* 28 U.S.C. § 2242 (application for state habeas corpus relief may be filed by the person who is seeking relief, or by someone acting on behalf of that person).

The language in new Rule 2(c) has been changed to reflect that a moving party must substantially follow the standard form, which is appended to the rules, or a form provided by the court. The current rule, Rule 2(c), seems to indicate a preference for the standard "national" form. Under the amended rule, there is no stated preference. The Committee understood that the current practice in some courts is that if the moving party first files a motion using the national form, that courts may ask the moving party to supplement it with the local form.

Current Rule 2(d), which provided for returning an insufficient motion[,] has been deleted. The Committee believed that the approach in Federal Rule of Civil Procedure 5(e) was more appropriate for dealing with motions that do not conform to the form requirements of the rule. That Rule provides that the clerk may not refuse to accept a filing solely for the reason that it fails to comply with these rules or local rules. Before the adoption of a one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, the moving party suffered no penalty, other than delay, if the motion was deemed insufficient. Now that a one-year statute of limitations applies to motions filed under § 2255, *see* 28 U.S.C. § 2244(d)(1), the court's dismissal of a motion because it is not in proper form may pose a significant penalty for a moving party, who may not be able to file another motion within the one-year limitations period. Now, under revised Rule 3(b), the clerk is required to file a motion, even though it may otherwise fail to comply with the provisions in revised Rule 2(b). The Committee believed that the better procedure was to accept the defective motion and require the moving party to submit a corrected motion that conforms to Rule 2(b).

*Changes Made After Publication and Comments.* The Committee changed Rule 2(b)(2) to read "state the facts" rather then [sic] "briefly summarize the facts." One commentator had written that the current language may actually mislead the petitioner and is also redundant.

Rule 2(b)(4) was also modified to reflect that some motions may be printed using a word processing program.

Finally, Rule 2(b)(5) was changed to emphasize that any person, other than the petitioner, who signs the petition must be authorized to do so.

#### AMENDMENTS

1976—Subd. (b). Pub. L. 94–426, § 2(3), inserted "substantially" after "The motion shall be in", and struck out requirement that the motion follow the prescribed form.

Subd. (d). Pub. L. 94–426, § 2(4), inserted "substantially" after "district court does not", and struck out provision which permitted the clerk to return a motion for noncompliance without a judge so directing.

### Rule 3. Filing the Motion; Inmate Filing

(a) WHERE TO FILE; COPIES. An original and two copies of the motion must be filed with the clerk.

(b) FILING AND SERVICE. The clerk must file the motion and enter it on the criminal docket of the case in which the challenged judgment was entered. The clerk must then deliver or serve a copy of the motion on the United States attorney in that district, together with a notice of its filing.

(c) TIME TO FILE. The time for filing a motion is governed by 28 U.S.C. § 2255 para. 6.

(d) INMATE FILING. A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing. If an institution has a system designed for legal mail, the inmate must use that system to receive the benefit of this rule. Timely filing may be shown by a declaration in compliance with 28 U.S.C. § 1746 or by

a notarized statement, either of which must set forth the date of deposit and state that first-class postage has been prepaid.

(As amended Apr. 26, 2004, eff. Dec. 1, 2004.)

### ADVISORY COMMITTEE NOTE

There is no filing fee required of a movant under these rules. This is a change from the practice of charging $15 and is done to recognize specifically the nature of a § 2255 motion as being a continuation of the criminal case whose judgment is under attack.

The long-standing practice of requiring a $15 filing fee has followed from 28 U.S.C. § 1914(a) whereby "parties instituting any civil action * * * pay a filing fee of $15, except that on an application for a writ of habeas corpus the filing fee shall be $5." This has been held to apply to a proceeding under § 2255 despite the rationale that such a proceeding is a motion and thus a continuation of the criminal action. (See note to rule 1.)

> A motion under Section 2255 is a civil action and the clerk has no choice but to charge a $15.00 filing fee unless by leave of court it is filed in forma pauperis.

*McCune* v. *United States*, 406 F.2d 417, 419 (6th Cir. 1969).

Although the motion has been considered to be a new civil action in the nature of habeas corpus for filing purposes, the reduced fee for habeas has been held not applicable. The Tenth Circuit considered the specific issue in *Martin* v. *United States*, 273 F.2d 775 (10th Cir. 1960), cert. denied, 365 U.S. 853 (1961), holding that the reduced fee was exclusive to habeas petitions.

> Counsel for Martin insists that, if a docket fee must be paid, the amount is $5 rather than $15 and bases his contention on the exception contained in 28 U.S.C. § 1914 that in habeas corpus the fee is $5. This reads into § 2255 language which is not there. While an application under § 2255 may afford the same relief as that previously obtainable by habeas corpus, it is not a petition for a writ of habeas corpus. A change in § 1914 must come from Congress.

### 273 F.2d at 778

Although for most situations § 2255 is intended to provide to the federal prisoner a remedy equivalent to habeas corpus as used by state prisoners, there is a major distinction between the two. Calling a § 2255 request for relief a motion rather than a petition militates toward charging no new filing fee, not an increased one. In the absence of convincing evidence to the contrary, there is no reason to suppose that Congress did not mean what it said in making a § 2255 action a motion. Therefore, as in other motions filed in a criminal action, there is no requirement of a filing fee. It is appropriate that the present situation of docketing a § 2255 motion as a new action and charging a $15 filing fee be remedied by the rule when the whole question of § 2255 motions is thoroughly thought through and organized.

Even though there is no need to have a forma pauperis affidavit to proceed with the action since there is no requirement of a fee for filing the motion the affidavit remains attached to the form to be supplied potential movants. Most such movants are indigent, and this is a convenient way of getting this into the official record so that the judge may appoint counsel, order the government to pay witness fees, allow docketing of an appeal, and grant any other rights to which an indigent is entitled in the course of a § 2255 motion, when appropriate to the particular situation, without the need for an indigency petition and adjudication at such later point in the proceeding. This should result in a streamlining of the process to allow quicker disposition of these motions.

For further discussion of this rule, see the advisory committee note to rule 3 of the § 2254 rules.

### COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 3 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended, except as indicated below.

Revised Rule 3(b) is new and is intended to parallel Federal Rule of Civil Procedure 5(e), which provides that the clerk may not refuse to accept a filing solely for the reason that it fails to comply with these rules or local rules. Before the adoption of a one-year statute of limitations in the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214, the moving party suffered no penalty, other than delay, if the petition was deemed insufficient. That Act, however, added a one-year statute of limitations to motions filed under § 2255, *see* 28 U.S.C. § 2244(d)(1). Thus, a court's dismissal of a defective motion may pose a significant penalty for a moving party who may not be able to file a corrected motion within the one-year limitation period. The Committee believed that the better procedure was to accept the defective motion and require the moving party to submit a corrected motion that conforms to Rule 2. Thus, revised Rule 3(b) requires the clerk to file a motion, even though it may otherwise fail to comply with Rule 2.

Revised Rule 3(c), which sets out a specific reference to 28 U.S.C. § 2255, paragraph 6, is new and has been added to put moving parties on notice that a one-year statute of limitations applies to motions filed under these Rules. Although the rule does not address the issue, every circuit that has addressed the issue has taken the position that equitable tolling of the statute of limitations is available in appropriate circumstances. *See, e.g., Dunlap v. United States*, 250 F.3d 1001, 1004–07 (6th Cir. 2001); *Moore v. United States*, 173 F.3d 1131, 1133–35 (8th Cir. 1999); *Sandvik v. United States*, 177 F.3d 1269, 1270–72 (11th Cir. 1999). The Supreme Court has not addressed the question directly. *See Duncan v. Walker*, 533 U.S. 167, 181 (2001) ("We . . . have no occasion to address the question that Justice Stevens raises concerning the availability of equitable tolling.").

Rule 3(d) is new and provides guidance on determining whether a motion from an inmate is considered to have been filed in a timely fashion. The new provision parallels Federal Rule of Appellate Procedure 25(a)(2)(C).

*Changes Made After Publication and Comments.* The Committee modified the Committee Note to reflect that the clerk must file a motion, even in those instances where the necessary filing fee or in forma pauperis form is not attached. The Note also includes new language concerning the equitable tolling of the statute of limitations.

### Rule 4. Preliminary Review

(a) REFERRAL TO A JUDGE. The clerk must promptly forward the motion to the judge who conducted the trial and imposed sentence or, if the judge who imposed sentence was not the trial judge, to the judge who conducted the proceedings being challenged. If the appropriate judge is not available, the clerk must forward the motion to a judge under the court's assignment procedure.

(b) INITIAL CONSIDERATION BY THE JUDGE. The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

(As amended Apr. 26, 2004, eff. Dec. 1, 2004.)

ADVISORY COMMITTEE NOTE

Rule 4 outlines the procedure for assigning the motion to a specific judge of the district court and the options available to the judge and the government after the motion is properly filed.

The long-standing majority practice in assigning motions made pursuant to § 2255 has been for the trial judge to determine the merits of the motion. In cases where the § 2255 motion is directed against the sentence, the merits have traditionally been decided by the judge who imposed sentence. The reasoning for this was first noted in *Currell v. United States*, 173 F.2d 348, 348–349 (4th Cir. 1949):

Complaint is made that the judge who tried the case passed upon the motion. Not only was there no impropriety in this, but it is highly desirable in such cases that the motions be passed on by the judge who is familiar with the facts and circumstances surrounding the trial, and is consequently not likely to be misled by false allegations as to what occurred.

This case, and its reasoning, has been almost unanimously endorsed by other courts dealing with the issue.

Commentators have been critical of having the motion decided by the trial judge. See Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1206–1208 (1970).

[T]he trial judge may have become so involved with the decision that it will be difficult for him to review it objectively. Nothing in the legislative history suggests that "court" refers to a specific judge, and the procedural advantages of section 2255 are available whether or not the trial judge presides at the hearing.

The theory that Congress intended the trial judge to preside at a section 2255 hearing apparently originated in *Carvell v. United States*, 173 F.2d 348 (4th Cir. 1949) (per curiam), where the panel of judges included Chief Judge Parker of the Fourth Circuit, chairman of the Judicial Conference committee which drafted section 2255. But the legislative history does not indicate that Congress wanted the trial judge to preside. Indeed the advantages of section 2255 can all be achieved if the case is heard in the sentencing district, regardless of which judge hears it. According to the Senate committee report the purpose of the bill was to make the proceeding a part of the criminal action so the court could resentence the applicant, or grant him a new trial. (A judge presiding over a habeas corpus action does not have these powers.) In addition, Congress did not want the cases heard in the district of confinement because that tended to concentrate the burden on a few districts, and made it difficult for witnesses and records to be produced.

83 Harv.L.Rev. at 1207–1208

The Court of Appeals for the First Circuit has held that a judge other than the trial judge should rule on the 2255 motion. See *Halliday v. United States*, 380 F.2d 270 (1st Cir. 1967).

There is a procedure by which the movant can have a judge other than the trial judge decide his motion in courts adhering to the majority rule. He can file an affidavit alleging bias in order to disqualify the trial judge. And there are circumstances in which the trial judge will, on his own, disqualify himself. See, *e.g., Webster v. United States*, 330 F.Supp. 1080 (1972). However, there has been some questioning of the effectiveness of this procedure. See Developments in the Law—Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1200–1207 (1970).

Subdivision (a) adopts the majority rule and provides that the trial judge, or sentencing judge if different and appropriate for the particular motion, will decide the motion made pursuant to these rules, recognizing that, under some circumstances, he may want to disqualify himself. A movant is not without remedy if he feels this is unfair to him. He can file an affidavit of bias. And there is the right to appellate review if the trial judge refuses to grant his motion. Because the trial judge is thoroughly familiar with the case, there is obvious administrative advantage in giving him the first opportunity to decide whether there are grounds for granting the motion.

Since the motion is part of the criminal action in which was entered the judgment to which it is directed, the files, records, transcripts, and correspondence relating to that judgment are automatically available to the judge in his consideration of the motion. He no longer need order them incorporated for that purpose.

Rule 4 has its basis in § 2255 (rather than 28 U.S.C. § 2243 in the corresponding habeas corpus rule) which does not have a specific time limitation as to when the answer must be made. Also, under § 2255, the United States Attorney for the district is the party served with the notice and a copy of the motion and required to answer (when appropriate). Subdivision (b) continues this practice since there is no respondent involved in the motion (unlike habeas) and the United States Attorney, as prosecutor in the case in question, is the most appropriate one to defend the judgment and oppose the motion.

The judge has discretion to require an answer or other appropriate response from the United States Attorney. See advisory committee note to rule 4 of the § 2254 rules.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 4 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended.

The amended rule reflects that the response to a Section 2255 motion may be a motion to dismiss or some other response.

*Changes Made After Publication and Comments.* The Committee modified Rule 4 to reflect the view of some commentators that it is common practice in some districts for the government to file a pre-answer motion to dismiss the § 2255 motion. The Committee agreed with that recommendation and changed the word "pleading" in the rule to "response." It also made several minor changes to the Committee Note.

Rule 5. The Answer and the Reply

(a) WHEN REQUIRED. The respondent is not required to answer the motion unless a judge so orders.

(b) CONTENTS. The answer must address the allegations in the motion. In addition, it must state whether the moving party has used any other federal remedies, including any prior post-conviction motions under these rules or any previous rules, and whether the moving party received an evidentiary hearing.

(c) RECORDS OF PRIOR PROCEEDINGS. If the answer refers to briefs or transcripts of the prior proceedings that are not available in the court's records, the judge must order the government to furnish them within a reasonable time that will not unduly delay the proceedings.

(d) REPLY. The moving party may submit a reply to the respondent's answer or other pleading within a time fixed by the judge.

(As amended Apr. 26, 2004, eff. Dec. 1, 2004.)

ADVISORY COMMITTEE NOTE

Unlike the habeas corpus statutes (see 28 U.S.C. §§ 2243, 2248) § 2255 does not specifically call for a return or answer by the United States Attorney or set any time limits as to when one must be submitted. The general practice, however, if the motion is not summarily dismissed, is for the government to file an answer to the motion as well as counter-affidavits, when appro-

Page 527      TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE      § 2255

priate. Rule 4 provides for an answer to the motion by the United States Attorney, and rule 5 indicates what its contents should be.

There is no requirement that the movant exhaust his remedies prior to seeking relief under § 2255. However, the courts have held that such a motion is inappropriate if the movant is simultaneously appealing the decision.

We are of the view that there is no jurisdictional bar to the District Court's entertaining a Section 2255 motion during the pendency of a direct appeal but that the orderly administration of criminal law precludes considering such a motion absent extraordinary circumstances.

*Womack v. United States*, 395 F.2d 630, 631 (D.C.Cir. 1968)

Also see *Masters v. Eide*, 353 F.2d 517 (8th Cir. 1965). The answer may thus cut short consideration of the motion if it discloses the taking of an appeal which was omitted from the form motion filed by the movant.

There is nothing in § 2255 which corresponds to the § 2248 requirement of a traverse to the answer. Numerous cases have held that the government's answer and affidavits are not conclusive against the movant, and if they raise disputed issues of fact a hearing must be held. *Machibroda v. United States*, 368 U.S. 487, 494, 495 (1962); *United States v. Salerno*, 290 F.2d 105, 106 (2d Cir. 1961); *Romero v. United States*, 327 F.2d 711, 712 (5th Cir. 1964); *Scott v. United States*, 349 F.2d 641, 642, 643 (6th Cir. 1965); *Schiebelhut v. United States*, 357 F.2d 743, 745 (6th Cir. 1966); and *Del Piano v. United States*, 362 F.2d 931, 932, 933 (3d Cir. 1966). None of these cases make any mention of a traverse by the movant to the government's answer. As under rule 5 of the § 2254 rules, there is no intention here that such a traverse be required, except under special circumstances. See advisory committee note to rule 9.

Subdivision (b) provides for the government to supplement its answers with appropriate copies of transcripts or briefs if for some reason the judge does not already have them under his control. This is because the government will in all probability have easier access to such papers than the movant, and it will conserve the court's time to have the government produce them rather than the movant, who would in most instances have to apply in forma pauperis for the government to supply them for him anyway.

For further discussion, see the advisory committee note to rule 5 of the § 2254 rules.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 5 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended.

Revised Rule 5(a), which provides that the respondent is not required to file an answer to the motion, unless a judge so orders, is taken from current Rule 3(b). The revised rule does not address the practice in some districts, where the respondent files a pre-answer motion to dismiss the motion. But revised Rule 4(b) contemplates that practice and has been changed to reflect the view that if the court does not dismiss the motion, it may require (or permit) the respondent to file a motion.

Finally, revised Rule 5(d) adopts the practice in some jurisdictions giving the movant an opportunity to file a reply to the respondent's answer. Rather than using terms such as "traverse," *see* 28 U.S.C. § 2248, to identify the movant's response to the answer, the rule uses the more general term "reply." The Rule prescribes that the court set the time for such responses, and in lieu of setting specific time limits in each case, the court may decide to include such time limits in its local rules.

*Changes Made After Publication and Comments.* Rule 5(a) was modified to read that the government is not required to "respond" to the motion unless the court so orders; the term "respond" was used because it leaves open the possibility that the government's first response (as it is in some districts) is in the form of a pre-answer motion to dismiss the petition. The Note has been changed to reflect the fact that although the rule itself does not reflect that particular motion, it is used in some districts and refers the reader to Rule 4.

Finally, the Committee changed the Note to address the use of the term "traverse," a point raised by one of the commentators on the proposed rule.

### Rule 6. Discovery

(a) LEAVE OF COURT REQUIRED. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure, or in accordance with the practices and principles of law. If necessary for effective discovery, the judge must appoint an attorney for a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A.

(b) REQUESTING DISCOVERY. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

(c) DEPOSITION EXPENSES. If the government is granted leave to take a deposition, the judge may require the government to pay the travel expenses, subsistence expenses, and fees of the moving party's attorney to attend the deposition.

(As amended Apr. 26, 2004, eff. Dec. 1, 2004.)

ADVISORY COMMITTEE NOTE

This rule differs from the corresponding discovery rule under the § 2254 rules in that it includes the processes of discovery available under the Federal Rules of Criminal Procedure as well as the civil. This is because of the nature of a § 2255 motion as a continuing part of the criminal proceeding (see advisory committee note to rule 1) as well as a remedy analogous to habeas corpus by state prisoners.

See the advisory committee note to rule 6 of the § 2254 rules. The discussion there is fully applicable to discovery under these rules for § 2255 motions.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 6 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended, except as indicated below.

Although current Rule 6(b) contains no requirement that the parties provide reasons for the requested discovery, the revised rule does so and also includes a requirement that the request be accompanied by any proposed interrogatories and requests for admission, and must specify any requested documents. The Committee believes that the revised rule makes explicit what has been implicit in current practice.

*Changes Made After Publication and Comments.* The Committee modified Rule 6(b), to require that discovery requests be supported by reasons, to assist the court in deciding what, if any, discovery should take place. The Committee amended the Note to reflect the view that it believed that the change made explicit what has been implicit in current practice.

REFERENCES IN TEXT

The Federal Rules of Criminal Procedure, referred to in subd. (a), are set out in the Appendix to Title 18, Crimes and Criminal Procedure.

The Federal Rules of Civil Procedure, referred to in subd. (a), are set out in the Appendix to this title.

§ 2255                TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE                Page 528

### Rule 7. Expanding the Record

(a) IN GENERAL. If the motion is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the motion. The judge may require that these materials be authenticated.

(b) TYPES OF MATERIALS. The materials that may be required include letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge. Affidavits also may be submitted and considered as part of the record.

(c) REVIEW BY THE OPPOSING PARTY. The judge must give the party against whom the additional materials are offered an opportunity to admit or deny their correctness.

(As amended Apr. 26, 2004, eff. Dec. 1, 2004.)

ADVISORY COMMITTEE NOTE

It is less likely that the court will feel the need to expand the record in a § 2255 proceeding than in a habeas corpus proceeding, because the trial (or sentencing) judge is the one hearing the motion (see rule 4) and should already have a complete file on the case in his possession. However, rule 7 provides a convenient method for supplementing his file if the case warrants it.

See the advisory committee note to rule 7 of the § 2254 rules for a full discussion of reasons and procedures for expanding the record.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 7 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended.

Revised Rule 7(a) is not intended to restrict the court's authority to expand the record through means other than requiring the parties themselves to provide the information.

The language in current Rule 7(d), which deals with authentication of materials in the expanded record, has been moved to revised Rule 7(a).

*Changes Made After Publication and Comments.* Rule 7(a) was changed by removing the reference to the "merits" of the motion. One commentator had stated that the court may wish to expand the record for purposes other than the merits of the case. The Committee agreed and also changed the rule to reflect that someone other than a party may authenticate the materials.

### Rule 8. Evidentiary Hearing

(a) DETERMINING WHETHER TO HOLD A HEARING. If the motion is not dismissed, the judge must review the answer, any transcripts and records of prior proceedings, and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

(b) REFERENCE TO A MAGISTRATE JUDGE. A judge may, under 28 U.S.C. § 636(b), refer the motion to a magistrate judge to conduct hearings and to file proposed findings of fact and recommendations for disposition. When they are filed, the clerk must promptly serve copies of the proposed findings and recommendations on all parties. Within 14 days after being served, a party may file objections as provided by local court rule. The judge must determine de novo any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation.

(c) APPOINTING COUNSEL; TIME OF HEARING. If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A. The judge must conduct the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare. These rules do not limit the appointment of counsel under § 3006A at any stage of the proceeding.

(d) PRODUCING A STATEMENT. Federal Rule of Criminal Procedure 26.2(a)–(d) and (f) applies at a hearing under this rule. If a party does not comply with a Rule 26.2(a) order to produce a witness's statement, the court must not consider that witness's testimony.

(As amended Pub. L. 94–426, § 2(6), Sept. 28, 1976, 90 Stat. 1335; Pub. L. 94–577, § 2(a)(2), (b)(2), Oct. 21, 1976, 90 Stat. 2730, 2731; Apr. 22, 1993, eff. Dec. 1, 1993; Apr. 26, 2004, eff. Dec. 1, 2004; Mar. 26, 2009, eff. Dec. 1, 2009.)

ADVISORY COMMITTEE NOTE

The standards for § 2255 hearings are essentially the same as for evidentiary hearings under a habeas petition, except that the previous federal fact-finding proceeding is in issue rather than the state's. Also § 2255 does not set specific time limits for holding the hearing, as does § 2243 for a habeas action. With these minor differences in mind, see the advisory committee note to rule 8 of § 2254 rules, which is applicable to rule 8 of these § 2255 rules.

1993 AMENDMENT

The amendment to Rule 8 is one of a series of parallel amendments to Federal Rules of Criminal Procedure 32, 32.1, and 46 which extend the scope of Rule 26.2 (Production of Witness Statements) to proceedings other than the trial itself. The amendments are grounded on the compelling need for accurate and credible information in making decisions concerning the defendant's liberty. *See* the Advisory Committee Note to Rule 26.2(g). A few courts have recognized the authority of a judicial officer to order production of prior statements by a witness at a Section 2255 hearing, *see, e.g., United States v. White,* 342 F.2d 379, 382, n.4 (4th Cir. 1959). The amendment to Rule 8 grants explicit authority to do so. The amendment is not intended to require production of a witness's statement before the witness actually presents oral testimony.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 8 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended, except as described below.

The requirement in current Rule 8(b)(2) that a copy of the magistrate judge's findings must be promptly mailed to all parties has been changed in revised Rule 8(b) to require that copies of those findings be served on all parties. As used in this rule, "service" means service consistent with Federal Rule of Civil Procedure 5(b), which allows mailing the copies.

*Changes Made After Publication and Comments.* The Committee made no changes to Rule 8, as published for public comment.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

The time set in the former rule at 10 days has been revised to 14 days. See the Committee Note to Federal Rules of Criminal Procedure 45(a).

REFERENCES IN TEXT

The Federal Rules of Criminal Procedure, referred to in subd. (d), are set out in the Appendix to Title 18, Crimes and Criminal Procedure.

Samp.Add. 27

Page 529                          TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE                          § 2255

AMENDMENTS BY PUBLIC LAW

1976—Subd. (b). Pub. L. 94–577, § 2(a)(2), substituted provisions which authorized magistrates, when designated to do so in accordance with section 636(b) of this title, to conduct hearings, including evidentiary hearings, on the petition and to submit to a judge of the court proposed findings of fact and recommendations for disposition, which directed the magistrate to file proposed findings and recommendations with the court with copies furnished to all parties, which allowed parties thus served 10 days to file written objections thereto, and which directed a judge of the court to make de novo determinations of the objected-to portions and to accept, reject, or modify the findings or recommendations for provisions under which the magistrate had been empowered only to recommend to the district judge that an evidentiary hearing be held or that the petition be dismissed.

Subd. (c). Pub. L. 94–577, § 2(b)(2), substituted "and the hearing shall be conducted" for "and shall conduct the hearing."

Pub. L. 94–426 provided that these rules not limit the appointment of counsel under section 3006A of title 18, if the interest of justice so require.

EFFECTIVE DATE OF 1976 AMENDMENT

Amendments made by Pub. L. 94–577 effective with respect to motions under section 2255 of this title filed on or after Feb. 1, 1977, see section 2(c) of Pub. L. 94–577, set out as a note under Rule 8 of the Rules Governing Cases Under Section 2254 of this title.

Rule 9. Second or Successive Motions

Before presenting a second or successive motion, the moving party must obtain an order from the appropriate court of appeals authorizing the district court to consider the motion, as required by 28 U.S.C. § 2255, para. 8.

(As amended Pub. L. 94–426, § 2(9), (10), Sept. 28, 1976, 90 Stat. 1335; Apr. 26, 2004, eff. Dec. 1, 2004.)

ADVISORY COMMITTEE NOTE

Unlike the statutory provisions on habeas corpus (28 U.S.C. §§ 2241–2254), § 2255 specifically provides that "a motion for such relief may be made *at any time.*" [Emphasis added.] Subdivision (a) provides that delayed motions may be barred from consideration if the government has been prejudiced in its ability to respond to the motion by the delay and the movant's failure to seek relief earlier is not excusable within the terms of the rule. Case law, dealing with this issue, is in conflict.

Some courts have held that the literal language of § 2255 precludes any possible time bar to a motion brought under it. In *Heflin v. United States*, 358 U.S. 415 (1959), the concurring opinion noted:

The statute [28 U.S.C. § 2255] further provides; "A motion * * * may be made at any time." This * * * simply means that, as in habeas corpus, there is no statute of limitations, no *res judicata*, and that the doctrine of laches is inapplicable.

358 U.S. at 420

*McKinney v. United States*, 208 F.2d 844 (D.C.Cir. 1953) reversed the district court's dismissal of a § 2255 motion for being too late, the court stating:

McKinney's present application for relief comes late in the day: he has served some fifteen years in prison. But tardiness is irrelevant where a constitutional issue is raised and where the prisoner is still confined.

208 F.2d at 846, 847

In accord, see: *Juelich v. United States*, 300 F.2d 381, 383 (5th Cir. 1962); *Conners v. United States*, 431 F.2d 1207, 1208 (9th Cir. 1970); *Sturrup v. United States*, 218 F.Supp. 279, 281 (E.D.N.Car. 1963); and *Banks v. United States*, 319 F.Supp. 649, 652 (S.D.N.Y. 1970).

It has also been held that delay in filing a § 2255 motion does not bar the movant because of lack of reasonable diligence in pressing the claim.

The statute [28 U.S.C. § 2255], when it states that the motion may be made at any time, excludes the addition of a showing of diligence in delayed filings. A number of courts have considered contentions similar to those made here and have concluded that there are no time limitations. This result excludes the requirement of diligence which is in reality a time limitation.

*Haier v. United States*, 334 F.2d 441, 442 (10th Cir. 1964)

Other courts have recognized that delay may have a negative effect on the movant. In *Raines v. United States*, 423 F.2d 526 (4th Cir. 1970), the court stated:

[B]oth petitioners' silence for extended periods, one for 28 months and the other for nine years, serves to render their allegations less believable. "Although a delay in filing a section 2255 motion is not a controlling element * * * it may merit some consideration * * *."

423 F.2d at 531

In *Aiken v. United States*, 191 F.Supp. 43, 50 (M.D.N.Car. 1961), aff'd 296 F.2d 604 (4th Cir. 1961), the court said: "While motions under 28 U.S.C. § 2255 may be made at any time, the lapse of time affects the good faith and credibility of the moving party." For similar conclusions, see: *Parker v. United States*, 358 F.2d 50, 54 n. 4 (7th Cir. 1965), cert. denied, 386 U.S. 916 (1967); *Le Clair v. United States*, 241 F.Supp. 819, 824 (N.D. Ind. 1965); *Malone v. United States*, 299 F.2d 254, 256 (6th Cir. 1962), cert. denied, 371 U.S. 863 (1962); *Howell v. United States*, 442 F.2d 265, 274 (7th Cir. 1971); and *United States v. Wiggins*, 184 F. Supp. 673, 676 (D.C.Cir. 1960).

There have been holdings by some courts that a delay in filing a § 2255 motion operates to increase the burden of proof which the movant must meet to obtain relief. The reasons for this, as expressed in *United States v. Bostic*, 206 F.Supp. 855 (D.C.Cir. 1962), are equitable in nature.

Obviously, the burden of proof on a motion to vacate a sentence under 28 U.S.C. § 2255 is on the moving party. . . . The burden is particularly heavy if the issue is one of fact and a long time has elapsed since the trial of the case. While neither the statute of limitations nor laches can bar the assertion of a constitutional right, nevertheless, the passage of time may make it impracticable to retry a case if the motion is granted and a new trial is ordered. No doubt, at times such a motion is a product of an afterthought. Long delay may raise a question of good faith.

206 F.Supp. at 856–857

See also *United States v. Wiggins*, 184 F.Supp. at 676.

A requirement that the movant display reasonable diligence in filing a § 2255 motion has been adopted by some courts dealing with delayed motions. The court in *United States v. Moore*, 166 F.2d 102 (7th Cir. 1948), cert. denied, 334 U.S. 849 (1948), did this, again for equitable reasons.

[W]e agree with the District Court that the petitioner has too long slept upon his rights. * * * [A]pparently there is no limitation of time within which * * * a motion to vacate may be filed, except that an applicant must show reasonable diligence in presenting his claim. * * *

The reasons which support the rule requiring diligence seem obvious. * * * Law enforcement officials change, witnesses die, memories grow dim. The prosecuting tribunal is put to a disadvantage if an unexpected retrial should be necessary after long passage of time.

166 F.2d at 105

In accord see *Desmond v. United States*, 333 F.2d 378, 381 (1st Cir. 1964), on remand, 345 F.2d 225 (1st Cir. 1965).

§ 2255                        TITLE 28—JUDICIARY AND JUDICIAL PROCEDURE                        Page 530

One of the major arguments advanced by the courts which would penalize a movant who waits an unduly long time before filing a § 2255 motion is that such delay is highly prejudicial to the prosecution. In *Desmond v. United States*, writing of a § 2255 motion alleging denial of effective appeal because of deception by movant's own counsel, the court said:

> [A]pplications for relief such as this must be made promptly. It will not do for a prisoner to wait until government witnesses have become unavailable as by death, serious illness or absence from the country, or until the memory of available government witnesses has faded. It will not even do for a prisoner to wait any longer than is reasonably necessary to prepare appropriate moving papers, however inartistic, after discovery of the deception practiced upon him by his attorney.

                              333 F.2d at 381

In a similar vein are *United States v. Moore* and *United States v. Bostic*, supra, and *United States v. Wiggins*, 184 F. Supp. at 676.

Subdivision (a) provides a flexible, equitable time limitation based on laches to prevent movants from withholding their claims so as to prejudice the government both in meeting the allegations of the motion and in any possible retrial. It includes a reasonable diligence requirement for ascertaining possible grounds for relief. If the delay is found to be excusable, or nonprejudicial to the government, the time bar is inoperative.

Subdivision (b) is consistent with the language of § 2255 and relevant case law.

The annexed form is intended to serve the same purpose as the comparable one included in the § 2254 rules.

For further discussion applicable to this rule, see the advisory committee note to rule 9 of the § 2254 rules.

### COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 9 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended, except as indicated below.

First, current Rule 9(a) has been deleted as unnecessary in light of the applicable one-year statute of limitations for § 2255 motions, added as part of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2255, para. 6.

Second, the remainder of revised Rule 9 reflects provisions in the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2255, parh. [sic] 8, which now require a moving party to obtain approval from the appropriate court of appeals before filing a second or successive motion.

Finally, the title of the rule has been changed to reflect the fact that the revised version addresses only the topic of second or successive motions.

*Changes Made After Publication and Comments.* The Committee made no changes to Rule 9, as published.

### AMENDMENTS BY PUBLIC LAW

1976—Subd. (a). Pub. L. 94–426, § 2(9), struck out provision which established a rebuttable presumption of prejudice to government if the petition was filed more than five years after conviction.

Subd. (b). Pub. L. 94–426, § 2(10), substituted "constituted an abuse of the procedure governed by these rules" for "is not excusable".

### Rule 10. Powers of a Magistrate Judge

A magistrate judge may perform the duties of a district judge under these rules, as authorized by 28 U.S.C. § 636.

(As amended Pub. L. 94–426, § 2(12), Sept. 28, 1976, 90 Stat. 1335; Apr. 30, 1979, eff. Aug. 1, 1979; Apr. 26, 2004, eff. Dec. 1, 2004.)

### ADVISORY COMMITTEE NOTE

See the advisory committee note to rule 10 of the § 2254 rules for a discussion fully applicable here as well.

### 1979 AMENDMENT

This amendment conforms the rule to 18 U.S.C. § 636. See Advisory Committee Note to rule 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

### COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 10 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended.

*Changes Made After Publication and Comments.* The Committee restyled the proposed rule.

### AMENDMENTS BY PUBLIC LAW

1976—Pub. L. 94–426 inserted ", and to the extent the district court has established standards and criteria for the performance of such duties," after "rule of the district court".

### Rule 11. Certificate of Appealability; Time to Appeal

(a) CERTIFICATE OF APPEALABILITY. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22. A motion to reconsider a denial does not extend the time to appeal.

(b) TIME TO APPEAL. Federal Rule of Appellate Procedure 4(a) governs the time to appeal an order entered under these rules. A timely notice of appeal must be filed even if the district court issues a certificate of appealability. These rules do not extend the time to appeal the original judgment of conviction.

(As amended Apr. 30, 1979, eff. Aug. 1, 1979; Apr. 26, 2004, eff. Dec. 1, 2004; Mar. 26, 2009, eff. Dec. 1, 2009.)

### ADVISORY COMMITTEE NOTE

Rule 11 is intended to make clear that, although a § 2255 action is a continuation of the criminal case, the bringing of a § 2255 action does not extend the time.

### 1979 AMENDMENT

Prior to the promulgation of the Rules Governing Section 2255 Proceedings, the courts consistently held that the time for appeal in a section 2255 case is as provided in Fed.R.App.P. 4(a), that is, 60 days when the government is a party, rather than as provided in appellate rule 4(b), which says that the time is 10 days in criminal cases. This result has often been explained on the ground that rule 4(a) has to do with civil cases and that "proceedings under section 2255 are civil in nature." E.g., *Rothman v. United States*, 508 F.2d 648 (3d Cir. 1975). Because the new section 2255 rules are based upon the premise "that a motion under § 2255 is a further step in the movant's criminal case rather than a separate civil action," see Advisory Committee Note to rule 1, the question has arisen whether the new rules

have the effect of shortening the time for appeal to that provided in appellate rule 4(b). A sentence has been added to rule 11 in order to make it clear that this is not the case.

Even though section 2255 proceedings are a further step in the criminal case, the added sentence correctly states current law. In *United States v. Hayman*, 342 U.S. 205 (1952), the Supreme Court noted that such appeals "are governed by the civil rules applicable to appeals from final judgments in habeas corpus actions." In support, the Court cited *Mercado v. United States*, 183 F.2d 486 (1st Cir. 1950), a case rejecting the argument that because § 2255 proceedings are criminal in nature the time for appeal is only 10 days. The *Mercado* court concluded that the situation was governed by that part of 28 U.S.C. § 2255 which reads: "An appeal may be taken to the court of appeals from the order entered on the motion as from a final judgment on application for a writ of habeas corpus." Thus, because appellate rule 4(a) is applicable in habeas cases, it likewise governs in § 2255 cases even though they are criminal in nature.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 11 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended.

*Changes Made After Publication and Comments.* The Committee made no changes to Rule 11, as published.

COMMITTEE NOTES ON RULES—2009 AMENDMENT

*Subdivision (a).* As provided in 28 U.S.C. § 2253(c), an applicant may not appeal to the court of appeals from a final order in a proceeding under § 2255 unless a judge issues a COA, identifying the specific issues for which the applicant has made a substantial showing of a denial of constitutional right. New Rule 11(a) makes the requirements concerning certificates of appealability more prominent by adding and consolidating them in the appropriate rule of the Rules Governing § 2255 Proceedings for the United States District Courts. Rule 11(a) also requires the district judge to grant or deny the certificate at the time a final order is issued. *See* 3d Cir. R. 22.2, 111.3. This will ensure prompt decision making when the issues are fresh, rather than postponing consideration of the certificate until after a notice of appeal is filed. These changes will expedite proceedings, avoid unnecessary remands, and help to inform the applicant's decision whether to file a notice of appeal.

*Subdivision (b).* The amendment is designed to make it clear that the district court's grant of a COA does not eliminate the need to file a notice of appeal.

*Changes Made to Proposed Amendment Released for Public Comment.* In response to public comments, a sentence was added stating that prior to the entry of the final order the district court may direct the parties to submit arguments on whether or not a certificate should issue. This allows a court in complex cases (such as death penalty cases with numerous claims) to solicit briefing that might narrow the issues for appeal. For purposes of clarification, two sentences were added at the end of subdivision (a) stating that (1) although the district court's denial of a certificate is not appealable, a certificate may be sought in the court of appeals, and (2) a motion for reconsideration of a denial of a certificate does not extend the time to appeal. Finally, a sentence indicating that notice of appeal must be filed even if a COA is issued was added to subdivision (b).

Minor changes were also made to conform to style conventions.

REFERENCES IN TEXT

The Federal Rules of Appellate Procedure, referred to in text, are set out in the Appendix to this title.

### Rule 12. Applicability of the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure

The Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.

(As amended Apr. 26, 2004, eff. Dec. 1, 2004.)

ADVISORY COMMITTEE NOTE

This rule differs from rule 11 of the § 2254 rules in that it includes the Federal Rules of Criminal Procedure as well as the civil. This is because of the nature of a § 2255 motion as a continuing part of the criminal proceeding (see advisory committee note to rule 1) as well as a remedy analogous to habeas corpus by state prisoners.

Since § 2255 has been considered analogous to habeas as respects the restrictions in Fed.R.Civ.P. 81(a)(2) (see *Sullivan v. United States*, 198 F.Supp. 624 (S.D.N.Y. 1961)), rule 12 is needed. For discussion, see the advisory committee note to rule 11 of the § 2254 rules.

COMMITTEE NOTES ON RULES—2004 AMENDMENT

The language of Rule 12 has been amended as part of general restyling of the rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic and no substantive change is intended.

*Changes Made After Publication and Comments.* The Committee made no changes to Rule 12.

REFERENCES IN TEXT

The Federal Rules of Civil Procedure, referred to in heading and text, are set out in the Appendix to this title.

The Federal Rules of Criminal Procedure, referred to in heading and text, are set out in the Appendix to Title 18, Crimes and Criminal Procedure.

APPENDIX OF FORMS