Nos.  12-1643, 12-8019

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

———————————

GARY LEE SAMPSON,
PETITIONER-APPELLEE

v.

UNITED STATES OF AMERICA,
RESPONDENT-APPELLANT

——————————

IN RE: UNITED STATES OF AMERICA, PETITIONER

———————————

ON APPEAL FROM AN ORDER PURSUANT TO 28 U.S.C. §2255 ENTERED IN THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS VACATING
A DEATH SENTENCE AND GRANTING A NEW CAPITAL PENALTY PHASE TRIAL;
PETITION OF THE UNITED STATES FOR PERMISSION TO TAKE AN INTERLOCUTORY
APPEAL; AND PETITION OF THE UNITED STATES FOR A WRIT OF MANDAMUS

———————————

GOVERNMENT'S REPLY BRIEF

———————————

CARMEN M. ORTIZ
UNITED STATES ATTORNEY

MARK T. QUINLIVAN
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3606

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.    THIS COURT HAS JURISDICTION TO HEAR THESE APPEALS  . . . . 4

    A.    28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    28 U.S.C. §1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        1.    A §2255 proceeding is a "civil action" for
            purposes of §1292(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        2.    The remedial scheme of §2255 does not bar
            an interlocutory appeal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        3.    The certification requirements are satisfied  . . . . . . . . . . . . . . 17

    C.    18 U.S.C. §3731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    D.    Advisory Mandamus . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

II.   THE DISTRICT COURT'S ORDER GRANTING SAMPSON A NEW
     PENALTY PHASE PROCEEDING SHOULD BE VACATED AND
     SAMPSON'S DEATH SENTENCE REINSTATED . . . . . . . . . . . . . . . . 23

    A.    A Challenge for Cause Must Be Based on Actual or
        Implied Bias, Not Mere Impairment . . . . . . . . . . . . . . . . . . . . . . 23

    B.    Inferable Bias Does Not Satisfy the *McDonough* Test . . . . . . . . . . . 29

    C.    The District Court's Ruling Violates *Teague* . . . . . . . . . . . . . . . . . 35

D.    The District Court Correctly Determined that Sampson
      Failed to Show that Juror C Was Impliedly Biased . . . . . . . . . . . . . 36

      1.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

      2.    Implied Bias Was Not Shown . . . . . . . . . . . . . . . . . . . . . . . 38

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

# TABLE OF AUTHORITIES

## CASES

*Al Maqaleh v. Gates*,
605 F.3d 84 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16-17

*Amirault v. Fair*,
968 F.2d 1404 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Andrews v. United States*,
373 U.S. 334 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Brown v. United States*,
Nos. 11-15149-EE, 12-10293-EE . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 15

*Butcher v. United States*,
368 F.3d 1290 (11th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Clarke v. Kentucky Fried Chicken*,
57 F.3d 21 (1st Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Crowley v. L.L. Bean, Inc.*,
303 F.3d 387 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Dall v. Coffin*,
970 F.2d 964 (1st Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*DeBurgo v. St. Amand*,
587 F.3d 61 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 42

*Dennis v. United States*,
339 U.S. 162 (1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Dyer v. Calderon*,
151 F.3d 970 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Environmental Defense v. Duke Energy Corp.*,
    549 U.S. 561 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Fields v. Brown*,
    503 F.3d 755 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 35

*Heflin v. United States*,
    358 U.S. 415 (1959) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 13

*Hughes v. United States*,
    258 F.3d 453 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Bulger*,
    —F.3d —, 2013 WL 979075 (1st Cir. March 14, 2013) . . . . . . . . . . . . . 22

*In re United States*,
    565 F.2d 173 (1st Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*J.E.B. v. Alabama ex rel. T.B.*,
    511 U.S. 127 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*Johnson v. Luoma*,
    425 F.3d 318 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Jones v. United States*,
    527 U.S. 373 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lawuary v. United States*,
    669 F.3d 864 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McCloskey v. Mueller*,
    446 F.3d 262 (1st Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McDonough Power Equipment, Inc. v. Greenwood*,
    464 U.S. 548 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Miles v. Great Northern Insurance Co.*,
    634 F.3d 61 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Mistretta v. United States*,
    488 U.S. 361 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Muniz v. Sabol*,
    517 F.3d 29 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Padilla v. Rumsfeld*,
    352 F.3d 695 (2d Cir. 2003), *rev'd on other grounds*,
    542 U.S. 426 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Patton v. Yount*,
    467 U.S. 1025 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Rivera v. Illinois*,
    556 U.S. 148 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27

*Rogers v.  United States*,
    180 F.3d 349 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Rohan ex rel. Gates v. Woodford*,
    334 F.3d 803 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Skaggs v. Otis Elevator Co.*,
    164 F.3d 511 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 41

*Smith v. Phillips*,
    455 U.S. 207 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 38

*Stroud v. United States*,
    251 U.S. 15 (1919) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Swain v. Alabama*,
    380 U.S. 202 (1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 29

*Tanner v. United States*,
    483 U.S. 107 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Teague v. Lane*,
 489 U.S. 288 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35, 36

*Treesh v. Bagley*,
 612 F.3d 424 (6th Cir. 2010), *cert. denied*, 131 S. Ct. 1678 (2011) . . . 25, 31

*Trenkler v. United States*,
 536 F.3d 85 (1st Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12, 14, 16

*United States v. Acosta-Martinez*,
 252 F.3d 13 (1st Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11

*United States v. Barrett*,
 178 F.3d 34 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Basham*,
 561 F.3d 302 (4th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Blackwell*,
 436 F. App'x 192 (4th Cir. 2011), *cert. denied*,
 132 S. Ct. 1093, 132 S. Ct. 1097 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Daugerdas*,
 867 F. Supp. 2d 445 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Doe*,
 170 F.3d 223 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Fiorelli*,
 337 F.3d 282 (3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Green*,
 407 F.3d 434 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 21

*United States v. Gonzalez*,
 214 F.3d 1109 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 35

*United States v. Hammer*,
    564 F.3d 628 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Hayman*,
    342 U.S. 205 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Hively*,
    437 F.3d 752 (8th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Langford*,
    990 F.2d 65 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Lawrence*,
    555 F.3d 254 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 5, 6, 9, 19, 20

*United States v. Maloney*,
    699 F.3d 1130 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 35

*United States v. McFarland*,
    34 F.3d 1508 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Means*,
    133 F.3d 444 (6th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Mitchell*,
    690 F.3d 137 (3d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30, 37

*United States v. Mitchell*,
    502 F.3d 931 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9, 25

*United States v. Molinares Charris*,
    822 F.2d 1213 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26-27

*United States v. North*,
    910 F.2d 843 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 31, 33, 41

*United States v. Olsen*,
    704 F.3d 1172 (9th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 37

*United States v. Perkins*,
748 F.2d 1519 (11th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Pleau*,
680 F.3d 1 (1st Cir. 2012),
*cert. denied*, 133 S. Ct. 930, 133 S. Ct. 931 (2013) . . . . . . . . . . . . . . . . . 13

*United States v. Reese*,
33 F.3d 166 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Rogers*,
659 F.3d 74 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Sampson*,
486 F.3d 13 (1st Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Sampson*,
820 F. Supp. 2d 151 (D. Mass. 2011) . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States v. Sepulveda*,
330 F.3d 55 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Simmons*,
560 F.3d 98 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Stitt*,
459 F.3d 483 (4th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10, 21, 22

*United States v. Thomas*,
627 F.3d 146 (5th Cir. 2010),
*cert. denied*, 131 S. Ct. 2466, 131 S. Ct. 2470 (2011) . . . . . . . . . . . . . . . 31

*United States v. Torres*,
128 F.3d 38 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 31

*United States v. Walsh*,
75 F.3d 1 (1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Wood*,
    299 U.S. 123 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 27, 38

*Wainwright v. Witt*,
    469 U.S. 412 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25-26

*Wall v. Kholi*,
    131 S. Ct. 1278 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Williams v. Bagley*,
    380 F.3d 932 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 41

*Witherspoon v. Illinois*,
    391 U.S. 510 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Zerka v. Green*,
    49 F.3d 1181 (6th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## STATUTES

18 U.S.C. §3593(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. §3593(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

18 U.S.C. §3731 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. §1292(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. §2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. §2253(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

28 U.S.C. §2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

28 U.S.C. §2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. §2255(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

Pub. L. No. 110-177, Title V, §511, 121 Stat. 2545 . . . . . . . . . . . . . . . . . . . . . . 10

### FEDERAL RULES OF CRIMINAL PROCEDURE

Fed. R. Crim. P. 23(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

Fed. R. Crim. P. 43(b)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

## INTRODUCTORY STATEMENT

The district court in this case overturned an almost eight-year old jury verdict after finding that a juror dishonestly answered material questions during the voir dire process, even though the court also found that correct responses would not have mandated that juror's excusal for cause. That ruling is unprecedented. No other court has overturned a jury verdict based on a finding of inferable bias on the part of a juror, and where actual or implied bias was not proven. As the government showed in its opening brief, that ruling is at odds with the test in *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), and fails to appreciate the fundamental difference between the breadth of a court's discretion to excuse a juror for cause during the voir dire process, in which a "risk of partiality" may suffice, and the test for reversing a jury verdict based on a claim of juror bias, in which proven or "demonstrated bias" must be shown. It also fails to appreciate that this is a collateral proceeding where a petitioner must make a greater showing to obtain relief than might be sufficient at an earlier stage of the proceedings.

Indeed, the very point of *McDonough* was that a court evaluating a post-verdict claim of juror bias should not "recreate" the peremptory challenge process by asking whether a juror who failed to disclose information during voir dire should have been seated because of the risk that the juror might not be impartial. Yet, that is essentially

-1-

what the district court did in this case.  Although the court found that Sampson had failed to carry his burden of showing actual or implied bias, it nonetheless vacated Sampson's death sentence upon concluding that, if it had to do it all over again, it would have exercised its discretion to excuse Juror C for cause because of the "substantial risk" that she would not be impartial.  That is just the sort of retrospective reimagining of the voir dire process that the Court disavowed in *McDonough*.  The proper inquiry in such a case is not whether a juror should have been seated for possible bias, but rather whether a seated juror was proven to be biased.

The district court's ruling, if affirmed, therefore has the potential to dramatically expand the grounds on which parties can seek to overturn jury verdicts based on claims of juror bias.  If a juror fails to answer a question honestly during voir dire, many courts no doubt will find that that conduct bespeaks at least a "risk of partiality."  And if all a court has to do in those circumstances is look in the rearview mirror and ask whether, if it had to do it all over again, it would have chosen in its discretion to excuse the juror, courts will almost invariably answer "yes."  That bears no resemblance to the *McDonough* test, and it is antithetical to society's interest in finality, which is essential to the operation of the criminal justice system.

Throughout his answering brief, Sampson emphasizes the district court's findings that Juror C was dishonest during the voir dire process, and the government

-2-

agrees that this is no small matter, particularly in a capital case. But juror dishonesty alone does not warrant overturning a jury verdict, even in capital cases. Here, after conducting three evidentiary hearings and having an ample opportunity in which to judge Juror C's credibility, the district court found that Sampson had failed to carry his burden of demonstrating that she was actually or impliedly biased. That should have been the end of the matter, as whatever merits the theory of inferable bias might have in the pre-verdict context, it has no place when a court is evaluating a post-verdict claim of juror bias.

The threshold question in these appeals, of course, is whether this Court has jurisdiction to consider the government's challenge to the district court's ruling. Sampson argues that even if there was an error, it cannot be corrected at this stage of the proceedings. Not only is he wrong, but many of the arguments he presses are facially contradictory. Sampson argues, for example, that an interlocutory appeal is not available because a motion under 28 U.S.C. §2255 is a further step in the criminal case, but then abandons that rationale altogether in arguing that jurisdiction is unavailable under the Criminal Appeals Act. Those arguments are untenable. At a minimum, this Court can exercise its mandamus authority to overturn the district court's erroneous and unprecedented ruling, reinstitute Sampson's death sentence, and avoid a time-consuming, expensive, and painful retrial.

-3-

## ARGUMENT

### I.   THIS COURT HAS JURISDICTION TO HEAR THESE APPEALS.

Although Sampson argues otherwise, this Court has jurisdiction to consider the important merits issues raised in the government's appeals and mandamus petition.

#### A.   28 U.S.C. §1291.

In arguing that the government's notice of appeal should be dismissed, Sampson contends that *Andrews* compels the conclusion that the district court's order granting him a new penalty phase will not become final until he is resentenced.  He also argues that decisions by the courts of appeals all point in that direction, and that the government's argument is inconsistent with the plain language of the Federal Death Penalty Act ("FDPA").  Those arguments do not withstand careful scrutiny.

Sampson first errs in asserting (Brief at 41) that *Andrews v. United States*, 373 U.S. 334 (1963), has "direct application" and requires that this Court dismiss the government's appeal.  *Andrews* was not a capital case, and the Supreme Court therefore had no occasion to consider whether the penalty phase of a capital case is best understood as an order granting a "new trial" under §2255, let alone to decide that question in the specific context of the FDPA, a statute enacted more than three decades after *Andrews* was decided.  As the government showed in its opening brief, unlike a sentencing in a non-capital case, in which a district court exercises wide

discretion in determining an appropriate sentence within statutory limits, the determination whether a defendant should be sentenced to death under the FDPA is "presumptively decided by the jury," *United States v. Acosta-Martinez*, 252 F.3d 13, 17 (1st Cir. 2001), in a proceeding "having the hallmarks of a trial on guilt or innocence." *United States v. Lawrence*, 555 F.3d 254, 260 (6th Cir. 2009). Importantly, that difference is not only true today, but also when §2255 was enacted in 1948. In non-capital cases, courts exercised "wide discretion" under the system of "indeterminate" sentencing then in place, *see Mistretta v. United States*, 488 U.S. 361, 363 (1989), while the determination whether a defendant should be sentenced to death in a federal capital case was made by a jury as an integral part of the determination of guilt or innocence. *See Stroud v. United States*, 251 U.S. 15, 16-18 (1919).

Hence, because the penalty phase of a federal capital case is fundamentally different from sentencing hearings in non-capital cases, *Andrews* does not have "direct application" in this case. *See, e.g., United States v. Doe*, 170 F.3d 223, 225 (1st Cir. 1999) (Supreme Court decision did not "directly control" question whether the government's refusal to move for downward departure under a plea agreement could be attacked on bad faith grounds because decision did not involve a plea agreement); *Clarke v. Kentucky Fried Chicken*, 57 F.3d 21, 25 (1st Cir. 1995) (decision by Supreme Judicial Court of Massachusetts was not "directly controlling" on state law

question because "it did not consider the unique language and legislative history" of

state statute).[1]

Sampson also overstates matters in asserting (Brief at 42-43) that authority from

other circuits uniformly follows *Andrews*. Sampson is correct, of course, that two

courts of appeals have held that an order granting a death sentence under §2255 is not

final and immediately appealable under *Andrews*. *See United States v. Hammer*, 564

F.3d 628, 631-36 (3d Cir. 2009), and *United States v. Stitt*, 459 F.3d 483, 485-86 (4th

Cir. 2006). As the government argued in its opening brief, however, those decisions

were wrongly decided. The other decisions which Sampson cites all are non-capital

cases, and none therefore addressed the specific question presented here.

Moreover, Sampson makes no attempt to deal with decisions from other courts

of appeals that *did* involve federal capital proceedings and which, although not arising

specifically in the §2255 context, adopted reasoning that supports the conclusion that

the district court's order here is best understood as an order granting a "new trial"

under §2255. In *Lawrence*, for example, the Sixth Circuit expressly held that an order

granting a new penalty phase in a federal capital case constitutes an order granting a

---

[1] Sampson similarly errs in suggesting (Brief at 40-41) that the government's position in this case is inconsistent with that taken before the Eleventh Circuit in *Brown v. United States*, Nos. 11-15149-EE & 12-10293-EE. *Brown* also is not a capital case, and the government agrees that *Andrews* controls in non-capital cases. There is no inconsistency between the government's position here and in *Brown*.

"new trial" for purposes of 18 U.S.C. §3731, reasoning that the nature of those proceedings was the functional equivalent of a trial. 555 F.3d at 259. Similarly, in *United States v. Mitchell*, 502 F.3d 931, 988 (9th Cir. 2007), the Ninth Circuit held that the penalty phase of a capital case was a "trial stage" for purposes of Fed. R. Crim. P. 43(b)(1)(C). The reasoning of these decisions supports the conclusion that the penalty phase of a federal capital case likewise constitutes a "trial" for purposes of §2255.

As the government also showed in its opening brief, this Court has characterized the penalty phase of a capital case conducted under the FDPA as being one of two "separate trial phases," *United States v. Green*, 407 F.3d 434, 436-37 (1st Cir. 2005), and it repeatedly described the six-week penalty phase in this very case as a "trial" or a "penalty-phase trial," *see United States v. Sampson*, 486 F.3d 13, 17, 19, 29, 42, 47, 49 (1st Cir. 2007); *McCloskey v. Mueller,* 446 F.3d 262, 265 (1st Cir. 2006). Although this Court was not addressing the specific question presented here, these descriptions lend further support to the conclusion that the district court's order is best understood as an order granting a "new trial" under §2255.

Sampson nonetheless contends (Brief at 43-46) that the government's position is contrary to the plain language of the FDPA, pointing to the fact that Congress used the term "separate sentencing hearing" in 18 U.S.C. §3593(c), and arguing that

Congress thereby meant to differentiate the "separate sentencing hearing" from the trial in the FDPA. That argument lacks force. To begin with, it necessarily assumes that the terms of the FDPA govern the construction of similar terms in different statutes, such as §2255. The Supreme Court has repeatedly emphasized, however, that "principles of statutory construction are not so rigid," and that "most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section." *Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007) (internal quotation omitted). In that case, for example, the Court held that even where Congress had defined the term "modification" in one statute and, in a second statute, had used that term "as defined" in the first, the implementing regulations to the second statute did not have to interpret that term consistent with the definition in the first statute. *Id.* at 573-77. "Context counts," the Court explained, and there was "[n]othing in the text or the legislative history" of the second statute that suggested that Congress had details of regulatory implementation in mind when it added the cross-reference to the term's definition from the first statute. *Id.* at 576.

Similarly here, there is nothing in the text or legislative history of the FDPA that indicates that Congress had §2255 in mind, let alone any other statute or rule,

when it used the terms "trial" and "separate sentencing hearing" in the FDPA. Rather, in the context of the FDPA, courts have treated the term "sentencing hearing" as being essentially synonymous with the term "penalty phase." *See, e.g., Jones v. United States*, 527 U.S. 373, 407 (1999) (Ginsburg, J., dissenting) (stating that the FDPA "prescribes penalty-phase procedures" by providing for "a separate sentencing hearing"). Yet if Sampson's argument was accepted, it would necessarily mean that the penalty phase under the FDPA could not be deemed a "trial" for purposes of *any* federal statute or rule, thereby calling into question, for example, the Sixth Circuit's ruling in *Lawrence* regarding §3731 and the Ninth Circuit's decision in *Mitchell* regarding Rule 43(b)(1)(C). Nothing in the text or legislative history of the FDPA suggests that Congress intended such far-reaching consequences.

Furthermore, a close examination of the FDPA shows that the distinction upon which Sampson relies is not as inviolable as he submits. Section 3593(c) of the FDPA provides that, during the "separate sentencing hearing," "[i]nformation presented may include the trial transcript and exhibits if the hearing is held before a jury or judge not present during the trial, *or at the trial judge's discretion.*" 18 U.S.C. §3593(c) (emphasis added)*; see United States v. Basham,* 561 F.3d 302, 334 (4th Cir. 2009) (quoting this provision from §3593(c) and stating that "the language of the FDPA clearly rests the decision to admit the trial record firmly in the district court's

discretion"). In other words, even where the "separate sentencing hearing" is held before a jury or judge present during the guilty phase, the "trial judge" conducting that hearing may nonetheless allow the trial record and exhibits to be introduced in his or her discretion. The use of the term "trial judge" to refer to the court conducting the "separate sentencing hearing" undercuts the line of demarcation Sampson seeks to draw.

Sampson additionally errs in contending (Brief at 47-48) that "the Government's argument also fails because, in 1994, when §2255 was re-enacted and the FDPA was enacted, Congress is presumed to have known of *Andrews*," and presumably knew of *Andrews* and *Stitt* when §2255 was again re-enacted in 2008. When the FDPA was enacted in 1994 and §2255 was amended in 1996, no court had considered whether an order granting a new federal capital penalty phase was immediately appealable under §2255. And all the 2008 amendments to §2255 did was "designat[e] the 8 undesignated paragraphs as subsections (a) through (h), respectively." Pub. L. No. 110-177, Title V, §511, 121 Stat. 2545. That technical amendment can hardly be said to be an implicit endorsement of the Fourth Circuit's decision in *Stitt*, as Sampson suggests.

Equally misplaced is Sampson's assertion (Brief at 46-47) that jurisdiction is lacking because, if both parties consent, a district court alone determines the sentence

-10-

under 18 U.S.C. §3593(b)(3). Not only does this rarely occur – there is a reason, after all, that this Court said that the determination whether a defendant should be sentenced to death is "presumptively decided by the jury," *Acosta-Martinez*, 252 F.3d at 17 – but a penalty phase proceeding conducted by the court alone would be a bench trial, and the district court's order consequently would still qualify as an order granting a new trial for purposes of §2255.

### B. **28 U.S.C. §1292(b).**

This Court alternatively has jurisdiction under §1292(b) given the district court's certification of the important merits questions in this case. Sampson's arguments (Brief at 48-58) that this Court should decline to accept these certified questions are unavailing.

### 1. **A §2255 proceeding is a "civil action" for purposes of §1292(b).**

Sampson first contends (Brief at 49-56) that an interlocutory appeal is not available because a §2255 motion is understood as a further step in the criminal case. He asserts that language in *Heflin v. United States*, 358 U.S. 415, 418 n.7 (1959), which characterizes a §2255 motion as being civil in nature was abrogated when the Supreme Court and Congress approved the Rules Governing Section 2255 Proceedings in 1976, and that language characterizing §2255 motions as being civil in nature in *Trenkler v. United States*, 536 F.3d 85 (1st Cir. 2008), and *Rogers v.*

-11-

*United States*, 180 F.3d 349 (1st Cir. 1999), also is inapposite because both cases relied on *Heflin*. Those arguments lack force.

As the government acknowledged in its opening brief, the Supreme Court has recently noted that "there has been some confusion over whether §2255 proceedings are civil or criminal in nature," *Wall v. Kholi*, 131 S. Ct. 1278, 1289 (2011), and this Court has at times characterized §2255 motions as being civil in nature while on others, it has said that they are further steps in the criminal case. But as the government also showed in its opening brief, those decisions do not stand on equal footing, as this Court's statement in *Trenkler* that §2255 proceedings are generally treated as civil in nature was part of the Court's rationale in deciding the threshold claim raised in that case – whether there was jurisdiction to consider the government's appeal from a grant of coram nobis – and it therefore is not dicta. *See United States v. Pleau*, 680 F.3d 1, 5 (1st Cir. 2012) (en banc) (limiting passage in Supreme Court decision was "not dicta but part of the Court's rationale for its holding" because it answered a substantive objection to the Court's treatment of statute's time limits as binding on the federal government), *cert. denied*, 133 S. Ct. 930, 133 S. Ct. 931 (2013). Because the same is not true of those decisions characterizing a §2255 motion is a further step in the criminal case (nor does Sampson make any attempt to so argue), *Trenkler* is controlling.

Moreover, although Sampson distinguishes *Heflin*, he makes no attempt to square his argument with *Andrews*, in which the Court stated that "[a]n action under 28 U.S.C. s 2255 is a separate proceeding, independent of the original criminal case." 337 U.S. at 338. If, as Sampson advocates, the approval of the amendments to the Rules Governing Section 2255 Proceedings in 1976 served to abrogate language in *Heflin* indicating that a §2255 proceeding is a civil matter independent of the criminal case, then those amendments abrogated the similar language in *Andrews* as well. And that, in turn, would mean that the *Andrews* Court's statement that "[t]he Criminal Appeals Act has no applicability" to a §2255 proceeding would have been abrogated as well, and an appeal under 18 U.S.C. §3731 would potentially be available. Yet, in almost his next breath, Sampson quotes *Andrews* (Brief at 60) for the proposition that the Criminal Appeals Act has no applicability in a §2255 proceeding, and an appeal under §3731 therefore is unavailable. He cannot, of course, have it both ways. If *Andrews* remains binding precedent, as Sampson repeatedly asserts, then a §2255 proceeding is independent of the criminal case, and it may properly be characterized as a "civil action" under §1292(b). If, instead, it is deemed a further step in the criminal case, then an appeal under §3731 is available.

If this Court were nonetheless to conclude that the question whether a §2255 proceeding is civil or criminal in nature remains open in this circuit, the government

-13-

believes that a §2255 motion may be best described as a "hybrid" remedy with characteristics of both civil and criminal actions, and a §2255 proceeding therefore "may properly be categorized as one or the other depending on the context and the reason for making the inquiry." *United States v. Means*, 133 F.3d 444, 448 (6th Cir. 1998). Here, and as the government showed in its opening brief, because appeals in §2255 proceedings are governed by civil rules applicable to appeals from final judgment in habeas corpus actions by virtue of §2255(d), *see United States v. Hayman*, 342 U.S. 205, 209 n.4 (1952), courts have concluded that "appeals in §2255 proceedings are treated as civil in nature." *Butcher v. United States*, 368 F.3d 1290, 1293 n.1 (11th Cir. 2004); *see also Lawuary v. United States*, 669 F.3d 864, 866 (7th Cir. 2012) (noting that "§2255 proceedings are treated as civil matters for some purposes, such as the time for appeal"). This Court should reach the same conclusion here.

Indeed, this is consistent with the approach taken by this Court in *Trenkler* in determining whether coram nobis should be treated as civil or criminal for purposes of appeal, as this Court explained that coram nobis proceedings are "best seen as hybrids – quasi-civil and quasi-criminal," and that, "[o]n this view, the denomination of the nature of a given petition calls for a functional analysis rather than for doctrinal rigidity." 536 F.3d at 94. And it is consistent with the government's position before

-14-

the Eleventh Circuit in *Brown*, in which the government similarly argued that §2255 proceedings are best described as hybrid matters that have aspects of both civil and criminal actions, but that for purposes of the Magistrate Judges Act, the criminal aspects of a §2255 proceeding preclude it from being considered a purely "civil" matter. *See* Brief for the United States, *Brown v. United States*, Nos. 11-15149-EE, 12-10293-EE, at 25. Here, by contrast, the civil aspects of appellate remedies in §2255 proceedings support the conclusion that it can be considered a "civil action" for purposes of §1292(b).

Sampson nonetheless argues (Brief at 54) that this is a nonsequitur, asserting that the plain text of §1292(b) permits jurisdiction only for an "order" rendered by a "district judge" in a "civil action," and those terms "in no way suggest that jurisdiction somehow is created by how an appeal is characterized once in, or en route to, the Court of Appeals." But he cites no case which so holds, and his argument is belied by the fact that even those courts which have deemed a §2255 motion to be a further step in the criminal case have nonetheless recognized that it is properly considered civil in nature for purposes of appeal. *See, e.g., United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003) ("[W]hile a §2255 motion is deemed a further step in the movant's criminal case, it is also considered a civil remedy for purposes of appellate jurisdiction."). The text of §1292(b) thus does not prohibit an interlocutory appeal.

-15-

### 2.    The remedial scheme of §2255 does not bar an interlocutory appeal.

Sampson next argues (Brief at 56-58) that §2255's comprehensive remedial scheme is the exclusive means of appeal, but fares no better in doing so. Sampson points to the fact that this Court held that a prisoner could not evade §2255's limitation on "second or successive" motions by asserting that a different avenue of collateral review was available, whether that be by way of a writ of coram nobis or under 28 U.S.C. §2241. *See Trenkler*, 536 F.3d at 98; *United States v. Barrett*, 178 F.3d 34, 50 (1st Cir. 1999). This case does not involve §2255's "second or successive" limitation, however, and neither decision consequently forecloses an interlocutory appeal under §1292(b), as Sampson erroneously suggests.

To the extent Sampson is relying on the term "final order" in §2255(d) to press his claim, such reliance is equally misplaced. Section 2253(a), which governs appeals in habeas corpus actions and §2255 proceedings, likewise uses the term "final order," providing that "[i]n a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held." Yet this Court and other courts of appeals have accepted interlocutory appeals under §1292(b) in habeas corpus actions, including those brought under 28 U.S.C. §§2241 or 2254. *See, e.g., Muniz v. Sabol*, 517 F.3d 29, 32 (1st Cir. 2008); *Al Maqaleh v. Gates*, 605 F.3d 84,

-16-

87 (D.C. Cir. 2010); *Padilla v. Rumsfeld*, 352 F.3d 695, 702 (2d Cir. 2003), *rev'd on other grounds*, 542 U.S. 426 (2004); *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 807 (9th Cir. 2003). Just as the text of §2253(a) does not prohibit interlocutory appeals in habeas corpus actions, neither does that text or that of §2255(d) prohibit interlocutory appeals in §2255 proceedings.

### 3. The certification requirements are satisfied.

Sampson lastly argues (Brief at 58-59) that the certification requirements of §1292(b) have not been met even assuming an interlocutory appeal is available, but he makes little effort to press the point, and the arguments he does raise are meritless. Sampson does not appear to contest the district court's conclusion that its order presents a "controlling question of law," and with good reason. As the district court correctly observed, if this Court concludes that the *McDonough* test requires that actual or implied bias be shown, the court's grant of a new penalty phase proceeding would be reversed or remanded. [G.Add.94-95].

The requirement that the question to be certified involve a "substantial ground for difference of opinion" also is satisfied in this case. Sampson asserts (Brief at 59) that this Court's precedents "make clear that a §2255 movant can prove entitlement to a new sentencing hearing by meeting the *McDonough* test or, separately, by showing that a juror was actually or impliedly biased," but that is wrong for the

-17-

reasons set forth in the government's opening brief and below.  Indeed, this assertion necessarily begs the question of *what* the *McDonough* test requires to satisfy a claim of juror bias.  The district court determined that the "substantial ground for difference of opinion" requirement was satisfied in view of the "lack of binding First Circuit authority concerning the meaning of *McDonough* and the confusion that is manifest in some decisions in other circuits," [G.Add.95-97], and so, too, should this Court.

Sampson also suggests (Brief at 59) that an interlocutory appeal is not warranted because review of the district court's order will not terminate the litigation, noting that even if the district court's order is reversed, his remaining §2255 claims would have to be litigated.  But the statute does not require that resolution of the certified question terminate the litigation, it only requires that "an immediate appeal from the order may *materially* advance the *ultimate* termination of the litigation," 28 U.S.C. §1292(b) (emphasis added), and that is the case here.  As the district court noted, "a second hearing to determine whether Sampson should live or die will be lengthy, expensive, and anguishing for the families of the victims," [G.Add.71], and the resolution of the question whether such a hearing is required plainly would materially advance the ultimate termination of the litigation.

### C.    18 U.S.C. §3731.

As the government showed in its opening brief, if Sampson is correct that §2255 proceedings are not civil in nature but rather a further step in his criminal case, this Court alternatively has jurisdiction under 18 U.S.C. §3731, as the district court's order constitutes the grant of a "new trial" under that statute. *See Lawrence*, 555 F.3d at 259.  Sampson argues (Brief at 60) that jurisdiction under §3731 is unavailable because the Supreme Court in *Andrews* expressly held that the Criminal Appeals Act "has no applicability" to a §2255 proceeding, but as shown above, that statement was premised on the Court's characterization of a §2255 proceeding as a "separate proceeding, independent of the original criminal case."  If that language remains controlling, an appeal under §3731 would not be available but an interlocutory appeal under §1292(b) would; conversely, if that language was abrogated in 1976 by the amendments to the §2255 rules, an appeal under §3731 would be available even if an interlocutory appeal under §1292(b) would not.  Sampson cannot have it both ways.

Sampson also argues (Brief at 60-61) that this conclusion does not fly because §3731 requires that the court's order "grant[] a new trial * * * as to any one or more counts, or any part thereof," asserting that the two counts of conviction are not at issue here.  Section 3731 also provides, however, that its provisions "shall be liberally construed to effectuate its purposes," and, as the Sixth Circuit concluded in *Lawrence*,

-19-

"the conclusion that an order requiring a new sentencing hearing is an order granting a new trial as to any part of any count is entirely consonant with Congress's stated intention that §3731 be liberally construed and that government appeals be allowed within the limits of the Constitution." 555 F.3d at 259. Finally, Sampson's assertion (Brief at 61) that the government's reliance on *Lawrence* "contravenes the Government's own position in the District Court and on appeal" is simply macilent. This is just another variation of Sampson's argument that *Andrews* compels the conclusion that the Criminal Appeals Act does not apply in §2255 cases, an argument that he invokes when it suits his purposes (§3731) and ignores when it does not (§1292(b)). This Court should not accept these facially contradictory positions.

### D.    **Advisory Mandamus**.

As the government argued in its opening brief, if this Court determines that the court's grant of a new penalty phase trial is not appealable, it can, and should, exercise its advisory mandamus authority. Sampson contends (Brief at 62-66) that this case is not appropriate for the exercise of this Court's mandamus authority, but the arguments he advances are unavailing.

Sampson first argues (Brief at 62-63) that granting mandamus here would be "especially inappropriate" because Congress "affirmatively has determined" that the instant appeal is statutorily impermissible until after a new sentencing hearing. But

as shown above, this argument is premised on the dubious proposition that Congress had *Andrews* in mind when it enacted the FDPA, or that it had *Stitt* in mind when it enacted technical amendments to §2255 in 2008. Nothing in the text or legislative history of the FDPA or §2255 supports those suggestions.

Sampson next argues (Brief at 63-64) that the district court's order does not present an issue of "great public importance." But he could not be more wrong. The district court's interpretation of the *McDonough* test is unprecedented, and the importance of that ruling is all the more magnified by the fact that this is a capital case. *See Green*, 407 F.3d at 439 (advisory mandamus appropriate in capital case because "[t]he district court's interpretation of section 3593(b) is unprecedented, and it hardly needs explaining why proper death penalty procedure is of great importance to the administration of justice"). The legal issue also is likely to recur because the district court's ruling, if allowed to stand, has the potential to greatly expand the grounds upon which a successful claim of juror bias can be made in both capital and non-capital cases alike. Sampson's assertion (Brief at 65) that there are no *current* cases pending in which a prompt determination of the government's appeal is necessary therefore is beside the point; the relevant inquiry is whether the issue is likely to recur in *future* cases, not simply cases *currently* pending in the district courts.

-21-

Sampson lastly argues (Brief at 66) that there is no risk that this issue will evade review because the double jeopardy concerns which the government identified were rejected by Judge Williams in her concurring opinion in *Stitt*. But that lone concurrence hardly constitutes a definitive resolution of the issue and, as the government predicted in its opening brief, Sampson does not foreswear invoking the Double Jeopardy Clause in the future. Moreover, Sampson does not dispute that if he were sentenced to death following a new penalty phase proceeding and that sentence were upheld on appeal, the government's appeal of the district court's order would be rendered moot.

Finally, the equities plainly favor issuance of the writ. *Cf. In re Bulger*, —F.3d —, 2013 WL 979075, at *7 (1st Cir. March 14, 2013) (considering balance of equities in determining that mandamus relief was appropriate). Resolution of the legal question presented in this case could potentially avoid what the district court rightly characterized as "another long, expensive, and exhausting sentencing hearing." [G.Add.97-98]. And, equally important, it would potentially spare needless additional suffering for the families of the victims, which have had to endure these proceedings now for more than a decade. This is an appropriate case for the use of this Court's mandamus authority. *Cf. In re United States*, 565 F.2d 173, 178-79 (1st Cir. 1977) (mandamus appropriate where claim that district court acted in error was clear and

-22-

indisputable and "[w]ithout mandamus, the legitimate interests of the government in having a valid jury verdict stand would be completely frustrated and the considerable expense of unwarranted retrial of this long and complicated case could never be vindicated").

## II. THE DISTRICT COURT'S ORDER GRANTING SAMPSON A NEW PENALTY PHASE PROCEEDING SHOULD BE VACATED AND SAMPSON'S DEATH SENTENCE REINSTATED.

None of the arguments which Sampson advances in his answering brief undermines the government's claim that the district court erred in concluding that the *McDonough* test could be satisfied based on a finding of inferable bias on the part of Juror C, and where the court found that Sampson had failed to carry his burden of demonstrating that she was actually or impliedly biased against him.

### A. A Challenge for Cause Must Be Based on Actual or Implied Bias, Not Mere Impairment.

In his answering brief, Sampson contends (Brief at 69-70) that the district court properly applied the *McDonough* test because Juror C's conduct "fell well within the grounds for valid challenges for cause recognized by this Court and other circuits as well." In fact, he asserts, inferable bias "merely describes conduct that falls squarely within the types of impairment universally recognized as valid bases for causal challenges." Those arguments fail at every step.

The Supreme Court has expressly stated that "challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality," *Swain v. Alabama*, 380 U.S. 202, 220 (1965), and the only grounds of partiality which the Court has recognized as justifying a challenge for cause is actual or implied bias. *See J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 144 (1994) ("Voir dire provides a means of discovering actual or implied bias and a firmer basis upon which the parties may exercise their peremptory challenges intelligently."); *United States v. Wood*, 299 U.S. 123, 133 (1936) ("The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as matter of law."). Indeed, the Court has recently indicated that absent a showing of actual bias or statutory ineligibility, a challenge for cause would not lie. *See Rivera v. Illinois*, 556 U.S. 148, 152 (2009) ("It is conceded that there was no basis to challenge Gomez for cause. She met the requirements for jury service, and Rivera does not contend that she was in fact biased against him."). The Court has never recognized the theory of inferable bias, nor has it ever stated that something less than actual or implied bias would justify a challenge for cause.

Sampson nonetheless asserts (Brief at 72) that *Wainwright v. Witt*, 469 U.S. 412 (1985), establishes a generalized "substantial impairment" standard that is untethered to a finding of actual bias, but he badly misreads that case in doing so. In *Wainwright*,

-24-

the Supreme Court affirmed that a juror may be excused for his views on capital punishment if those views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* at 424 (internal quotation omitted). The Court made clear, however, that such a factual finding is just another way of determining whether a juror is biased, explaining that "excluding prospective capital sentencing jurors because of their opposition to capital punishment *is no different from excluding jurors for innumerable other reasons which result in bias*," *id.* at 429 (emphasis added), and emphasizing in this regard that "[t]he trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor.'" *Id.* (quoting *Dennis v. United States*, 339 U.S. 162, 168 (1950)).

The question whether a juror's views about capital punishment would substantially impair the juror's ability to perform his or her duties thus is just another way of asking whether the juror was actually biased in the context of the issues raised in the underlying proceeding. *See, e.g., Treesh v. Bagley*, 612 F.3d 424, 438 (6th Cir. 2010) (analyzing juror's statements regarding the death penalty demonstrate actual bias under *Wainwright*), *cert. denied*, 131 S. Ct. 1678 (2011); *Mitchell*, 502 F.3d at 965-66 (same). Indeed, even the dissenters in *Wainwright* recognized that the relevant inquiry when asking these questions is for actual bias. *See Wainwright*, 469 U.S. at

-25-

439 (Brennan, J., with whom Marshall, J. joins, dissenting) (stating that *Witherspoon v. Illinois*, 391 U.S. 510, 522 (1968), and its progeny "have required the State to make an exceptionally strong showing that a juror's views about the death penalty will result in actual bias toward the defendant before permitting exclusion of the juror for cause"). The *Wainwright* inquiry consequently does not stand apart from the determination of actual bias, as Sampson erroneously asserts.

Even more wide of the mark is Sampson's assertion (Brief at 72) that, "at times, this Court has approved of a standard potentially less demanding than in *Wainwright*, holding that dismissals for cause are required where a juror is impaired (as opposed to substantially impaired) from performing his or her duties." The cases which Sampson cites to support that proposition all involve a district court's discretionary excusal of a juror in the pre-verdict context, and most involve the specific question whether a juror should have been excused during deliberations for "just cause" under Fed. R. Crim. P. 23(b) (permitting an 11-person jury), a very different standard. Under Rule 23(b), a district court is afforded great deference to excuse a juror for "just cause" for reasons that go beyond questions of possible bias; thus, for example, in *United States v. Walsh*, 75 F.3d 1, 5 (1st Cir. 1996), this Court upheld the dismissal of a juror under Rule 23(b) who was found by the district court to be incapable of engaging in rational discussions based upon the evidence, while in *United States v.*

*Molinares Charris*, 822 F.2d 1213, 1223 (1st Cir. 1987), it upheld the dismissal of a juror whose health the district court found would be endangered by her continued participation in deliberations.[2] The "just case" standard under Rule 23(b) bears no relation to the very different standard governing challenges for cause for reasons of partiality, particularly where, as here, they are raised for the first time on collateral review.

Sampson nonetheless asserts (Brief at 72-73) that he has been "unable to find a single case in this Circuit that states that district courts can only remove prospective jurors – or even sitting jurors – for cause upon a finding of actual or implied bias." But, as shown above, the Supreme Court has only recognized actual or implied bias as justifying a challenge for cause. *See J.E.B.*, 511 U.S. at 144; *Wood*, 299 U.S. at 133 (1936); *see also Rivera*, 556 U.S. at 152. Likewise, the majority of the courts of appeals have held that challenges for cause are limited to a showing of actual or implied bias. *See, e.g., United States v. Maloney*, 699 F.3d 1130, 1135 (9th Cir. 2012) ("'To disqualify a juror for cause requires a showing of either *actual* or *implied* bias

---

[2] Other courts of appeals similarly have affirmed the excusal of jurors under Rule 23(b) in a wide variety of circumstances having nothing to do with juror partiality. *See, e.g., United States v. Simmons*, 560 F.3d 98, 109-11 (2d Cir. 2009) (ill child); *United States v. Hively*, 437 F.3d 752, 766-67 (8th Cir. 2006) (husband's mental breakdown); *United States v. McFarland*, 34 F.3d 1508, 1511-13 (9th Cir. 1994) (prepaid vacation); *United States v. Reese*, 33 F.3d 166, 172-73 (2d Cir. 1994) (business trip).

* * *.'") (ellipsis and emphasis in original) (quoting *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th Cir. 2000)); *United States v. Mitchell*, 690 F.3d 137, 142 (3d Cir. 2012) ("Traditionally, courts have distinguished between two types of challenges for cause: those based on actual bias and those based on implied bias.") (citing cases); *Fields v. Brown*, 503 F.3d 755, 774 (9th Cir. 2007) (en banc) ("Fields had a remedy at that point – a challenge for cause, which lies for implied as well as actual bias * * *."); *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir. 2001) ("Challenges for cause are subject to approval by the court and must be based on a finding of actual or implied bias.") (internal quotation omitted).

Indeed, in *United States v. Torres*, 128 F.3d 38 (2d Cir. 1997), the Second Circuit recognized that, "[t]raditionally, challenges for cause have been divided into two categories: (1) those based on actual bias, and (2) those grounded in implied bias," and it was for that very reason that the court analyzed whether a third category, that of inferable bias, also existed. *Id.* at 44, 46-48. As shown in the government's opening brief, that decision involved the breadth of a court's discretion to excuse during jury selection and has no application in this case, in which Sampson is seeking to overturn a jury verdict based on a claim of juror bias. But it would have been entirely unnecessary for the Second Circuit to even consider whether a court could dismiss a juror for cause based on inferable bias if, as Sampson asserts, such a

challenge could merely lie based on some generalized notion of substantial impairment.

The district court rightly acknowledged that its decision vacating Sampson's death sentence and granting him a new penalty phase proceeding was dependent on its legal conclusion that inferable bias can satisfy the *McDonough* test. *See United States v. Sampson*, 820 F. Supp. 2d 151, 168-81, 192-97 (D. Mass. 2011). Sampson's attempt to muddy the waters by arguing that all he needed to show was some form of impairment to satisfy that test not only lacks merit, it would invariably open up verdicts in capital and non-capital cases alike to new ground of attack. That contention should be soundly rejected.

### B.    Inferable Bias Does Not Satisfy the *McDonough* Test.

In *McDonough*, the Supreme Court stated that to succeed on a post-verdict claim of juror bias, a party must show not only that a juror was dishonest during voir dire, but also must "further show that a correct response would have provided a valid basis for a challenge for cause" and that the juror's impartiality was affected. 464 U.S. at 556. As the foregoing analysis shows, that is just another way of saying that actual or implied bias must be shown. Challenges for cause, once again, are permitted only "on a narrowly specified, provable and legally cognizable basis of partiality," *Swain*, 380 U.S. at 220, and the only grounds which the Court had identified as

-29-

supporting a challenge for cause for juror partiality is actual or implied bias.  By contrast, under the district court's and Sampson's reading of that decision, the Court was announcing an unbounded standard subject to whatever rationale courts in the future might find sufficient to justify a challenge for cause.  That interpretation of *McDonough*, which would open the floodgates to post-verdict claims of juror bias, is untenable.

Indeed, and as the government showed in its opening brief, the conclusion that the *McDonough* test requires a showing of actual or implied bias is underscored by the fact that two years earlier, in *Smith v. Phillips*, 455 U.S. 207, 215-17 (1982), the Court arguably sought to abrogate the doctrine of implied bias altogether.  *See Mitchell*, 690 F.3d at 144 (3d Cir. 2012) ("In the wake of *Smith*, some Courts of Appeals questioned whether the majority opinion quietly discarded the doctrine of implied bias.") (citing cases).  When *McDonough* was decided, then, the grounds for a challenge for cause based on juror partiality arguably were *contracting*.  *Smith*, read in conjunction with *McDonough*, buttresses the conclusion that the test announced in *McDonough* cannot be met by theories of bias which courts had yet to even discover, such as the Second Circuit's theory of inferable bias.

It therefore matters not that the district court stated that it would have exercised its discretion to excuse Juror C for inferable bias, a point which Sampson repeatedly

-30-

makes (Brief at 75-82).  The difference between these categories is that a juror's partiality is proven or demonstrated in the case of actual or implied bias, *see McDonough*, 464 U.S. at 554 (noting that "demonstrated bias" may result in a juror's being excused for cause), while inferable bias bespeaks only a "risk of partiality sufficiently significant to warrant granting the trial judge discretion to excuse the juror for cause, but not so great as to make a mandatory presumption of bias." *Torres*, 128 F.3d at 147.  In the post-verdict context, a "risk of partiality" does not suffice; rather, actual or implied bias must be shown.  *See United States v. Thomas*, 627 F.3d 146, 161 (5th Cir. 2010) (actual or implied bias required), *cert. denied*, 131 S. Ct. 2466, 131 S. Ct. 2470 (2011); *Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005) (same); *United States v. North*, 910 F.2d 843, 904 (D.C. Cir. 1990) (per curiam) (actual bias required); *United States v. Perkins*, 748 F.2d 1519, 1532 (11th Cir.1984) (same, although including implied bias within concept of actual bias); *see also Treesh*, 612 F.3d at 438 ("Without actual or implied bias, Treesh cannot demonstrate prejudice from the seating of Barth."); *United States v. Blackwell*, 436 F. App'x 192, 196-97 (4th Cir. 2011) (affirming denial of juror bias claim where district court concluded that second prong of *McDonough* test was not satisfied because "[a]lthough this Court likely would have excused Juror Martin for cause in an abundance of caution, [Appellants] fail to establish that an implied bias existed that would have *required* the

-31-

Court to excuse Juror Martin for cause") (emphasis in original), *cert. denied*, 132 S. Ct. 1093, 132 S. Ct. 1097 (2012).    Moreover, and for the reasons set forth in the government's opening brief, the district court's application of inferable bias in this case additionally does not justify collateral relief under §2255.

This distinction between pre-verdict and post-verdict inquiries into juror bias is consistent with the Supreme Court's treatment of inquiries into juror misconduct. District courts have wide discretion to make inquiries into juror misconduct during the trial or while deliberations are underway, for example, but that changes once a verdict has been reached due, in part, to the important interest in finality.    As the Supreme Court has explained:

> There is little doubt that postverdict investigation into juror misconduct would in some instances lead to the invalidation of verdicts reached after irresponsible or improper juror behavior.  It is not at all clear, however, that the jury system could survive such efforts to perfect it. Allegations of juror misconduct, incompetency, or inattentiveness, raised for the first time days, weeks, or months after the verdict, seriously disrupt the finality of the process.

*Tanner v. United States*, 483 U.S. 107, 120-21 (1987) (internal citations omitted). Just as pre-verdict and post-verdict claims of juror misconduct are treated differently due in part to interests in finality, so, too, are pre-verdict and post-verdict claims of juror bias treated differently for that very same reason, as *McDonough* makes clear.

-32-

Sampson nonetheless asserts (Brief at 85-91) that the concurrences in *McDonough* show that actual and implied bias stand apart from the test established in that case, and that cases of juror dishonesty merit that separate inquiry. To the contrary, and as the government showed in its opening brief, the disagreement amongst the Justices in *McDonough* was whether juror dishonesty must be shown in addition to actual or implied bias, not whether actual or implied bias had to be proven. And to the extent Sampson is suggesting that a lower standard should apply where a juror has been shown to be dishonest, he is wrong. As courts of appeals have explained, "*McDonough* teaches that the deliberate concealment of information on voir dire does not automatically give rise to a presumption of bias," *Williams v. Bagley*, 380 F.3d 932, 946 (6th Cir. 2004), and a juror's concealment "is only one factor – albeit an important one – in the critical test for actual bias." *North*, 910 F.2d at 904.

Sampson also errs in asserting (Brief at 91-100) that this Court and other courts of appeals do not require a showing of actual or implied bias. To the contrary, this Court's decisions, including *DeBurgo v. St. Amand*, 587 F.3d 61, 71-72 (1st Cir. 2009), *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 408 (1st Cir. 2002), and *Dall v. Coffin*, 970 F.2d 964, 969 (1st Cir. 1992), all support that very conclusion. Other courts of appeals, as shown above, likewise have held that the *McDonough* test

-33-

requires a showing of actual or implied bias. By contrast, Sampson cannot cite to a single decision in which any court has upheld a post-verdict claim of juror bias based on a showing of inferable bias, and where actual or implied bias has not been proven.[3]

This is not to say that there has not been some confusion about *McDonough,* as one court of appeals has recognized. *See Zerka v. Green*, 49 F.3d 1181, 1185 (6th Cir. 1995).[4] A good example of this confusion can be found in *United States v. Olsen*, 704 F.3d 1172, 1189 (9th Cir. 2013), in which the Ninth Circuit stated that it recognizes three forms of juror bias: (1) actual bias; (2) implied bias; and (3) "so-called *McDonough*-style bias, which turns on the truthfulness of a juror's responses on voir dire where a truthful response would have provided a valid basis for a challenge for cause." That language appears, at least on initial glance, to support the district court's conclusion that the *McDonough* test is distinct from the inquiry into actual or implied bias. But a closer inspection reveals the distinction ultimately to be illusory, as the

---

[3] Sampson points (Brief at 78) to *United States v. Daugerdas*, 867 F. Supp. 2d 445 (S.D.N.Y. 2012), but the district court in that case found that actual and implied bias were proven in addition to inferable bias. *Id.* at 469-76. The *Daugerdas* court's decision consequently was not premised on the finding of inferable bias, nor did that court consider whether inferable bias could satisfy the *McDonough* test in the absence of a showing of actual or implied bias.

[4] Sampson notes (Brief at 97-99) that earlier in this litigation, the government argued that the *McDonough* test stood apart from actual or implied bias, a point which the government acknowledged in its opening brief. The government corrected course, however, and the district court understood the government's argument to be that *McDonough* requires a showing of actual or implied bias. 820 F. Supp. 2d at 174-81.

-34-

Ninth Circuit has repeatedly made clear that to disqualify a juror for cause requires a showing of actual or implied bias. *See Maloney*, 699 F.3d at 1135; *Fields*, 503 F.3d at 774; *Gonzalez*, 214 F.3d at 1111. The second-part of the *McDonough* test thus collapses into the inquiry whether actual or implied bias has been shown, consistent with the government's argument in this case.

At the end of the day, the district court, after conducting three evidentiary hearings and having the opportunity to judge Juror C's credibility and demeanor, found that Sampson had failed to demonstrate actual or implied bias. Based on those findings, the court should have denied Sampson's juror bias claim, as the *McDonough* test had not been satisfied.

## C.    **The District Court's Ruling Violates *Teague*.**

As the foregoing demonstrates, the district court's order is unprecedented and, for that reason, it also violates the rule of *Teague v. Lane*, 489 U.S. 288, 301 (1989).[5] Sampson contends (Brief at 101-102) that *Teague* does not bar relief because the government waived the claim by not raising it earlier and because the district court's ruling was dictated by precedent existing at the time of his sentencing hearing. As to the latter claim, he is wrong, as shown above and in the government's opening brief.

---

[5] As Sampson concedes (Brief at 101 n.29), this Court has concluded that *Teague* is applicable to §2255 proceedings. *See United States v. Sepulveda*, 330 F.3d 55, 66 (1st Cir. 2003).

And while the government did not raise *Teague* explicitly in the district court, it did argue that application of "inferable bias" was inconsistent with governing authority and would be unprecedented. [JSA 1096-1101]. Regardless, this Court can overlook the government's forfeiture in the interests of justice and should do so here given the important issues at stake, the unprecedented nature of the district court's ruling, and the potential that ruling has to substantially undermine the finality of jury verdicts in capital and non-capital cases alike.

### D.    The District Court Correctly Determined that Sampson Failed to Show that Juror C Was Impliedly Biased.

Sampson alternatively argues (Brief at 103-110) that this Court can affirm the district court on the ground that the facts showed that Juror C was impliedly biased against him. This Court should reject the invitation. As the district court correctly determined, this case does not involve the "exceptional or extreme" circumstances that would justify a finding of implied bias.

### 1.    Standard of Review

This Court has not had occasion to decide what standard applies to the review of a claim of implied bias.[6] The courts of appeals to have considered the question

---

[6] In *Miles v. Great Northern Ins. Co.*, 634 F.3d 61, 66 & n.7 (1st Cir. 2011), this Court cited *Dyer v. Calderon*, 151 F.3d 970, 979 (9th Cir. 1998), in a footnote and with the introductory signal "but see," as holding that implied bias is a mixed question of law and fact reviewed de novo. *Miles* was not a juror bias case, however, and this Court was not purporting to adopt the Ninth Circuit's view.

have held that the ultimate determination whether implied bias exists is either a pure question of law or a mixed question of law and fact, both subject to de novo review. *Compare Olsen*, 704 F.3d at 1192 (mixed question of law and fact); *with Mitchell*, 690 F.3d at 148 (question of law); *and Skaggs v. Otis Elevator Co.*, 164 F.3d 511, 517 (10th Cir. 1998) (same).

The government submits that the better answer is that implied bias involves a mixed question of law and fact. As the Ninth Circuit explained in *Olsen*, a reviewing court's determination of whether implied bias exists "is not carried out on an entirely blank slate," as embedded within that determination often is the question whether the juror lied during voir dire, a factual question. 704 F.3d at 1194. This reasoning is persuasive. In this case, for example, in analyzing whether Sampson had met his burden of showing that implied bias exists, the district court found that Juror C had repeatedly provided dishonest answers at voir dire, but also found that she did not lie during the jury selection process because of a conscious desire to become a juror, but rather lied to avoid having to disclose or discuss her painful personal experiences. 820 F. Supp. 2d at 191. Both of those findings, which were based on the district court's assessment of Juror C's credibility and demeanor, are findings of fact. *See Olsen*, 704 F.3d at 1194; *see also Patton v. Yount*, 467 U.S. 1025, 1038 (1984)

-37-

(findings based upon juror's demeanor and credibility are entitled to "special deference" even on direct appeal).

Consistent with the law in other areas, the district court's ultimate determination that implied bias was not shown must be considered a mixed question of law and fact that is reviewed de novo, and the court's subsidiary findings that Juror C lied during voir dire but that she did not lie to secure a place on the jury are factual issues subject to clear error review. *See United States v. Rogers*, 659 F.3d 74, 77 (1st Cir. 2011) ("Our review of mixed questions of fact and law is de novo, subject to clear error review of purely fact issues.").

### 2.   Implied Bias Was Not Shown

Implied bias is "bias conclusively presumed as a matter of law," *Wood*, 299 U.S. at 133, and is limited to "exceptional or extreme circumstances," *Amirault v. Fair*, 968 F.2d 1404, 1405 (1st Cir. 1992) (per curiam).  In *Smith*, Justice O'Connor noted that some examples of the "extreme situations that would justify a finding of implied bias" include "a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial, or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction."  455 U.S. at 222 (O'Connor, J., concurring).

In this case, the district court concluded that although Juror C's repeated dishonesty during voir dire "contributes to raising a close question about whether she should be found to have been impliedly biased," that showing ultimately failed because: (1) Juror C was not impliedly biased "because of any direct personal relationship to the parties or specific events in the case"; (2) the experiences in her own life and the issues being litigated in Sampson's case were not as immediate as those in other cases in which implied bias has been found, as they occurred before rather than during the trial; and (3) "Juror C did not lie during the jury selection process because of a conscious desire to become a juror and punish Sampson for the fear and abuse she had suffered," but rather "lied to avoid having to disclose or discuss her painful personal experiences." 820 F. Supp. 2d at 191-92.

Sampson admits (Brief at 105 n.31) that this case does not involve the categories identified in Justice's O'Connor's concurrence, but nonetheless argues (Brief at 106-110) that Juror C's deceit during voir dire and the similarities between her life experiences and certain evidence presented in the trial constitute exceptional circumstances establishing that she was impliedly biased as a matter of law. As the district court correctly determined, those arguments are unavailing.

Sampson first points to the fact (Brief at 107-109) that the jury heard evidence of his history of drug and alcohol abuse and prison record, and argues that this was

-39-

similar to Juror C's daughter's incarceration and struggle with drugs and to Juror C's own experiences with her former husband. He also relies on the fact that the jury heard evidence from four bank tellers that Sampson had pointed a gun at them, which he asserts was similar to Juror C's own experience when her former husband threatened her with a gun. As the district court correctly determined, however, those facts do not come close to establishing the kind of "exceptional or extreme" circumstances that would warrant a finding of implied bias. To begin with, the experiences upon which Sampson relies were peripheral to the central issues in this case. Sampson was charged with brutally murdering Philip McCloskey and Jonathan Rizzo with a knife after carjacking them, and the evidence at trial also showed that he brutally strangled Robert "Eli" Whitney to death in New Hampshire. Juror C had no personal experience with regard to the core crimes of carjacking and murder, and the trial testimony regarding the bank robberies was a small part of the government's case. No court has found implied bias to exist based upon the types of peripheral similarities Sampson identifies here.

Moreover, and as the district court noted, the cases in which courts have found implied bias based on similarities between a juror's past and the issues at trial involved situations where "the juror was himself, at the time of trial, involved in events that shared significant similarities with the alleged criminal conduct at issue in

-40-

the case." 820 F. Supp. 2d at 164 (discussing cases). In this case, by contrast, the temporal relationship between the relevant events in Juror C's life all occurred prior to the trial, and were more remote than in those cases in which implied bias was found. *Id.* at 191; *see also id.* at 183-85 (findings regarding when the background experiences in Juror C's life occurred).

Sampson also argues (Brief at 109) that Juror C's repeated lies warrant a finding of implied bias. But the district court expressly found that Juror C did not lie to secure a spot on the jury, but rather "lied to avoid having to disclose or discuss her painful personal experiences." *Id.* at 191. That finding, which Sampson does not challenge, cuts strongly against the conclusion that she was impliedly biased. *See United States v. Langford*, 990 F.2d 65, 69-70 (2d Cir. 1993) (declining to impute bias, in part, because "[t]hough James intentionally failed to give truthful information in response to the voir dire, the court found, after the evidentiary hearing, that she did so only to avoid embarrassment"). And any contention that bias can be implied based solely on the fact that Juror C was dishonest during voir dire would be at odds with *McDonough* itself, as courts of appeals have held. *See, e.g., Williams*, 380 F.3d at 946; *Skaggs*, 164 F.3d at 517; *Langford*, 990 F.2d at 69-70; *North*, 910 F.2d at 904.

Finally, Sampson argues (Brief at 109) that any doubt about Juror C's partiality must be resolved in his favor. But this Court has never adopted that position; to the

-41-

contrary, it has said that to succeed on a juror bias claim, the defendant has "the burden of showing that the juror was not impartial and must do so by a preponderance of the evidence." *DeBurgo*, 587 F.3d at 71 (internal quotation omitted)). Here, as the district court correctly determined, Sampson failed to carry his burden of showing that this was the "exceptional or extreme" case in which bias should be implied.

## CONCLUSION

For these reasons, and for the reasons set forth in its opening brief, the government respectfully requests that the Court reverse the district court's order granting Sampson a new penalty phase trial, and remand the case to the district court with instructions to reinstate Sampson's death sentence.

<div style="margin-left:40%">

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:    /s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN
Assistant U.S. Attorney

</div>

## CERTIFICATE OF COMPLIANCE WITH
### Rule 32(a)

### Certificate of Compliance with Type-Volume Limitation
### Typeface Requirements, and Type Style Requirements

1.      This brief complies with the Court's Order of August 23, 2012, allowing the government to file a reply brief not to exceed 10,500 words, because this brief contains **10,500** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Word Perfect X5.

<div align="right">

/s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN
Dated:  April 3, 2013

</div>

## CERTIFICATE OF SERVICE

I, Mark T. Quinlivan, AUSA, certify that on April 3, 2013, I electronically served a copy of the Government's Opening Brief and Petition by electronic service on the following registered participants of the CM/ECF system:

William E. McDaniels                    Susan Katherine Marcus
Jennifer G. Wicht                       c/o Norris McLaughlin & Marcus
Cadence Mertz                           875 Third Avenue, 8th Floor
Williams & Connolly, LLP                New York, NY 10022
725 Twelfth Street, N.W
Washington, D.C 20005


J. Martin Richey
Elizabeth L. Prevett
Office of the Federal Defender
51 Sleeper Street, Fifth Floor
Boston, MA 02210


I further hereby certify that, pursuant to Fed. R. App. P. 21(a)(1), I served a copy of the Government's Reply Brief on the district court by hand delivery at the following address:

Hon. Mark L. Wolf
Chief Judge
United States District Court for the District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA 02210


                                        */s/ Mark T. Quinlivan*
                                        MARK T. QUINLIVAN